# UNPUBLISHED OPINIONS

**2018 WL 6735102**
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, Plaintiff

v.

Antonello BOLDRINI, Defendant

Civil No. 3:18-CV-1959
|
Signed 11/06/2018

**Attorneys and Law Firms**

Eric J. Phillips, Lauren L. Schuler, Hladik Onorato &
Federman LLP, North Wales, PA, for Plaintiff.

Antonello Boldrini, Pittston, PA, pro se.

**REPORT AND RECOMMENDATION**

Martin C. Carlson, United States Magistrate Judge

### I. Factual Background

**\*1** It is said that Albert Einstein once observed that doing
the same thing over and over again and expecting different
results was the highest form of human folly. This case calls
to mind the wisdom of this aphorism attributed to Einstein
since the *pro se* party in this litigation, Antonello Boldrini, has
now for a second time sought to remove this case to federal
court, having previously been informed that his prior removal
petition was untimely.

For the reasons set forth below, we find that the passage
of additional time has not somehow rendered Boldrini's
previously untimely removal petition timely. Therefore we
recommend that this case be remanded to state court once
again.

This is the second *pro se* lawsuit which Boldrini has
commenced by the filing of a Notice of Removal which
purports to remove this state mortgage foreclosure case
into federal court. Boldrini's initial, unsuccessful attempt at
removal took place when Boldrini filed a Notice of Removal
on December 20, 2017. FMNA v. Boldrini, No. 13:17-
CV-2357 (Doc. 1.) This Notice of Removal sought to remove
a state mortgage foreclosure complaint filed by the Federal
National Mortgage Association (FANNIE MAE or FNMA)
against Boldrini into federal court. Attached to the Notice of
Removal was a copy of the mortgage foreclosure complaint
filed in this case. (Id.) On its face, that mortgage foreclosure
complaint brought no claims or causes of action arising under
the Constitution or laws of the United States. (Id.) The Notice
of Removal submitted by Boldrini also on its face indicated
that this removal notice is untimely since Boldrini recited that
this state mortgage foreclosure complaint was filed in April of
2016 and was served upon Boldrini in January of 2017. (Id.)

While we noted that there appeared to be multiple fatal flaws
in this pleading, we were mindful of the teachings of the Court
of Appeals, which cautions against any *sua sponte* decision
by a district court to order the remand of a removed case. See
In re FMC Corp. Packaging Sys. Div., 208 F.3d 445, 450 (3d
Cir. 2000). Taking into account the apparent defects in this
Notice, we provisionally granted Boldrini's motion for leave
to proceed *in forma pauperis*, (Doc. 2), but ordered that a
copy of this filing be served upon counsel for the plaintiff in
the underlying state court action. We also directed that, if the
state court plaintiff believed that this Notice of Removal was
procedurally or substantively flawed, it was to file a motion
to remand this action to state court. The state court plaintiff
complied with this direction, filing a motion to remand and
accompanying brief. (Doc. 7.) Upon consideration of this
motion to remand, on January 9, 2018, we recommended that
this case be remanded to the court of common pleas. (Doc.
12.) On September 11, 2018, the district court adopted this
recommendation and remanded this case to state court. (Doc.
87.)

Undeterred, Boldrini then filed a second removal petition on
October 10, 2018 in the instant case. (Doc. 1.) This second
petition essentially reprised Boldrini's previously untimely
and feckless effort to remove this foreclosure action to federal
court in order to litigate idiosyncratic claims, which can and
should be raised and addressed in state court. Moreover, the
removal petition is now filed some 22 months after the initial
state court foreclosure complaint was served upon Boldrini
in January of 2017. Accordingly, FNMA has once again
moved to remand this case. (Doc. 8.) For his part, Boldrini
has responded to this motion to remand by moving to strike
this pleading, (Doc. 12), a motion that we take as Boldrini's
response in opposition to the motion to remand. For the
reasons set forth below, it is recommended that Boldrini's
motion to strike be denied and this case be remanded to the
Court of Common Pleas of Luzerne County.

## II. Discussion

### A. Removal Jurisdiction Legal Prerequisites

**\*2** Removal of cases is governed 28 U.S.C. § 1446, which provides as follows:

> **(a) Generally.**--A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

> **(b) Requirements; generally.--(1)** *The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based*, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(a)-(b) (emphasis added).

Thus, by its terms § 1446 commands parties seeking removal to act in a prompt and timely fashion, directing removing parties to seek removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Id.

It is well settled that "[t]he removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.' Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985) ), cert. dismissed sub nom. American Standard v. Steel Valley Auth., 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988)." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Therefore, "a party who urges jurisdiction on a federal court bears the burden of proving that" removal is appropriate. Id. Thus, as we have observed in the past, when considering tardy removal petitions, we are guided by several basic legal precepts. In this setting:

The defendants bear the burden of establishing removal jurisdiction and demonstrating compliance with all pertinent procedural requirements. Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3d Cir.), cert. denied, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc., 809 F.2d 1006, 1011 (3d Cir. 1987). Removal statutes are to be strictly construed and all doubts resolved in favor of remand. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); Boyer, 913 F.2d at 111; Landman v. Borough of Bristol, 896 F.Supp. 406, 408 (E.D. Pa. 1995). One of the procedural requirements of removal is that the defendants must remove the case within thirty days of service of the complaint. 28 U.S.C. § 1446(b).

Shadie v. Aventis Pasteur, Inc., 254 F.Supp.2d 509, 514 (M.D. Pa. 2003).

**\*3** Moreover, while the 30-day removal deadline prescribed by § 1446(b) is not jurisdictional, courts generally agree "that the thirty-day requirement for filing of a removal petition is mandatory. We have no discretion. Putterman v. Daveler, 169 F.Supp. 125 (D. Del. 1958); Green v. Zuck, 133 F.Supp. 436 (S.D.N.Y. 1955); Maybruck v. Haim, 290 F.Supp. 721 (E.D. Pa. 1962); Wisseman v. La Chance, 209 F.Supp. 807 (E.D.N.C. 1962); Sunbeam Corp. v. Brazin, 138 F.Supp. 723 (E.D. Ky. 1956); Pottstown Daily News Publishing Co. v. Pottsdown Broadcasting Co., 247 F.Supp. 578, 583-84 (E.D. Pa. 1965); Adams v. Western Steel Bldgs., Inc., 296 F.Supp. 759, 761 (D. Colo. 1969); 1A Moore, Federal Practice, 1345 (1965)." Blue Cross of Ne. Pa. v. New Life Homecare, 3:07CV2138, 2008 WL 1902414 (M.D. Pa. Apr. 25, 2008).

### B. This Motion to Remand Should Be Granted

Judged against these benchmarks, the plaintiff is entitled to the remand of this action to the Court of Common Pleas of Luzerne County since the undisputed facts conclusively demonstrate that the defendant neglected to seek to timely remove this lawsuit after he was first served with this foreclosure complaint in January of 2017. Since "removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand,' " Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), and "the thirty-day requirement for filing of a removal petition is mandatory," Blue Cross of Ne. Pa. v. New Life Homecare, 3:07CV2138, 2008 WL 1902414 (M.D. Pa. Apr. 25, 2008), we should not countenance Boldrini's efforts to discount these statutory deadlines, and use this court's removal jurisdiction in a fashion which does violence to comity between the state and federal courts, is disruptive of judicial economy, and violates the animating principles which guide our entire legal system, a system designed to promote the timely and fair resolution of cases.

