## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MILLER, | : | No. 1:24-cv-00014-JPW-MCC |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Wilson) |
| | : | (Magistrate Judge Carlson) |
| COUNTY OF LANCASTER, *et al.*, | : | |
| Defendants. | : | (Electronically filed) |

## DEFENDANT COUNTY OF LANCASTER'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

Defendant County of Lancaster (the "County"), by and through its undersigned counsel, submits this reply brief in further support of its Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. (Doc. 48).

## I.      INTRODUCTION

As discussed more fully in the County's brief in support of its Rule 11 Motion, *pro se* Plaintiff Michael Miller ("Miller") has filed a Complaint that contravenes Rule 11's prohibition on frivolous claims lacking support in existing law. Miller's opposition brief (Doc. 53) sets forth arguments that are either equally lacking in merit or simply non-responsive to the arguments advanced in the County's main brief. By continuing to pursue these meritless proceedings against the County, Miller has demonstrated that sanctions are warranted against him.

UNPUBLISHED OPINIONS

2018 WL 4002855
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Charles BRESLIN, et al., Plaintiffs

v.

DUNCANNON BOROUGH, Defendant

CIVIL ACTION NO. 12-0360
|
Signed 08/22/2018

**Attorneys and Law Firms**

Daniel A. Pallen, The Law Offices of Daniel A. Pallen, LLC, Media, PA, Don A. Bailey, Harrisburg, PA, for Plaintiffs.

John P. Morgenstern, Rufus A. Jennings, Deasey, Mahoney & Valentini, Ltd., Philadelphia, PA, Edwin A.D. Schwartz, Marshall Dennehey Warner Colman & Goggin, Susan J. Smith, Law Office of Susan J. Smith, Camp Hill, PA, for Defendant.

## **MEMORANDUM**

STENGEL, District Judge

**\*1** This is the second civil rights action filed by three plaintiffs against their local township and some of its officials. It is very similar to the previous action they filed in 2009. See Breslin v. Dickinson Township, et al., 09-cv-1396 ("Breslin I"). The complaint allegedly "addresses a number of violations of the plaintiffs' rights as guaranteed by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States." The plaintiffs also allege that Moving Defendant Duncannon Borough violated their rights to petition for redress under the First Amendment to the U.S. Constitution, and their rights to the equal protection of the law under the Fourteenth Amendment to the U.S. Constitution. See Count III. Defendant Duncannon Borough filed a motion to dismiss for failure to state a claim upon which relief can be granted. The plaintiffs responded. For the following reasons, I will grant the motion in its entirety.

## **I. BACKGROUND**

The plaintiffs are three retired senior military officers who are residents of Dickinson Township, Cumberland County, Pennsylvania. The complaint includes a number of violations of the plaintiffs' rights as guaranteed by the First, Fourth, and Fourteenth Amendments. Specifically, the plaintiffs allege that their First Amendment rights to comment on matters of public concern free of retaliation, and their rights to petition for a redress of grievances free of retaliation were violated by the defendants. Further, they allege that their rights to privacy as protected by the Fourth Amendment and their Equal Protection rights under the Fourteenth Amendment were violated by the defendants, and that several of the defendants conspired to knowingly make false claims of potential criminal wrongdoing and knowingly enabling false claims and baseless innuendoes to be made public. This conduct was allegedly done with the express intent of destroying the plaintiffs' reputations, tainting potential jury pools, and intimidating the plaintiffs from exercising their rights of expression and to petition for redress.

The plaintiffs further allege that the defendants hid certain information from them after the plaintiffs requested that information pursuant to Pennsylvania's Right-to-Know laws. They also claim that the defendants forced the plaintiffs to pay hundreds of dollars of fees in connection with these requests where other citizens did not have to pay. The information requested was allegedly directly related to the original complaint filed Breslin I.

## **II. STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a plausible claim for relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**\*2** In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon

which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 679 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id. (emphasis added).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED.R.CIV.P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555, the plaintiff must provide "more than labels and conclusions." Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 649 (E.D. Pa. 2010)(citing Twombly, 550 U.S. at 554). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

### A. Plaintiffs Charles Breslin and Paul Cunningham

The complaint indicates that "the plaintiffs" bring Count III against Susan Smith, Duncannon Borough, and Dickinson Township. I must agree with Moving Defendant Duncannon Borough that Plaintiffs Breslin and Cunningham have failed to plead any facts as to any interaction among them and Duncannon Borough. Accordingly, I will grant the defendant's motion to dismiss Count III to the extent brought by Plaintiffs Breslin and Cunningham.

### B. Plaintiff Phillip Thompson

**\*3** Count III of the complaint alleges that Defendants Susan Smith, Duncannon Borough, and Dickinson Township attempted to block public access, and the plaintiffs' lawful access under Pennsylvania's Right To Know Law to Defendant Smith's law service billings to Duncannon Borough. Defendant Smith allegedly submitted false information to Pennsylvania's Office of Open records in order to keep Plaintiff Thompson from gaining access to public records. The complaint alleges that Duncannon Borough was complicit in this activity which resulted in the denial of the plaintiffs' First Amendment right to seek a redress of grievances. In 2010 and 2011, Plaintiff Thompson reviewed vouchers allegedly submitted by Defendant Smith for legal services rendered to Defendant Dickinson Township. Mr. Thompson noted the possibility of double billing those services with services rendered to Duncannon Borough. On May 4, 2011, Mr. Thompson requested copies of the vouchers for legal services to Duncannon Borough from June 2010 through March 2011. The Borough Manager forwarded the request to Defendant Smith on May 5, 2011. Duncannon Borough asked for an additional thirty days to process the request. The complaint indicates that the Borough denied Mr. Thompson's request by omission.

On August 10, 2011, Mr. Thompson made another request for the identical records. He emailed the request to the President of the Borough Council and the Borough member who had oversight of legal affairs. The request was forwarded to Defendant Smith, with a notation that it was important to meet the timeline. This request was allegedly denied again by omission.

On August 25, 2011, Mr. Thompson sent the Borough Manager yet another request for the identical records. He followed that email with a registered letter postmarked August 26, 2011. Again, the request was allegedly denied by inaction.

Mr. Thompson appealed these denials to the Commonwealth's Office of Open Records. Defendant Smith argued on behalf of Duncannon Borough that Mr. Thompson's appeals were untimely. She also argued that Mr. Thompson had not addressed his request to the Borough's Open Records Officer. The complaint alleges that these communications were knowingly false, misleading, an abuse of process, and a violation of the plaintiffs' First Amendment rights. It alleges that this conduct was in retaliation for the plaintiffs' filing of the earlier civil rights action, i.e., 09-cv-1936. The plaintiffs also insist that because Duncannon Borough approved Defendant Smith's actions, it knowingly joined in an effort to intentionally provide false and misleading information.

### 1. Violation of First Amendment
### Right to Petition for Redress

Plaintiff Thompson alleges a violation of his First Amendment right to petition the government for redress of grievances. To state a claim for violation of the First Amendment right to petition for redress, a plaintiff must "demonstrate that a defendant caused actual injury '... i.e., took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.' " Roberts v. Mentzer, 382 F.App'x 158, 162 (3d Cir. 2010) (quoting Beckerman v. Susquehanna Twp. Police & Admin., 254 F.App'x 149, 153 (3d Cir. 2007) ). A denial of access to the courts relates to either (1) a claim of systematic official action that frustrates a plaintiff in preparing and filing suits; or (2) a claim alleging the defendants have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief. Christopher v. Harbury, 536 U.S. 403, 412-413 (2002).

Here, Mr. Thompson alleges that he made requests for records under Pennsylvania's Right to Know Law. He alleges that he was aware of and exercised his right of appeal to the Pennsylvania Office of Open Records from the actions of Duncannon Borough. Those appeals were properly dismissed as untimely. The final determination indicated that it is binding on the parties, and that no further action would be taken. The determination also indicated that either party could appeal to the Perry County Court of Common Pleas within thirty days. There is no mention of such an appeal.

I must agree with Defendant Duncannon Borough which argues that Mr. Thompson failed to plead facts necessary to establish the elements of a claim of a First Amendment violation of his right to petition for redress. Mr. Thompson's claim rests upon his attempt to turn his dissatisfaction with a state law administrative procedure for access to records into a federal Constitutional claim. Violations of state statutes do not give rise to claims for violations of civil rights. Benn v. Universal Health System, Inc., 371 F.3d 165, 174 (3d Cir. 2004). The plain language of 42 U.S.C. § 1983 supports causes of action based upon violations, under the color of state action, of federal statutory law or constitutional rights. It does not provide a cause of action for violation of state statutes. Because alleged violations of Pennsylvania's Right to Know Law do not give rise to a constitutional claim, I will grant the motion to dismiss Defendant Duncannon Borough as a defendant in Mr. Thompson's claim of a First Amendment violation of his right to petition for redress in Count III.

### 2. Violation of Fourteenth
### Amendment Right to Equal Protection

**\*4** In the caption for Count III, the complaint mentions a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In the body of Count III, however, there is no further allegation or set of facts which would support such a claim.

The Fourteenth Amendment dictates that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. The purpose of this clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The fundamental inquiry under the Equal Protection Clause is whether the defendant's actions disadvantage some suspect class or impinge upon a fundamental right protected by the Constitution. San Antonio Independent School District v. Rodriquez, 511 U.S. 1, 17 (1973). To state a claim under the Equal Protection Clause, a plaintiff has to plead that actions of the defendant did not apply to others similarly situated and also that the acts were made intentionally on the basis of race, religion, gender, national origin, or other impermissible classification and with no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, Mr. Thompson makes what amounts to a bald assertion of a violation of the Fourteenth Amendment in the heading for Count III. He alleges that his Fourteenth Amendment right to equal protection has been violated by Duncannon Borough. There are no facts, however, presented that would support such a claim. There is no mention that he was treated less favorably than those similarly situated. But, most importantly, Mr. Thompson did not show that Duncannon Borough infringed upon a basic constitutional right. Accordingly, I will grant the motion to dismiss Defendant Duncannon Borough as a defendant in Mr. Thompson's claim of a Fourteenth Amendment equal protection violation in Count III.

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4002855

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6609023
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Douglas BRUCE, Plaintiff,
v.
CITY OF PITTSTON, PENNSYLVANIA, Defendant.

CIVIL ACTION NO. 3:23-CV-00711
|
Signed October 10, 2023

**Attorneys and Law Firms**

Douglas Bruce, Colorado Springs, CO, Pro Se.

Aaron C. Garrett, Pro Hac Vice, Nonprofit Legal Services of Utah, Salt Lake City, UT, Danielle M. Mulcahey, Wright & Reihner, P.C., Scranton, PA, for Plaintiff.

Jennifer Menichini, Joseph J. Joyce, III, Joyce, Carmody & Moran, P.C., Pittston, PA, for Defendant.

## MEMORANDUM

KAROLINE MEHALCHICK, Chief United States Magistrate Judge

**\*1** Before the Court is a motion for judgment on the pleadings and a motion for sanctions filed by Defendant the City of Pittston, Pennsylvania ("Defendant" or "City"). (Doc. 14; Doc. 25). On May 1, 2023, Plaintiff Douglas Bruce ("Bruce") initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 against the City, asserting claims for the alleged violation of his rights under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 20). For the following reasons, the City's motions will be GRANTED. (Doc. 14; Doc. 25).

## I. BACKGROUND AND PROCEDURAL HISTORY [1]

**\*2** Bruce is a resident of El Paso County, Colorado. (Doc. 1, ¶¶ 1, 7). Bruce has "46 years of experience in property ownership and ... currently owns 50 properties across the country." *Bruce v. City of Miamisburg, Ohio*, No. 3:21-CV-80, 2023 WL 184010, at \*4 (S.D. Ohio Jan. 13, 2023).

On or about October 22, 2012, Bruce, through a straw person, purchased the property located at 385 North Main Street, City of Pittston, Pennsylvania 18640 (the "Property") for $17,500.00 from Deutsche Bank National Trust Company. (Doc. 11-1, at 2-5; Doc. 11-18, at 2-5). The City Code of the City of Pittston incorporates and adopts the International Property Maintenance Code as the property maintenance code for the City, for the purposes of "regulating and governing the conditions and maintenance of all property, buildings and structures." (Doc. 11-21, at 2-6; Doc. 11-20, at 2-11).

On September 18, 2014, the building formerly situated upon the Property (the "Building") was condemned by the City "due to multiple, serious, persistent, unresolved violations" of the International Property Maintenance Code. (Doc. 11-25, at 2). On April 25, 2018, Thomas Leonard, P.E. of TGL Engineering, Inc. issued a report opining that the condition of the Building "presents a serious hazard to the public." (Doc. 11-22, at 2). On November 26, 2018, City Code Enforcement Officer Harry Smith ("Mr. Smith") issued an enforcement notice to Bruce directing that the Building be razed within thirty (30) days in accordance with § 110.1 of the Property Maintenance Code, advising Bruce that he had twenty (20) days to exercise his appellate rights through the City of Pittston Property Maintenance Code Appeals Board, and notifying Bruce that his "[f]ailure to comply may result in the issuance of a non-traffic citations for each violation of the property maintenance code for [each] day [the] offense continues," and that "[u]pon conviction, a fine of not less than $500.00 or more than $2,500.00 and court costs will be imposed per violation, and a lien may be placed upon the property." (Doc. 11-25, at 2-9).

Despite being provided notice ordering the demotion of the Building, Bruce failed to do so within the time required, and as a result, on January 4, 2019, Mr. Smith issued Bruce a non-traffic citation due to his failure to comply with § 110.1 of the Property Maintenance Code, which violation carried a fine of, if convicted, of $1,000.00. (Doc. 11-3, at 2-4). On January 8, 2019, Mr. Smith issued Bruce a second non-traffic citation due to his ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-4, at 2-4). On or about January 17, 2019, Bruce submitted a "motion to dismiss" in Magisterial District Court docket Nos. MJ-11104-NT-0000015-2019 (January 4, 2019, non-traffic citation R2456420-1) and MJ-11104-NT-0000023-2019 (January 8, 2019, non-traffic citation R2456425-6) to Magisterial District Judge Alexandra Kokura Kravitz. (Doc. 11-9, at 2-5) (arguing

that the code enforcement "proceeding is unworthy of a banana republic," and requesting that this "nonsense 'case' be dismissed"). On January 24, 2019, Mr. Smith issued Bruce a third non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-5, at 2-4). On January 25, 2019, Mr. Smith issued Bruce a fourth non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-6, at 2-4). On or about February 8, 2019, Bruce submitted a "renewed motion to dismiss" supplementing his prior motion to dismiss to address the non-traffic citations filed at Magisterial District Court docket Nos. MJ-11104-NT-0000133-2019 (January 25, 2019, non-traffic citation R2456435-2) and MJ-11104-NT-0000134-2019 (January 24, 2019, non-traffic citation R2456434-1). (Doc. 11-10, at 2-5) (calling the proceedings "patently absurd," and stating that it "suggests a kangaroo court proceeding, but that would be a slur on kangaroos"). On March 19, 2019, Mr. Smith issued Bruce a fifth non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-7, at 2-4). On or about April 3, 2019, Bruce submitted a "re-renewed motion to dismiss" supplementing his prior motions to address the non-traffic citation filed at Magisterial District Court docket No. MJ-11104-NT-0000270-2019 (March 19, 2019, non-traffic citation R2456493-4). (Doc. 11-11, at 2). On April 1, 2019, Mr. Smith issued Bruce a sixth and final non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the International Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-8, at 2; Doc. 11-26, at 2-3). On or about April 16, 2019, Bruce submitted a "re-re-re-re-renewed motion to dismiss" supplementing his prior motions to address the non-traffic citation filed at Magisterial District Court docket No. MJ-11104-NT-0000364-2019 (April 1, 2019, non-traffic citation R2455557-6). (Doc. 11-12, at 2-4) (stating that "I can't believe Ms. Kravitz is a real judge who has read the U.S. Constitution. Maybe the janitor is setting trial using her name.").

**\*3** On May 23, 2019, Bruce was served through the court with following five (5) Orders Imposing Sentence issued by Magisterial District Judge Kravitz:

1. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000015-2019 (January 4, 2019, non-traffic citation R2456420-1) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-13, at 2-3);

2. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000023-2019 (January 8, 2019, non-traffic citation R2456425-6) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-14, at 2-3);

3. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000133-2019 (January 24, 2019, non-traffic citation R2456435-2) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-15, at 2-3);

4. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000134-2019 (January 24, 2019, non-traffic citation R2456434-1) and imposing a fine of $1,040.25, which sum represents a $1,000.00 fine and $40.25 in costs (Doc. 11-16, at 2-3); and

5. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000270-2019 (March 19, 2019, non-traffic citation R2456493-4) and imposing a fine of $1,040.25, which sum represents a $1,000.00 fine and $40.25 in costs (Doc. 11-17, at 2-3).

No fine and/or sentence has been imposed by Magisterial District Judge Kravitz in docket No. MJ-11104-NT-0000364-2019 (March 29, 2019, non-traffic citation R2455557-6) due to Bruce's failure to enter a plea. (Doc. 11-26, at 2-3).

On April 16, 2019, Thomas Leonard, P.E. of TGL Engineering, Inc., issued a supplemental report opining that "the building continues to present hazards to the general public," including "physical injury (wall failure/loose shingles), fire (trespassers), mold (stormwater infiltration) and disease (animal carcasses)," and recommended "demolition of the structure for health and safety of the general public." (Doc. 11-24, at 2). On May 8, 2019, Mr. Smith issued a second enforcement notice to Bruce, via certified mail and personal service through the El Paso County Sherriff's Office, informing Bruce that due to "the current condition of the property, it is my opinion, after consultation with an engineer, that this property is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy and it is no longer able to be repaired," directing that Bruce demolish the Building and notifying Bruce that "[p]ursuant to section 110.3 of the Property Maintenance

Code, your failure to comply with this demolition order within thirty (30) days will result in the demolition of the property by the City of Pittston with all costs being charged against the real estate." (Doc. 11-2, at 2-9). The May 8, 2019, enforcement notice also informed Bruce that he had twenty (20) days to appeal the enforcement action through the City of Pittston Property Maintenance Code Appeals Board, as set forth in § 111 of the Property Maintenance Code. (Doc. 11-2, at 4). Bruce did not timely appeal the enforcement action to the City of Pittston Property Maintenance Code Appeals Board or demolish the Building. (Doc. 17, at 9). On June 24, 2019, City Council unanimously passed Resolution Number 12275 legislatively authorizing the demolition of the Building. (Doc. 11-19, at 2-4). On June 26, 2019, the Building was demolished. *See* Dylan Fearon, *Property owner of demolished Pittston Pub says he's suing city*, Fox 56 Wolf, (June 26, 2019), https://fox56.com/news/local/property-owner-of-demolished-pittston-pub-says-hes-suing-city; Conrad Swanson, *Douglas Bruce lashes out after town demolishes his building*, The Gazette, (June 27, 2019), https://gazette.com/news/douglas-bruce-lashes-out-after-town-demolishes-his-building/ article_a7ba8222-983e-11e9-a854-ab831a96f4e1.html. [2]

**\*4** On May 1, 2023, Bruce filed a civil rights complaint against the City for alleged violations of his rights under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 1). Count I asserts a claim for the alleged violation of Bruce's rights under the Fifth Amendment Takings Clause arising out of the demotion of the Building. (Doc. 1, ¶¶ 13, 22). Count II asserts claims for the alleged violation of Bruce's Fourteenth Amendment procedural due process rights and Fifth Amendment Due Process Clause arising out of the demolition of the Building. (Doc. 1, ¶¶ 13, 26, 29). Count III asserts a claim for the alleged violation of Bruce's Fourteenth Amendment substantive due process rights arising out of the demotion of the Building. (Doc. 1, ¶¶ 13, 32, 38). Count IV asserts a claim for the alleged violation of the Eighth Amendment Excessive Fines Claims arising out of the demolition of the Building and the issuance of five (5) fines by Magisterial District Judge Kravitz. (Doc. 1, ¶¶ 11, 41, 44, 47-49).

On May 18, 2023, the City issued a safe harbor notice to Bruce's counsel in conformity with Rule 11(c)(2) seeking the withdrawal of Bruce's complaint. (Doc. 26-41, at 2-34).

The City filed an answer on May 23, 2023, and an amended answer on May 31, 2023. (Doc. 10; Doc. 11). On May 25, 2023, Bruce's counsel, Aaron C. Garrett, provided the following response to the City's safe harbor notice:

> Before this case moves any further down the road, we need to address your Rule 11 letter. I have spoken to our client regarding the information and argument contained in your draft Rule 11 motion, and without revealing client confidences, suffice it to say that there is a difference of opinion between myself and Mr. Bruce regarding its validity. I have told Mr. Bruce that the Complaint needs to be withdrawn, but he will not agree to its withdrawal. However, he will agree to allowing Danielle and myself to withdraw from representing him in the case.
>
> Would you stipulate to a motion for Danielle and I to withdraw from the case, and would that address you concerns with the Rule 11 letter? You could then proceed to defend the case in whatever manner you see fit, with Mr. Bruce proceeding *pro se.*
>
> Please let me know your thoughts.
>
> (Doc. 26-42, at 2).

On May 31, 2023, Bruce's counsel filed a stipulated motion to withdraw as counsel, which was granted by the Court on June 27, 2023. (Doc. 12; Doc. 18). On June 1, 2023, the City filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Bruce's claims fail as a matter of law. (Doc. 14). On June 9, 2023, following the expiration of the safe harbor period, the City filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure due to Bruce's refusal to permit his counsel to withdraw his complaint. (Doc. 25; Doc. 26).

The motions have been fully briefed and are now ripe for disposition. (Doc. 17; Doc. 30; Doc. 31).

## II. STANDARDS OF REVIEW

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c)

motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required " 'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.' " *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

**\*5** "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.").

## III. DISCUSSION

The City argues that it is entitled to judgment on the pleadings because each of Bruce's claims fails as a matter of law, and requests that judgment be entered in favor of the Defendant City of Pittston and against Bruce. (Doc. 14; Doc. 17). In addition, the City seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure due to Bruce's refusal to permit his counsel to withdraw his complaint. (Doc. 25; Doc.

26). The Court liberally Bruce's *pro se* filing in opposition to the City's motions. (Doc. 31). The Court address each argument raised in the pleadings and each cause of action alleged in Bruce's complaint. In sum, the Court finds that Bruce's complaint fails as a matter of law and will be dismissed with prejudice.

### A. WHETHER BRUCE'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

At the onset, through the motion for sanctions, the City contends that all of Bruce's claims are barred by applicable statutes of limitations. (Doc. 30, at 18). The City raised the affirmative defense that Bruce's claims are barred by the statute of limitations in its amended answer filed on May 31, 2023. (Doc. 11, ¶ 52); *see* Fed. R. Civ. P. 8(c)(1). The City asserts that Bruce's claims are barred because: (1) Bruce was aware, no later than June 26, 2019, and that Building was demolished; (2) Bruce was served with Magisterial District Judge Kravitz's Orders imposing the complained of fines on May 23, 2019; and (3) Bruce acknowledged the fines imposed in a June 27, 2019, interview with *The Gazette*. (Doc. 11, ¶¶ 53-55). Conversely, Bruce argues that any applicable statute of limitations should be tolled "as an act of reasonable response in the face of rampant government misconduct." (Doc. 31, ¶ 28). Bruce asserts that "[l]awless local acts or abuses cannot be protected or shielded by customary limits and filing time limits." (Doc. 31, at 9).

It is well established that actions brought under Section 1983 are "governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006); *see Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). Under Pennsylvania law—the law of the forum in which the alleged violations of Plaintiffs' constitutional rights occurred—the statute of limitations for personal injury actions is two years. 42 Pa. Con. Stat. § 5524. Accordingly, Bruce's complaint is subject to the two-year limitations period applicable to personal injury actions.