These principles apply with particular force here since this is Boldrini's second untimely removal petition. This court has already concluded that Boldrini's prior petition, which was filed 11 months ago, was untimely and remanded his prior petition to state court on these grounds. Given this prior ruling, it would be anomalous now to declare that an even more delinquent petition satisfies the mandatory 30-day requirement for filing a removal petition. In short, Boldrini's latest removal petition rests upon the counter-intuitive proposition that a filing can become more timely through greater delay. This proposition defies the law of removal, principles of commonsense, and should not be embraced by this court.

Finally, we note that the ostensible basis for the removal of this case to federal court is the assertion by Boldrini of various defenses which he alleges exist under federal law. Thus, Boldrini's removal petition seems to allege that he is continuing to seek removal of this case to federal court pursuant to the court's federal question jurisdiction. This invocation of the court's federal question jurisdiction in a removal action fundamentally misconstrues the nature of that removal jurisdiction. On this score it is well-settled that: "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)."

Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In this case, a review of the plaintiff's well-pleaded complaint does not reveal that a federal question is presented on the face of that well-pleaded complaint. In such instances, where no federal claim can be found in the plaintiff's complaint, a mortgagor may not remove a state foreclosure action to federal court and the case should be remanded to state court. See e.g., Hudson City Sav. Bank, FSB v. Barrow, No. 16-CV-4190 (KM), 2017 WL 701381, at *1 (D.N.J. Feb. 22, 2017); Green Tree Servicing LLC v. Dillard, 88 F.Supp.3d 399, 400 (D.N.J. 2015).

**\*4** Accordingly, for the foregoing reasons, we recommend that the plaintiff's motion to remand be granted, so all parties may continue to litigate this state mortgage foreclosure action in state court, the proper forum for the resolution of this dispute.

## C. **Boldrini's Motion to Strike Should Be Denied**

Finally, we note that Boldrini has filed a motion to strike this motion to remand. (Doc. 12.) Boldrini's motion to strike warrants only brief consideration. Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings and provides, in part, that:

> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R.Civ. P. 12(f).

" 'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.' Natale v. Winthrop Resources Corp., 2008 U.S. Dist. LEXIS 54358, 2008 WL 2758238 (E.D. Pa. July 9, 2008). Relief under Federal Rule of Civil Procedure 12(f) is generally disfavored, and will be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.' Id." Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 509 (M.D. Pa. 2010). Thus, while rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion

is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result, ... '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil & 1380 at 783 (1969) ). See also Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D. Mo. 1993); 2 James Wm. Moore et al., Moore's Federal Practice & 12.37[1] (3d ed. 2000)." Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001). "Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties." See Hanover Ins. Co., 619 F.Supp.2d at 133; Miller v. Group Voyagers, Inc., 912 F.Supp. 164, 168 (E.D. Pa. 1996). For purposes of Rule 12(f): " 'Immaterial matter is that which has no essential or important relationship to the claim for relief. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action. Scandalous pleading must "reflect cruelly" upon the defendant's moral character, use "repulsive language" or "detract from the dignity of the court.' " Donnelly v. Commonwealth Fin. Sys., No. 07BCVB1881, 2008 WL 762085, at *4 (M.D.Pa. Mar. 20) (internal citations omitted)." Zaloga v. Provident Life & Acc. Ins. Co. of Am., 671 F.Supp.2d 623, 633 (M.D. Pa. 2009).

**\*5** Judge against these legal guideposts, Boldrini's motion to strike this motion to remand fails two at least two reasons. First, the motion to strike fails because the motion to remand is well-taken and meritorious. The rules simply do not permit the gratuitous striking of meritorious pleadings. Second, nothing in this motion to remand, which simply highlights the untimely nature of this removal petition, can be even remotely viewed as "redundant, immaterial, impertinent, or scandalous," the benchmarks standards prescribed by Rule 12(f) for striking pleadings. Accordingly, this motion to strike fails as a matter of law and should be denied.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion to remand (Doc. 8) be GRANTED, and Boldrini's motion to strike (Doc. 12), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or

recommit the matter to the magistrate
judge with instructions.

Submitted this 6 <sup>th</sup> day of November, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6735102

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1738398
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gordon Parker GOODFELLOW IV, a minor by Gordon
Parker Goodfellow, III and Lorena Goodfellow, Parents
and Natural Guardians, and Gordon Parker Goodfellow,
III and Lorena Goodfellow, Individually, Plaintiffs
v.
CAMP NETIMUS, INC., d/b/a Camp Shohola for
Boys, Inc. a/k/a Camp Shohola, Inc.; Candace Kay
Lehman and Lisa M. Chou (Brass), Defendants

CIVIL ACTION NO. 3:16-1521
|
Signed 05/04/2017

**Attorneys and Law Firms**

Melissa A. Scartelli, Michael J. Kenny, Scartelli Olszewski,
P.C., Scranton, PA, for Plaintiffs.

Robert J. Aldrich, Marshall Dennehey, Moosic, PA, Robin
B. Snyder, Marshall Dennehey Warner Coleman & Goggin,
Scranton, PA, for Defendants.

**MEMORANDUM**

MALACHY E. MANNION, United States District Judge

 **\*1** Pending before the court is the motion to dismiss, (Doc.
12), of the defendants regarding plaintiffs' direct medical
corporate negligence claims raised against Camp Netimus,
Inc., d/b/a Camp Shohola for Boys, Inc. ("the Camp") in the
amended complaint, (Doc. 10), based on an alleged defective
Certificate of Merit ("COM") which allegedly fails to set forth
that plaintiffs are proceeding on such a theory against the
Camp. The defendants also seek to dismiss the allegations
of negligence against the individual defendants as well as
all allegations of recklessness. Further, the defendants move
to dismiss the parent plaintiffs' loss of consortium claim
regarding their minor son. For the reasons discussed below,
the defendants' motion will be **GRANTED IN PART AND
DENIED IN PART**.

**I. PROCEDURAL AND FACTUAL BACKGROUND** [1]

The plaintiffs, Gordon Parker Goodfellow, III, and Lorena
Goodfellow bring this action on behalf of their minor son,
Gordon Parker Goodfellow, IV ("GPG"), and on their own
behalf. The plaintiffs filed their complaint on July 22,
2016, (Doc. 1), against defendants the Camp, and the two
Camp infirmary nurses, Candace Kay Lehman and Lisa M.
Chou. After defendants were served, they filed a motion
to dismiss the complaint on September 23, 2016. (Doc.
9). On September 30, 2016, plaintiffs filed an amended
complaint. (Doc. 10). There was only one difference between
the amended complaint and the original complaint, namely,
¶ 17.1 which stated that counsel erred in checking the wrong
box on the original COM for the Camp and that plaintiffs
had secured an expert who gave an opinion regarding the
negligence of the Camp. Attached to the amended pleading
were amended COMs regarding all three defendants. (Doc.
10, pp. 24-30). The amended COM for the Camp had the box
for vicarious liability checked. (Doc. 10, pp. 24-25). The court
then dismissed the motion to dismiss the original complaint
since it was moot. (Doc. 11).