Federal law governs the accrual date of a cause of action under § 1983. *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)). The accrual period for statute of limitations purposes begins when a plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d

582, 599 (3d Cir.1998). The "discovery rule," recognized by Pennsylvania law, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause. *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3rd Cir.2006) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983)). The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest*, 449 F.3d at 510 (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3rd Cir.2003)).

**\*6** As the City persuasively argues, Bruce predicates Section 1983 liability on allegations of actionable conduct occurring beyond the controlling two-year statute of limitations period. Because this action was initiated on May 1, 2023, the relevant two-year statute of limitations forecloses any federal civil rights claims grounded on allegations of unconstitutional conduct occurring before May 3, 2021.[3] All allegations of constitutional misconduct chronicled by Bruce in relation to the complaint—namely, the demolition of the Building on June 26, 2019, the fines imposed by Magisterial District Judge Kravitz on May 23, 2019—are time-barred, as they clearly did not transpire within two years of the day Bruce filed suit on May 1, 2023. (Doc. 1); *see Sameric Corp. of Delaware*, 142 F.3d at 599.

To the extent Bruce may argue that the continuing wrong doctrine is appliable, such an argument is without merit. To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same *unlawful ... practice* and that at least one act falls within the applicable limitations period." *Williams v. Borough of Highland Park*, 707 F. App'x 72, 76 (3d Cir. 2017) (emphasis added) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013)). The Third Circuit in *Williams* emphasizes the distinction between "continual unlawful acts" and "continual ill effects from an original violation." *Williams*, 707 F. App'x at 76 (denying application of the continuing wrong doctrine where a municipality's subsequent request for payment stemmed from an initial violation that was never remedied by plaintiffs). The Magisterial District Court's imposition of fines for Property Maintenance Code violations and the City Council's unanimous passing of Resolution Number 12275 to legislatively authorize the demolition of the Building are not "unlawful acts," and cannot be a proper basis for the continuing wrong doctrine. (Doc. 11-13, at 2-3; Doc. 11-14, at 2-3; Doc. 11-15, at 2-3; Doc. 11-16, at 2-3; Doc. 11-17, at 2-3; Doc. 11-19, at 2-4); *see Williams*, 707 F. App'x at 76.

Equitable tolling is also not applicable here, as Bruce has not sufficiently demonstrated that he "diligently pursued [his] rights," or that "extraordinary circumstances" stood in the way of the timely filing of his complaint. *See D.J.S.-W v. United States*, 962 F.3d 745, 752 (3d Cir. 2020) (citing *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 136 S. Ct. 750, 755-56, 193 L.Ed.2d 652 (2016)). Bruce maintains in his opposition brief to the City's motion for sanctions, without factual support, that "the facts were frozen at the demolition," and that the statute of limitations should be tolled "in the face of rampant government misconduct." (Doc. 31, at 9). Bruce's allegation, without any evidentiary support, is not enough to necessitate equitable tolling, and thus, the claims are time-barred. *See D.J.S.-W*, 962 F.3d at 752.

Accordingly, Bruce's complaint is dismissed as time-barred.

### B. WHETHER BRUCE ALLEGES *MONELL* LIABILITY.

Next, the Court finds that Bruce's complaint must be dismissed because he has not plausibly alleged the existence of a policy or custom that was the proximate cause of his alleged deprivation of rights. Bruce's complaint sets forth claims pursuant to 42 U.S.C. § 1983 for violations of his federal constitutional rights for the City's demolition of the Building. (Doc. 1). Constitutional claims brought against state actors must be pursued under 42 U.S.C. § 1983. Section 1983 states:

**\*7** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983.

Local governments and municipalities are considered persons under § 1983 and may be sued directly under that section when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of City of NY*, 436 U.S. 658, 690 (1978).

"[A] government entity may not be held vicariously liable under § 1983 for the acts of its employees under a *respondeat*

*superior* theory of liability." *Win & Son, Inc. v. City of Philadelphia*, 162 F.Supp.3d 449, 459 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 691). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation marks omitted)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

To succeed on constitutional claims under *Monell*, a plaintiff must: "(1) identify a policy, practice, or custom, (2) attribute it to the city, and (3) show a causal link between execution of the policy and the injury suffered." *Win & Son*, 162 F.Supp.3d. at 459 (quoting *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)) ("A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered."). The policy or custom must be the "moving force" behind the plaintiff's alleged injury. *Bd of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland*, 706 F.3d at 237 (quotation and internal quotation marks omitted). And a "course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Mulholland*, 706 F.3d at 237 (quotation omitted).

Here, Bruce claims that the Defendant City of Pittston should be liable because it "maintains certain policies, practices, customs, and ordinances through which it has permitted itself to issue excessive and unconstitutional fines against real property without proper notice of the same to the power owners like [Bruce]," and "through which it has permitted itself to demolish buildings on real property without prior notice and the ability to contest the same to the property

owners like [Bruce]." (Doc. 1, ¶¶ 17, 18, 27, 34). Bruce asserts that as a result of the City's police, practice, custom, or procedure, the City has unlawfully deprived him of his private property and his substantive and procedural due process rights. (Doc. 1, ¶¶ 19, 28, 35). However, Bruce does not point to any particular policy or custom as the basis of his *Monell* claims. (Doc. 1). Moreover, Bruce does not provide any factual allegations to connect how the alleged City police *caused* his alleged injuries. Bruce's claims arise from the demolition of the Building, but the complaint does not link this activity to the implementation or enforcement of a City policy or custom. (Doc. 1). Thus, Bruce fails to satisfy the pleading requirements of establishing a *Monell* claim.

**\*8** Accordingly, Bruce's complaint must be dismissed. *See Estate of Fabics v. City of New Brunswick and its Agents*, 674 F. App'x 206, 211 (3d Cir. 2016) ("But, in failing to trace the alleged constitutional violations to an official custom or policy of the municipality ... Appellants fail to state a claim against these defendants under Rule 12(b)(6)").

## C. WHETHER BRUCE'S FIFTH AMENDMENT TAKINGS CLAUSE CLAIM FAILS.

Count I of the complaint asserts a Fifth Amendment Takings Clause claim against the City pursuant to 42 U.S.C. § 1983 due to the City's demolition of the Building. (Doc. 1, ¶¶ 16-23). Bruce alleges that the actions of the City in ordering, authorizing, and demolishing the Building without notice or permission of Bruce, and without opportunity for a prior hearing, constituted a *de facto* taking of Bruce's property for public use in violation of the Fifth Amendment. (Doc. 1, ¶¶ 16-23; Doc. 31, ¶¶ 4-5). The City argues that Bruce's Fifth Amendment Takings Clause claim fails as a matter of law because the demolition of the Building occurred incident to the City's exercise of its police power and, therefore, the demolition did not constitute a taking within the meaning of the Fifth Amendment. (Doc. 17, at 17-21). In the alternative, assuming *arguendo*, that the City's demotion of the Building performed in strict compliance with the Property Maintenance Code, does not constitute the exercise of the City's police power, Bruce's Fifth Amendment Takings Clause claim nevertheless fails because Bruce maintains title to and a possessory interest in the Property. (Doc. 17, at 21-22; Doc. 11-1, at 3-5; Doc. 1, ¶ 7).

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without

just compensation." U.S. Const. amend. V. This prohibition applies to state and local governments under the Fourteenth Amendment. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). There is no requirement that a claimant exhaust state remedies before bringing a Takings Clause claim to federal court. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). However, property is not "taken" where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition. *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property.").

Here, the City was acting pursuant to its police power to regulate for the public welfare when it demolished the Building. *See Win & Son*, 162 F.Supp.3d at 459 ("the City had the right to condemn Plaintiffs' property"). The November 26, 2018, enforcement notice issued by Mr. Smith to Bruce directed that he demolish the building, which had been in condemned status since 2014, in accordance with § 110.1 [4] of the Property Maintenance Code because the Building posed "a risk to emergency personnel and nearby residents." (Doc. 11-25, at 2-9). After Bruce failed to comply, Mr. Smith issued a second enforcement notice to Bruce on May 8, 2019, via certified mail and personal service through the El Paso County Sheriff's Office, informing Bruce that due to "the current condition of the property, it is my opinion, after consultation with an engineer, that this property is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy and it is no longer able to be repaired," directing that Bruce demolish the Building and notifying Bruce that "[p]ursuant to section 110.3 [5] of the Property Maintenance Code, your failure to comply with this demolition order within thirty (30) days will result in the demolition of the property." (Doc. 11-2, at 2-9). Bruce, again, did not comply. Although Bruce cursorily asserts that the actions of the City were not a valid exercise of its police powers, Bruce does not dispute that the Building on the Property was marked "imminently dangerous," as a threat to the public health and safety. (Doc. 31, ¶¶ 17-18, 22). The City's policies for handling demolition of "Imminently Dangerous" properties have been found to be constitutional. *See Win & Son*, 162 F.Supp.3d at 462; *Johnson v. City of Philadelphia*, No. CV 19-1591-KSM, 2020 WL 2933853, at *9 (E.D. Pa. June 3, 2020).

**\*9** Further, a Taking Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. *Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (finding no taking occurred where plaintiff retained a possessory interest in the property); *see also Fisher v. Pratt*, No. CV 19-273 (NLH/KMW), 2020 WL 773262, at *7 (D.N.J. Feb. 18, 2020) (finding that no taking occurred when plaintiff's home was demolished after a fire caused a partial collapse where plaintiff had "not alleged a total deprivation of property"). Here, Bruce has not alleged that the City's actions deprived her of all beneficial use of the Property or lost her possessory interest in the Property. (Doc. 31, at 7). Bruce claims losses only for the demolition of the Building and expected profits from renovation and sale of the Building and the Property. (Doc. 1, ¶ 14). As it appears from the pleadings that Bruce has retained possession of the Property and the ability to "put the property to any number of beneficial uses," *Munoz*, 481 F. App'x at 759, the Court finds that the City's demolition of the Building cannot constitute a taking. *See Madar v. City of Philadelphia*, No. CV 19-6033, 2021 WL 2156362, at *12 (E.D. Pa. May 27, 2021) (granting summary judgment where city demolished collapsed building that was marked "imminently dangerous").

Therefore, the Court finds that Bruce has not pled a Fifth Amendment Takings Clause claim because the City demolished the Building pursuant to its police powers and because Bruce has retained possession and beneficial use of the Property. Accordingly, Bruce's Fifth Amendment Takings Clause claim against the City is dismissed with prejudice. *See Peynado v. Ellis*, No. 1:11-CV-1103, 2011 WL 5920767, at *2 (M.D. Pa. Nov. 28, 2011) ("We will not grant leave to file an amended complaint on the constitutional claims because such amendment would be futile.").

### D. WHETHER BRUCE'S FIFTH AMENDMENT DUE PROCESS CLAUSE CLAIM FAILS.

Count II of the complaint asserts a claim against the City for the alleged violation of Bruce's procedural due process rights under the Fifth Amendment Due Process Clause arising out of the demolition of the Building. (Doc. 1, ¶¶ 24-30). Bruce alleges that the City violated his procedural due process rights by failing to give him "proper notice regarding any maintenance issues or other possible basis for the demolition of the Building, and/or proper notice of the issuance of fines or orders in connection with the same." (Doc. 1, ¶ 10; Doc.

31, ¶¶ 4, 6, 17-18). Bruce also alleges that his procedural due process rights were violated when the City did not provide any notice in advance of the demolition of the Building on the Property and, thus, he could not contest the same. (Doc. 1, ¶ 12; Doc. 31, ¶ 13). Moving for dismissal, the City argues that Bruce's Fifth Amendment Due Process Clause claim fails as a matter of law because the complaint does not complain of any federal government action. (Doc. 17, at 22-24).

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The provisions of the Fifth Amendment only concern, however, federal action, not state or private action. *See, e.g., Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (stating that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law' "); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) (stating that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action and not the actions of private entities") (citing *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461 (1952)); *Nemeth v. Off. of Clerk of Superior Ct. of New Jersey*, 837 F. App'x 924, 929 n.5 (3d Cir. 2020) (unpublished) (noting that the district court had properly concluded that, because all of the named defendants were state and private officials and entities, the plaintiff could not pursue a Fifth Amendment claim against any of them because the Fifth Amendment's due process clause only "protects against federal governmental actions, not state actions").

 **\*10**  Here, it is undisputed that the sole Defendant in this action, the City, is not a federal agency or actor. (Doc. 1). Rather, the City is a local subdivision of the Commonwealth of Pennsylvania. *See* 42 Pa. C.S.A. § 8501. Therefore, Bruce's Fifth Amendment Due Process Clause claim against the City fails as a matter of law. *See Walker v. Brittain*, No. 1:22-CV-00965, 2022 WL 4454525, at \*4 (M.D. Pa. Sept. 23, 2022) (dismissing Fifth Amendment procedural due process claim against employees of the Pennsylvania Department of Corrections).

Accordingly, Bruce's Fifth Amendment Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at \*2.

E. UNDERLINE WHETHER BRUCE'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM FAILS.

Count II of the complaint asserts a claim against the City for the alleged violation of Bruce's procedural due process rights under the Fourteenth Amendment arising out of the demolition of the Building. (Doc. 1, ¶¶ 24-30). Bruce alleges that the City violated his procedural due process rights because he "never received any notice in advance of the demotion of the building on the Property and he therefore did not have the ability to contest the same." (Doc. 1, ¶¶ 10-12; Doc. 31, ¶¶ 4, 6). Moving for dismissal, the City argues that Bruce's Fourteenth Amendment Procedural Due Process Clause claim fails as a matter of law because "contrary to his representations to the Court, [Bruce] received, by way of certified mail and personal service through the El Paso County Sheriff's Office, notice that if he did not demolish the Building within thirty (30) days the City would do so." (Doc. 17, at 25; Doc. 11-2, at 2-9). Further, the City asserts that Bruce was also notified that if he wanted to challenge the enforcement action, he had twenty (20) days to appeal to the City's Property Maintenance Code Appeals Board. (Doc. 17, at 25; Doc. 11-2, at 4).

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). In order to successfully establish a *prima facie* case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See Studli v. Children & Youth Families Central Reg'l Office*, 346 F. App'x 804, 813 (3d Cir. 2009); *Mulholland v. Gov't of Cty. of Berks*, No. 10-CV-5616, 2012 WL 1057446, at \*8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013). Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See Leonard v. Owen J. Roberts Sch. Dist.*, No. 08-CV-2016, 2009 WL 603160, at \*4 (E.D. Pa. Mar. 5, 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 341 (1986) (Stevens, J., concurring)). In other words, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *K.S.S. v. Montgomery Cty. Bd. of Comm'rs.*, 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012). "The

process that is 'due' in a given situation necessarily differs based on the particular circumstances." *Maple Props., Inc. v. Twp. of Upper Providence,* 151 F. App'x 174, 177 (3d Cir. 2005) (citations omitted).

**\*11** The Eastern District recently explained:

In the context of property deprivations, the United States Supreme Court "has never employed an actual notice standard in its jurisprudence. Rather, its focus has always been on the procedures in place to effect notice." *United States v. One Toshiba Color Television,* 213 F.3d 147, 155 (3d Cir. 2000). Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers,* 547 U.S. 220, 226 (2006). It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also Flowers,* 547 U.S. at 220 (holding that notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent."). The Supreme Court has explained that if, for example, notice sent by certified mail is returned unclaimed, the municipality must "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Flowers,* 547 U.S. at 225. The Court recognized that such steps could include resending the notice by regular mail, addressing otherwise undeliverable mail to occupant, or posting notice on the front door. *Flowers,* 547 U.S. at 236-37.

*Madar,* 2021 WL 2156362, at \*8.

Due process requires: (1) the government provide notice to the property owner reasonably calculated to apprise interested parties of the pendency of the action; and (2) afford them an opportunity to present their objections. *Gordon v. City of Phila.,* No. 07-5039, 2009 WL 2710247, at \*3 (E.D. Pa. 2009) (citing *Flowers,* 547 U.S. at 220). "A plaintiff cannot prevail on a Fourteenth Amendment procedural due process claim if the state has an adequate post-deprivation procedure or remedy available." *Olarte v. Cywinski,* No. 3:12-CV-632, 2012 WL 3757649, at \*5 (M.D. Pa. Aug. 28, 2012) (citing *Revell v. Port. Auth. Of N.Y. & N.J.,* 598 F.3d 128, 139 (3d Cir. 2010)). An adequate procedural due process remedy is when a state provides "reasonable remedies to rectify a legal error by a local administrative body." *Olarte,* 2012 WL 3757649,

at \*5 (quoting *Perano v. Twp. of Tilden,* 423 F. App'x. 234, 237 (3d Cir.2011)).

Here, Bruce complains that he did not receive proper notice from the City regarding "any maintenance issues or other possible basis for demolition" or "the issuance of fines or orders," in advance of the demolition of the Building, depriving him of the process "due." (Doc. 1, ¶¶ 10, 12). However, as noted above, Bruce accepted certified mail on May 13, 2019, and was personally served by the El Paso County Sheriff's Office on May 23, 2019, with the City's May 13, 2019, enforcement notice issued by Mr. Smith directing Bruce to demolish the Building within thirty (30) days and notifying Bruce that if he failed to comply, the City would demolish the Building pursuant to § 110.3 of the Property Maintenance Code. (Doc. 11-2, at 8-9). The May 8, 2019, enforcement notice also notified Bruce that he had twenty (20) days to challenge the enforcement notice by filing an appeal with the City's Property Maintenance Code Appeals Board, as set forth in § 111.1 [6] of the Property Maintenance Code. (Doc. 11-2, at 4). Specifically, the May 8, 2019, enforcement notice that Bruce received informed him, in pertinent part, as follows:

**\*12** Appeals of this enforcement action under the property maintenance code may be filed within twenty (20) days by filing an application with the City of Pittston Property Maintenance Code Appeals Board, as set forth in Section 111 of the property maintenance code. Please contact the city's administrative offices for the required forms and fee schedule to file this type of appeal.

(Doc. 11-2, at 4).

Further, to the extent that Bruce argues his procedural due process rights were violated because the Building was demolished without a judicial hearing, the Court notes that where the government destroys a property in the interest of public safety, a pre-demolition hearing is not required. *Munoz,* 481 F. App'x at 758.

The Court finds that Bruce was afforded actual notice of the City's intent to demolish the Building and was afforded an opportunity to challenge the enforcement notice. There is no mention in the complaint of any actions taken by Bruce to contest the enforcement notice or impending demolition by filing an appeal with the City's Property Maintenance Code Appeals Board or attempting to make the necessary repairs. Furthermore, to the extent that Count II of the complaint sets forth a post-deprivation procedural due process claim,

the Court similarly finds that such claim fails because Bruce has not availed himself of the remedy available for inverse condemnation provided through the Pennsylvania Eminent Domain Code, 26 Pa. C.S.A. §§ 101 *et seq.* [7] *See Florimonte v. Borough of Dalton*, No. 3:CV-14-0341, 2014 WL 3114071, at *14 (M.D. Pa. July 7, 2014), *aff'd*, 603 F. App'x 67 (3d Cir. 2015) (dismissing Fourteenth Amendment procedural due process claim where plaintiff failed to avail herself of adequate state law post-deprivation remedies available); *see also Perano*, 423 F. App'x at 237-38 (dismissing procedural due process claim for failure to take advantage of a reasonable state remedy under the Eminent Domain Code). Bruce clearly had adequate state law remedies available to him in the City of Pittston. Bruce may not use the federal courts as a means to circumvent the procedural process made available to him. *See 3909 Realty LLC v. City of Philadelphia*, No. CV 21-0030, 2021 WL 2342929, at *6 (E.D. Pa. June 8, 2021) (dismissing plaintiffs' procedural due process claim finding that plaintiffs did not avail themselves of procedural protections afforded by City of Philadelphia because no actions were taken to contest impending demolition). Bruce has not stated a claim for a procedural due process where he received actual notice of the impending demolition of the Building and failed to avail himself of the appeals process prior to and after the demolition.

**\*13**  Accordingly, Bruce's Fourteenth Amendment Procedural Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

## F. WHETHER BRUCE'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM FAILS.

Count III of the complaint asserts a claim against the City for the alleged violation of Bruce's substantive due process rights under the Fourteenth Amendment arising out of the demolition of the Building. (Doc. 1, ¶¶ 31-39). Bruce alleges that the City violated his substantive due process rights in a way that should shock the conscience of the Court because the City "has acted in an arbitrary and capricious manner with respect to [Bruce]'s rights in the Property, including by issuing excessive and unconstitutional fines or orders which [Bruce] had no ability to challenge and then demolishing the building on the Property without notice ...." (Doc. 1, ¶ 33, 37; Doc. 31, ¶¶ 3, 7, 15). Bruce asserts that the City's ordinances, in conjunction with the excessive and unconstitutional fees and fines, "do not advance a legitimate public purpose, but instead exist as a method of [the City] to enrich itself at

the expense of unsuspecting property owners." (Doc. 1, ¶ 36; Doc. 31, ¶¶ 2-3). Moving for dismissal, the City argues that Bruce's Fourteenth Amendment substantive due process claim fails as a matter of law because "the demolition of [Bruce]'s unsafe Building was rationally related to a legitimate state interest." (Doc. 17, at 31) (citing *Whittaker v. Cty. of Lawrence*, 674 F. Supp. 2d 668, 701 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2001)).

The substantive component of the Fourteenth Amendment Due Process Clause bars certain arbitrary and wrongful government actions that deprive an individual of life, liberty, or property. U.S. Const., amend. XIV § 1; *see also Tazioly v. City of Phila.*, No. 97-CV-1219, 1998 WL 633747, at *7 (E.D. Pa. Sept. 10, 1998) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The first step in assessing a substantive due process claim is to identify the constitutional interest that was allegedly aggrieved. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). In order to successfully make out a substantive due process claim in the context of local land use regulations, "a plaintiff must establish as a threshold matter that he has a property interest protected by the Fourteenth Amendment's due process clause." *Maple Props., Inc. v. Twp. of Upper Providence*, No. 00-CV-4828, 2004 WL 2579740, at *2 (E.D. Pa. Nov. 12, 2004) (citing *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179-80 (3d Cir. 1997)). Here, as Bruce owns a piece of property that was affected by the City's actions, he has established the presence of a property interest entitled to due process protection. *See Maple Props.*, 2004 WL 2579740, at *2 (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)); *see also Cherry Hill Towers, LLC v. Twp. of Cherry Hill*, 407 F. Supp. 2d 648, 654 (D.N.J. 2006) ("As owner of the Cherry Hill Towers property, Plaintiff clearly has a property interest protected by due process.").

**\*14**  The second step in the substantive due process analysis is ascertaining whether the identified property interest has, in fact, been aggrieved by the government. *Maple Props.*, 2004 WL 2579740, at *2. Government action does not violate substantive due process when merely prompted by an "improper motive." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006). Rather, the standard for determining substantive due process violations is whether government action rises to the level of "shocking the conscience." *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). While there is no "calibrated yard stick" upon which to measure such conduct, the United States Supreme Court has recognized that

"only the most egregious official conduct" qualifies. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 847 n.8 (1998)); *see also Cherry Hill Towers*, 407 F. Supp. 2d at 655.

Here, Bruce fails to identify evidence of conscience-shocking behavior in the City's demolition of the Building without giving him actual notice. The Supreme Court has observed that "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (quotation omitted). "[T]he public interest demands that all dangerous conditions be prevented or abated," and, thus, inspections of private property designed at ensuring compliance with certain safety standards are not unconstitutional. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 537 (1967); *see Win & Son*, 162 F.Supp.3d at 459. Evidence in the record reveals that the Building had been condemned since September 18, 2014, and was demolished in accordance with the procedures of the City's Property Maintenance Code. (Doc. 11-25, at 2). On November 26, 2018, the City's Code Enforcement Officer, Mr. Smith, notified Bruce that the Building "continues to pose a risk to emergency personnel and nearby residents," and that there were "ongoing complaints from adjacent properties of rats and mice coming from the [Building]." (Doc. 11-25, at 3). On May 8, 2019, Mr. Smith notified Bruce that, after consultation with an engineer, the Building "is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy," that it "continues to pose a risk to emergency personnel and nearby residents," and that there is an "infestation with rodents and insects." (Doc. 11-2, at 2-4). "Given the unsafe structure and that the property was unfit for human occupancy, no reasonable jury could find that the demolition in accordance with [Property Maintenance] Code rules and procedures shocks the conscience." *Harmon v. Sussex Cty.*, No. CV 17-1817-RGA, 2019 WL 4344635, at *7 (D. Del. Sept. 12, 2019), *aff'd*, 810 F. App'x 139 (3d Cir. 2020) (citing *Davet v. City Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (affirming district court's holding that plaintiff's substantive due process claim failed because he could not establish that municipal actions taken pursuant to a valid condemnation order and in accordance with the procedures mandated by city and state law shocked the conscience or were arbitrary and capricious)).