On October 19, 2016, the defendants filed a motion to dismiss
portions of the amended complaint pursuant to Fed.R.Civ.P.
12(b)(6). (Doc. 12). The defendants simultaneously filed
their brief in support. (Doc. 13). On November 2, 2016,
the plaintiffs filed their brief in opposition. (Doc. 16). The
defendants filed a reply brief on November 9, 2016, rendering
their motion to dismiss ripe for review. (Doc. 17).

This action relates to the medical treatment GPG received
while attending the Camp, as an overnight camper, during the
summer of 2014. GPG became sick on July 26, 2014 and was
brought to the Camp's infirmary complaining about stomach
pain, nausea, vomiting and a fever. The Camp's infirmary was
staffed by Lehman and Chou, both licensed professionals,
who believed GPG was suffering from a stomach flu. GPG
remained in the Camp's infirmary from July 26 through July
29, 2014, allegedly without proper medical care. On July 29,
2014, the Camp Director brought GPG to Hawley Urgent
Care where he was immediately referred to Wayne Memorial
Hospital Emergency Room for a CT scan. The scan revealed
that GPG had a perforated appendix which caused sepsis.
GPG was then transported to Geisinger Medical Center where
he received IV antibiotics to address the infection. GPG
remained at Geisinger receiving antibiotics until September
24, 2014, when he was stable enough to have surgery to
remove his appendix. GPG was discharged from Geisinger on
September 26, 2014. For one month thereafter, GPG allegedly
still had pain in his lower abdomen.

**\*2** In their amended complaint, (Doc. 10), the plaintiffs allege that Lehman and Chou were negligent for initially misdiagnosing GPG with a stomach flu, for failing to timely diagnose his condition which was appendicitis, and for failing to supervise and train Camp employees. In addition to the direct professional negligence claims against Lehman and Chou, the plaintiffs claim that the Camp is vicariously liable for the alleged negligence of the two infirmary nurses. The plaintiffs also assert claims of direct and corporate negligence against the Camp, including claims that it failed to adequately train the infirmary staff, it failed to have adequate policies and procedures in place, and it failed to consult with a physician.

There are five counts in the amended complaint, to wit: (I) a professional medical negligence claim against Lehman; (II) a professional medical negligence claim against Chou; (III) claims of vicarious liability as well as direct corporate medical negligence claims against the Camp; (IV) a claim for emotional distress allegedly suffered by GPG against all defendants; and (V) a claim by GPG's parents against all defendants for recovery of medical bills and a loss of consortium claim by GPG's parents regarding GPG. There are also several allegations of recklessness against the defendants in the amended complaint. As relief in all five counts, plaintiffs seek compensatory damages. This court's jurisdiction is based on diversity 28 U.S.C. § 1332.

As indicated, the plaintiffs attached amended COMs to their amended complaint regarding all three defendants. (Doc. 10, pp. 24-30). The amended COMs against Lehman and Chou were filed based on Pa.R.C.P. 1042.3(a)(1) and state, in pertinent part, an expert has found that "there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work [at issue], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [to GPG]." The amended COM filed against the Camp, which is based only on Pa.R.C.P. 1042.3(a)(2), states that "the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals [i.e., Lehman and Chou] for whom this defendant is responsible deviated from an acceptable professional standard" and, that an expert has found "there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work [at issue], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [to GPG]."

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

**\*3** In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-

Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

**B. Motion to Strike**

Defendants' motion, insofar as it seeks to strike portions of the amended complaint, is also made pursuant to Fed.R.Civ.P. 12(f). In Tennis v. Ford Motor Co., 730 F.Supp.2d 437, 443 (W.D. Pa. 2010), the court explained as follows regarding a Rule 12(f) motion:

> Under Fed.R.Civ.P. 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams v. Cnty. of Erie, Pa., 2009 WL 4016636 at *1 (W.D. Pa. Nov. 19, 2009) (quoting Fed.R.Civ.P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Natale v. Winthrop Resources Corp., 2008 WL 2758238 at *14 (E.D. Pa. July 9, 2008) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D. Pa. 2002)).

> Although courts possess "considerable discretion in disposing of a motion to strike under Rule 12(f), 'such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.' " Thornton v. UL Enterprises, LLC, 2010 WL 1005021 at *2 (W.D. Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." Thornton, 2010 WL 1005021 at *2 (quoting DeLa Cruz v. Piccari Press, 521 F.Supp.2d 424, 428 (E.D. Pa. 2007) (quotations omitted)).

**III. DISCUSSION**

In their motion, defendants argue that the amended COM filed against the Camp supports only claims of vicarious liability with respect to the alleged negligence of Lehman and Chou and is thus insufficient to support direct claims of corporate negligence. Defendants also argue that plaintiffs' corporate negligence claims against the Camp should be dismissed for failure to state a cause of action and, that the vague allegations of negligence in the amended complaint should be stricken against all defendants. Further, defendants argue that all of the allegations of recklessness should be stricken from the amended complaint. Finally, defendants assert that the parent plaintiffs' cause of action for loss of consortium regarding GPG should be dismissed for failure to state a cognizable claim.

**\*4** Plaintiffs initially contend that defendants' motion to dismiss with respect to their direct corporate negligence claims against the Camp is untimely. Plaintiffs cite to Pa.R.C.P. 1042.6 and 1042.7 and, point out that a defendant claiming a defective COM is required to file a notice of intent to enter a judgment of *non pros*, i.e., a motion to dismiss with respect to this case, "no sooner than the thirty-first day after the filing of the complaint." Plaintiffs filed their original complaint on July 22, 2016, and served it on defendants along with waivers and Summons on July 26, 2016. Defendants signed the waivers which provided that they had 60 days to respond to plaintiffs' complaint from July 26, 2016, i.e., by September 24, 2016. (Doc. 4, Doc. 8). On September 23, 2016, the defendants jointly filed their motion to dismiss with respect to the original complaint, which argued, in part, that the COM regarding the Camp was defective. (Doc. 9). Specifically, the COM regarding the Camp which was attached to the original compliant, (Doc. 1, p. 29), had only the third box checked which provided that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant" based on Pa.R.C.P. 1042.3(a)(3). Defendants' motion was timely since it was filed one day before the expiration of the 60-day period. In response to the motion to dismiss, plaintiffs filed their amended complaint on September 30, 2016. Since the 60-day period expired on September 24, 2016 and there was only one day remaining on it, defendants had 14 days to respond to plaintiffs' amended complaint. See Fed.R.Civ.P. 15(a)(3).