Accordingly, Bruce's Fourteenth Amendment Substantive Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

## G. WHETHER BRUCE'S EIGHTH AMENDMENT CLAIM FAILS.

Count IV of the complaint asserts a claim against the City for the alleged violation of the Excessive Fines Clause of the Eighth Amendment arising out of the demolition of the Building and the issuance of five (5) fines by Magisterial District Judge Kravitz. (Doc. 1, ¶¶ 40-50). Bruce alleges that the City "issued excessive and unconstitutional fines against the Property related to the maintenance of the building on the Property," and that the fine "cannot be viewed to be remedial in nature," as they were imposed without proper notice and "before any appearance, judicial hearing, or Due Process of law." (Doc. 1, ¶¶ 41-44; Doc. 31, ¶ 3). In addition, Bruce complains that the City issued arrest warrants against Bruce for failure to pay the fines, which are damaging to the reputation and credit of Bruce. (Doc. 1, ¶¶ 45-46; Doc. 31, ¶¶ 7-8, 26).

**\*15** The Eighth Amendment provides: "Excessive bail shall \*896 not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing excessive fines as punishment. To determine if an excessive fine exists in violation of the Eighth Amendment, the court must first determine whether a fine exists which is punitive in nature, and if so, must address whether the fine was grossly disproportional to the offense. *United States v. Bajakajian*, 524 U.S. 321, 328, 336-37 (1998).

"By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.' " *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000). "The term 'fine' refers to punishment for a criminal offense." *Tillman*, 221 F.3d at 420 (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). To be considered a fine under the Eighth Amendment, a monetary charge must be punitive in character. *Tillman*, 221 F.3d at 420 (noting that district court wrestled with factual question of whether prison program which imposed fees had rehabilitative or punitive purpose); *see also Austin v. United States*, 509 U.S. 602, 607-11 (1993) (extending the Excessive Fines Clause

to *in rem* civil forfeiture, where the forfeiture acts as a punishment).

Moving for dismissal, the City first argues that Bruce's Eighth Amendment claims based on the five (5) fines imposed by the Magisterial District Court are barred by the *Rooker-Feldman* Doctrine. (Doc. 17, at 34). In opposition, Bruce argues that the *Rooker-Feldman* doctrine does not prevent his claims because "[h]as no fair opportunity to make his due process case before demolition; he never appeared in state court (tried *in absentia*); he was threatened with virtually unlimited jailing for no listed acts; etc." (Doc. 31, ¶ 23).

The *Rooker-Feldman* doctrine "is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions." *Goodson v. Maggi*, 797 F. Supp. 2d 587, 597 (W.D. Pa. 2011). The doctrine arose in the wake of two Supreme Court Cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and stands for the proposition that:

> ... a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Goodson*, 797 F.Supp.2d at 597 (citing *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303).... "This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights." *Goodson*, 797 F.Supp.2d at 597 (citing *Feldman*, 460 U.S. at 485-86, 103 S.Ct. 1303 (citation omitted)).

*Conklin v. Anthou*, No. 1:10-CV-2501, 2012 WL 124989, at *2 (M.D. Pa. Jan. 17, 2012), *aff'd*, 495 F. App'x. 257 (3d Cir. 2012).

Claims by "state-court losers complaining of injuries caused by state-court judgments" are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies where (i) the federal plaintiff lost in state court; (ii) the plaintiff claims the judgment(s) of the state court caused his injuries; (iii) the state court rendered its judgment(s) before plaintiff filed his federal suit; and (iv) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). In this case, all four criteria are met. Therefore, the Court lacks jurisdiction over Bruce's claims.

**\*16** Bruce alleges that the fines Magisterial District Judge Kravitz imposed in magisterial court docket Nos. MJ-11104-NT-0000015-2019, MJ-11104-NT-0000023-2019, MJ-11104-NT-0000113-2019, MJ-11104-NT-0000134-2019, and MJ-11104-NT-0000270-2019 (collectively, the "Imposed Fines") were "excessive and constitutional fines," and a "punishment as that term is understood in the context of the Eighth Amendment." (Doc. 1, ¶¶ 41-42). Thus, Bruce is claiming that the judgment of the state court caused injury to him, fulfilling the second criterion of the *Rooker-Feldman* doctrine.

Magisterial District Judge Kravitz issued the Imposed Fines on May 23, 2019. (Doc. 11-13, at 3; Doc. 11-14, at 3; Doc. 11-15, at 3; Doc. 11-16, at 3; Doc. 11-17, at 3). Bruce filed his complaint in the United States District Court for the Middle District of Pennsylvania on May 1, 2023. (Doc. 1). Thus, the state court's Imposed Fines were rendered prior to Bruce filing federal suit, satisfying the third criterion. In the complaint, Bruce requests "immediate cancelation of all warrants for arrests and fines." (Doc. 1, at 11). Such request is an invitation to the Court to review and reject judgments made by the state court, satisfying the fourth criterion.

Because Bruce satisfies all four criteria, the *Rooker-Feldman* doctrine bars Bruce's Eighth Amendment claims based on the Imposed Fines. Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claims against the City based on the Imposed Fines are dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

Next, the City argues that Bruce's claim related to Magisterial District Court docket No. MJ-11104-NT-0000364-2019 (the "Unimposed Fine") should be dismissed as not ripe because no fine and/or sentence has been imposed by Magisterial District Judge Kravitz. (Doc. 17, at 37-38; Doc. 11-26, at 2-3). A district court only has subject matter jurisdiction over a claim if the claim is ripe for resolution. *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely." *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 (3d Cir. 2019). When considering whether a claim is ripe, "a court must consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties from withholding judicial consideration." *Comite' de Apoyo a los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 183 (3d Cir. 2014) (citing

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Sherwin-Williams Co. v. Cty. of Del., Pa.*, 968 F.3d 264, 272 (3d Cir. 2019) (quoting *Wyatt v. Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004)).

As the City explains, Section 370-2(D) [8] of the Property Management Code controls the imposition of a fine under the Property Maintenance Code and provides that only "[u]pon conviction before the Magisterial District Judge," may a fine be imposed. (Doc. 11-21, at 5). There has been no fine or sentence imposed by Magisterial District Judge Kravitz in docket No. MJ-11104-NT-0000364-2019, which the City submits is caused by "[Bruce]'s failure to enter a plea." (Doc. 17, at 37; Doc. 11-26, at 2-3). Therefore, Bruce's excessive fines claim based on the Unimposed Fine is not ripe because the magisterial court has not assessed a fine. (Doc. 11-26, at 2-3); *see City of Chicago v. Equte LLC*, No. 21-CV-518, 2022 WL 2132630, at *3 (N.D. Ill. June 14, 2022) ("Because the Court has not yet assessed a fine, Defendants' excessive fines claim is not ripe."). Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claim against the City based on the Unimposed Fine is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

**\*17** Lastly, the City argues that Bruce's Eighth Amendment Excessive Fines claim arising out of the demolition of the Building fails as a matter of law because the demolition of a derelict building in accordance with the Property Maintenance Code does not constitute punishment for a criminal offense. (Doc. 17, at 39). Bruce does not provide any support for his claim.

The Supreme Court has interpreted the Excessive Fines Clause to apply to civil fines. *Austin*, 509 U.S. at 610 ("The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.") (quoting *United States v. Halper*, 490 U.S. 435, 447-48 (1989)). The Supreme Court explained that the question is not whether the fine is civil or criminal, but whether it is punishment. *Austin*, 509 U.S. at 610. With regards to making this determination, the Supreme Court has explained that " ' a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Austin*, 509 U.S. at 610 (quoting *Halper*, 490 U.S. at 448).

If a civil sanction is punitive, it will be found to be excessive under the Eighth Amendment only if it is "grossly disproportional to the gravity of [the] offense." *Bajakajian*, 524 U.S. at 334. The Supreme Court has explained that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334.

Here, Bruce has not introduced any evidence to suggest that demolition of the condemned Building operated as "publishment for a criminal offense," for purposes of the Eighth Amendment. *See Tillman*, 221 F.3d at 420 ("The term 'fine' refers to punishment for a criminal offense."). After Bruce failed to comply with the May 8, 2019, enforcement notice, the City passed Resolution Number 12275, which legislatively authorized the demolition of the Building through its inherent police power. (Doc. 11-19, at 2-4); *see In re 106 N. Walnut, LLC*, 447 F. App'x at 309 ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare ...."). Further, as noted above, the City issued multiple non-traffic citations and enforcement notices to Bruce for the Building. (Doc. 11-2; Doc. 11-3; Doc. 11-4; Doc. 11-5; Doc. 11-6; Doc. 11-7; Doc. 11-8; Doc. 11-25); *see MacLean v. State Bd. of Ret.*, 432 Mass. 339, 733 N.E.2d 1053, 1062 (Mass.2000) (concluding that forfeiture was not excessive where forfeiture was the result of "multiple illegal activities triggering the forfeiture, not a single minor violation, and the offenses occurred over a period of time."); *see also United States v. Emerson*, 107 F.3d 77, 80 (1st Cir.1997) (concluding that fine was not excessive in part because of the defendant's "pattern of persistent disregard of government regulation"). There is no dispute that the purpose of the Property Maintenance Code is to protect the public from harm caused by building that are dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy. Therefore, the Court finds that the demolition of the Building does not constitute a punishment for purposes of the Eighth Amendment.

**\*18** Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claim against the City based on the demolition of the Building is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

## H. WHETHER BRUCE IS ENTITLED
## TO PUNITIVE DAMAGES.

In the complaint, Bruce makes a demand for punitive damages against the City. (Doc. 1, at 10). The City moves to strike Brue's request arguing that punitive damages are not recoverable as a matter of law. (Doc. 17, at 42). The Supreme Court has determined that, absent a statute to the contrary, punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Accordingly, Bruce's demand for punitive damages against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

## I. WHETHER SANCTIONS ARE WARRANTED.

The City moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. 25; Doc. 30). The City asserts that because Bruce's claims are objectively meritless, groundless, and frivolous, dismissal of the complaint with prejudice and an award of attorney's fees paid by Bruce to the City is an appropriate sanction. (Doc. 30, at 37). Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Federal Rule of Civil Procedure 11 authorizes courts to sanction—

> the signatory to any pleading, motion or other paper which is not well grounded in fact nor warranted by existing caselaw or a good faith argument for the extension, modification, or reversal of existing law, or which is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> *Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991).

"The standard for testing conduct under Rule 11 is reasonableness under the circumstances. The rule imposes on counsel a duty to look before leaping[.]" *Keister v. PPL Corp.*, 318 F.R.D. 247, 255 (M.D. Pa. 2015) (citations omitted). Sanctions under the Rule are particularly appropriate when the offending party demonstrates "a deliberate indifference to obvious facts." *Keister*, 318 F.R.D. at 256 (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

Courts must tailor Rule 11 sanctions to the particular circumstances of the case, keeping in mind that the Rule's purposes are lawyer accountability and the deterrence of frivolous lawsuits and filings. *See Keister*, 318 F.R.D. at 256-57. "The basic principle governing the choice of sanctions is that the *least severe* sanctions *adequate* to serve the purpose should be imposed." *Keister*, 318 F.R.D. at 256-57 (emphasis in original) (quoting *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). Courts may consider a number of factors in determining what the appropriate sanction,[9] but the ultimate decision remains in the sound discretion of the district court. *See Keister*, 318 F.R.D. at 256; *see also DiPaolo v. Moran*, 407 F.3d 140, 144 (3d Cir. 2005) (citing *Garr v. U.S. Healthcare*, 22 F.3d 1274, 1279 (3d Cir. 1994)).

**\*19** The City's motion for sanctions urges the Court to impose sanctions against Bruce in the form of attorney's fees and dismissal of the complaint for filing a complaint that is a "misuse of the [District] court's processes" and constitutes "abusive litigation," and where Bruce's prior counsel sought to withdraw from further representing Bruce after he refused to withdraw the complaint. (Doc. 30, at 37). The City submits that Bruce omitted and misrepresented information, such that the complaint "constitute[s] deliberate indifference to obvious facts in the pursuit of a monetary award and warrants a sanction designed to place the City legally and financially in the same position it would have occupied but for the improper filing of [Bruce]'s complaint." (Doc. 30, at 37). The City argues that sanctions are warranted because Bruce violated his duty to allege only colorable claims when he refused to voluntarily withdraw this lawsuit. (Doc. 30, at 36-38).

In opposition, Bruce argues that the City's motion was "filed with unclean hands," and that the City misused Rule 11 to intimidate his prior counsel into withdrawing from representing Bruce. (Doc. 31, ¶¶ 1, 28). Bruce avers:

> The complaint is justified by facts in this Answer, so [the City]'s motion fails. Claiming a building may someday be demolished for undefined reasons is no notice at all.... The City's position its "police power" overrides the Fourteenth Amendment is insane and unAmerican. THAT view is what is "frivolous."
>
> (Doc. 31, ¶ 24).

This Court generally endorses the principle that the appropriate sanction for weak claims will not always arrive via Rule 11, "but will sometimes assume the more pedestrian

form of dismissal or summary judgment." *Emerick v. Norfolk S. Ry. Co.*, No. CIV.A. 03-266J, 2006 WL 2792217, at *3 (W.D. Pa. Sept. 26, 2006). "However, the integrity of the adjudicatory process depends in part on the ability to sanction what can be considered nothing but frivolous and unreasonable litigation." *Reynolds v. Metro. Life Ins. Co.*, No. CIV.A. 3:04-232, 2007 WL 603012, at *10 (W.D. Pa. Feb. 22, 2007) (citing *Robert S. v. City of Philadelphia*, No. 97-6710, 2001 WL 1021190, at *3 (E.D. Pa. Sept. 4, 2001) (finding that plaintiff's claims, even if legally unsupportable, could not be called frivolous or unreasonable where there was some supporting evidence)).

The Court, in large part, agrees with the City. It is apparent to the Court that Bruce, a former Deputy District Attorney, who is in a unique position of representing himself, plainly failed to engage in appropriate behavior, failed to produce evidentiary support for his case, and failed to conduct a reasonable inquiry into the facts and law governing the causes of action advanced in the complaint prior to initiating this action. Indeed, the City provides evidence to suggest that Bruce's intent to sue the City of Pittston was born more from emotion and a thirst for retaliation than from a sense that his constitutional rights had been infringed. Thus, the Court finds that this action is more the fulfillment of a threat of litigation than the product of any reasonable assessment of relevant facts and law.

The City's motion for sanctions provided Bruce the notice that due process requires for Rule 11 purposes. (Doc. 25); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). Bruce had notice that the City had moved for Rule 11 sanctions,

the grounds for that motion, and the form of sanctions being sought. Bruce's opposition brief merely claimed that sanctions were unwarranted because "[t]he complaint is justified by facts in this Answer." (Doc. 31, ¶ 24). The argument against sanctions is thus a close cousin of the argument against judgment on the pleadings, bred on little more than conclusory assertions and deprived of any real sustenance. Therefore, the Court finds that the payment of the City's attorney's fees is an adequate sanction for the conduct at issue.

Accordingly, the Court will grant the motion for sanctions and award the City the attorney's fees associated with defending this action and filing the motion for judgment on the pleadings. *See Keister*, 318 F.R.D. at 272 (awarding defendants reasonable attorney's fees where plaintiff brought a frivolous employment discrimination lawsuit); *Reynolds, 2007 WL 603012, at *11* (awarding defendant costs associated with motion for summary judgment where plaintiff produced "remarkably little evidentiary support for his case").

### IV. <u>CONCLUSION</u>

**\*20** For the foregoing reasons, the City's motion for judgment on the pleadings and motion for sanctions are **GRANTED**. (Doc. 14; Doc. 25).

An appropriate Order follows.

**All Citations**

Slip Copy, 2023 WL 6609023

---

### Footnotes

1    Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may also consider documents whose contents are alleged in the complaint, even if not attached, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the

complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); *see, e.g.*, *In re Trichilo*, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of an underlying case's docket); *Mollett v. Leith*, No. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) ("A court may also take judicial notice of the docket in Plaintiffs' underlying criminal trial."), *aff'd sub nom. Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013); *Carroll v. Prothonotary*, No. 08-1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec. 31, 2008) (taking judicial notice of court records and dockets of federal district courts).

The Court takes judicial notice of the state court dockets, non-traffic citations, enforcement notices, and City of Pittston Property Maintenance Code, which are attached to the City's amended answer. (Doc. 11). However, the Court declines to take judicial notice of any facts contained therein which are subject to dispute and instead relies on Bruce's allegations in analyzing the merits of the motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court may take judicial notice of matters of public record [on a motion to dismiss].... But a court cannot take judicial notice of disputed facts contained in such public records.") (quotations and citations omitted).

2  The Court will take judicial notice of the *Fox 56* and *The Gazette* articles to the extent that they demonstrate the occurrence of the demolition of the Building. *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. CIV. NO. 00-4285(GEB, 2002 WL 33934282, at *12) (D.N.J. June 26, 2002) (court took judicial notice of Wall Street Journal Article to the extent that it demonstrates the occurrence of Hurricane Floyd). Bruce does not dispute that the demolition took place on June 26, 2019, and as stated, the Court may consider on a motion to dismiss facts of which it may take judicial notice. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (the Court may take judicial notice of these documents "not to prove the truth of their contents but only to determine what the documents stated.") (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

3  *See* Fed. R. Civ. P. 6(a)(1)(c) ("[I]n computing any time period specified in these rules ... or in any statute that does not specify a method of computing time ... include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

4  Section 110.1 of the Property Maintenance Code states, in pertinent part, as follows:

The code official shall order the order of any premises upon which is located any structure, which in the code official's judgment after review is so deteriorated or dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure ....

(Doc. 11-20, at 9-10).

5  Section 110.3 of the Property Maintenance Code states, in pertinent part, as follows:

If the owner of a premises fails to comply with a demolition order within the time prescribed, the code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

(Doc. 11-20, at 10).

6    Section 111.1 of the Property Maintenance Code provides, in pertinent part:

Any person directly affected by a decision of the code official or a notice of order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

(Doc. 11-20, at 10).

7    The Pennsylvania Eminent Domain Code provides "a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa. C.S.A. § 102(a). The provisions of Pennsylvania's Eminent Domain Code provide that a condemnee is entitled to just compensation when his property has been taken, injured, or destroyed. *See* 26 Pa. C.S.A. § 701. The Code also provides a procedure by which a property owner may pursue relief for the taking of his property. *See* 26 Pa. C.S.A. § 502. Through this procedure, a landowner may request the appointment of viewers to declare that a taking has occurred and to ascertain just compensation. See 26 Pa. C.S.A. § 502(c).

8    Section 370.2(D) of the Property Maintenance Code states, in pertinent part, as follows:

The City Property Maintenance Code Enforcement Officer shall issue a nontraffic citation for each violation of this code. Upon conviction before the District Magisterial Judge, a fine of not less than $500 for a first offense and not more than $1,000 for each subsequent offense, plus all City-incurred court costs and legal fees, shall be imposed, and upon default of payment of fines and/or costs, a sentence of not more than 30 days in the county jail shall be imposed. Each day of violation shall be deemed a separate offense. Both the property owner and the violator shall be cited for such offense.

(Doc. 11-21, at 5).

9    The Advisory Committee on Rules has identified a number of such factors:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see Lal v. Borough of Kennett Square, 935 F. Supp. 570, 577 (E.D. Pa. 1996)*.

---

        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   17

2012 WL 260038
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

Anthony Angelo DEGENES, Plaintiff,

v.

Robert MUELLER Director of the Federal Bureau of
Investigation (FBI), Michael Rodriguez FBI Agent
in charge of the FBI Pittsburgh Office, Brentwood
Police Department, Brentwood Borough, Defendant.

Civil Action No. 11–916.
|
Jan. 27, 2012.

**Attorneys and Law Firms**

Anthony Angelo Degenes, Brentwood, PA, pro se.

Megan E. Farrell, United States Attorney's Office, Edmond R.
Joyal, Jr., Law Office Of Joseph S. Weimer, Pittsburgh, PA,
for Defendant.

*MEMORANDUM OPINION AND ORDER*

CONTI, District Judge.

**I.** *Introduction*

**\*1** Pending before the court is a motion to dismiss for lack
of jurisdiction (ECF No. 10) [1] and a motion for judgment
on the pleadings (ECF No. 28) filed by the Brentwood
Police Department and Brentwood Borough (collectively, the
"Brentwood Defendants") and a "motion to dismiss or, in
the alternative, motion for summary judgment" (ECF No.
31) filed by Robert S. Mueller ("Muller"), Director of the
Federal Bureau of Investigation ("FBI"), Michael Rodriguez,
FBI agent in charge of the FBI Pittsburgh Office ("Rodriguez"
and together with Mueller, the "Federal Defendants"). For the
reasons set forth below, the court will grant the Brentwood
Defendants' motion and grant Federal Defendants' motion
to dismiss all claims against individual defendants Mueller
and Rodriguez. Additionally, the court will grant plaintiff
Anthony Angelo DeGegenes ("plaintiff") leave of court to
amend the amended complaint.

**II.** *Factual and procedural background*

On May 19, 2011, plaintiff sent a letter to Mr. Rodriguez
"requesting to know whether [he] was ever [been]
investigated, monitored or was under surveillance at any time.
[Plaintiff] also want[ed] to know whether [he][was] still under
investigation." ECF No. 1 at 2. Rodriguez did not respond
to plaintiff's request. On June 6, 2011, "[plaintiff] requested
from Robert Butelli, Chief of Police for Brentwood police
Department, a background check be done on [himself]." *Id.*
Plaintiff "was told by Chief Robert Butelli that the police only
investigate those who have applied to be police officers." *Id.*

On July 13, 2011, plaintiff filed a complaint in this
court against the Federal Defendants and the Brentwood
Defendants. The complaint alleges that the defendants
violated the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552, and the Pennsylvania Right–to–Know Law, 65 Pa.
PA. CONS.STAT. §§ 67.101 *et seq.* As relief, plaintiff asked
the court to "grant [him] the right to know whether the FBI
or the Brentwood Police had ever conducted any type of
surveillance and/or investigation of [him]. An[d] if such a
surveillance is still going on." ECF No. 1 at 2.

On August 4, 2011, the Brentwood Defendants filed a motion
to dismiss for lack of subject-matter jurisdiction. ECF No. 10.
In their motion, the Brentwood Defendants alleged the court
does not have jurisdiction over this case because plaintiff
failed to allege that there is diversity of citizenship and
because it does not involve a federal question. In addition,
the Brentwood Defendants brought a motion to dismiss for
failure to state a claim upon which relief can be granted.
*Id.* Specifically, they argued that the FOIA does not apply
to records held by state or local government agencies. With
respect to the claim of a violation under the Pennsylvania
Right–to–Know Law, the Brentwood Defendants argued that
this court lacks jurisdiction over that kind of claim because a
challenge to the denial by a state or local agency of a request
to produce records must be brought before a state court, not
a federal court.