On October 19, 2016, the defendants filed their motion to dismiss the amended pleading, including the direct corporate negligence claims against the Camp again based on a defective COM. However, defendants' motion was due on October 14, 2016, i.e., 14 days after September 30, 2016 and, thus, it was filed five days late. Defendants did not file a motion for an extension of time to file their motion. Nor

did they file a motion with the court seeking to file their motion to dismiss *nunc pro tunc*. As such, plaintiffs argue that defendants' motion to dismiss their amended complaint should be dismissed in its entirety since it was filed out of time.

Defendants do not concede that their instant motion was untimely. Nor do they claim that it was timely. Rather, defendants contend that the court should still determine the merits of their motion even if it is untimely since "plaintiffs are not prejudiced in any manner whatsoever." (Doc. 17, p. 2). Defendants point out that their instant motion to dismiss is nearly identical to their prior motion to dismiss plaintiffs' original complaint and that plaintiffs had notice of their intent to challenge some of the amended pleading before it was even filed. Thus, defendants state that dismissal of their instant motion is too drastic a sanction since any short delay did not cause plaintiffs any prejudice.

Defendants' motion was a few days late. However, the court, in its discretion, will not strike the motion as untimely since plaintiffs had actual prior notice of the essential grounds for the motion and there is simply no prejudice to plaintiffs by the short delay. There is also no prejudice to plaintiffs since many of defendants' present arguments could be re-asserted in a later summary judgment motion. Moreover, if defendants had requested an extension of time or requested to file their motion *nunc pro tunc*, the court certainly would have granted it. Thus, striking defendants' motion under the present circumstances would be too drastic a sanction, and the court will consider the merits of defendants' motion to dismiss. However, counsel is reminded to adhere to the Federal Rules of Civil Procedure and the rules of this court in the future.

Next, plaintiffs argue that defendants' attempt to dismiss their claims of direct corporate medical negligence against the Camp based on an alleged defective COM should be asserted in a summary judgment motion and that defendants were required under the Pennsylvania procedural rules to have given them notice of intent to enter judgment of *non pros* pursuant to Pa.R.C.P. 1042.6 and 1042.7.

At the outset, the court finds that the defendants can challenge the plaintiffs' alleged defective COM against the Camp in a motion to dismiss. *See* Bassill v. Bryn Mawr Rehab. Hosp., 2016 WL 6247549, *1 (E.D. Pa. Oct. 26, 2016) (Defendant hospitals filed a motion to dismiss plaintiff's corporate negligence claim for filing a defective COM and asserted that plaintiff's COM was insufficient to support that

claim.); *see also* Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008). This court also takes judicial notice that it has considered motions to dismiss in many cases based on the failure to file proper COMs as well as timely COMs. *See, eg.*, Levi v. Lappin, 2009 WL 1770146 (M.D. Pa. June 22, 2009); *see also* cases cited by defendants (Doc. 17, pp. 5-6).

**\*5** Additionally, the court does not find any reason to wait for a summary judgment motion on the present issue since discovery will not alter the basis of defendants' stated contention seeking to dismiss plaintiffs' corporate negligence claims against the Camp due to a defective COM and the 60-day deadline to file COMs has expired. Also, plaintiffs already had the opportunity to amend their COM against the Camp and they did so. (Doc. 10, p. 25).

Further, defendants were not required to follow Pa.R.C.P. 1042.6 and 1042.7 by filing a notice of intent to enter judgment of *non pros*. As the court stated in Keel-Johnson v. Amsbaugh, 2009 WL 648970, at *3 (M.D. Pa. Mar. 10, 2009), "[n]ot all aspects of the Pennsylvania COM rule can be implemented in federal court[.]" In fact, Rules 1042.6 and 1042.7 are "enforcement mechanisms [which] are procedural and inapplicable to federal practice." Id. (citing Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238, 250 (E.D. Pa. 2008)). Additionally, "[n]either the Federal Rules of Civil Procedure nor the local rules of this Court contemplate praecipes or the entry of judgments of *non pros*." Id. (citing Stroud, 546 F. Supp.2d at 250); Vochinsky v. GEO Group, Inc., 2009 WL 4017254, *2 (E.D. Pa. Nov. 20, 2009) ("Federal procedural rules differ from Pennsylvania procedural rules. Therefore, in federal court, the defendant must file a motion to dismiss without prejudice [regarding a COM]."). In any event, plaintiffs had notice of defendants' intent to move to dismiss based on an alleged defective COM against the Camp when they filed their first motion prior to plaintiffs' amended complaint and amended COMs. (Doc. 9).

The court will now discuss the merits of defendants' arguments and grounds for dismissal *seriatim*.

Defendants move to dismiss plaintiffs' claims of direct corporate medical negligence against the Camp based on an alleged defective COM. "Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires that all professional liability claims be supported by a [COM] filed within sixty days of the filing of the complaint." Bassill v. Bryn Mawr Rehab. Hosp., 2016 WL 6247549, *1 (E.D. Pa. Oct. 26, 2016)

(citing Pa.R.Civ.P. 1042.3(a)). Pennsylvania Rule of Civil Procedure 1042.3 [2] further requires that, "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file ... a certificate of merit signed by the attorney or party." Pa.R.C.P. No. 1042.3(a). This certificate of merit will either state that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm," "the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard," or that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa.R.C.P. No. 1042.3(a)(1), (2), (3).

 **\*6**  "In Rostock v. Anzalone, 904 A.2d 943, 946 (Pa. Super. Ct. 2006), the Pennsylvania Superior Court held that the plaintiff's corporate negligence claims required a COM and expert testimony." Bassill, 2016 WL 6247549, \*2. In Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008), the court held that "[a] COM is required as to corporate negligence claims that are premised on allegations that a hospital's actions fell below the applicable medical or professional standard, i.e., where the claim is predicated upon facts constituting medical treatment." (citing Rostock, supra). It is clear that a COM is required for a plaintiff to pursue a corporate negligence claim against a licensed professional medical care provider such as a hospital. Plaintiffs contend that a COM is not required in this case with respect to the Camp since it is not a licensed professional medical care provider as specified in Pa.R.C.P. 1042.1 and that they can proceed on their direct corporate liability claims against the Camp without expert testimony. Defendants dispute plaintiffs' contention that a COM is not required as to their direct corporate liability claims against the Camp. Defendants also dispute whether plaintiffs' COM is adequate with respect to such claims against the Camp.

Plaintiffs filed their amended complaint with the amended COM against the Camp since their original COM indicated that expert testimony of a licensed professional was not necessary for the prosecution of the claim against the Camp. (Doc. 1, p. 29). No doubt that the Camp is a corporate entity

but not a licensed professional or a health care provider. (Doc. 12, ¶ 36). Plaintiffs' amended COM with respect to the Camp served to remedy the error in their original COM by indicating that they have an expert who opines only that the Camp is vicariously liable for the actions of its professionally licensed nurses, i.e., Lehman and Chou. *See* Pa.R.Civ.P. 1042.3(a)(2). Plaintiffs only checked the second box on their amended COM with respect to the Camp. (Doc. 10, p. 25). However, regarding their corporate direct medical negligence claims against the Camp seeking to hold the Camp directly liable for its own negligence, in addition to the alleged negligence of Lehman and Chou, defendants contend that plaintiffs must present expert evidence and a COM.