**\*2** On August 9, 2011, plaintiff filed an "amended
complaint" wherein he purported to "amend his Complaint to
include a charge of civil rights discrimination." ECF No. 13 at
1. In particular, plaintiff alleged that "[t]he Brentwood Police
and Brentwood Borough ... denied plaintiff his civil rights
under the 14th, 15th and all other Amendments which are
stated in the Bill Of Rights ." ECF No. 13 at 1. The following
day, August 10, 2011, plaintiff filed a motion seeking leave
to amend his complaint. ECF No. 14. The court granted that
motion on September 19, 2011.

On September 23, 2011, Brentwood Defendants filed an answer denying any and all allegations contained in the amended complaint and raising several affirmative defenses. ECF No. 24. On October 25, 2011, Brentwood Defendants filed a motion for judgment on the pleadings. ECF No. 28. After obtaining two extensions, the Federal Defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim or, in the alternative, a motion for summary judgment. ECF No. 31.

On December 7, 2011, plaintiff filed a "motion to the court not to dismiss plaintiff's case." ECF No. 35. In his motion, plaintiff argued the amended complaint should not be dismissed because he was never told by the FBI whether there were records about him and that dismissal would amount to a denial of "justice because he did not receive from the FBI the record he was entitled to have." *Id.* at 1. Plaintiff acknowledged he was not aware that Rightto–Know claims under Pennsylvania law must be pursued in Pennsylvania state courts. *Id.*

### III. *Pro se plaintiffs*

Before addressing the applicable standards, this court must be mindful of plaintiff's *pro se* status. *Pro se* plaintiffs are held to a less stringent standard than individuals represented by counsel. *Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ( *"pro se* litigants are held to a lesser pleading standard than other parties"). A *pro se* plaintiff, however, is still required to adhere to standard rules of civil procedure. *See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). While the court must accept as true all factual allegations in a complaint, it "need not credit a complaint's ... legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir.1997)). Even though a plaintiff is *pro se,* she must "set forth sufficient information to outline the elements of his claim." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 340 (2d ed.1990)). Thus, plaintiff is required to present enough factual allegations for the court, accepting those allegations as true, to determine whether there is a plausible claim that defendants violated plaintiff's federal rights. *Id.*

### IV. *Brentwood Defendants' Motion to Dismiss under Rule 12(b)(1)*

#### a. Standard of Review

**\*3** In addressing the motion to dismiss under Rule 12(b)(1), the court will apply the following standard:

> Federal Rule of Civil Procedure 12(b) (1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1).... Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.

*Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir.2007).

#### b. Discussion

#### 1) Pennsylvania Right–to–Know Claims

It appears plaintiff asserts claims under the Pennsylvania Right–to–Know Law, 65 PA. CONS.STAT. §§ 67.101, *et seq.* These claims must be dismissed because "state courts provide the exclusive forum for litigating claims under that statute." *Hill v. Supervisor,* No. 97–cv–4996, 1998 WL 175879, at *2 (E.D.Pa. Apr.8, 1998) (citing *Martison v. Violent Drug Traffickers Project,* No. 95–cv–2161, 1996 WL 411590 (D.D.C. July 11, 1996), and *Proffitt v. Davis,* 707 F.Supp. 182 (E.D.Pa.1989)); 65 PA. CONS.STAT. § 67.1302(a) (an appeal from a decision of an "agency," as defined under the Right-toKnow Law, must be brought before the "court of common pleas for the county where the local agency is located"); *Pa. State Educ. Ass'n v. Commonwealth,* 4 A .3d 1156, 1163 (Pa.Commw.Ct.2010) (same). Thus, Brentwood Defendants' motion to dismiss the Pennsylvania Right–to–Know claims against them must be granted for lack of subject-matter jurisdiction .[2] The dismissal is without prejudice to plaintiff's filing the claims in the appropriate forum.

#### 2) FOIA Claims

A FOIA claim cannot be asserted against state entities. FOIA, in fact, applies only to federal agencies not to state entities. *Donnelly v. O'Malley & Langan, PC,* 370 F. App'x 347,

348 n. 2 (3d Cir.2010) (FOIA applies only to the release of government records by the federal government); *Dunleavy v. New Jersey,* 251 F. App'x 80, 83 (3d Cir.2007) ("FOIA obligated *federal agencies* to make their documents, records, and publications available to the public." (emphasis added)); *McDonnell v. United States,* 4 F.3d 1227, 1249 (3d Cir.1993) ("FOIA has no application to state governments."); 5 U.S.C. § 551(1) (" 'agency' means each authority of the *Government of the United States,* whether or not it is within or subject to review by another agency") (emphasis added). Accordingly, Brentwood Defendants' motion to dismiss the FOIA claims against them must be granted with prejudice.

### V. *Brentwood Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12(c).* [3]

#### a. Standard of Review

In addressing the motion for judgment on the pleadings, the court will apply the following standard:

> Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party

**\*4** *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir.2008).

In determining whether a motion for judgment on the pleadings should be granted, the court must first inquire whether there are any issues of material fact and then whether the judgment should be entered as a matter of law. *See Domino's Pizza LLC v. Deak,* 383 F. App'x 155, 158 (3d Cir.2010); *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir.2005); *Inst. for Scientific Info ., Inc. v. Gordon and Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1005 (3d Cir.1991).

If a complaint does not comply with the rules of civil procedure, courts are to notify plaintiffs that they have leave to amend their complaints unless the amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002) (reversing the district court for failing to grant the plaintiff the right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile). Allowing for amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires." A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434. The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile. *Id.* An amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted. *Id.; see Cowell v. Palmer Twp.,* 263 F.3d 286, 296 (3d Cir.2001) (noting that failure to overcome the time bar of a statute of limitations renders a proposed amendment futile).

#### b. Discussion

To the extent plaintiff amended his complaint to "include a charge of civil right discrimination," ECF No. 13, under, among others, the Fourteenth Amendment against the Brentwood Defendants, the court construes the amendment as a claim pursuant to 42 U.S.C. § 1983. *See Brown v. Philipp Morris Inc.,* 250 F.3d 789, 800 (3d Cir.2001) (" § 1983 is derived from the Civil Rights Act of 1871, which was enacted to enforce the Fourteenth Amendment."). The Brentwood Defendants raised two arguments in support of their Rule 12(c) motion: (1) plaintiff failed to state a claim against the Brentwood Police Department upon which relief can be granted because the police department is not a proper party; and (2) plaintiff failed to state a claim against the Brentwood Borough upon which relief can be granted because plaintiff failed to allege that the municipality sanctioned or ordered conduct falling within the purview of 42 U.S.C. § 1983.

With respect to the first argument, the Brentwood Defendants are correct. Because Brentwood Borough was sued, the police department need not be named as a party and should be dismissed from this case. "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill,* 110

F. App'x 272, 278 (3d Cir.2004) (quoting *DeBellis v. Kulp,* 166 F.Supp.2d 255, 264 (E.D.Pa.2001)); *see Russell v. City of Phila.,* 428 F. App'x 174, 177 (3d. Cir.2011) (citing 53 PA. STAT. § 16257). 53 PA. STAT. § 16257 "requires all suits against any department of the City to be brought in the name of the City itself because the departments of the City do not have independent corporate existence." *Boles v. Phila. Water Dept.,* No. 06–1609, 2010 WL 2044473, at *1 n. 1 (May 21, 2010) (citing *City of Phila. v. Glim,* 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (Pa.Commw.Ct.1992)).

**\*5** Second, plaintiff failed to make any factual allegation that would enable this court to infer that the Borough of Brentwood is liable under § 1983 for discriminating against him. Thus, there is no material issue of fact that must be resolved because the complaint lacks factual allegations relevant to a § 1983 claim. The court must only determine whether the movants are entitled to judgment as a matter of law. The Court of Appeals for the Third Circuit held:

> A municipality can be liable under § 1983 for acts pursuant to an unconstitutional policy, custom or practice. *Monell [v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978) ]. We recently articulated guiding principles for deciding whether an official's act permits an inference of government policy:

> > First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

> *Nawrocki v. Township of Coolbaugh,* 34 Fed. Appx. 832, 837 (3d Cir.2002) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)) (other citations omitted).

*Noone v. City of Ocean City,* 60 F. App'x 904, 910–11 (3d Cir.2003).

As noted, plaintiff did not make any factual allegation from which the court could infer the existence of an unconstitutional policy, custom or practice pursuant to which plaintiff had been discriminated against by the municipality. Under those circumstances the § 1983 claim must be dismissed. The dismissal will be without prejudice.

For the foregoing reasons, Brentwood Defendants' motion for judgment on the pleadings is granted with prejudice with respect to the claims against the Brentwood Police Department and without prejudice with respect to any § 1983 claim against the Brentwood Borough.

## VI. *Federal Defendants' Motion to Dismiss pursuant to Rule 12(b)(6)* [4]

### a. Standard of review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost,* 1 F.3d at 183. In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556).

**\*6** The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 1949 (internal citation omitted).

Two working principles underlie *Twombly. Id.* First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. *Id.* "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### b. Discussion

#### 1) Pennsylvania Right–to–Know Law claims
To the extent plaintiff raises claims under the Pennsylvania Right–to–Know Law against the Federal Defendants, the claims must be dismissed because: (i) the statute is not applicable to federal agencies but only to "Commonwealth," "local," "judicial," or "legislative" agencies, as these entities are defined under the statute, *see* PA. CONS.STAT. § 67.102 (Definitions), and (ii) as noted above, state courts provide exclusive forum for litigating claims under that statute. The claims, therefore, must be dismissed with prejudice.

#### 2) FOIA claims
Here, the Federal Defendants argue that the action against them should be dismissed for two reasons. First, they argue that individual defendants are not proper parties in FOIA suits. The court agrees. *See Johnston v. United States,* No. 93–cv–5605, 1994 WL 533908, at *1 (E.D.Pa. Sept.29, 1994) ("The Freedom of Information Act does not create a cause of action against individual employees of federal agencies."); *Landes v. Yost,* No. 89–cv–6338, 1990 WL 45054, at *1 (E.D.Pa. Apr.12, 1990) ("FOIA ... suits must be brought against an agency, not an individual officer."). Accordingly, because the Federal Defendants are individuals, the motion to dismiss must be granted in favor of the Federal Defendants with prejudice.

Second, the Federal Defendants argue the action should be dismissed because plaintiff failed to exhaust the administrative remedies before resorting to this court. In

support, the Federal Defendants rely, among other exhibits attached to its motion, on an affidavit executed by David M. Hardy, the Section Chief of the Record/Information Dissemination Section at the FBI. If this court relies on the affidavit in deciding this matter, it would need to convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. "When a motion to dismiss is converted into a motion for summary judgment, the parties must be given notice of the conversion and an opportunity to present material to the court." *Clay v. Dep't of Army,* 239 F. App'x 705, 706 (3d Cir.2007) (citing *Rose v. Bartle,* 871 F.2d 331, 340 (3d Cir.1989)).

**\*7** Plaintiff, however, in his latest filing (ECF No. 35) appears to oppose the Federal Defendants' version of the facts. Plaintiff suggests he was not made aware by the FBI of any appeal procedure pertaining to the FBI's decision not to respond to plaintiff's request. The record is not fully developed on this issue and this court declines to entertain the present motion as a motion for summary judgment. Moreover, the court need not reach that argument because the claims against the Federal Defendants, who are individuals, must be dismissed with prejudice.

An appropriate order follows:

### *ORDER*

AND NOW, this 27th of January, 2012, upon consideration of the Brentwood Defendants and Federal Defendants' motions and plaintiff's submissions, it is hereby ordered that:

(1) Brentwood Defendants' motions, ECF Nos. 10 and 28, are GRANTED without prejudice, except for the Pennsylvania Right–to–Know claims and the FOIA claims and any claims against Brentwood Police Department which are dismissed with prejudice;

(2) Federal Defendants' "motion to dismiss or, in the alternative, for summary judgment," ECF No. 31, is GRANTED with prejudice with respect to the dismissal of the FOIA claims against the individual party defendants and the Pennsylvania Right–to–Know claims.

Plaintiff, if he can plead facts consistent with Rule 11 of the Federal Rules of Civil Procedure, may file a second amended complaint against proper parties within 30 days of the date

of this order. [5] Failure to file an amended complaint within 30 days of the date of this order will result in the case being closed with prejudice.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 260038

## Footnotes

1   Although the motion was *mooted* by reason of the subsequent filing of the amended complaint, Brentwood Defendants incorporated that motion by reference in its motion for judgment on the pleadings (*see* ECF No. 28 at 1.) While the motion should have been refiled instead of incorporating it by reference, the court will nonetheless address the arguments made in that motion. *See* FED. R. CIV. P. 10(c); *Macklin v. Butler,* 553 F.2d 525, 528 (7th Cir.1977) ("It is clear that pleadings may incorporate earlier pleadings by reference."). If there are any other filings in this case, prior motions cannot be incorporated by reference.

2   In the alternative, assuming the court could exercise pendent jurisdiction over this state claim, the court, which is dismissing all the federal claims asserted in this action, declines to exercise jurisdiction over these state law claims. *See Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

3   The court will address the motion for judgment on the pleadings only with respect to plaintiff's purported claims under § 1983. Obviously, the court's granting of the Brentwood Defendants' motion to dismiss the Pennsylvania Right–to–Know Law and FOIA claims adequately disposes of those claims as to Brentwood Defendants.

4   Federal Defendants filed also a motion to dismiss for lack of subject-matter jurisdiction based on two grounds: (i) plaintiff failed to exhaust his administrative remedies before resorting to this court, which should result in a dismissal of the FOIA claims "for failure to state a claim", ECF No. 32 at 7 (citing *McDonnell,* 4 F.3d at 1240, n. 9 (explaining that failure to exhaust administrative remedies does not *per se* deprive the court of subject-matter jurisdiction; rather, it is a prudential consideration)) and (ii) the action should be dismissed "[b]ecause FOIA does not create a cause of action against individual defendants ." *Id.* It is clear from their own arguments that both grounds more properly fall within the scope of a Rule 12(b)(6) motion.

5   Rule 11 "imposes on any party who signs a pleading, motion, or other paper—whether the party's signature is required by the Rule of is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing," and the "standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *see Abdul–Akbar v. Watson,* 901 F.2d 329, 334 n. 2 (3d Cir.1990) (the objective standard of reasonableness under Rule 11 applies to *pro se* litigants).

---

**End of Document**                                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 3910673
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

LaFARGE CORPORATION., Plaintiff

v.

NO. 1 CONTRACTING
CORPORATION, et al., Defendants.

Civil Action No. 3:CV-06-2315.
|
Aug. 20, 2008.

**Attorneys and Law Firms**

Lawrence E. Tofel, Tofel & Partners, LLP, New York, NY,
Zygmunt R. Bialkowski, Jr., Margolis Edelstein, Scranton,
PA, for Plaintiff.

Louis A. Modugno, Matthew A. Lipman, Mcelroy,
Deutsch, Mulvaney & Carpenter, LLP, Philadelphia, PA, for
Defendants.

*MEMORANDUM*

THOMAS M. BLEWITT, United States Magistrate Judge.

**I. Background.**

**\*1** On May 19, 2008, the Court issued a Memorandum and
Order and directed as follows:

1. Plaintiff's Motion for Sanctions under Rule 11 and §
1927 **(Doc. 79)** is **GRANTED** as against Defendants No.
1 Contracting Corp. and Roman, and Attorney Santora and
Bresset & Santora, LLC.

2. Plaintiff's Motion for Sanctions under the Court's inherent
power is **DENIED.**

3. Defendants' Counsel's Motion to File Their Answer to
Plaintiff's Motion for Sanctions Out of Time **(Doc. 90)** is
**DENIED.**

4. Plaintiff's Counsel shall have **ten (10) days** from the date of
this Order to file a Petition for the Attorney's Fees and Costs
awarded in the foregoing Memorandum, together with his
time records for the seven-month relevant period, including

a detailed explanation of the hours expended, the dates of
the services performed, the tasks completed, the hourly rate
for each attorney performing work on this matter, and an
itemized statement of costs and expenses incurred by Plaintiff
during the stated seven-month period. (Doc. 92). *See* 2008
WL 2120518 (M.D.Pa.).

In its May 19, 2008 Memorandum, the Court also stated that:

Plaintiff's Counsel will be directed to file a Petition for
Attorney's Fees and Costs with the Court in ten (10)
days specifically itemizing all of Plaintiff's attorney's fees
and costs directly related to Plaintiff's litigation of this
case against only Defendants No. 1 Contracting Corp.
and Roman (not against Defendant XL Specialty Ins. Co.)
during the stated seven-month period, *i.e.* March 30, 2007
through October 25, 2007. The attorney's fees and costs
shall include, but not be limited to, Plaintiff's opposition
filings to Defendants' Motion to Set Aside Default,
Plaintiff's expenses incurred for the delay in obtaining its
Judgment during the stated time period, and Plaintiff's
filing of its Summary Judgment Motion and supporting
documents against Defendants No. 1 Contracting Corp. and
Roman. It will be further ordered that Defendants No. 1
Contracting Corp. and Roman and Defendants' Counsel,
Attorney Santora and Bresset & Santora, LLC, pay the
following percentages of the total attorney's fees and costs
awarded to Plaintiff herein:

Defendant Roman-25%

Defendant No. 1 Contracting Corp.-50 %

Attorney Santora and Bresset & Santora, LLC-25%.

*Id.*

**II. Discussion.**
In accordance with the stated Order, Plaintiff filed a Petition
for Sanctions on July 11, 2008, as well as an Affidavit
of Plaintiff's co-counsel, Lawrence E. Tofel, Esquire, with
attached detailed Exhibits (Exs.A-D) consisting of a total
of 53 pages in support of Plaintiff's Petition for the
Attorney's Fees and Costs awarded to it in the May 19, 2008
Memorandum and Order. (Docs. 98, 99 and 99-2).

In his Affidavit, Attorney Tofel requests the Court to modify
its May 19, 2008 Memorandum and Order so that the Court's
Rule 11 award is made "joint and several" as against all
Respondents, *i.e.* Defendants No. 1 Contracting Corporation

Corp. and Al Roman, and Defendants' counsel, to clarify that the sanctions awarded under Rule 11 are imposed "jointly and severally" as against all Respondents, and that the sanctions awarded under § 1927 are imposed as against only Defendants' counsel. Attorney Tofel also requests the Court to specify that the sanctions imposed in the May 19, 2008 Memorandum and Order as against Defendants No. 1 Contracting Corporation Corp. and Al Roman are in addition to the total fees and expenses of $125,092.73 that were previously awarded to Plaintiff against these Defendants in the Amended Judgment entered in this case on November 15, 2007. (Doc. 78).

**\*2** On August 18, 2008, Counsel for Respondent Attorney Santora, namely, Attorney Philip Lauer, filed a Brief in Opposition to Plaintiffs Petition for Sanctions awarded by the Court's May 19, 2008 Memorandum and Order, as well as to Attorney Tofel's Affidavit (Docs. 98, 99 and 103). To date, Respondents No. 1 Contracting and Roman have not filed any response to the stated filings. Nor have Respondents No. 1 Contracting and Roman requested additional time within which to file a response. On August 12, 2008, counsel for Respondent Attorney Santora filed an Amended Opposition Brief, which the Court construes as superseding his original opposition Brief. (Doc. 107).

The Court recognizes the Third Circuit has indicated that "courts considering monetary sanctions should take into account the party's financial resources" *DiPaolo v. Moran,* *407 F.3d 140, 145-46 (3d Cir.2005)*; *Zuk v. Eastern PA.* *Psychiatric Institute, 103 F.3d 294, 301 (3d Cir.1996)* (district courts should "consider mitigating factors in fashioning sanctions, most particularly the sanctioned party's ability to pay."). Since the Court has ordered that it is imposing monetary sanctions, it will consider the financial resources of Respondents, *i.e.* Defendants' counsel and Defendants No. 1 Contracting and Roman.

Accordingly, on August 12, 2008, the Court issued an Order setting oral argument regarding Plaintiff's Petition for Sanctions Awarded pursuant to the Court's May 19, 2008 Memorandum and Order (Doc. 98) and the Affidavit of Plaintiff's Attorney (Doc. 99), as well as Respondent Santera's Opposition Brief thereto (Doc. 107) for September 4, 2008. (Doc. 106). [1]

The Court agrees with Attorney Tofel and his rationale (Doc. 99, pp. 8-10), based on the case of *Zuk v. Eastern PA.* *Psychiatric Institute, 103 F.3d 294, 297 (3d Cir.1996)* ("the

statute [ § 1927] is designed to discipline counsel only and does not authorize imposition of sanctions on the Attorney's client."), [2] that its May 19, 2008 sanctions award should be clarified and modified in order to specify the portion of the sanctions imposed therein against counsel for Defendants No. 1 Contracting Corp. and Roman as a result of their § 1927 violation and to specify the portion of the sanctions imposed pursuant to Rule 11 against Defendants' counsel as well as Defendants No. 1 Contracting Corp. and Roman. As stated, previously, the Court will conduct oral argument on September 4, 2008, with respect to the amount of sanctions that will be awarded pursuant to the May 19, 2008 Memorandum and Order. (Doc. 106). [3]

### III. Conclusion.

The Court will therefore clarify and modify its May 19, 2008 Memorandum and Order as follows:

> (a) sanctions are awarded only against Defendants' counsel under and pursuant to *28 U.S.C. § 1927*, in an amount equal to 100% of Plaintiff Lafarge's attorneys' substantiated fees and costs during the specified seven-month period in an amount to be determined by the Court;

> **\*3** (b) sanctions are also awarded against Defendants' counsel and Defendants No. 1 Contracting Corp. and Roman in an amount to be determined by the Court, pursuant to *F.R.C.P. Rule 11*, and all the said sanctions under *FRCP Rule 11* shall be deemed a joint and several obligation of Defendants No. 1 Contracting Corp. and Roman, and their counsel; and

> (c) the sanctions that will be imposed as against Defendants No. 1 Contracting Corp. and Roman are deemed in addition to the existing November 15, 2007 Amended Judgment entered against them.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 20th day of **August, 2008, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's request for the Court to clarify and modify its May 19 2008 Memorandum and Order is **GRANTED.**

2. The Court's May 19 2008 Memorandum and Order (Doc. 92) is **MODIFIED** as follows:

(a) sanctions are awarded only against Defendants' counsel under and pursuant to 28 U.S.C. § 1927, in an amount equal to 100% of Plaintiff Lafarge's attorneys' substantiated fees and costs during the specified seven-month period in an amount to be determined by the Court;

(b) sanctions are also awarded against Defendants' counsel and Defendants No. 1 Contracting Corp. and Roman in an amount to be determined by the Court, pursuant to F.R.C.P. Rule 11, and all the sanctions under FRCP Rule 11 shall be deemed a joint and several obligation of Defendants No. 1 Contracting Corp. and Roman, and their counsel; and

(c) the sanctions that will be imposed against Defendants No. 1 Contracting Corp. and Roman are deemed in addition to the existing November 15, 2007 Amended Judgment entered against them.

(d) In all other respects, the Court's May 19, 2008 Memorandum and Order remains unaltered.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 3910673

## Footnotes

1    During a telephone conference with the Court on August 18, 2008, regarding post-judgment financial discovery with respect to Plaintiff's November 2007 Judgment against Defendants No. 1 Contracting and Roman (Doc. 105), the Court permitted Attorney Lauer to file a further opposition brief to Plaintiff's Petition for Sanctions (Doc. 98) within five (5) days of the conference.

The Court notes that during the September 4, 2008 oral argument, it will not revisit its May 19, 2008 Memorandum and Order insofar as it granted Plaintiff's Motion for Sanctions. (Doc. 79).

2    The *Zuk* Court stated that "[i]n imposing joint and several liability upon appellant, the district court stated only that it was acting pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. It did not set forth the portion of the sanctions imposed as a result of the perceived § 1927 violation, as opposed to the portion to be allocated pursuant to Rule 11." 103 F.3d at 298.