A separate COM is required for each licensed professional who is claimed to have deviated from an acceptable professional standard. Pa.R.C.P. 1042.3(b)(1). A "licensed professional" is defined as "any person who is licensed pursuant to an Act of Assembly as a healthcare provider as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act ... and a nurse." Pa. R.C.P. 1042.1. The MCARE Act, 40 P.S. § 1303.503, defines a "heath care provider" as "a primary health care center, a personal care home licensed by [DPW] ... or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course or scope of employment."

Regardless whether the Camp is a licensed health care provider, a COM is required because the substance of plaintiffs' amended complaint alleges professional medical malpractice was committed by the Camp. Vochinsky, 2009 WL 4017254, \*2 (court held that a COM was required by inmate who alleged GEO Group, Inc., a corporation which operated the Delaware County Prison, committed medical practice) (citing Dental Care Assoc., Inc. v. Keller Eng'rs, Inc., 954 A.2d 597, 601-03, 603 n. 4 (Pa. Super. Ct. 2008)) ("the Superior Court [ ] found the defendant qualified as a licensed professional for purposes of Rule 1042 and a certificate of merit was required where the defendant was a 'corporation engaged in the business of providing engineering services' and the substance of plaintiff's complaint alleged professional malpractice.").

As such, the court finds that a COM is required as to the direct corporate medical negligence claims plaintiffs assert against

the Camp even though it is not a licensed professional medical care provider since these claims are based on allegations that the Camp's actions fell below the applicable medical or professional standard, "i.e., where the claim is predicated upon facts constituting medical treatment." *See* Rostock, 904 A.2d at 946; Stroud, 546 F.Supp.2d at 248. Specifically, plaintiffs allege that the Camp failed to adequately train the infirmary medical staff, failed to have adequate policies and procedures in place regarding its medical facility to treat the campers, and failed to consult with a physician.

 **\*7** In fact, plaintiffs did file a COM against the Camp. However, the court finds that the amended COM against the Camp supports only a claim of vicarious liability and that it is insufficient to support a direct claim of corporate medical negligence. Plaintiffs did not check the first box on their amended COM against the Camp. *See* Pa.R.C.P. 1042.3(a)(1). Rather, they checked only the second box.

In Bassill, 2016 WL 6247549, \*2, the court explained as follows,

> a claim for corporate negligence "is based on the negligent acts of the institution." Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). "A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts." Id. (internal citations omitted).

Moreover, "[c]orporate negligence claims generally require expert testimony; therefore, they also require COMs." Id. In Count III of the amended complaint, plaintiffs raise claims of vicarious liability and claims of direct corporate medical negligence against the Camp with respect to the medical treatment received by GPG. The court does not find, as plaintiffs now seem to suggest, (Doc. 16, p. 12), that they are merely raising claims for ordinary negligence against the Camp. In particular, plaintiffs allege in their amended complaint, (Doc. 10), that the Camp controls an infirmary, employs full time medical staff, including Lehman and Chou, and that the Camp is responsible for such staff. Plaintiffs also allege that the Camp failed to have adequately trained medical staff, failed to have adequate medical policies and procedures in place, failed to have a doctor on staff, failed to meet its duty of providing medical and nursing care to campers, and failed to inform GPG's parents of his medical conditions. Additionally, plaintiffs allege that the Camp was negligent in failing to provide proper and competent

supervision, diagnosis, treatment, care and monitoring. (Doc. 10, ¶ 48). Thus, plaintiffs seek, in part, to hold the Camp directly liable for its own medical negligence. "The case law makes it clear that in order to do so, [plaintiffs] would need to present expert evidence, and thus [a] supporting COM[ ], regarding the [Camp's] negligence, as separate from the alleged negligence of its employee[s] and/or agent[s]." Bassill, 2016 WL 6247549, \*2.

Under Pennsylvania law, medical negligence "can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." Toogood v. Owen J. Rogal, D.D.S., P.C., 573 Pa. 245, 254-55 (2003) (internal citations and quotations omitted). Thus, a plaintiff must establish a duty owed by the physician or medical personnel to the patient, a breach of that duty, that the breach was the proximate cause of the plaintiff's injury, and that the damages suffered were a direct result of the harm. Toogood, 573 Pa. at 254-55. In addition, "[w]ith all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." Quinby v. Plumsteadville Family Practice, Inc., 589 Pa. 183, 199 (2006); *see also* Brady v. Urbas, 111 A.3d 1155, 1162 (Pa. 2015) ("Except in the most obvious cases of negligence (such as where a gauze pad is left inside a patient's body), expert testimony is necessary to establish the standard of care."); Rodriguez v. United States, 2009 WL 4480761 (M.D. Pa. Aug. 23, 2016), appeal pending, (This court held that in order for plaintiff inmate to establish a prima facie case of medical malpractice on behalf of the prison's medical personnel as well as on behalf of the Bureau of Prisons itself, the plaintiff inmate had to provide expert testimony to demonstrate both the standard of care owed to him, deviation from that standard, and causation.).

 **\*8** As defendants state in their reply brief, (Doc. 17, p. 7), "[b]ecause the COM against the Camp fails to comply with Pa.R.C.P. 1042.3(a)(1), plaintiffs must be precluded from presenting expert testimony as to direct medical negligence against the Camp. If plaintiffs are precluded from presenting expert testimony against the Camp, they cannot establish a medical negligence claim against the Camp." *See Rodriguez, supra*; *Vochinsky, supra.* Indeed, the Bureau of Prisons in the *Rodriguez* case and the GEO Group in the *Vochinsky* case, like the Camp, are not licensed professional medical care providers but they all have medical facilities and medical

staff under their supervision to treat the medical needs of the inmates and the campers.

Since the court has found that a COM is required with respect to plaintiffs' direct corporate medical negligence claims against the Camp, the court must decide if the failure of plaintiffs to file the requisite COM within the deadline, should result in the dismissal with prejudice of these claims. "In limited circumstances, a plaintiff's failure to file a timely certificate of merit may be excused." Bassill, 2016 WL 6247549, *3 (citing Womer v. Hilliker, 908 A.2d 269, 278–80 (Pa. 2006) ("holding that a failure to file a COM in compliance with the rules may be excused where there is substantial compliance, lack of prejudice and a reasonable explanation or legitimate excuse")). As in *Bassill*, the court finds no equitable exceptions apply in this case. The Rule's 60-day deadline has passed. *See* Pa.R.Civ.Proc. 1042.3(a) (plaintiff shall file the COM with the complaint or within sixty days after the filing of the complaint). Defendants made plaintiffs aware of the instant issue challenging the original COM against the Camp in their first motion to dismiss and plaintiffs then filed their amended complaint, alleging that counsel erred in checking the wrong box on the original COM for the Camp and that an expert gave an opinion regarding the negligence of the Camp. (Doc. 10, ¶ 17.1). Plaintiffs also filed their amended COM against the Camp. Thus, insofar as Count III of plaintiffs' amended complaint raises direct corporate medical negligence claims against the Camp, such claims will be dismissed with prejudice since the deadline has passed and no equitable exceptions apply.