3    Since it is abundantly clear to the Court that its May 19, 2008 Memorandum and Order must be clarified and modified to conform to the Third Circuit's holding in *Zuk,* the Court did not wait until the September 4, 2008 oral argument to modify its stated Memorandum and Order. Also, the Court wanted counsel to be aware of the modifications made to the May 19, 2008 Memorandum and Order prior to the September 4, 2008 oral argument. The Court further notes that it will not set the actual amount of sanctions imposed until after the September 4, 2008 oral argument.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7116640
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Kathleen MCCULLOUGH, Plaintiff,

v.

The COUNTY OF ALLEGHENY
PENNSYLVANIA, et al., Defendants.

Civil Action No. 16-534
|
Signed 12/07/2016

**Attorneys and Law Firms**

Kathleen McCullough, Canonsburg, PA, pro se.

Benjamin T.S. Trodden, Virginia Spencer Scott, Andrew F. Szefi, Allegheny County Law Department, Bernard M. Schneider, Brucker, Schneider & Porter, Frederick N. Egler, Jr., Patrick M. Emery, Reed Smith LLP, Dennis J. Roman, Charlene S. Seibert, Marshall Dennehey Warner Coleman & Goggin, P.C., Domenic A. Bellisario, Pittsburgh, PA, for Defendants.

**MEMORANDUM ORDER**

Cathy Bissoon, United States District Judge

**I. MEMORANDUM**

**\*1** Pending before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint (**Doc. 85**), pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. For the reasons that follow, Plaintiff's Motion to File a Second Amended Complaint (**Doc. 85**) will be DENIED.

**A. BACKGROUND**

On April 29, 2016, Plaintiff Kathleen McCullough filed a Complaint asserting constitutional and state law claims against an array of politicians, government officials, businesspeople and attorneys alleging a conspiracy to criminally prosecute her and her brother, Charles McCullough, allegedly in retaliation for the political activities of her brother. (Doc. 1). On August 2, 2016, McCullough filed an Amended Complaint adding several new Defendants. (Doc. 43). On October 19, 2016, after the various defendants

filed motions to dismiss the Amended Complaint (Docs. 62, 64, 71, 73, & 77), Plaintiff filed a Second Amended Complaint. Plaintiff's Second Amended Complaint was filed without the consent of all parties or leave of Court, in violation of Federal Rule of Civil Procedure 15(a). (Doc. 82). On October 19, 2016, the Court struck Plaintiff's Second Amended Complaint. (Doc. 83). Almost a month later, on November 14, 2016, Plaintiff filed the instant Nunc Pro Tunc Motion for Leave to File a Second Amended Complaint. (Doc. 85). While the instant motion was pending, on November 21, 2016, Plaintiff filed a Third Amended Complaint. (Doc. 92). Once again, the Court struck Plaintiff's Third Amended Complaint because she filed it without the consent of all the parties or leave of Court. (Doc. 93).

Plaintiff's proposed Second and Third Amended Complaints add a new defendant—Deputy District Attorney Lawrence N. Claus ("DDA Claus") in his individual capacity and in his official capacity as a Supervisor in the District Attorney's Office. In addition, the proposed Second and Third Amended Complaints make new allegations against former Allegheny County District Attorney Detective Joseph Todd Moses. Finally, the proposed Second and Third Amended Complaints contain two new causes of action:

• New Count V asserts a cause of action against Detective Moses and DDA Claus under the Pennsylvania Ethics Act, 65 P.S. § 1101, *et seq.* ("Ethics Act"). Specifically, Plaintiff alleges that Detective Moses and DDA Claus violated the Ethics Act because they had undisclosed conflicts of interest with PNC Bank while they were investigating the "Jordan Case." In that case, Plaintiff was charged with, but acquitted of, theft, and conspiring with her brother to use his authority as co-trustee of Shirley Jordan's trust with PNC Bank to direct payments to Plaintiff totaling $4,575.01. Plaintiff alleges that Detective Moses had a conflict of interest during the investigation because he began to work for PNC in January 2012, around the same time he and several employees from PNC Bank testified in the Jordan Case. (Doc. 82 ¶¶ 1, 48c, 124-131). Plaintiff alleges that DDA Claus had a conflict of interest because he had a loan with PNC while prosecuting or supervising the prosecution of the Jordan Case. (Doc. 82 ¶¶ 4, 77 a & b, 124-131). Plaintiff asserts that PNC's offer of employment to Detective Moses and its loans to DDA Claus were "quid pro quos" for not investigating or charging PNC Bank or its employees for their part in approving the payments to Plaintiff in the Jordan Case.

**\*2** • New Count VI asserts a cause of action against various officers and employees of Allegheny County, including Dan Onorato, Rich Fitzgerald, and Stephen Zappala, as well as the Allegheny County District Attorney's Office, pursuant to the Pennsylvania Right-to-Know Law, 65 P.S. § 67.101, *et seq.* ("RTK Law"). (Doc. 82 ¶¶ 132-141). Plaintiff alleges that Jerry Tyskiewicz, the Allegheny County Open Records Officer, and Kevin McCarthy, the District Attorney's Office RTK Liaison Officer delayed and/or failed to produce DDA Claus's and Detective Moses's financial disclosure statements and compensation information to Plaintiff. (Id.). Plaintiff does not allege that Defendants Onorato, Fitzgerald, or Zappala were personally involved in the alleged violations of the RTK Law. (Id.).

## B. ANALYSIS

Pursuant to Fed. R. Civ. P. 15(a), a court should grant leave to amend "when justice so requires." However, a district court may deny leave to amend where: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Schumann v. AstraZeneca Pharmaceuticals LP, 769 F.3d 837, 849 (3rd Cir. 2014).

The Court will deny Plaintiff's Motion for Leave to Amend. First, the Court finds that Plaintiff acted with undue delay in filing her Motion. Notably, Plaintiff directly violated Rule 15(a) by unilaterally filing a Second Amended Complaint —and later a Third Amended Complaint—without leave of court or consent of the parties. Plaintiff's *pro se* status does not excuse her failure to comply with the federal rules. See Pruden v. SCI Camp Hill, 252 F. Appx. 436, 438 (3d Cir. 2007).

In any event, even if Plaintiff had timely filed her Motion for Leave to Amend, the Court would deny the Motion, as her proposed amendments are futile. Plaintiff's new claims against Detective Moses, DDA Claus, Dan Onorato, Rich Fitzgerald, and Stephen Zappala, and the Allegheny County District Attorney's Office are without merit. First, Plaintiff's new Count V fails to state a claim for relief, as the Ethics Act does not create a private cause of action. Connection Training Servs. v. City of Philadelphia, 2009 WL 484201, at \*4 (E.D. Pa. Feb. 25, 2009) (citing POEEA Sheers v. Higgins,

120 Pa. Cmwlth. 572, 549 A.2d 614, 616 (Pa. Commw. Ct. 1988)) (explaining that, under current Pennsylvania law, courts have not recognized an implied cause of action under the Ethics Act). Furthermore, Plaintiff's allegations in Count V that Detective Moses's and DDA Claus's alleged conflicts of interest resulted in their failure to investigate and/or charge PNC Bank and its employees is not actionable, as Plaintiff has no right to the investigation or prosecution of another person. Fuchs v. Mercer County, 260 Fed. Appx. 472, 475 (3d Cir. Pa. 2008). [1]

Likewise, Plaintiff's new Count VI fails as a matter of law. As Defendants argue, Plaintiff cannot recover money damages from Defendants in this Court for their alleged delay and/or refusal to provide records under the RTK Law; rather, she must challenge such actions through the procedures outlined in Chapters 11 and 13 of the Law, which she has not done. 65 P.S. §§ 67.1101-67.1310; see Guarrasi v. Scott, 25 A.3d 394, 404–05 (Pa. Commw. Ct. 2011) ("Plaintiff's failure to exhaust his administrative remedies under the RTK Law precludes this Court from taking jurisdiction."). Moreover, Plaintiff's RTK state law claim is not cognizable under section 1983. See Dacenzo v. Crake, 2012 WL 3561021, at \*4 (M.D. Pa. Aug. 16, 2012). Even if cognizable, Plaintiff does not plead any facts showing that the individual County Defendants were personally involved in the alleged RTK Law violations, and there is no evidence of a custom, practice or policy within the County of unlawfully delaying or denying records under the Law. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (section 1983 defendant must be personally involved in the wrong); Monell v. N.Y. Dept. of Soc. Servs., 436 U.S. 658 (1978).

## II. ORDER

**\*3** For the reasons stated above, Plaintiff's Motion to File a Second Amended Complaint (**Doc. 85**) is hereby DENIED.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2016 WL 7116640

**Footnotes**

1    The Court also finds that Plaintiff does not allege sufficient facts to plausibly establish that PNC's employment of Detective Moses or loans to DDA Claus were quid pro quo for not investigating or prosecuting PNC or its employees. Indeed, as Defendants argue, Detective Moses began interviewing PNC employees more than four years before he began his employment with PNC in 2012 and he filed charges against Plaintiff almost three years prior, undermining any inference of a quid pro quo. Likewise, the fact that DDA Claus had one or more credit accounts with PNC (among other banks) between 2011 and 2015 does not support an inference that he and PNC's employees conspired to bring charges against Plaintiff in 2009.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3163206
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Johnnie MICKELL, Plaintiff,

v.

Judge Vito P. GEROULO, et al., Defendants.

CIVIL ACTION NO. 3:19-cv-01730
|
Signed 06/12/2020

**Attorneys and Law Firms**

Johnnie Mickell, Olyphant, PA, pro se.

Harry T. Coleman, Owen M. Coleman, Law Office of Harry T. Coleman, Carbondale, PA, for Defendants.

**MEMORANDUM**

JOSEPH F. SAPORITO, JR., United States Magistrate Judge

**\*1** This federal civil rights action was commenced on October 4, 2019, when the *pro se* plaintiff, Johnnie Mickell, lodged the complaint with the Clerk of Court for filing. (Doc. 1.) Mickell has been granted leave to proceed *in forma pauperis* in this action. (Doc. 3.)

This action represents the third challenge by Mickell to a series of state court convictions and sentences for misdemeanor and summary offenses arising out of incidents that occurred in 2015 and earlier. *See generally Mickell v. Geroulo*, Civil Action No. 3:18-cv-01540, 2019 WL 3484142 (M.D. Pa. July 10, 2019), *report and recommendation adopted by* 2019 WL 3484487 (M.D. Pa. July 31, 2019), *appeal filed*, No. 19-2813 (3d Cir. Aug. 7, 2019); *Mickell v. Police Dep't of Scranton*, Civil Action No. 3:16-cv-00291, 2017 WL 4532160 (M.D. Pa. Mar. 10, 2017), *report and recommendation adopted by* 2017 WL 4516748 (M.D. Pa. Oct. 10, 2017). [1] In this case, Mickell did not challenge the convictions or sentences themselves, but he instead alleged that, in 2018 and 2019, the defendants conspired to falsify state court records to inflate the total balance of fines and costs he owed for these and earlier convictions, dating back to 2002, and to preclude the reinstatement of his driver's license by the state department of transportation.

On October 30, 2019, the Court *sua sponte* dismissed the plaintiff's claims against one defendant—the Honorable Vito P. Geroulo, a state common pleas judge who presided over Mickell's criminal proceedings—for failure to state a claim, based on absolute judicial immunity. *Mickell v. Geroulo*, No. 3:19-cv-01730, 2019 WL 5622696 (M.D. Pa. Oct. 8, 2019) (Doc. 4), *report and recommendation adopted by* 2019 WL 5618776 (M.D. Pa. Oct. 30, 2019) (Doc. 10). On June 10, 2020, we dismissed the plaintiff's claims against the two remaining defendants—Mauri B. Kelly, the clerk of judicial records for the Lackawanna County Court of Common Pleas, and Catherine Kacer, a collections officer with the clerk's office for the Lackawanna County Court of Common Pleas—as legally frivolous and for failure to state a claim, based on absolute quasi-judicial immunity, and as malicious, based on the repetitive nature of this litigation. (Doc. 79; Doc. 80.)

Kelly and Kacer have moved for sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure on the basis that Mickell's claims lack any factual or legal basis, and on the basis of Mickell's prior history of abusive *pro se* litigation in this Court. (Doc. 62.) The motion is fully briefed and ripe for decision. (Doc. 63; Doc. 68; Doc. 74.)

As a preliminary issue, the Court notes that the Rule 11(c) motion for sanctions was filed by defendants Kelly and Kacer on April 24, 2020. (Doc. 62.) In observance of this rule's unique 21-day "safe harbor" provision, [2] a pre-filing copy of the motion was served on the plaintiff on March 28, 2020. (Doc. 62-1.)

**\*2** Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). In doing so, the

> attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

To satisfy the affirmative duty imposed by Rule 11, an attorney or party must inquire into both the facts and the law before filing papers with the court. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 545 (1991); *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1091 (3d Cir. 1988). This requirement applies equally to "attorneys, parties represented by attorneys, and parties who appear pro se." *Bus. Guides*, 498 U.S. at 545.

"The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citation omitted). This objective standard applies both to attorneys and to *pro se* litigants, although "what is objectively reasonable for a pro se litigant and for an attorney may not be the same." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters. Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991); *see also* Fed. R. Civ. P. 11 advisory committee note (1983) ("Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations."); *Harris v. Heinrich*, 919 F.2d 1515, 1516 (11th Cir. 1990) (per curiam) ("Although Rule 11 applies to *pro se* plaintiffs, the court must take into account a plaintiff's *pro se* status when it determines whether the filing was reasonable."); *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987) ("We recognize that pro se complaints are read liberally, but they still may be frivolous if filed in the face of previous dismissals involving the exact same parties under the same legal theories.").

The Court may impose an appropriate sanction on a party that has violated Rule 11(b). Fed. R. Civ. P. 11(c)(1). Both monetary and non-monetary sanctions are authorized.

Fed. R. Civ. P. 11(c)(4). But the primary purpose of Rule 11 is the correction or deterrence of abuses of the legal system. *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Thus, Rule 11 sanctions are appropriate only if "the filing of the complaint constituted abusive litigation or misuse of the court's process." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). Moreover, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.*; *see also Doering*, 857 F.2d at 194 ("A district court's choice of deterrent is 'appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior.' ") (quoting another source).

**\*3** Here, the plaintiff's claims against defendants Kelly and Kacer have recently been dismissed with prejudice on the grounds that they are malicious, legally frivolous, seek monetary relief against defendants who are immune from such relief, and fail to state a claim upon which relief can be granted. *See Mickell v. Geroulo*, No. 3:19-cv-01730, 2020 WL 3077487 (M.D. Pa. June 10, 2020). [3] In doing so, we held that these defendants, as state court support personnel, are entitled to absolute quasi-judicial immunity, and we noted that "[t]he doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to 'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.' " *Id.* at \*3 (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)). [4] Indeed, the reason for bringing these claims against Kelly and Kacer in this action appears to Mickell's prior lack of success in seeking damages from Judge Geroulo. Previously in this same action, the plaintiff's claims against Judge Geroulo were dismissed on judicial immunity grounds. *See Mickell v. Geroulo*, No. 3:19-cv-01730, 2019 WL 5622696 (M.D. Pa. Oct 8, 2019) (Doc. 4) (recommending dismissal for failure to state a claim based on absolute judicial immunity), *report and recommendation adopted by* 2019 WL 5618776 (M.D. Pa. Oct. 30, 2019) (Doc. 10). Mickell also brought these same claims against Judge Geroulo in a prior action, which was likewise dismissed for failure to state a claim. *See Mickell v. Geroulo*, No. 3:18-cv-01540, 2019 WL 3484142 (M.D. Pa. July 10, 2019) (recommending dismissal for failure to state a claim), *report and recommendation adopted by* 2019 WL 3484487 (M.D. Pa. July 31, 2019), *aff'd per curiam*, 794 Fed. App'x 223 (3d Cir. 2019). In an earlier lawsuit asserting related claims against other defendants, Mickell unsuccessfully attempted to

obtain a third-party preliminary injunction on the same basis against Judge Geroulo, who was not a party to that action. *See Mickell v. Police Dep't of Scranton*, No. 3:16-cv-00291, 2017 WL 4532160 (M.D. Pa. Mar. 10, 2017) (recommending denial of motion for preliminary injunction), *report and recommendation adopted by* 2017 WL 4516748 (M.D. Pa. Oct. 10, 2017). Finally, after commencing this action, we note that Mickell asserted substantially the same claims against all three of these same defendants—Geroulo, Kelly, and Kacer —in a subsequent action in which we recently recommended dismissal of all claims against them as abusive and repetitious, and thus malicious. *See Mickell v. Geroulo*, No. 20-cv-00709, slip op. (M.D. Pa. June 5, 2020) (recommending dismissal as malicious).

We also note that the plaintiff has a demonstrated history of filing frivolous lawsuits and appeals in the federal courts, often against immune defendants. *See Mickell v. Lycoming Cty. Cent. Collections Office & Admin.*, No. 4:20-cv-00268, 2020 WL 2045789 (M.D. Pa. Feb. 19, 2020) (recommending dismissal as legally frivolous), *report and recommendation adopted by* 2020 WL 2037149 (M.D. Pa. Apr. 28, 2020), *appeal filed*, No. 20-2020 (3d Cir. May 19, 2020); *Mickell v. Millcreek Police*, No. 1:01-cv-00164, slip op. (W.D. Pa. May 23, 2002) (dismissing claims), *appeal dismissed as frivolous*, No. 20-2627 (3d Cir. Apr. 28, 2003); *Mickell v. Adams*, No. 1:01-cv-00086, slip op. (W.D. Pa. Mar. 27, 2001) (recommending dismissal as legally frivolous), *report and recommendation adopted by* slip op. (W.D. Pa. May 2, 2001); *Mickell v. Reed*, No. 3:92-cv-01503, slip op. (M.D. Pa. Nov. 2, 1992) (recommending dismissal as frivolous), *report and recommendation adopted by* slip op. (M.D. Pa. Nov. 18, 1992), *appeal dismissed as frivolous*, No. 93-7009 (3d Cir. June 14, 1993); *Mickell v. Raup*, No. 3:92-cv-00413, slip op. (M.D. Pa. Aug. 31, 1992) (recommending dismissal for failure to state a claim), *report and recommendation adopted by* slip op. (M.D. Pa. Sept. 23, 1992).

Notwithstanding the plaintiff's *pro se* status, the filing of the complaint in this action was objectively unreasonable under the circumstances presented. The claims asserted by Mickell in this lawsuit lack any arguable basis in law, and thus they are legally frivolous. His factual allegations are fanciful at best. Moreover, the circumstances of this litigation, particularly in light of the several other lawsuits brought by Mickell against both these and other defendants, suggest that this action was brought with the intent to harass or needlessly impose the cost of litigation on the defendants. Therefore, we find the imposition of Rule 11 sanctions to be appropriate.

The moving defendants request sanctions in the form of an award of attorney fees and costs incurred by the defendants in defending this suit, plus the imposition of a pre-filing injunction prohibiting the plaintiff from future filings. Although the plaintiff has clearly exhibited malicious and contumacious conduct with his repetitious and abusive filings, we do not believe a pre-filing injunction is warranted based on the handful of frivolous actions he has filed to date, most of which were concluded more than a decade ago. *See Gonzalez v. Feiner*, 131 Fed. App'x 373, 378–79 (3d Cir. 2005) (per curiam) (vacating pre-filing injunction based on plaintiff's history of filing six frivolous cases over a 10-year period).

**\*4** Although Mickell is indigent, monetary sanctions are still available. "As a general rule, courts are reluctant to impose monetary sanctions against a litigant proceeding in forma pauperis, reserving sanctions for cases in which the litigant's conduct is malicious or deliberately vexatious." *Mousel v. Knutson Mortgage Corp.*, 823 F. Supp. 658, 663 (D. Minn. 1993). In this case, we have already found— and we reiterate here—that Mickell's conduct in litigating this action has been malicious and deliberately vexatious. Based on his history of litigation before this and other federal courts, absent sanctions, Mickell reasonably can be expected to file additional actions in this court, including against these same defendants. Mickell's ability to pay is merely a factor in determining the appropriate amount of any monetary sanction imposed. *See Doering*, 857 F.2d at 195–96; *see also Johnson v. Dencek*, 868 F.2d 969, 970 (7th Cir. 1989) (per curiam) ("[N]ot all litigants proceeding *in forma pauperis* are destitute; many could pay $50 and feel the smart, giving the Rule force even in such cases.").

In his application to proceed *in forma pauperis*, Mickell indicated that his only sources of income are federal and state disability benefits, totaling approximately $800 per month. Mickell further indicated that he possesses no assets whatsoever of significant value. While some sanction is clearly warranted—and necessary as a deterrent to further abusive litigation—awarding the defendants their costs of litigation and reasonable attorney fees *in toto* would be excessive under the circumstances. [5]

Accordingly, the defendants' motion for Rule 11 sanctions (Doc. 62) will be granted, and we will impose a sanction of $200—half the amount of filing fees typically due upon commencement of a federal civil action—which is to be paid

directly to the moving defendants to offset the costs and attorney fees they have incurred in defending this action. We will impose this sanction in the form of a monetary judgment against the plaintiff and in favor of the moving defendants. The plaintiff should be aware that he also will be liable for interest on the judgment from the date of entry, if it is not promptly paid. *See* 28 U.S.C. § 1961; *Estate of Calloway v. Marvel Entm't Grp.*, 9 F.3d 237, 241–42 (2d Cir. 1993).

The plaintiff is further admonished that, before filing any future federal civil action, he is required by the federal rules to undertake (and certify that he has undertaken) a reasonable pre-filing inquiry to determine whether he has a non-frivolous factual and legal basis for the claims he intends to assert in his complaint. *See* Fed. R. Civ. P. 11. Any future abusive or frivolous litigation may expose him to further sanctions, both monetary and non-monetary.

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3163206

---

## Footnotes

1    Since commencing this action, Mickell has filed a *fourth* action involving these same claims and defendants. *See Mickell v. Geroulo*, No. 3:20-cv-00709 (M.D. Pa. filed Apr. 29, 2020). That action remains pending on a report and recommendation that it be dismissed *sua sponte* as frivolous, malicious, and for failure to state a claim.

2    *See generally* Fed. R. Civ. P. 11(c)(2); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008).

3    (Doc. 79; Doc. 80.)

4    (Doc. 79, at 8.)

5    We note also that "Rule 11 is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees. Rather it is intended 'to maintain the integrity of the system of federal practice or procedure.' " *Estate of Calloway v. Marvel Entm't Grp.*, 9 F.3d 237, 241 (2d Cir. 1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990), and quoting *Bus. Guides*, 498 U.S. at 552) (citation omitted).

---

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.  4

2023 WL 2743564

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

John Ryan MILLER, Plaintiff,

v.

Thomas NELLING, et al., Defendants.

CIVIL ACTION NO. 22-3329-KSM

|

Filed March 31, 2023

**Attorneys and Law Firms**

John Ryan Miller, Kimberton, PA, Pro Se.

Andrew M. Rongaus, D. Addison Murray, Douglas Rintoul, Siana Law, LLP, Chester Springs, PA, for Defendants Thomas Nelling, Richard Finfrock, Louis Marcelli, Jeff Kimes, Thomas Siedenbuehl, Lee Benson, Jennifer Keller, Yvette Johnson.

Rolf E. Kroll, Margolis Edelstein, Camp Hill, PA, for Defendants Joseph Elias, Tracey Laws, Mitchell Rock, Robert Clarke, Brian Sheller, Kevin Pierce, Michael Carroll, Jeassica Harper.

Guy A. Donatelli, John J. Stanzione, Lamb & McErlane, P.C., West Chester, PA, for Defendants Thomas Goggin, John O'Donnell, David Sassa, Robert Dougherty.

Joseph F. Kampherstein, III, Michael B. Pullano, Lewis Brisbois Bisgaard & Smith LLP, Wayne, PA, for Defendant Debra Ryan.

Stephen R. Kovatis, Office of Attorney General, Philadelphia, PA, for Defendants Robert LaCourt, Sharen Maittland, Rachel Zeltman, Andrew Lovette, William Rozier, Mellissa Laughlin, Erin Burlew, Kevin Kochka, Raymond Stevenson.