Defendants also seek to dismiss the claim of GPG's parents for loss of their child's consortium contained in Count V of the amended complaint. There is no dispute that under Pennsylvania law, a parent has no right to recover damages for the loss of a child's consortium. Recently, in Beam v. Western Wayne Sch. Dist., 165 F.Supp.3d 200, 217 (M.D. Pa. 2016), the court stated that "Pennsylvania, similar to federal law, does not recognize a cause of action for the loss of consortium of a child." (citing Quinn v. City of Pittsburgh, 243 Pa. 521, 524–25, 90 A. 353 (1914)) (holding that a parent may not recover for the loss of a child's consortium because such a cause of action is confined to where a [spouse] sues for injuries to his[/her spouse] ); Robinson v. Hartzell Propeller, Inc., 276 F.Supp.2d 412, 415 (E.D. Pa. 2003) ("dismissing claim for parental loss of consortium on grounds that the Pennsylvania Supreme Court most likely would not allow that cause of action"). Accordingly, the parent plaintiffs' claim

for loss of GPG's consortium contained in Count V of the amended complaint will be dismissed with prejudice.

Further, defendants argue that plaintiffs' allegations of negligence against the Camp staff, including Lehman and Chou, (Doc. 10, ¶ 35), should be stricken as vague and unsupported. The court finds that these allegations are sufficient for present purposes and state plausibly professional medical negligence claims against Lehman and Chou. Thus, defendants' motion to dismiss plaintiffs' allegations of negligence against all defendants will be denied.

**\*9** Finally, defendants argue that all of the allegations for recklessness should be stricken from the amended complaint. The amended complaint contains various allegations of recklessness against all defendants which implies that plaintiffs will be seeking punitive damages. (*See, eg.*, Doc. 10, ¶ 's 35-36). However, defendants point out that the amended complaint does not contain a separate claim for punitive damages and plaintiffs' prayer for relief does not request punitive damages. Defendants also state that even if plaintiffs are seeking punitive damages, they fail to meet their burden of pleading sufficient facts to support a claim for punitive damages.

Plaintiffs state that their allegations of recklessness are sufficient at this stage of the case, including their allegations that the Camp allowed GPG, who was a minor, "to wallow in pain and suffering for four days is sufficient to support a claim for punitive damages." (Doc. 16, p. 20). Plaintiffs state that the statute of limitations for GPG to raise a claim of punitive damages will not expire for five years and that such damages "are not a separate claim but rather an element of damages which can be claimed at any stage." (Id.). Plaintiffs concede that they did not request punitive damages in their amended complaint but they suggest that they will seek leave of court to file a second amended complaint to assert a claim for punitive damages after discovery.

The remaining claims in this case include plaintiffs' claims for professional medical negligence against Lehman and Chou as well as their claim of vicarious liability against the Camp pertaining to the alleged negligence of Lehman and Chou, Counts I-III. "Reckless conduct is the factual characterization of the events that took place giving rise to the negligence action; it is not a claim in itself that the court can dismiss." Austin v. Nugent, 2016 WL 7048994, *7 (M.D. Pa. Dec. 5, 2016).

Defendants seek to dismiss all of plaintiffs' allegations of recklessness to avoid the imposition of punitive damages. "Punitive damages are merely an element of damages in a negligence action." Id. (citing [Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989)](#) ("[N]o independent action exists for a claim of punitive damages since punitive damages is only an *element* of damages") (emphasis in original)). "It follows that punitive damages are 'predicated upon the finding of liability.' " Id. (citing [Kirkbride, 555 A.2d at 802](#)).

As indicated, plaintiffs' amended complaint does not specifically seek punitive damages. As this court stated in the *Austin* case, [2016 WL 7048994, *7](#), since defendants seek dismissal of an element of a claim that is not even demanded, there is nothing to dismiss at this stage.

Assuming *arguendo* that plaintiffs had demanded punitive damages, or as they imply, that they will later seek punitive damages, as this court pointed out in *Austin*, defendants misconstrue the standard under [Rule 12(b)(6)](#). Id. "The pleading standard set forth in *Twombly* solely requires that the plaintiff's claims be 'plausible,' not that they be proven in the complaint by sufficient facts as the defendant's motion would suggest." Id. (citing [Twombly, 550 U.S. at 547](#)). "In Pennsylvania, punitive damages are available as a remedy for negligence actions." Id. (citing [Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 772–73 (Pa. 2005)](#)). "This remedy is only available 'in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.' " Id. (citing [Hutchinson ex rel. Hutchinson, 870 A.2d at 770](#)).

The court finds that the plaintiffs' allegations of reckless in their amended complaint would be enough to state a "plausible" claim for punitive damages under Pennsylvania law. [Austin, 2016 WL 7048994, *8](#) (citing [Twombly, 550 U.S. at 547](#)); *see also* [Tucker v. Horn, Case No. 4:16-cv-0071, 2016 WL 4679018, at *3–4 (M.D. Pa. Sept. 9, 2016)](#). As this court instructed in *Austin*, "Plaintiff[s] would certainly bear a high evidentiary burden if [they] decided to seek punitive damages, but this is the very purpose of discovery." Id. Further, "[d]iscovery would be necessary to determine whether the defendant's actions rose to the level of outrageous conduct warranting punitive damages." However, like in *Austin*, the issue of whether plaintiffs will be able to make the requisite evidentiary showing is not an issue that this court need address now. "Thus, even if the plaintiff[s] had sought punitive damages in [their] [amended] complaint, the allegations would be sufficient to survive a motion to dismiss as dismissal at this early stage would be premature." Id.

**\*10** Moreover, in the November 30, 2016 revised scheduling order, the court set June 2, 2017 as the deadline for fact discovery and the final date for the amendment of pleadings is June 15, 2017. (Doc. [21](#)). Since these dates have not yet passed, the court will allow the plaintiffs' allegations of recklessness in their amended complaint to proceed. Accordingly, defendants' motion to dismiss all of plaintiffs' allegations of recklessness will be denied.

### IV. CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss, (Doc. [12](#)), the plaintiffs' amended complaint, (Doc. [10](#)), will be **GRANTED IN PART AND DENIED IN PART**. A separate order shall issue.

### All Citations

Not Reported in Fed. Supp., 2017 WL 1738398

## Footnotes

1    All facts are taken from plaintiffs' amended complaint, (Doc. [10](#)), unless otherwise noted. The facts alleged in plaintiffs' amended complaint must be accepted as true in considering the Camp's motion to dismiss. *See* [Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012)](#); [Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005)](#).

2    The Third Circuit has held that [Rule 1042.3](#) is substantive law and must be applied by federal courts sitting in diversity jurisdiction. [Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011)](#) ("[W]e

conclude that Pennsylvania Rule 1042.3, mandating a certificate of merit in professional negligence claims, is substantive law under the *Erie* Rule and must be applied as such by federal courts.").

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2016 WL 3254744
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Mary Lou GRAHAM, Plaintiff,

v.