James J. Musial, Michael I. Levin, Julia A. Levin, Levin Legal Group, PC, Huntingdon Valley, PA, for Defendants Frank Galbraith, Mary Friedberg, Delores D'Amore.

William T. Salzer, Swartz Campbell LLC, Philadelphia, PA, for Defendant Jack Laufer.

Mansi Shah, United States Attorney's Office, Philadelphia, PA, for Defendant Gerald Boomer.

Christine E. Munion, William J. Ferren & Associates, Hartford, CT, for Defendants Howard Holland, Georgene D'Carbo, Timothy Parker, James Morehead.

Tyson Matthew Mott, Marshall Dennehey, Philadelphia, PA, for Defendant Lisa Taraschi.

Joseph J. Santarone, Jr., Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, for Defendants William Mossman, Chris Yeager, Joe Miles, Chief Simpson, Timothy Brown, Mike Beaty, John DeMarco, Michael Swininger.

D. Addison Murray, Sheryl Lynn Brown, Douglas Rintoul, Siana, LLP, Chester Springs, PA, for Defendants Michelle Major, Joseph Heyman, Matthew Delchert, Ann Gery, Michael Hawley, Ryan White, Shane Clark, Brenda M. Bernot.

Suzanne McDonough, Holsten Associates, P.C., Media, PA, for Defendant Dixie Strachnik.

Daniel Lengeman, Nicholas A. Cummins, Bennett, Bricklin & Saltzburg LLC, Philadelphia, PA, for Defendant Calvin Wilson.

Jason Confair, Saxton & Stump, LLC, Lancaster, PA, for Defendants Benjamin Pratt, Jill Hardy, Jeff Curtis, Brian Norris, Lisa Bowman, Sam Ganow, Jared Zimmerman, Charlie Koennecker, Brian Fox, Matt Hurley, John Propper, Michelle Orner, Lisa Yelovich.

Anthony R. Sherr, Sherr Law Group, LLC, Norristown, PA, for Defendant William Holdsworth.

Andrew M. Rongaus, D. Addison Murray, Douglas Rintoul, Siana Law, LLP, Chester Springs, PA, Anthony R. Sherr, Sherr Law Group, LLC, Norristown, PA, for Defendant Matthew Gordon.

Andrew W. Norfleet, Frank J. Lavery, Jr., Lavery Law, Harrisburg, PA, for Defendant Marc Partee.

John P. Gonzales, Tyson Matthew Mott, Marshall Dennehey Warner Coleman and Goggin, P.C., Philadelphia, PA, for Defendants Samuel Iacono, Maria Avala.

David J. MacMain, MacMain Leinhauser PC, West Chester, PA, Tricia M. Ambrose, MacMain Leinhauser PC, Malvern, PA, for Defendants Brian Marshall, Danielle Wade.

Mark L. Freed, Curtin & Heefner LLP, Doylestown, PA, for Defendant Scott Alexander.

Alexander Nemiroff, Joseph Coleman Monahan, Gordon Rees Scully Mansukhani, Philadelphia, PA, for Defendant Eric Hughes.

John P. Gonzales, Marshall Dennehey Warner Coleman and Goggin, P.C., Philadelphia, PA, Katherine E. Ladow, Lamb McErlane PC, West Chester, PA, for Defendant Diane Moore.

## MEMORANDUM

MARSTON, District Judge

**\*1** *Pro Se* Plaintiff John Ryan Miller brings this action against dozens of school district officials and law enforcement officers from various localities across southeastern Pennsylvania. (*See* Doc. No. 1.) Plaintiff contends that the Octorara School District's enforcement of its public participation policy is unconstitutional, and that members of the school board conspired with local public servants to prevent him from speaking at or attending school board meetings on behalf of a group of parents. (*Id.* at 66– 93.) Presently before the Court are 33 motions to dismiss, by which 55 defendants ("Moving Defendants") seek dismissal of Counts VIII and IX. (Doc. Nos. 108, 141, 147, 166, 167, 168, 169, 170, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 211.) [1] Moving Defendants argue that Count VIII and Count IX fail to state a claim upon which relief can be granted because they assert violations of criminal statutes that do not provide private rights of action. (*Id.*) Plaintiff opposes the motions. (Doc. Nos. 171, 175, 230, 248, 250.) For the following reasons, Moving Defendants' motions are granted.

## I. FACTUAL BACKGROUND

Because we write for the benefit of the parties, who are familiar with the issues before us, we include only a brief recitation of the relevant facts. [2] Accepting all of Plaintiff's allegations as true, the facts are as follows.

Plaintiff attended an Octorara School District board meeting on January 24, 2022, after he had been "engaged by several parents of students enrolled in Octorara School District" to attend the meeting on their behalf and speak during the public comment period. [3] (Doc. No. 1 at ¶¶ 38, 73.) Before making his public comment, Plaintiff was required to provide his name and state his residence in accordance

with "District Policy 903." (*Id.* at ¶¶ 74–90.) Following the meeting, Plaintiff emailed Chester County law enforcement officials, explaining that he believed his rights were violated by the school board members and that District Policy 903 was unconstitutional. (*Id.* at ¶ 104.) He promised that he would "seek redress/remedy if Plaintiff's rights were violated further." (*Id.*) To that end, he provided law enforcement with "role-play scenarios, which created a base of expectations and how the Plaintiff would conduct himself if/when Plaintiff could encounter law enforcement" and described "actions [Plaintiff would take] if Plaintiff were to encounter public servants who might violate their oath to their position." (*Id.* at ¶¶ 102–08.) The Chester County District Attorney's Office, in conjunction with the Chester County Police Department, subsequently circulated Plaintiff's correspondence to other local police departments via email, "with the implication that the Plaintiff's exercise of his constitutional rights is suspicious and allegedly suggest criminal behavior in nature." (*Id.* at ¶ 109.)

**\*2** Upon learning of this email correspondence, Plaintiff requested communications between "Chester County Detectives, local law enforcement, Pennsylvania State Troopers, [and] School Board officials, through the RTKL [Pennsylvania's Right-to-Know Law, 65 PA. CONS. STAT., §§ 67.101–67.3104] process," regarding Plaintiff's interactions or grievances with the Octorara School Board. (*Id.* at ¶¶ 119, 283, 290.) According to Plaintiff, these RTKL requests "produced no documents." (*Id.* at ¶ 119.) Plaintiff asserts that no documents were produced because any documents were destroyed by Moving Defendants. (*Id.* at ¶¶ 402–04.) Following an attempt to attend another board meeting on February 14, 2022, and an incident with Pennsylvania State Troopers at a school board meeting on March 21, 2022, Plaintiff was ultimately banned from Octorara School District property. (*Id.* at ¶¶ 159–94.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on August 18, 2022, challenging the constitutionality of District Policy 903 and alleging that members of the Octorara School Board conspired with local public servants to prevent him from speaking at or attending school board meetings. (*Id.*) Plaintiff brings ten [4] counts against 84 total defendants. (*Id.* at ¶¶ 330–412.) More specifically, Plaintiff brings only Count VIII and Count IX against 60 of those 84 defendants, 55 [5] of whom have filed the following motions to dismiss: [6]

| Motion | Filing Defendant(s) |
|---|---|

| Doc. No. 108 | Benjamin Pratt |
| Doc. No. 141 | Dixie Strachnik |
| Doc. No. 147 [7] | Jack Laufer |
| Doc. No. 166 | Frank Galbraith<br>Dolores D'Amore<br>Mary Friedberg |
| Doc. No. 167 | Timothy Parker |
| Doc. No. 168 | Howard Holland<br>Georgene Carbo [8] |
| Doc. No. 169 | James Morehead |
| Doc. No. 170 | Eric Hughes |
| Doc. No. 178 | William Mossman<br>Chris Yeager<br>Joe Miles<br>Mike Beaty<br>Timothy Brown<br>John DeMarco<br>Michael Swinginger [9]<br>Gerald Simpson |
| Doc. No. 179 | Marc Partee |
| Doc. No. 180 | William Holdsworth |
| Doc. No. 181 | Tracey Laws<br>Mitchell Rock<br>Robert Clarke<br>Brian Sheller<br>Joseph Elias<br>Kevin Pierce<br>Michael Carroll<br>Jessica Harpel [10] |
| Doc. No. 182 | Diane Moore |
| Doc. No. 183 | Lisa Taraschi |
| Doc. No. 184 | Samuel Iacono<br>Maria Zavala [11] |
| Doc. No. 185 | Calvin Wilson |
| Doc. No. 186 | Scott Alexander |
| Doc. No. 187 | Michael Hawley |

| Doc. Nos. 188, 205 [12] | Ryan White |
|---|---|
| Doc. No. 189 | Shane Clark |
| Doc. No. 192 | Matthew Gordon |
| Doc. No. 193 | Yvette Johnson |
| Doc. No. 194 | Lee Benson [13]<br>Jennifer Keller |
| Doc. No. 195 | Thomas Siedenbuehl |
| Doc. No. 196 | Jeff Kimes |
| Doc. No. 197 | Louis Marcelli [14] |
| Doc. No. 198 | Richard Finfrock [15] |
| Doc. No. 199 | Thomas Nelling |
| Doc. No. 200 | Brian Marshall<br>Danielle Wade |
| Doc. No. 201 | Brenda Bernot |
| Doc. No. 202 | Matthew Delchert<br>Ann Gery |
| Doc. No. 203 | Michelle Major<br>Joseph Heyman |
| Doc. No. 211 | Robert LaCourt |

**\*3** The above-named defendants argue, *inter alia*, [16] that Counts VIII and IX must be dismissed because they are based on criminal statutes that do not afford a civil cause of action. (Doc. No. 108 at 6–7; Doc. No. 141 at 6–7; Doc. No. 147 at 6–7; Doc. No. 166 at 11–20; Doc. No. 167 at 10; Doc. No. 168 at 12; Doc. No. 169 at 10; Doc. No. 170 at 10–11; Doc. No. 178 at 10; Doc. No. 179 at 6–7; Doc. No. 180 at 5–6; Doc. No. 181 at 14; Doc. No. 182 at 9–10; Doc. No. 183 at 9–10; Doc. No. 184 at 10; Doc. No. 185 at 9–11; Doc. No. 186 at 10–12; Doc. No. 187-2 at 7; Doc. No. 205-1 at 8; Doc. No. 189-2 at 7; Doc. No. 192-2 at 7; Doc. No. 193-2 at 7; Doc. No. 194-2 at 7–9; Doc. No. 195-2 at 7; Doc. No. 196-2 at 7.; Doc. No. 197-2 at 7–9; Doc. No. 198-2 at 7; Doc. No. 199-2 at 7; Doc. No. 200 at 7–8; Doc. No. 201-2 at 7–9; Doc. No. 202-2 at 7–9; Doc. No. 203-2 at 7–9; Doc. No. 211-1 at 2.) Plaintiff opposes these motions, but notably, does not address

Moving Defendants' arguments that his civil claims cannot be brought under the criminal statutes he has identified. (*See* Doc. Nos. 171, 175, 230, 248, 250.) [17]

### III. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Factual allegations must be

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a motion to dismiss, courts "must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

"While a plaintiff's factual allegations must be enough to raise a right to relief above a speculative level, complaints filed *pro se* must be liberally construed." *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015) (cleaned up); *see also Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) (noting that although "[a] complaint by a pro se litigant is to be liberally construed," "pro se litigants still must allege sufficient facts in their complaint to support a claim" (cleaned up)); *Strader v. U.S. Bank Nat'l Ass'n*, Civil Action No. 2:17-cv-684, 2018 WL 741425, at *5 n.8 (W.D. Pa. Feb. 7, 2018) ("It is true that pro se plaintiffs are not held to the same standard as lawyers when the Court analyzes formal pleadings, but any pleading must still contain sufficient factual allegations that, when accepted as true, state a claim to relief that is plausible on its face." (cleaned up)).

## IV. DISCUSSION

The Court is guided by the general principle that courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement. *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994); *see also Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (holding that private citizens cannot compel criminal prosecution). To this end, the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action. *See Tezler v. Borough of Englewood Cliffs*, 783 F. App'x 253, 257–58 (3d Cir. 2019); *Timm v. Wells Fargo Bank*, 701 F. App'x 171, 175 (3d Cir. 2017); *Coleman v. Academy Bus, LLC*, 858 F. App'x 584, 585 (3d Cir. 2021); *see also Caterbone v. Lancaster City Bureau of Police*, Civil Action No. 18-CV-2710, 2018 WL 3549266 at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings."). The Court addresses Counts VIII and IX in turn, and for the reasons set out below, finds that both counts should be dismissed against Moving Defendants because they rely upon criminal statutes for which there is no private right of action.

### A. Count VIII

**\*4** Count VIII is entitled "CONSPIRACY TO VIOLATE CIVIL RIGHTS U.S. CONST. AMENDS. 18 U.S.C. § 242." (Doc. No. 1 at ¶¶ 396–401.) The statute to which Plaintiff cites—18 U.S.C. § 242—is a federal statute that criminalizes the deprivation of federally protected rights by government officials.[18] Plaintiff alleges that Moving Defendants acted "under color of law" and "conspired to convert constitutionally protected rights under the Fourth Amendment, and the First Amendment .... [and] the Fourteenth Amendment.... in to [sic] suspicious conduct [or] a criminal act" in violation of 18 U.S.C. § 242. (*Id.* at ¶¶ 397–98.) Liberally construing his allegations, Plaintiff appears to claim that Moving Defendants violated his First, Fourth, and Fourteenth Amendment rights by corresponding with Chester County law enforcement about Plaintiff's interactions with the Octorara School Board and implying that Plaintiff's behavior at school board meetings was suspicious or criminal in nature. Plaintiff alleges that this conspiracy to criminalize the exercise of his constitutional rights runs afoul of 18 U.S.C. § 242.

But as Moving Defendants correctly point out, Plaintiff "cannot bring a civil claim under 18 U.S.C. § 242 because § 242 creates no private right of action and none can be implied." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 639 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (citing *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) ("[W]e agree with the District Court's dismissal of the 18 U.S.C. § 241 and § 242 claims. Neither statute creates a civil cause of action.")). Indeed, the Third Circuit has expressly declined to infer a civil cause of action under 18 U.S.C. § 242 because a statutory civil remedy already exists under 42 U.S.C. § 1983 for individuals whose constitutional rights have been violated.[19] *See United States v. City of Philadelphia*, 644 F.2d 187, 191–93 (3d Cir. 1980), overruled on other grounds, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993) ("Persons denied constitutional rights may sue state officials for damages or injunctive relief under 42 U.S.C. §§ 1981, 1982, 1983, and 1985."); *see also Colon-Montanez v. Pa. Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (confirming that 18 U.S.C. § 242, "which criminalizes the deprivation of rights under color of law" provides "no private right of action for use" by a civil litigant).[20]

**\*5** Courts in this District have consistently followed this precedent by holding that § 242 cannot be a basis for remedy

in a civil suit. *See Hall v. Sampson*, No. 21-CV-4839, 2022 WL 2068248, at *2 n.2 (E.D. Pa. June 8, 2022) ("[A] plaintiff cannot bring criminal charges against defendants through a private lawsuit, and these sections [18 U.S.C. §§ 241, 242] do not give rise to a civil cause of action."); *Walthour v. Herron*, No. CIV.A.10-01495, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) ("It is clear that none of the criminal statutes [18 U.S.C. §§ 241, 242] cited by Plaintiff provide him with a private right of action."); *McCauley v. Computer Aid Inc.*, 447 F. Supp. 2d 469, 477 (E.D. Pa. 2006) ("It is well-settled that these criminal statutes [18 U.S.C. §§ 241, 242] cannot be the bases for remedy in a civil suit."), *aff'd*, 242 F. App'x 810 (3d Cir. 2007); *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001) ("[T]he Court deems the Plaintiff's claim for relief pursuant to 18 U.S.C. §§ 241–242 unmeritorious because those statutes do not create a civil cause of action enforceable by the Plaintiff."); *Dunyan v. Jackson*, No. CIV.A. 86-1894, 1986 WL 4810, at *1 (E.D. Pa. Apr. 22, 1986) ("Civil liability may not be based on these statutes [18 U.S.C. §§ 241, 242]."); *Shaffer v. Jennings*, 317 F. Supp. 446, 447 n.2 (E.D. Pa. 1970) ("[18 U.S.C. §§ 241, 242], which provide for punishment by fine or imprisonment for deprivation of certain Federal rights, privileges or immunities, have no application to a civil suit under the Federal Civil Rights Act, 42 U.S.C. § 1981 *et seq.*").

The Court is compelled to find that, as a matter of law, 18 U.S.C. § 242 does not provide Plaintiff with a private right of action. Therefore, Count VIII must be dismissed for failure to state a claim upon which relief may be granted.

## B. Count IX

Count IX is entitled, "DESTRUCTION OF PUBLIC RECORDS IN VIOLATION OF 18 U.S.C. § 2071." (*Id.* at ¶¶ 402–04 (emphasis in original).) The statute to which Plaintiff cites—18 U.S.C. § 2071—is a federal statute that criminalizes the destruction of public records. [21] Plaintiff alleges that "Defendants identified [in] Defendant Matrix under Claim 9, in response to a public record request, was [sic] denied such a record exists. Plaintiff [sic] evidence reveals that a document does exist and that the Defendants in ability [sic] to produce such document ... affirmed the nonexistence of a public record. Named defendants operated in their own capacity to destroy a public record, which included exculpatory information, in addition to fabrications to malign, defame, slander, the lawful actions of the Plaintiff." (*Id.* at ¶¶ 403–04.) Plaintiff appears to allege that Chester County law enforcement officials emailed local police departments

and security personnel about Plaintiff's grievances with the Octorara School Board, and when Plaintiff requested documentary proof of any responses to that email, his RTKL requests on this subject did not produce any documents. Plaintiff claims that these documents were not produced because they were destroyed by Moving Defendants.

**\*6** Again, Plaintiff seeks a civil remedy under a criminal statute that does not provide a private right of action. Courts both in and outside of this Circuit have held that 18 U.S.C. § 2071 cannot be invoked in a civil suit. *See James v. N.J. Dep't of Health & Senior Servs.*, No. 318CV10461BRMTJB, 2020 WL 5758154, at *6 (D.N.J. Sept. 28, 2020), *aff'd*, No. 20-3038, 2022 WL 1564191 (3d Cir. May 18, 2022) (dismissing civil claim under § 2071 because there was no private right of action available to a plaintiff under the statute); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (holding there is no private right of action arising under § 2071); *see also Trapp v. State*, No. 320CV10404BRMZNQ, 2021 WL 2680244, at *8 n.10 (D.N.J. June 30, 2021) (relying on *Dugar* in finding that no private right of action is available under § 2071); *Winston v. Daniels*, No. 1:10-CV-74-SJM, 2011 WL 2680282, at *16 (W.D. Pa. July 8, 2011) (citing *Dugar* for the proposition that there is no civil remedy for § 2071). In light of this precedent, the Court finds that Plaintiff cannot seek relief under 18 U.S.C. § 2071 for Moving Defendants' alleged destruction of public records. Therefore, Count IX must be dismissed for failure to state a claim upon which relief may be granted.

Moreover, to the extent Plaintiff challenges Moving Defendants' failure to provide public records requested pursuant to the RTKL, the Court lacks jurisdiction over this claim "because state courts provide the exclusive forum for litigating under that statute." *Olick v. Pennsylvania*, No. CV 15-5786, 2016 WL 6679880, at *4 (E.D. Pa. Nov. 14, 2016), vacated in part on other grounds, 739 F. App'x 722 (3d Cir. 2018) (quoting *Hill v. Supervisor*, No. 97–cv–4996, 1998 WL 175879, at *2 (E.D. Pa. Apr. 8, 1998)); *McCullough v. County of Allegheny*, No. CV 16-534, 2016 WL 7116640, at *2 (W.D. Pa. Dec. 7, 2016) (federal courts lack jurisdiction to compel the production of documents requested under the RTKL); *Degenes v. Mueller*, No. CIV.A. 11-916, 2012 WL 260038, at *3 (W.D. Pa. Jan. 27, 2012) (granting motion to dismiss plaintiff's RTKL claim for lack of subject matter jurisdiction).

Chapter 11 and 13 of the RTKL provide the appropriate method of relief when a state agency denies a citizen's document request. *See* 65 PA. CONS. STAT. §§ 67.1101–

67.1310. Plaintiff must first file an appeal with "the Office of Open Records or judicial, legislative or other appeals officer" to review the agency's denial. *Id.* § 67.1101. Plaintiff may seek judicial review of that appeal with either the Commonwealth Court (if the document is in the custody of a Commonwealth agency) or the Court of Common Pleas for the county where the local agency is located (if the document is in the custody of a local agency). *Id.* §§ 67.1301, 67.1302. This statutory remedy is exclusive; it does not permit judicial review at the federal level. *See Proffitt v. Davis*, 707 F. Supp. 182, 188 (E.D. Pa. 1989) ("Thus, original exclusive jurisdiction to entertain review of action denying a citizen's access to information within the control of the DER lies in the Commonwealth Court of Pennsylvania, not in the United States District Court for the Eastern District of Pennsylvania."); *see also Wiley v. Woods*, 141 A.2d 844, 849 n.9 (Pa. 1958) (confirming that the RTKL's judicial review provision "provides the exclusive remedy to a person denied the right of examination and inspection of public records."). For these reasons, Count IX dismissed on this alternative basis. [22]

### C. Leave to Amend

The Court acknowledges that, especially in civil rights cases, *pro se* plaintiffs are usually afforded an opportunity to amend a complaint. *See Brayboy v. Johnson*, No. CV 17-4371, 2018 WL 6018863, at *18 (E.D. Pa. Nov. 16, 2018) (citing *Alston v. Parker*, 363 F.3d 229, 235–36 (3d Cir. 2004)). But "a district court need not permit a curative amendment if such an amendment would be inequitable or futile, or there has been some showing of bad faith, undue delay, or prejudice." *Id.*; *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("If a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *White v. Bush*, No. CV 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3, 2021) (*quoting Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008)); *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 271 n.6 (3d Cir. 2020) ("The standard for assessing futility is the same standard of legal sufficiency as applies under ... 12(b)(6)."). Where leave to amend would not cure a plaintiff's failure to state a plausible claim for relief, the district court may dismiss the claim with prejudice. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703–04 (3d Cir. 1996).

**\*7** Courts have routinely denied leave to amend for claims brought under criminal statutes because amendment would be futile. *See Brown v. City of Phila. Office of Human Res.*, 735 F. App'x 55, 56 n.2 (3d Cir. 2018) (finding the district court did not err in denying leave to amend where plaintiff asserted civil violations of criminal law); *Mikhail*, 991 F. Supp. 2d at 639–40 ("As there is no meritorious argument under any theory that would give Mr. Mikhail the authority to bring suit, criminal or civil, under 18 U.S.C. § 242, his claims in Counts I and II brought pursuant to § 242 must be dismissed with prejudice."); *Molina*, 159 F. Supp. 2d at 823 (dismissing plaintiff's claims under 18 U.S.C. §§ 241–242 with prejudice); *Johnson v. Koehler*, No. 3:14-CV-1490, 2015 WL 1470948, at *21 (M.D. Pa. Mar. 31, 2015) (dismissing claim brought under 18 U.S.C. § 1622 with prejudice, as "there is no private action for damages to enforce federal perjury statutes"); *Winston v. Daniels*, No. 1:10-CV-74-SJM, 2011 WL 2680282, at *16 (W.D. Pa. July 8, 2011) (denying leave to amend plaintiff's claims brought under criminal statutes because they "suggest no basis for the existence of a viable legal claim"); *cf. Ford v. Se. Pa. Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010) (affirming district court's dismissal of claim without leave to amend because the claim was "without any viable legal basis" given that "no private right of action lies against a state actor under § 1981"); *Shrieves v. Phila. Facilities Mgmt. Corp.*, No. CV 19-4865-KSM, 2020 WL 7240450, at *8 n.12 (E.D. Pa. Dec. 8, 2020) (denying leave to amend claim made under § 1981 because "Section 1983 remains the exclusive remedy for violations of Section 1981 by a state actor.").