MOHEGAN SUN AT POCONO DOWNS and
Killian Construction Company, Defendants.

Civil Action No. 3:14-CV-0908
|
Filed 06/14/2016

**Attorneys and Law Firms**

Harry T. Coleman, Law Office of Harry Coleman,
Carbondale, PA, for Plaintiff.

James A. Doherty, Jr., Scanlon, Howley & Doherty, P.C.,
James Andrew Doherty, III, Kevin Corbett Hayes, Doherty
Law, LLC, Scranton, PA, Glenn M. Campbell, William J.
Ferren & Associates, Blue Bell, PA, for Defendants.

**MEMORANDUM**

Kosik, Judge

 **\*1** Before the Court are several motions for consideration:
a motion for summary judgment filed by Defendant Killian
Construction Company ("Killian Construction") (Doc. 42);
a motion for summary judgment filed by Defendant
Mohegan Sun at Pocono Downs ("Mohegan Sun") (Doc. 46),
partially joining the summary judgment motion of Killian
Construction; and finally, Plaintiff, Mary Lou Graham's
motion to strike Mohegan Sun's motion for summary
judgment (Doc. 49). For the reasons which follow, the
Court will deny Plaintiff's motion to strike, deny Killian
Construction's motion for summary judgment, and deny
Mohegan Sun's motion for summary judgment.

**I. BACKGROUND**

This action stems from an incident that occurred on February
15, 2013, when Plaintiff, Mary Lou Graham, suffered injuries
when she fell on a grassy walkway/pathway leading to
the casino entrance at Mohegan Sun in Plains Township,
Pennsylvania. (Doc. 51, Pltf. SOF, at ¶¶1, 14, 16). Although

a frequent visitor to the casino, Plaintiff became uncertain
as to how to access the casino when she parked her vehicle
in a different designated parking area than the one she
was accustomed to, due to new construction of a hotel at
the casino. (Id. at ¶¶7-9). Confused by the lack of signage
directing her which way to traverse to the casino's entrance,
she inquired with a construction worker, who told her to
"just go past the fence and down toward the people." (Id. at
¶¶10-12). When Plaintiff reached the end of the construction
fence, she saw a paved sidewalk that led to the casino's
entrance, but thought it too far to traverse, so, instead,
she chose a grass/dirt walkway/pathway that was a shorter
distance leading to the casino's entrance. (Id. at ¶¶13, 14). It
was while she was walking on this path that Plaintiff slipped
and fell, sustaining injuries. (Id., at ¶16).

Plaintiff filed suit against both Defendants on May 12, 2014,
and subsequently, filed an amended complaint alleging two
counts of negligence and one count of intentional infliction
of emotional distress against Mohegan Sun and one count
of negligence against Killian Construction. (Docs. 1 and
8). Upon the close of discovery, Killian Construction filed
a motion for summary judgment, arguing that it owed no
duty to Plaintiff, given the incident occurred outside of
the construction area. Further Killian Construction argues it
cannot be held negligent, as a matter of law, for any defect that
might have existed in an unpaved area of the property when
a safe, paved means of travel was available to Plaintiff.

Mohegan Sun later filed a motion for summary judgment,
partially joining Killian Construction's motion for summary
judgment. (Doc. 46). Specifically, Mohegan Sun seeks
summary judgment only as to Count I of Plaintiff's amended
complaint, joining with Killian Construction, that, as a matter
of law, Mohegan Sun cannot be held negligent for any
defect in the unpaved area of the property when Plaintiff
was provided with a safe, paved means of travel to the
casino's entrance. (Docs. 46 and 47). Plaintiff responded
by filing a motion to strike Mohegan Sun's motion for
summary judgment (Doc. 49), arguing the same was filed
untimely. Plaintiff subsequently filed briefs in opposition to
both Defendants' motions. (Docs. 52 and 58). The parties have
fully briefed the motions, which are now ripe for disposition.

**II. STANDARD OF REVIEW**

 **\*2** Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Anderson, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." U.S. Bank, Nat'l Ass'n v. Greenfield, Civ. Action No. 1:12-CV-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

### III. DISCUSSION

#### A. Motion to Strike

Before addressing Defendants' motions for summary judgment, we must first deal with, as an initial matter, Plaintiff's motion to strike Mohegan Sun's motion for summary judgment. Plaintiff asks the Court to strike from the record and dismiss Mohegan Sun's motion for summary judgment for its untimely filing. Rulings on motions to strike are "within the sound discretion of the district court" and are considered a "drastic remedy." Dougherty v. Advanced Wings, LLC, 2013 WL 2434991, at *1 (M.D. Pa. June 4, 2013); (see King Twp. Of E. Lampeter, 17 F.Supp.2d 394, 407 (E.D. Pa. 1998)) (stating whether to strike untimely

cross motion for summary judgment is a matter of judicial discretion).

Plaintiff contends that she will suffer prejudice should Mohegan Sun's untimely motion not be stricken because she will be unable to respond to Mohegan Sun's motion within the 21 day time parameter set forth by Local Rule 7.6. Although Mohegan Sun untimely filed its motion for summary judgment, partially joining in Killian Construction's motion for summary judgment, we cannot identify any prejudice that the Plaintiff will suffer, or has suffered, by the late filing. Mohegan Sun does not raise any different legal issues in its motion, but rather, raises the very same issue that Co-Defendant Killian Construction raised, to which Plaintiff has fully responded to in her oppositional brief. Indeed, Plaintiff has already responded to Mohegan Sun's motion for summary judgment by filing a brief in opposition to the same. Thus, because motions to strike are within the sound discretion of the district court, and we cannot discern any prejudice by allowing Mohegan Sun's motion to stand, we will deny Plaintiff's motion to strike.

#### B. Motions for Summary Judgment

**\*3** Having addressed Plaintiff's motion to strike, we now turn to the Defendants' motions for summary judgment. In its motion for summary judgment, Killian Construction argues that Plaintiff cannot establish that it breached any duty owed to Plaintiff at the time of her fall. Killian Construction also argues that Plaintiff cannot prevail on a negligence claim when it was Plaintiff that chose the dangerous route to traverse rather than utilize the safe route that was available to the casino entrance. Mohegan Sun's motion for summary judgment joins in with Killian Construction's argument that Defendants cannot be found negligent when Plaintiff was aware of a safe, paved means to enter the casino. Mohegan Sun does not challenge the remainder of Plaintiff's IIED or negligence claims in its motion for summary judgment.

Plaintiff responds that Killian Construction's contract with Mohegan Sun created a duty to Plaintiff and that a question of fact exists as to whether Plaintiff was able to discover and appreciate the alleged dangerous condition of the pathway on which she slipped.

In Pennsylvania, the elements of a negligence claim are:

> (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;

(2) defendant's failure to conform to the standard required;

(3) a causal connection between the conduct and the resulting injury; and

(4) actual loss or damage resulting to the plaintiff.