The statutes cited in Counts VIII and IX do not provide private causes of action. Moreover, federal court is not the proper forum for Plaintiff's sought-after relief under the RTKL. Even if the Court granted leave to amend, Plaintiff cannot state a plausible claim for relief under either statute. For this reason, amendment would be futile. Accordingly, Counts VIII and IX are dismissed against Moving Defendants without leave to amend.

### V. CONCLUSION

For these reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted in Counts VIII and IX and Moving Defendants' motions to dismiss are granted. An appropriate Order follows.

### All Citations

Slip Copy, 2023 WL 2743564

## Footnotes

1       Several defendants also filed replies in support of their motions. (*See* Doc. Nos. 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 247.)

2       The Court recently recounted the facts of this case at length in a Memorandum Opinion published on February 8, 2023. (Doc. No. 254.)

3       Plaintiff's engagement was "related to parental concerns, regarding actions/consequences, resulting from policy enforcement, mandates, guidelines and other harms which children were experiencing within Octorara School District through their administration and actions through elected School Board members." (Doc. No. 1 at ¶ 38.)

4       At the end of his Complaint, Plaintiff attached a "Defendant Matrix" that identifies the specific claims brought against each defendant. (Doc. No. 1 at 100–01.) There appears to be a typographical error in Plaintiff's "Defendant Matrix." Although it includes a "Count XI," there is no Count XI articulated in the body of the Complaint.

5       The remaining five defendants against whom Plaintiff also brings only Counts VIII and IX are: Gerald Bonmer, Matt Williams, Sanjay Bridges, John Frye, and Raymond Stevenson. Defendant Bonmer filed a motion for more definite statement in this case, which the Court denied, and subsequently ordered Defendant Bonmer to respond to Plaintiff's Complaint by April 17, 2023. (Doc. Nos. 255, 272.) Defendants Williams, Bridges, and Frye were dismissed on February 22, 2023 for lack of prosecution, due to Plaintiff's failure to timely serve the Complaint. (Doc. No. 273.) And Defendant Raymond Stevenson filed a motion to dismiss in conjunction with Defendants Erin Burlew, Kevin Kochka, Melissa Laughlin, Andrew Lovette, William Rozier, Rachel Zeltman, and Sharon Maitland. (Doc. No. 206.) That motion is still under advisement.

6       Plaintiff brings either Count VIII or Count IX, or both, against the Moving Defendants. The Court need not specify which counts are brought against which defendants because, as explained within, neither Count VIII nor Count IX are viable causes of action.

7       Defendant Laufer responded to Counts X, VIII, IX and X in his motion to dismiss. (*See* Doc. No. 147 at 6–8.) But according to the Defendant Matrix, Defendant Laufer has only been named in Count IX. (*See* Doc. No. 1 at 100.)

8       Defendant Carbo is incorrectly identified as "Georgene D'Carbo" in the Complaint. (Doc. No. 168 at 2.)

9       Defendant Swinginger is incorrectly identified as "Michael Swininger" in the Complaint. (Doc. No. 178 at n.11.)

10      Defendant Harpel is incorrectly identified as "Jeassica Harper" in the Complaint. (Doc. No. 181 at 8.)

11      Defendant Zavala is incorrectly identified as "Maria Avala" in the Complaint. (Doc. No. 184 at 3.)

12      Defendant White's motion to dismiss was filed on December 5, 2022. (Doc. No. 188.) The following day, he filed a praecipe to substitute his brief due to an error in his original filing. (Doc. No. 205.) The Court will construe Defendant White's substituted brief as the operative document in considering Defendant White's motion.

13      Defendant Benson was mistakenly named twice in the Complaint and in the "Defendant Matrix." (Doc. No. 1 at 4, 101.)

14    Defendant Marcelli was mistakenly named twice in the Complaint and in the "Defendant Matrix." (Doc. No. 1 at 3, 100.)

15    Defendant Finfrock was mistakenly named twice in the Complaint and in the "Defendant Matrix." (Doc. No. 1 at 2, 100.)

16    The Court acknowledges that Moving Defendants have made additional arguments for dismissal based on Article III standing, Rule 8(a)(2)'s "short and plain statement" requirement, improper service, and qualified immunity. Here, because the Court finds that Counts VIII and IX fail to state a claim upon which relief can be granted as Plaintiff's claims invoke criminal statutes, the Court need not address any alternative arguments raised in these motions to dismiss.

17    Plaintiff also filed hundreds of pages of "exhibits" on the docket, which he claims support his opposition to Moving Defendants' motions. (*See* Doc. Nos. 149, 172, 214.) But "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

18    18 U.S.C. § 242 reads, in its entirety:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

19    Plaintiff's Complaint illustrates that he is aware that the proper avenue for seeking relief for an alleged constitutional deprivation is 18 U.S.C. § 1983, as he cites that statute in Counts I, II, III, IV, V, VI, and VII. Nonetheless, he did not attempt to utilize 18 U.S.C. § 1983 in Count VIII or otherwise name the Moving Defendants under other Counts.

20    The court in *Mikhail* noted that, "No sister circuit has reached a contrary conclusion" as to the lack of private remedy under § 242. 991 F. Supp. 2d at 639 & n.34 (citing *Pope v. Thornburgh*, 978 F.2d 744 (D.C. Cir. 1992) (table opinion); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960); *Ali v. Shabazz*, 8 F.3d 22 (5th Cir. 1993) (table opinion); *Owens v. Johnson*, 191 F.3d 452 (6th Cir. 1999) (table opinion); *Nasserizafar v. Ind. Dep't of Transp.*, 546 F. App'x 572, 573–74, No. 13–1827, 2013 WL 5421674, at *1 (7th Cir. Sept. 30, 2013); *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) (addressing 18 U.S.C. § 241, but following *Cok*, 876 F.2d at 2, and citing language regarding both §§ 241 and 242); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Houck v. Gurich*, 515 F. App'x 724 (10th Cir. 2013)).

21    18 U.S.C. § 2071 reads, in its entirety:

> (a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned

not more than three years, or both. (b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term 'office' does not include the office held by any person as a retired officer of the Armed Forces of the United States.

22    "The dismissal is without prejudice to plaintiff's right to file the claims in the appropriate forum." *Olick*, 2016 WL 6679880, at *4 (citing *Degenes v. Mueller*, 2012 WL 260038, at *3).

---

**End of Document**                                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2344626
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Maurice A. PETTWAY, Plaintiffs,
v.
CITY OF VINELAND; Detective Gamaliel "Gami"
Cruz; Police Chief Timothy Codispoti; Officer Robert
Magee; Officer Charles Mackaffee; Officer Victor
Rizzo; Officer Robert Dimarchi; Officer Felipe Laboy;
John Does 1–10; and Jane Does 1–10, Defendants.

Civil Action No. 13–470 (JEI/JS).
|
Signed May 14, 2015.

**Attorneys and Law Firms**

Begelman Orlow & Melletz, by: Paul R. Melletz, Esq., Cherry
Hill, NJ, for Plaintiffs.

Barrett and Pavluk, LLC, by: Judson B. Barret, Esq., Ocean,
NJ, for Defendants City of Vineland & Police Chief Timothy
Codispoti.

The MacMain Law Group, LLC, by: Brian H. Leinhauser,
Esq., Charles R. Starnes, Esq., Malvern, PA, for Defendants
Gamaliel "Gami" Cruz, Charles Mackafee, Victor Rizzo,
Robert DiMarchi, and Felipe Laboy.

Law Office of William P. Flahive, by: William P. Flahive,
Esq., Lambertville, NJ, for Robert Magee.

**OPINION**

IRENAS, Senior District Judge.

**\*1** Plaintiff Maurice Pettway brought this civil rights action
against the City of Vineland, Vineland's Police Chief, and
individual police officers based on an allegedly malicious
prosecution of Plaintiff.

Currently pending before the Court are three separate motions
for summary judgment filed by Defendants.[1] In addition,
Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy
have moved for sanctions under Rule 11 against Plaintiff and
Plaintiff's former counsel, Paul Melletz, Esq. of Begelman
Orlow & Melletz.

For the reasons explained herein, Defendants' motions for
summary judgment will be **GRANTED.** The motion for
sanctions will be **GRANTED** as to Plaintiff, but **DENIED** as
to Mr. Melletz.

**I. FACTS**

The Court recites those facts relevant to the pending
motions.[2]

On August 5, 2010, a confidential informant called Defendant
Detective Gamliel Cruz at the Vineland Police Department
with a tip that a black male subject would be driving a gold-
colored Lincoln LS with NJ tags ZMH10V that day, and
that this individual would be in possession of a firearm or
cocaine hidden in the car. (Defs. Cruz, et al.'s Statement of
Relevant Undisputed Facts ("D.S.F.") at ¶ 1)[3] The informant
also stated that this individual would be wearing khaki shorts
and a grey and white striped shirt, and that the car would be
parked in front of 119 W. Grape St. in the City of Vineland.
(Id.) Defendant Officer Robert Magee claims he overheard
the conversation and said that he would respond to the area.
(Magee Police Rpt. at 1, Ex. 3 to Defs. Cruz, et al.'s Motion)

At the Grape St. address, Defendant Magee found the
Lincoln and observed a man, who matched the informant's
description, and a woman, who Magee recognized from prior
narcotics investigations as Erica Santiago, enter the Lincoln.
(Id.) Magee followed the vehicle and decided to conduct
a motor vehicle stop. (Id.) After asking the driver for his
license and registration, Magee identified the man as Maurice
Pettway. (Id. at 2)

Defendant Officer Felipe Laboy, who assisted in the
motor vehicle stop, informed Magee that Santiago had an
outstanding warrant for her arrest.[4] (Id.) As Magee placed
Santiago under arrest, K9 Officer Charles Mackafee, whom
Magee had also called to the scene, arrived with his K9
partner. (Id.) The ensuing dog-sniff indicated an odor of
narcotics coming from the vehicle's driver-side front door.
(Id. at 5–6) Plaintiff refused to consent to a search of the
car and the officers sent for a tow truck. (D.S.F.¶ 7) The
officers impounded the vehicle and transported both Plaintiff
and Santiago to the Vineland Police Department. (Id. ¶¶ 7–8)
At some point Magee learned that there was a Pennsylvania
detainer warrant out on Plaintiff and that Plaintiff had four

prior felony convictions. (*Id.* ¶¶ 8, 16; M. Pettway NJ Criminal History Rpt., Ex 12 to Defs. Cruz, et al.'s Motion) After arriving at the police station, Santiago paid the amount outstanding on her warrant and was released. (*Id.*) Plaintiff was processed and transported to the Cumberland County Jail. (Magee Police Rpt. at 2)

**\*2** On August 6, 2010, Magee applied for, and was granted, a search warrant for the car Plaintiff had been driving. (Magee Aff. in Support of Search Warrant for Pl.'s Vehicle at 4, Ex. 1 to Defs. Cruz, et al.'s Motion) Magee, along with Defendant Officers DiMarchi and Rizzo, executed the search warrant that same day. (D.S.F.¶ 10) In the car's glove box, they discovered a hidden compartment behind the dashboard that contained a black handgun and loaded magazine. (*Id.*) On the floor of the vehicle, the officers found a marijuana grinder and scale concealed in a fake energy drink can. (*Id.* ¶ 11) Last, they found numerous blue wax bags in the trunk of the car. (*Id.* ¶ 12) The officers ran the gun's serial number through the National Crime Information Center and found out that the gun had been reported as stolen. (Magee Police Rpt. at 2) Magee then contacted the Vineland Municipal Court Clerk and asked her to authorize warrants for Plaintiff for the following charges: (1) unlawful possession of a weapon, (2) possession of a weapon by a convicted felon, and (3) receiving stolen property. (*Id.*) Magee also sought a summons for Plaintiff for possession of drug paraphernalia. (*Id.*) Ms. Santiago was charged with receiving stolen property, unlawful possession of a weapon, and possession of drug paraphernalia. (D.S.F.¶ 18)

Although the circumstances are not entirely clear from the parties' submissions, it appears that Plaintiff's criminal charges were terminated in Plaintiff's favor some time before June 2012, when Plaintiff retained Mr. Melletz as counsel. [5] On January 24, 2013, Plaintiff filed the instant suit asserting claims for malicious prosecution and conspiracy to violate his civil rights against Defendants Magee, Cruz, Mackafee, Rizzo, DiMarchi, and Laboy (collectively, "Officer Defendants"), and municipal liability claims against Defendant Police Chief Codispoti and the City of Vineland (collectively, "Municipal Defendants"). [6] The Complaint alleges that the officers fabricated evidence in order to institute false charges against Plaintiff without probable cause. (Compl.¶¶ 38–40)

Mr. Melletz obtained copies of Officer Defendants' police reports on May 24, 2013. On October 15, 2013, Defense counsel sent Mr. Melletz a letter stating that Plaintiff's case

was without merit and informing Mr. Melletz that Defendants would seek fees and costs under Rule 11 if Plaintiff did not promptly dismiss the case. (10/15/2013 Ltr., Ex. 19 to Defs. Cruz, et al.'s Motion) Mr. Melletz responded that he and Plaintiff believed there to be a reasonable basis for the suit and would not drop the case. (11/6/2013 Ltr., Ex. 20 to Defs. Cruz, et al.'s Motion) Defendants then filed their first motion for Rule 11 sanctions on January 7, 2014, which the Court dismissed without prejudice. [7] (Order Dismissing Without Prejudice Motions for Sanctions, Docket No. 39) Plaintiff's opposition to that motion, submitted on February 4, 2014, included a statement of facts signed by Mr. Melletz and a Certification from Plaintiff stating that the police had planted the gun in the car.

**\*3** On April 2, 2014, Mr. Melletz received new evidence from Defense counsel that caused him to doubt his client's truthfulness. (Melletz Counter Statement of Material Facts ("M.C.S.F.") at ¶ 17) Apparently, in the weeks following his initial detention, Plaintiff made a number of phone calls from prison to Ms. Santiago. Recordings of these calls, which Defendants obtained after subpoenaing the Cumberland County Prosecutor's Office, show Plaintiff's concerns over both the discovery of the gun and the charges brought against Ms. Santiago. (See Pettway Prison Calls, Exs. 21 & 22 to Defs. Cruz et al.'s Motion) On August 8, 2010, Plaintiff tells Ms. Santiago to "get out the house" because "they found it" and brought charges against both him and Ms. Santiago. (*Id.,* Call No. 881V10J8.v10) During further calls on August 8 and 9, Plaintiff says that he will take all the charges and agrees to write an affidavit "so [Santiago] cannot be charged." (*Id.,* Call Nos. 881V10JC. v10, 891S1003.v10) He says that someone must have snitched on him. (*Id.,* Call No. 881S101D.v10) When Ms. Santiago asks who knew that he "carr[ied] that there," Plaintiff explains that he "got that from Mike.... He gave me that gun." (*Id.*) At one point, acknowledging that the calls were being recorded, Plaintiff says: "I know they listening. That was my gun. Period. (*Id.,* Call No. 891U10Z4.v10)

After receiving the recordings, Mr. Melletz informed the Court that this new evidence placed his office into an "unresolvable conflict" (4/28/2014 Ltr., Docket No. 41), and subsequently filed a motion to withdraw from the case, which the Court granted on June 5, 2014 (Order Granting Motion to Withdraw, Docket No. 56).

Municipal Defendants filed their motion for summary judgment on January 8, 2015, and Officer Defendants

followed with their own motions for summary judgment on January 9, 2015. Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy also moved for sanctions pursuant to Rule 11. Despite being given additional time to file a response, [8] Plaintiff has not submitted any opposition to Defendants' motions. Mr. Melletz filed a separate opposition to the motion for sanctions. (Melletz Opp., Docket No. 77)

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir.1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252.

**\*4** The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence,* 396 F.3d 314, 319 (3d Cir.2005). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson,* 477 U.S. at 249.

Courts may not automatically grant a motion for summary judgment when the opposing party fails to respond. *See Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990) ("Even though Rule 56(e) requires a nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial,' it is 'well-settled ... that this does not mean that a moving party is automatically entitled to summary judgment if the

opposing party does not respond.' ") (quoting *Jaroma v. Massey,* 873 F.2d 17, 19–20 (1st Cir.1989). "The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate.' " *Muskett v. Certegy Check Servs., Inc.,* No. 08–3975 (JBS/JS), 2010 WL 2710555, at \*3 (D.N.J. July 6, 2010). Where, as here, "the moving party does not have the burden of proof on the relevant issues, ... the district court must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." *Anchorage Assocs.,* 922 F.2d at 175.

## III. Analysis

The Court will first address Defendants' motions for summary judgment on Plaintiff's claims before turning to the Rule 11 motion for sanctions.

### A. Plaintiff's Claims

#### 1. Malicious Prosecution

Counts I and II of the Complaint assert malicious prosecution claims against Officer Defendants under § 1983 and New Jersey State law. Plaintiff alleges that Defendant Cruz filed false charges against Plaintiff without probable cause, that Defendant Magee filed false reports and fabricated evidence on which county prosecutors relied, and that the remaining Officer Defendants knew the charges were false but failed to disclose that fact. (Compl.¶¶ 38–41) Since Plaintiff has failed to present any evidence to support these allegations, and Plaintiff's own statements contradict the them, the Court will grant Officer Defendants' motions for summary judgment on the malicious prosecution claims.

The Third Circuit requires a plaintiff to prove the following in order to prevail in a § 1983 malicious prosecution action:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

**\*5** (3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phila.,* 582 F.3d 447, 461 (3d Cir.2009). The standard for malicious prosecution under New Jersey State law mirrors these elements, excepting the fifth requirement.[9] Here, Plaintiff has not provided sufficient evidence to show that Officer Defendants lacked probable cause.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000).[10] In the context of malicious prosecution claims, courts must examine each offense charged for probable cause. *See Johnson v. Knorr,* 477 F.3d 75, 85 (3d Cir.2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges is justified.").

Plaintiff faced charges for unlawful possession of a weapon, possession of a weapon by a convicted felon, possession of drug paraphernalia, and receiving stolen property. Officer Defendants argue that they had clear probable cause to bring each of these charges. Upon executing a search warrant of the vehicle Plaintiff had been driving, the officers found a stolen handgun and loaded magazine hidden in the glove compartment. They also found two marijuana grinders and numerous small plastic baggies. Finally, Plaintiff's criminal history includes felony convictions. Based on these facts and circumstances, a reasonable officer in Officer Defendants' position would believe that Plaintiff had committed each of the charged offenses.

As mentioned above, Plaintiff has not filed any opposition to the instant motions. The Complaint indicates Plaintiff's belief, in contradiction with Defendants' statement of facts, that Defendant Officers "planted" the gun and drug-related evidence in the car and therefore had no legitimate probable cause to charge Plaintiff based on such evidence. However, considering Plaintiff's own admissions in the prison calls

made to Ms. Santiago, the Court finds no genuine dispute of fact here.

Plaintiff states quite clearly during his conversations with Ms. Santiago that the gun belonged to him.[11] The recordings eliminate any dispute of fact as to whether Defendants planted the evidence that gave the officers probable cause to bring the relevant charges. It being undisputed that the officers found a firearm, ammunition, and drug paraphernalia in a vehicle driven by a convicted felon, no reasonable jury could determine that Defendant Officers lacked probable cause to bring the relevant charges against Plaintiff. Plaintiff's § 1983 and New Jersey State law malicious prosecution claims must therefore fail.

### 2. Civil Rights Conspiracy

**\*6** To prove a civil rights conspiracy claim, Plaintiff must show that he suffered an actual deprivation of his constitutional rights. *See Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir.1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right ."); *Fioriglio v. City of Atlantic City,* 996 F.Supp. 379, 385 (D.N.J.1998) ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983."). Here, Plaintiff's conspiracy claim relies on his underlying malicious prosecution claim. Since the Court holds that Plaintiff cannot prove his malicious prosecution claim, the conspiracy claim must fail as well.

### 3. Municipal Liability

In Counts IV and V of the Complaint, Plaintiff asserts § 1983 supervisory and municipal liability claims against Police Chief Timothy Codispoti and the City of Vineland for policies or customs responsible for the malicious prosecution Plaintiff alleges he suffered. (Compl. at 14–16) The Court will grant Municipal Defendants summary judgment on both counts.

First, the Court notes that Plaintiff brings his claim against Defendant Codispoti in Codispoti's official capacity only. (Compl.¶ 10) The Supreme Court has opined that official capacity claims, as opposed to claims brought against officials in their individual capacity, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358,

116 L.Ed.2d 301 (1991). Courts should therefore treat suits against state officials in their official capacity "as suits against the State." *Id.* "A suit against the Chief of Police in his official capacity is really a claim against the police department and, in turn, the municipality." *Cordial v. Atlantic City,* No. 1:11–cv–01457 (RMB/AMD), 2014 WL 1095584, at *9 (D.N.J. March 19, 2014).

A municipality may be liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To succeed on a municipal liability claim, however, a plaintiff must have suffered some underlying violation of his constitutional rights for which the municipality is to blame. *See Mulholland v. Gov't County of Berks, Pa.,* 706 F.3d 227, 238 n. 15 (3d Cir.2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Since no reasonable jury could find an underlying constitutional violation, i.e. malicious prosecution, Plaintiff's municipal liability claims must be dismissed.

### B. Rule 11 Sanctions

The Court will deny Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy's motion for sanctions against Plaintiff's former counsel, Paul Melletz, Esq., but will grant the motion as it applies to Plaintiff.

**\*7** Rule 11 states, in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument

for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11. If a party or its counsel violates this provision, the opposing party may move for the imposition of sanctions, which may include an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed.R.Civ.P. 11(c).

The goal of Rule 11 is the "correction of litigation abuse." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987). "[S]anctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required." *Id.* Generally, sanctions are warranted "only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.3d 277, 289 (3d Cir.1991) (citing *Doering v. Union Cnty. Bd. Of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). As indicated by the Rule, a court must look to whether an attorney's or party's representations to the court were reasonable under the circumstances. *Bus. Guides v. Chromatic Commc'ns Ent.,* 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.,* 889 F.2d 490, 496 (3d Cir.1989). "When the attorney reasonably relies upon the misrepresentations of a client, the client not the attorney should be sanctioned under Rule 11." *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.,* No. CIV. A. 97–7430, 1999 WL 675469, at *4 (E.D.Pa. Aug.31, 1999). "Counsel is permitted to assume his client is honest with him unless and until circumstantial evidence is obviously to the contrary." *Id.* at *6.

Defendants argue that Mr. Melletz continued to pursue the litigation despite being provided with evidence that his client's claims were frivolous. Specifically, Mr. Melletz had received copies of reports authored by Officer Defendants,

which detail how and where the officers discovered the gun and drug paraphernalia in Plaintiff's vehicle.

**\*8** Mr. Melletz denies that he knew Plaintiff's allegations —that the police had planted the gun and drug paraphernalia in the car—were false until April 2, 2014, when Defense counsel sent Mr. Melletz recordings of Plaintiff's prison calls. (Melletz Opp. at 9–10) Up to that point, Mr. Melletz relied on his client's version of the events. (*Id.*) After listening to the recordings, on April 28, 2014, Mr. Melletz sent a letter to the Court stating that there was an "unresolvable conflict" necessitating his filing a motion to withdraw from the case. (See Docket No. 42) Mr. Melletz filed the motion on May 7, 2014, and the Court granted the motion on June 5, 2014. Mr. Melletz states, and the docket reflects, that he did not file any further papers with the Court between April 2, 2014, and his withdrawal from the case that could lead to Rule 11 sanctions. [12]

In support of the reasonableness of his continued belief of Plaintiff's story, Mr. Melletz argues that the police reports did not prove that Plaintiff's story was false. Plaintiff's entire case, which centered on a malicious prosecution claim, was premised on Officer Defendants' having lied and fabricated evidence in order to pursue charges against Plaintiff. It was to be expected that the police reports would counter Plaintiff's claims. Mr. Melletz points to inconsistencies in the police reports regarding the information provided to Officer Defendants by the confidential informant that lead to Plaintiff's initial arrest. [13] In addition, the vehicle Plaintiff had been driving was registered to a third-party, which supported Plaintiff's contention that the items in the car did not belong to him.