R.W. v. Manzek, 585 Pa. 335, 346 (2005). The first element, whether defendant owes a duty of care to the plaintiff, is a question of law. The Court looks to Section 343 of the Restatement (Second) of Torts, which has been adopted by Pennsylvania, to determine whether a duty existed. Section 343 states,

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (2d) of Torts § 343. "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (2d) of Torts § 343A.

"A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.' " Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983), citing Restatement (2d) of Torts § 343A, comment b. For a danger to be "known," it must "not only be known to exist, but...also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." Id. "The question of whether a danger was known or obvious, and if so, whether a safe way was available so that it is clear that [Plaintiff] assumed the risk, is a question of fact for the jury. Only where reasonable minds could not differ as to the conclusion may the question be decided by the court." Com. v. Harris, 522 A.2d 184, 186 (Pa. Commw. Ct. 1987); Carrender, 469 A.2d at 124; Restatement (2d) of Torts § 328B comments c and d.

This concept has been termed as the "alternative ways" or "choice of ways" doctrine, which states: "Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence...." O'Brien v. Martin, 638 A.2d 247, 249 (Pa. 1994), citing Downing v. Shaffer, 371 A.2d 953, 956 (Pa. Super. Ct. 1977). To be applicable, there must be evidence that "the plaintiff made an unreasonable decision which exposed him to a hazard that he knew or should have known existed. There must be evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." Id. "Contributory negligence...may not be found by the court as a matter of law unless the facts so clearly reveal the plaintiff's negligence that reasonable minds could not disagree as to its existence." O'Brien, 638 A.2d at 249; see, e.g., Gregorius v. Safeway Steel Scaffolds Co., 187 A.2d 646 (Pa. 1963); Skalos v. Higgins, 449 A.2d 601 (Pa. Super. Ct. 1982). While Pennsylvania courts have generally been loath to apply this doctrine, in the cases where it is applied, the danger the plaintiff chose to confront was "indisputably obvious." O'Brien, 638 A.2d at 249. Finally, the choice of ways doctrine is rarely dealt with at summary judgment; rather, "[t]he cases which have examined it have generally been at the post-trial stage." Cousins v. Sharon City School Dist., 27 Pa. D. & C.4th 319, 332 (1994), citing O'Brien, 638 A.2d at 249.

**\*4** In O'Brien v. Martin, a construction worker fell from a concrete extension when he attempted to step onto a pier to converse with someone below him more easily, rather than proceed down a ramp located at one end of the loading dock to speak with the individual. O'Brien, 638 A.2d at 248. In analyzing whether the construction worker was contributorily negligent, The Pennsylvania Superior Court pointed to the following facts, among others, to determine whether the plaintiff chose an obviously dangerous way over a clearly safer one to speak to the person below him: (1) plaintiff testified that he did not think standing on the cement pier was dangerous; and (2) plaintiff did not think the pier was a safety hazard because it was commonplace and saw other workers safely walk on the pier. Id. At 250. The Superior Court concluded that "[t]his is not a situation where the facts so clearly bespeak negligence by the plaintiff that the issue should have been removed from the jury." Id.

Although O'Brien is not controlling, we find it instructive to the present case. As evidenced by the deposition testimony of Plaintiff, the risks associated with traversing on the grassy pathway were not known to be obviously dangerous to Plaintiff:

> Q: So then you parked, and then what happened next?
>
> A:...And so I saw a path, and – and there were like all kinds of footprints on it. And I went down there.
>
> ***
>
> Q: So is this the pathway that you used to enter the casino that day?
>
> A: Yeah. And there were tons of footprints. And I always seen people when they would walk – coming out the casino and walking up the sidewalk to the disability section, and I always saw people coming down there.

(Doc. 53, Tab A, Pltf.'s Dep. at 50:10-11, 51:5-7, 64:4-5, 64:11-15). Moreover, Plaintiff has set forth that there were no warning signs or cones, cordoning-off or preventing patrons, such as Plaintiff, from using this "well-traveled" pathway. (Id. at 61 – 62).

Viewing the evidence in the light most favorable to the non-moving party, as we must do at this juncture, we cannot say that the danger ultimately confronted by the Plaintiff – walking on a well-traveled, grassy pathway – was so patently obvious that no reasonable minds could differ. Plaintiff has set forth evidence that no clear signage was available to her to direct her which way to travel to the entrance of the casino; that no ribbon, signs, cones or fences prohibited her from using the grassy pathway; and that she saw other patrons utilizing the well-worn pathway to the casino without incident. Thus, there is no real evidence that suggests any route was clearly unsafe. Given this absence of evidence, coupled with the general "loathing" of courts to apply the choice of ways doctrine, especially at the summary judgment stage, we will deny Killian Construction's and Mohegan Sun's motion for summary judgment as to this issue.

Finally, we now turn to Killian Construction's argument that it owed no duty to Plaintiff for a condition that was located outside the zone of construction. Killian Construction points to the deposition testimony of Tom Sanders, an on-site project manager for Killian Construction:

> Q: Who's determination was it as to where to place the fencing?
>
> A: The casino, or MTGA [Mohegan Tribal Gaming Authority].
>
> Q: And for our purposes, that's the same as the casino, correct?
>
> A: Yes, sir.

(Doc. 42, Ex. 6, Def. Dep. at 18:11-18). Mr. Sanders' deposition testimony further states that Killian Construction was responsible for construction signage only on the project, not for patron signage of the casino. (Id. at 11-12).

Plaintiff counters that an unknown construction worker, presumably a Killian Construction worker, told her that to access the casino, she should "just go past the fence and down toward the people." (Doc. 51, Pltf.'s SOF, ¶ 11; Doc. 53, Pltf.'s Dep., at 50:22-51:1). Plaintiff also cites to a portion of the contract between the Defendants, which she contends supports her position that Killian Construction owed a legal duty to her. Specifically, she cites to Section 10.2.1 of the contract that provides:

> **\*5** The Contractor [Killian Construction] shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to: employees on the Work and other persons who may be affected thereby.

(Doc. 53, Pltf.'s Affidavit in Opp., Tab D). Plaintiff also provides that within Killian Construction's scope of work was traffic control "as required to keep the existing facility [casino] in operation." (Doc. 51, Pltf.'s SOF, ¶ 21; Doc. 53, Pltf.'s Affidavit in Opp., Tab D, Summary of Work, at 4).

Again, viewing the evidence in the light most favorable to the non-moving party, we find a genuine issue of material fact exists that prevents the granting summary judgment with the record before us. Given the evidence produced by Plaintiff in support of her averments that Killian Construction owed a duty to Plaintiff based upon the contract between

the Defendants and the lack of evidence propounded by the Defendant to counter the same, we must deny Killian Construction's motion for summary judgment as to this issue as well. Other than the deposition testimony of Mr. Sander's, indicating that Mohegan Sun was responsible for the placement of the construction fences, Killian Construction fails to come forth with any evidence to refute Plaintiff's assertion that the above referenced contract section created a legal duty to the Plaintiff.

### IV. CONCLUSION

For the reasons set forth above, we will deny Plaintiff's motion to strike and deny Killian Construction and Mohegan Sun's motions for summary judgment. An appropriate order is attached.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3254744

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.