The Court does not find this to be the exceptional case that warrants sanctions against Plaintiff's counsel and will deny the Rule 11 motion as it applies to Mr. Melletz. However, Plaintiff clearly knew that Officer Defendants did not plant the gun in his vehicle, and that each of his claims, which rely the allegation that police fabricated evidence, were frivolous. Rule 11(c)(1) states that a court may impose appropriate sanctions "on any attorney, law firm, *or party* that violated [Rule 11(b) ] *or is responsible for the violation."* Fed.R.Civ.P. 11(c)(1) (emphasis added). Here, Plaintiff is responsible for numerous submissions to the Court that contain patently false factual contentions. The Court will therefore grant the Rule 11 motion against Plaintiff.

Defendants ask for an award of sanctions to "compensate the Officer Defendants for costs, attorney's fees, and damage to Defendants' reputations." (Defs. Cruz, et al.'s Motion at 16) However, Rule 11 sanctions are meant "to deter, not to compensate." *DiPaolo v. Moran,* 407 F.3d 140, 145 (3d Cir.2005). Defendants may submit an itemized petition for reasonable attorneys' fees and costs within 20 days. After reviewing Defendants' submission, the Court will determine an appropriate award.

### IV. Conclusion

**\*9** For the reasons set forth above, the Court will grant Defendants' motions for summary judgment. Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Leboy's motion for Rule 11 sanctions will be denied as to Plaintiff's former counsel, but granted as to Plaintiff. An appropriate Order accompanies this Opinion.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 2344626

---

## Footnotes

1   The City of Vineland and Police Chief Codispoti filed one motion, Officer Magee his own motion, and the remaining officers a third motion.

2   Plaintiff, who has proceeded pro se since June 5, 2014, has not filed any opposition to Defendants' motions. Plaintiff's former counsel, Paul Melletz, Esq., has filed a responsive statement of facts as it applies to the pending motion for sanctions. To the extent Mr. Melletz's submission does not challenge Defendants'

statement of material facts not in dispute, the Court deems Defendants' statement of facts undisputed with regards to the instant summary judgment motions.

3   Although they filed separate motions for summary judgment, Defendants Magee, Codispoti, and City of Vineland have adopted the facts set forth in their co-Defendants' motion.

4   Magee's report does not detail the basis for the arrest warrant. It states only that "Santiago had an outstanding warrant out of Franklin Twp (warrant number # SP4324683) for the amount of $39." (Magee Rpt. at 2)

5   Based on prior submissions in the record, its seems that Mr. Pettway's criminal case was one of many the Cumberland County Prosecutor dismissed with prejudice following revelations regarding Defendant Cruz's behavior in an unrelated case. In their motions for summary judgment, Defendant Officers do not argue that Plaintiff's criminal proceedings did not end in Plaintiff's favor (an element of the malicious prosecution claim).

6   The Complaint did not challenge the original traffic stop, Plaintiff's initial detention, or the vehicle search. In May 2014, Plaintiff made a motion to amend the Complaint to include an unlawful seizure claim. (Docket No. 48) The Court denied the motion without prejudice. (Docket No. 55)

7   The Court declined to rule on the merits of the case couched within a Rule 11 motion rather than on motions for summary judgment.

8   The Court granted Plaintiff's pro se letter request for time to file an opposition. (Docket No. 85)

9   Specifically, "[a] civil action based upon the malicious prosecution of a criminal complaint may be sustained only with proof (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson v. Wal–Mart Stores, Inc.,* 373 N.J.Super. 522, 530, 862 A.2d 1156 (App.Div.2004) (internal quotations omitted)

10  Similarly, New Jersey courts have defined probable cause as "facts such as to lead a person of ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made." *Brunson v. Affinity Fed. Credit,* 199 N.J. 381, 398, 972 A.2d 1112 (2009).

11  While Plaintiff also acknowledges the fact that the calls were recorded and emphasizes for those listening that the gun was his and not Ms. Santiago's, the Court does not take such statements as merely evidence of Plaintiff's chivalrous attempt to direct blame away from Ms. Santiago. Plaintiff makes direct admissions that he obtained the gun from an individual named Mike and that someone must have "snitched" to the police about the gun.

12  Mr. Melletz did file a motion to compel discovery (Docket No. 33) and a motion to seal that docket entry (Docket No. 35) during this time period. However, Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed.R.Civ.P. 11(d).

13  For example, it is unclear what exactly the confidential informant said would be in Plaintiff's vehicle. Magee's police report states that the informant claimed drugs would be in the car. In a supplemental report, Defendant Mackafee writes that there was "reliable information that there was a handgun and illegal drugs in the vehicle." (Mackafee Rpt., Ex. 2 to Defs. Cruz, et al.'s Motion)

---

2019 WL 494824
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

John A. SOSINAVAGE, Plaintiff,

v.

John Scott THOMSON, et al., Defendants.

Civil Action No. 14-3292 (JBS-AMD)
|
Signed 02/08/2019

**Attorneys and Law Firms**

Cheryl L. Cooper, Esq., LAW OFFICES OF CHERYL L. COOPER, 342 Egg Harbor Road, Suite 1-A, Sewell, NJ 08080, Attorney for Plaintiff.

Christine O'Hearn, Esq., BROWN & CONNERY, LLP, 360 Haddon Avenue, Westmont, NJ 08108, Attorney for County Defendants.

**OPINION**

JEROME B. SIMANDLE, U.S. District Judge

**I. INTRODUCTION**

**\*1** This matter comes before the Court on a renewed motion for sanctions filed by Defendants County of Camden, Police Chief Thomson, Deputy Chief Cuevas, Deputy Chief Lynch, and Louis Vega in their capacity as employees of the County of Camden and Camden County Police Department (collectively, "the County Defendants") pursuant to Rule 11, Fed. R. Civ. P., and the New Jersey Frivolous Claims Act, N.J.S.A. § 2A:15-59.1. [Docket Item 189.] For the reasons discussed below, the Court will grant the sanctions motion pursuant to Rule 11 and order that Plaintiff's attorney, Ms. Cheryl L. Cooper, Esq., reimburse the County Defendants' for reasonable fees and expenses, as a deterrent to Rule 11 violations, in an amount to be determined, subject to Ms. Cooper's ability to pay.

**II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY** [1]

On May 22, 2014, Ms. Cooper initiated this 42 U.S.C. § 1983 action in federal court on behalf of Plaintiff John A. Sosinavage ("Plaintiff"), a former Lieutenant in the Camden City Police Department, against the City of Camden, the County of Camden, and Officers John Scott Thomson, Orlando Cuevas, Michael Lynch, and Louis Vega in their individual and official capacities as employees of both the City of Camden and County of Camden. [2] [Docket Item 1.] Shortly thereafter, an Amended Complaint was filed a matter of right. [Docket Item 4.] The Amended Complaint only asserted § 1983 liability as to the Camden County Defendants "on the basis that the County of Camden took over the City of Camden's Police Department," and "[n]othing in the Amended Complaint alleges any retaliatory action taken by the County against Plaintiff." [Docket Item 24 at ¶ 2.]

On February 17, 2015, Ms. Cooper moved to file a Second Amended Complaint to add claims against the County Defendants based on a failure-to-hire theory of liability for age discrimination under the New Jersey Law Against Discrimination and/or retaliation and Monell claims under § 1983. [See Docket Item 26-2 at ¶¶ 207-44.] Specifically, the Proposed Second Amended Complaint alleged that the County Defendants discriminated against Plaintiff based on age and/or retaliated against Plaintiff by not sending him a letter expressly inviting him to apply for employment with the Camden County Police Department when his name was on a state-wide reemployment list, commonly referred to as a "Rice List." [Id.] The County Defendants opposed the motion to amend on the basis of factual and legal futility. [Docket Item 27.] The County Defendants argued in 2015 that amendment would be futile since Plaintiff was alleging discriminatory failure to hire when "Plaintiff admittedly has never applied for employment with the County Police Department" and, according to the County Defendants, they "indisputably have never used a 'Rice List' to appoint police officers to the County Police Department." [Id. at 4.]

**\*2** On March 5, 2015, counsel for the County Defendants, Ms. Christine P. O'Hearn, Esq., transmitted a letter to Ms. Cooper demanding that she withdraw all claims against the County Defendants, including those in the Proposed Second Amended Complaint alleging discrimination and/or retaliation for failure to hire, and advising Ms. Cooper that, if she did not do so, the County Defendants would pursue sanctions under Fed. R. Civ. P. 11, the New Jersey Frivolous Claims Act, and/or other state and federal remedies related to frivolous litigation. [Docket Item 189-3 at 2-3.] Ms. Cooper did not respond to the March 5, 2015 letter, nor did she withdraw any of the proposed claims against the County Defendants. [Docket Item 189-2 at ¶ 3.]

On March 23, 2015, Ms. O'Hearn formally served Ms. Cooper with a Rule 11 motion and notified her of the twenty-one-day safe harbor period within which to withdraw all claims against the County Defendants. [Docket Item 189-3 at 5.] Three days later, Ms. O'Hearn agreed by email to extend the twenty-one-day period for an additional fourteen days as a courtesy, and further stated "[i]f for some reason that is not enough time, let me know and we can discuss at that point." [Docket Item 189-3 at 7-8.] Accounting for the extension of time, the safe harbor period expired on April 27, 2015. [Docket Item 189-2 at ¶ 6.] Ms. Cooper again did not withdraw any proposed claims against the County Defendants. [Id. at ¶ 7.]

On May 1, 2015, the County Defendants filed on the electronic docket a motion for sanctions pursuant to Rule 11, Fed. R. Civ. P. [3] [Docket Item 29-1.] Ms. Cooper untimely [4] filed an opposition brief to the sanctions motion [Docket Item 32], and the County Defendants filed a reply. [Docket Item 35.]

In an Order dated July 28, 2015, the late Judge Joseph E. Irenas, to whom this case was previously assigned, granted Plaintiff's motion to amend in part and denied without prejudice the County Defendants' motion for sanctions. [Docket Item 36.] With respect to Plaintiff's motion to amend claims against the County Defendants, Judge Irenas found:

> [W]ith regard to the claims involving the alleged Rice List, [the County] Defendants' argument boils down to nothing more than a simple denial of a fact alleged in the Proposed Second Amended Complaint. Such an argument is irrelevant to the inquiry here, which is whether Plaintiff has stated a claim. Plaintiff alleges a Rice List was used; [the County] Defendants assert it was not. Presumably, discovery will reveal which allegation is correct.

[Docket Item 36 at ¶ 5.] In denying the County Defendants' motion for sanctions without prejudice, Judge Irenas further explained: "[the County] Defendants assert Plaintiff's allegation is without evidential support, but this case is only at the pleading stage. **The sanctions issue is better determined after Plaintiff has had the opportunity to develop his**

**proofs through discovery**." [Id. at ¶ 6] (emphasis added). The Second Amended Complaint was filed on October 9, 2015. [Docket Item 44.]

On September 15, 2016, the County Defendants filed a motion for summary judgment on Counts Eight, Nine, and Ten of the Second Amended Complaint. [Docket Item 71.] Through an extraordinary series of delays due to Ms. Cooper's health and other complications, Plaintiff's opposition was not filed until more than one year later, on December 31, 2017. [Docket Item 142.] The County Defendants timely filed a reply brief. [Docket Item 155.] On May 24, 2018, after oral argument, the Court granted summary judgment in favor of the County Defendants on all counts. See Sosinavage v. Thomson, 2018 WL 2357743 (D.N.J. May 24, 2018).

**\*3** The County Defendants subsequently renewed their motion for sanctions pursuant to Rule 11, Fed. R. Civ. P., and the New Jersey Frivolous Claims Act, N.J.S.A. § 2A:15-59.1, [Docket Item 189], and now seek to recover "the nearly $100,000.00 in taxpayer dollars needlessly incurred in the defense of this four (4) year litigation." [Docket Item 189-1 at 2.] Plaintiff opposes the County Defendants' motion, arguing that Ms. Cooper exercised sufficient due diligence in researching and advancing Plaintiff's claims at the time the Second Amended Complaint was filed and further claiming, rather astonishingly, that "[t]here is no continuing duty on counsel to amend or correct a filing based on after-acquired knowledge." [Docket Item 199 at 8.] For the reasons discussed below, the Court finds little difficulty reaching the inevitable conclusion that Ms. Cooper breached her duties under Rules 11(b)(2) & (3) from the time of her endorsing a clearly-frivolous Second Amended Complaint against the County Defendants and continuing to date, and that sanctions are warranted in this case, and will grant the County Defendants' motion pursuant to Rule 11. [5]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' " Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986). Rule 11 sanctions are "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 397 (1990), and "intended to discourage the filing of frivolous,

unsupported, or unreasonable claims." Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002).

To that end, Rule 11(b) requires, in relevant part, that an attorney certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), and that "the factual contentions [in any pleading, written motion, or other paper] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Subjective good faith on the part of the attorney is insufficient to avoid sanction. Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987). Rather, Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991).

## IV. DISCUSSION

As an initial matter, the Court rejects outright Ms. Cooper's assertion that sanctions are not warranted here because she used sufficient due diligence in researching and advancing Plaintiff's claims at the time the Second Amended Complaint was filed and that "[t]here is no continuing duty on counsel to amend or correct a filing based on after-acquired knowledge." [Docket Item 199 at 8] (citing Teamsters Local Union N. 430 v. Clement Express, Inc., 841 F.2d 66, 68 (3d Cir. 1988), Pensiero v. Lingle, 847 F.2d 90, 94-95 (3d Cir. 1988), and Gaiardo, 835 F.2d at 484). To the contrary, Rule 11 establishes an ongoing duty to cease litigation of claims that are no longer tenable. See Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, **or later advocating it**....") (emphasis added). As the Notes of the Advisory Committee (1993 Amendment) explain, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, **the party has a duty under [Rule 11] not to persist with that contention**. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." (emphasis added).

**\*4** At a minimum, counsel may not continue to rely on a mistaken factual or legal position in subsequent submissions if, after discovery, it becomes obvious that such a position is no longer tenable. See Gaiardo, 835 F.2d at 484 ("Notwithstanding the emphasis on the time of initial

submission, however, parties will not be entitled to continuing immunity if they acquire or should acquire knowledge under the Rule's standard before a later filing. Subsequent papers must be judged by information available when they are filed. For example, a defendant's answer may be in the spirit of the Rule at the time of filing, but a motion for summary judgment founded on the same theory may violate the Rule if investigation or research shows that the initial information was incorrect. Liability would be based on circumstances present when the motion is filed, not when the answer was filed."). Thus, even if it were reasonable for Ms. Cooper to have been unaware of the frivolous nature of Plaintiff's claims vis-à-vis the County Defendants when she filed the Second Amended Complaint, which it was not, Ms. Cooper was certainly required under Rule 11 to stop advancing those claims when it because clear through discovery that Plaintiff could not satisfy the prima facie elements of a failure-to-hire claim. Indeed, this is the very scenario the Court anticipated in the July 28, 2015 Order, wherein Judge Irenas dismissed the County Defendants' motion for sanctions without prejudice and explained that, "[t]he sanctions issue is better determined after Plaintiff has had the opportunity to develop his proofs through discovery." [Docket Item 36 at ¶ 6.] The County Defendants had clearly placed Ms. Cooper on notice that her client never sought employment with the Camden County Police Department and that the "Rice List" was not used in recruiting or hiring of any applicants for the new County Police Department. Indeed, Ms. Cooper's client, John Sosinavage, himself possessed the material facts at all relevant times that he had proclaimed he would never seek to work with the new County Police Department and that he, in fact, never applied. Hence, the notion that he was the victim of discrimination and/or retaliation in the Camden County Police Department's failure to hire him was factually and legally frivolous ab initio. Ms. Cooper could have simply confirmed this with Mr. Sosinavage and averted three years of futile litigation.

This Court is now compelled to conclude that, under the objective standard provided for by Rule 11, Ms. Cooper has failed to come forward with any facts that would justify the allegations against the County Defendants in the Second Amended Complaint or her years-long prosecution of Plaintiff's failure-to-hire case against the County Defendants. As Plaintiff's own deposition testimony revealed: (1) he received an application for the Camden County Police Department and instructions on how to apply via email; (2) he made a conscious decision to not submit an application or questionnaire to the Camden County Police Department; and

(3) he told others he did not want to work for the Camden County Police Department and would not accept a position if one had been offered to him. Sosinavage, 2018 WL 2357743, at *6. Ms. Cooper also failed to adduce any evidence that the Camden County Police Department ever hired anyone (from the Rice List or otherwise) who did not apply, with the exception of Chief Thomson himself (who was appointed to lead the new County Police Department), and she has still never cited a single provision of law entitling a Rice List officer to receive an unsought offer of employment. [6] Id. at *6. Simply, for more than three years, Ms. Cooper pursued a failure-to-hire case against the County Defendants that she knew or should have known was factually and legally frivolous, despite clear warning of precisely these deficiencies in 2015.

As described above, Ms. Cooper was given more-than-adequate notice by the County Defendants that a sanctions motion would be forthcoming. The County Defendants then provided Ms. Cooper with ample time to withdraw or correct Plaintiff's deficient claims against the County Defendants before the safe harbor period had elapsed. The undersigned even gave Ms. Cooper an opportunity to withdraw Plaintiff's failure-to-hire claims against the County Defendants at the very outset of oral argument on the County Defendants' summary judgment motion held on April 20, 2018. [Docket Item 173.] Unfortunately, Ms. Cooper continuously opted against doing so. The situation before this Court is the quintessential case that Rule 11 was designed to handle, a suit without proper factual foundation and one that is legally unreasonable – the truly "exceptional circumstance" distinguishing it from the merely unsuccessful case. Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991).

Having found that plaintiff's counsel has violated Rules 11(b)(2) & (3), the Court must next determine whether to impose a sanction and, if so, what sanction is appropriate under Rule 11(c). Pursuant to Rule 11(c), a court may impose sanctions, including "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Id.

**\*5** That there should be a sanction is evident here, arising from the circumstances that include a prolonged assertion of claims having no basis in fact or law, by an attorney, accompanied by countless other delays arising from the attorney's non-responsiveness and failures to appear when required by the court. All of this has had an enormously wasteful effect on the time and expense of this litigation; indeed, all efforts by the County Defendants to defend the entire case would have been unnecessary if counsel had not violated Rule 11, that is, if the case had not proceeded on the demonstrably false premise that the County Defendants discriminated and/or retaliated against Plaintiff by failing to hire him for a position he knew about, disclaimed wanting, dissuaded others from seeking, and never applied for. Much public expense has been incurred by the County Defendants to meet the charges of Plaintiff's baseless allegations over this prolonged period. Accordingly, this Court finds that it is appropriate to award Rule 11 sanctions to the County Defendants for the reasonable attorney's fees and expenses incurred since the date of filing of the Second Amended Complaint [Docket Item 44], namely, October 9, 2015. [7]

The Court does not determine the precise amount of monetary sanction at this time. The next step requires the County Defendants to submit their counsel's affidavit of fees and expenses justifying the amount sought, particularized in the manner required by Local Civil Rule 54.2, within fourteen (14) days hereof. Ms. Cooper will then have the opportunity to submit any objections as to the amounts claimed, within fourteen (14) days of the filing of the County Defendants' fee petition.

The Court is mindful that Ms. Cooper is a solo practitioner who may have limited financial resources from which to compensate the County Defendants for the fees and expenses they have incurred in this case. Any monetary sanction under Rule 11 must be sufficient, but not greater than necessary, to address the severity and persistence of the violation and deter future violations by the attorney and others consistent with Rule 11(c)(4). Indeed, among other things, district courts are required "to consider various mitigating factors in their calculation of the total monetary compensation owed by lawyers who have been found to have violated Rule 11," including the sanctioned party's ability to pay. Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d. Cir. 1988). As the Third Circuit has explained:

> Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary

sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive – or that might even drive the sanctioned party out of practice.

Id. at 195-96. Accordingly, in connection with her filing of any objections to the amounts of the County Defendants' claimed fees and expenses, the Court will permit Ms. Cooper to submit an affidavit (under seal but provided to Ms. O'Hearn as confidential information) addressing her ability to pay, which the Court will consider in determining the appropriate amount of reasonable fees and expenses required as a deterrent to be awarded to the County Defendants and paid by counsel for Plaintiff. This affidavit shall be submitted to the Court and Ms. O'Hearn within fourteen (14) days of the filing of the County Defendants' fee petition. [8]

### V. CONCLUSION

**\*6** For the foregoing reasons, the County Defendants' motion for sanctions will be granted pursuant to Rule 11, Fed. R. Civ. P. Consistent with Federal Rule of Civil Procedure 54(d)(2), within fourteen (14) days of entry of the accompanying Order, the County Defendants shall submit a Certification of Counsel of Legal Fees and Expenses incurred in this action, itemized as required in Local Civil Rule 54.2. Within fourteen (14) days of the County Defendant's application, Ms. Cooper shall file a reply on the public docket indicating with specificity each objection, if any, to the amounts requested. Ms. Cooper may also file, at the time of any objections, an affidavit under seal with proper service made to the County Defendants, addressing her ability to pay the amount of fees and expenses requested by the County Defendants. An accompanying Order will follow.

### All Citations

Not Reported in Fed. Supp., 2019 WL 494824

---

### Footnotes

1    The Court incorporates by reference the factual background and procedural history of this case as described in its earlier decisions, including the May 24, 2018 Opinion granting summary judgment [Docket Item 184], and recounts only those facts necessary for resolution of the pending motion for sanctions.

2    Around the same time, Ms. Cooper also filed a separate federal action on behalf of Lieutenant Anthony Carmichael, which is also set before the undersigned, Carmichael v. Thomson, et al., 14-3323-JBS-AMD (D.N.J. filed on May 27, 2014).

3    The County Defendants explicitly "reserve[d] their right to seek sanctions pursuant to the New Jersey Frivolous Claims statute, N.J.S.A. § 2A:15-59.1, after entry of final judgment." [Id. at n.1.]

4    As the docket clearly reflects, this was not the first, nor would it be the last, time that Ms. Cooper disregarded a deadline or failed to comply with procedural requirements in this case. The Court need not recount each instance here, except to note that these repeated and prolonged delays by Ms. Cooper increased the County Defendants' time and efforts to defend these claims.

5    Because the Court will grant the County Defendants' motion pursuant to Rule 11, the Court need not address whether the New Jersey Frivolous Claims Act might also apply.

6    Rather, as the Court previously explained, the Rice List is simply "a civil service procedure whereby law enforcement officers laid off by a government agency for reasons of economy can be placed on the list and

are eligible for appointment as a law enforcement officer within the state with preference on the list." Id. at *8 (internal citations omitted).

7    The Court has considered and ruled out as insufficient other types of sanctions mentioned in Rule 11(c)(4) including nonmonetary directives (which could include, for example, completion of continuing legal education, a letter of apology, or refraining from handling similar cases in the future), or to pay a penalty into court. In its discretion, the Court has determined that the remedy that is necessary and sufficient to redress and to deter future violations by this attorney and others is the requirement to reimburse part or all fees and expenses of defending the case.

8    If counsel claims a reduced ability to pay, at a minimum, the submission shall be accompanied by a copy of the two most recent federal income tax returns. See, e.g., Pope v. Fed. Express Corp., 138 F.R.D. 684, 690 (W.D. Mo. 1990) (court ordered the production of and examined sanctioned attorney's income tax returns for past five years). A profit/loss statement for Plaintiff's counsel's law firm for calendar year 2018, giving a truthful factual basis for the data therein, would also be useful.

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.