# EXHIBIT A

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>　　Appellant,<br><br>　　　v.<br><br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>　　Appellee. | Civ. No: 24-2934 |

## APPELLANT'S MOTION FOR JUDICIAL INTERVENTION TO REVOKE CLERK'S UNAUTHORIZED DIRECTIVE (DOC 11-1) AND TO REINSTATE TRANSPARENT BRIEFING PROCEDURE

Appellant, Michael Miller, respectfully moves this Court for judicial intervention to revoke the clerk's unauthorized stay of the briefing schedule and unilateral listing for summary action, and to reestablish a transparent, procedurally valid briefing process.

---

## I. INTRODUCTION

Appellant brings this motion to challenge the clerk's sua sponte action on October 30, 2024 (Doc 11-1) in staying the briefing schedule and listing this case for summary action, actions which impact Appellant's right to a fair and transparent appellate process. This motion seeks a procedural correction specific to Appellant's due process rights; therefore, concurrence from opposing parties has not been sought. Nonetheless, all parties have been served with this motion in accordance with procedural requirements.

## II. STATEMENT OF RELIEF SOUGHT

Appellant requests that the Court:

1. Issue a judicial order revoking the clerk's stay of the briefing schedule and unilateral listing for summary action;

2. Reinstate Appellant's motion to expedite the briefing schedule;

3. Clarify the limits of clerical authority under FRAP 27 and Local Rule 27 to prevent future procedural overreach; and

4. Ensure that all future procedural actions in this matter requiring judicial authority are properly documented to uphold transparency and procedural integrity.

## III. GROUNDS FOR RELIEF

1. **Unauthorized Assumption of Judicial Authority**: The clerk's actions exceed the permissible scope of clerical authority under FRAP 27 and Local Rule 27, which restrict clerical tasks to non-dispositive, administrative matters. Summary actions and briefing schedules are substantive procedural decisions that require judicial oversight, as outlined in Appellant's supporting brief.

2. **Violation of Appellant's Due Process Rights**: Procedural fairness and transparency are fundamental protections that should be maintained throughout appellate proceedings. By unilaterally staying the briefing schedule without judicial order, the clerk has prevented Appellant from participating meaningfully in the appellate process, infringing upon Appellant's due process rights and compromising a fair opportunity to present arguments in a

timely and transparent manner.

3. **Necessity of Judicial Order for Procedural Integrity**: To ensure adherence to FRAP and Local Rules, a documented judicial order is essential for all substantive procedural actions. This requirement upholds procedural integrity, preventing unauthorized clerical interference and ensuring a fair and accountable appellate process, as described in the supporting brief.

---

## IV. WHEREFORE

WHEREFORE, Appellant moves this Court:

1. Revoke the clerk's stay of the briefing schedule and unilateral listing for summary action;

2. Reinstate Appellant's motion to expedite the briefing schedule;

3. Clarify the limits of clerical authority under FRAP 27 and Local Rule 27 to prevent any further procedural overreach; and

4. Ensure that all future substantive procedural actions in this matter are properly documented through judicial order, thereby preserving transparency and procedural integrity.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellee. | Civ. No: 24-2934 |

**PROPOSED ORDER**

Upon consideration of Appellant's Motion for Judicial Intervention, it is hereby ORDERED that:

1. The clerk's directive staying the briefing schedule and listing this case for summary action is hereby REVOKED.

2. Appellant's motion to expedite the briefing schedule is REINSTATED and will be considered by the Court.

3. The authority of the clerk is limited as per FRAP 27 and Local Rule 27 to non-dispositive, administrative actions, and all substantive procedural actions must be accompanied by a judicial order.

4. The Court directs that all future actions affecting the progression of this appeal be documented in compliance with established judicial norms and procedural integrity.

   SO ORDERED.

   Dated: [Date]

4

By the Court:

[Judge's Name]

[Judge's Title]

Respectfully Submitted:

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, Suite F, 246
Ephrata, Pennsylvania
(717) 388-0163
reaganfive@protonmail.com

Date: October 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by e-filing a true and correct copy of the foregoing document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com

Respectfully Submitted,

/s/*Michael Miller*
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
reaganfive@protonmail.com

Dated: October 31, 2024

# EXHIBIT B

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellee. | Civ. No: 24-2934 |

**APPELLANT'S BRIEF IN SUPPORT OF MOTION TO CHALLENGE CLERK'S UNAUTHORIZED ACTIONS AND TO DEMAND REINSTATEMENT OF A FAIR AND TRANSPARENT BRIEFING PROCESS**

---

## I.    INTRODUCTION

Appellant files this motion to demand judicial intervention and rectification of the clerk's unauthorized stay of the briefing schedule and unilateral listing of this appeal for possible summary action.  The clerk's actions—taken *sua sponte*, without judicial order or any filed motion—constitute a procedural violation that impacts Appellant's right to a fair and transparent appellate process under Local Rule 27 and the Federal Rules of Appellate Procedure. Given the nature of the issue, concurrence from opposing parties has not been sought, but all parties have been served with this motion.

---

## II.    STATEMENT OF THE ISSUE

Whether the clerk's unilateral decision to stay briefing and list this appeal for possible summary

action violates procedural rules that ensure judicial oversight, thus impacting Appellant's right to due process and a transparent appellate review.

---

### III. ARGUMENT

**1. Text of LR 27 for Context and Reference**

To establish the scope and limitations of Local Rule 27, the relevant sections are provided below:

- **LR 27.4 Motions for Summary Action**

  - **(a)** *"A <u>party</u> may move for summary action affirming, enforcing, vacating, remanding, modifying, setting aside, or reversing a judgment, decree, or order, alleging that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action. In addition, <u>the court</u> may sua sponte list a case for summary action."*

  - **(b)** *"Except for a change in circumstances or a change in law, motions for summary action or dismissal should be filed before the appellant's brief is due. The court or the clerk may at any time refer a <u>motion</u> for summary action to a merits panel and direct that briefs be filed."*

- **LR 27.5 Powers of Single Judge**: *"A single judge of the court may not grant or deny a motion that the court has ordered to be acted on by <u>the court</u> or a panel thereof…"*

- **LR 27.6 Motions Decided by the Clerk**: *"The clerk may entertain and dispose of any <u>motion</u> <u>that can ordinarily be disposed of by a single judge</u> of this court under the provisions of FRAP 27(c) and 3d Cir. L.A.R. 27.5, <u>provided the subject of the motion is ministerial</u>…"*

**2. Judicial Oversight Requirement under LR 27.4(b)**

Local Rule 27.4(b) is designed to safeguard procedural integrity by ensuring that summary actions are initiated only through judicial authority in response to a party's motion, except where there is a change in law or circumstances warranting sua sponte action by the court itself. By mandating judicial involvement, LR 27.4(b) protects the appellant's right to due process and a transparent review process, foreclosing clerical initiation of dispositive actions. Here, in the absence of a filed motion or judicial directive, the clerk's unilateral actions are outside the scope of authorized procedural conduct, violating these essential safeguards.

**3. Procedural Violations under LR 27.6 and FRAP 27(b)**

Local Rule 27.6 and FRAP 27(b) strictly limit clerical authority to ministerial, non-dispositive tasks. Specifically, LR 27.6 confines the clerk's role to actions "that can ordinarily be disposed of by a single judge" or are otherwise purely ministerial and administrative in nature. FRAP 27(b) likewise restricts the clerk's scope to "procedural orders" based on motions filed by parties and does not authorize independent clerical action to alter briefing schedules or the progression of a case. By unilaterally issuing a stay and listing the case for summary action, the clerk exceeded these rules, impacting Appellant's due process rights and right to a meaningful appellate review.

**4. Rule 27.4(b) Does Not Permit Clerical Initiation of Summary Action or Stays**

Local Rule 27.4(b) specifies that motions for summary action should be initiated by a party or by the court in response to a motion, clearly excluding clerical authority. Without a filed motion or judicial order, the clerk's actions exceed any permissible scope.

3

Procedural decisions involving summary actions must come from the judicial panel, as clerical decisions in such matters lack precedent. Internal appellate review resources reiterate that summary actions must be subject to judicial review to protect procedural rights. The clerk's assumption of authority in this case is procedurally unfounded, violating Appellant's due process rights.

**5. Clerical Authority is Limited to Non-Dispositive, Ministerial Tasks (LAR 27.5, 27.6, and FRAP 27(b))**

Under FRAP 27 and Local Rules 27.5 and 27.6, clerks are restricted to administrative tasks and non-dispositive actions. FRAP 27(b) addresses procedural motions filed by parties and does not authorize independent clerical actions without judicial direction.

Staying the briefing schedule without judicial authorization far exceeds these boundaries, engaging in actions left to judicial review. The clerk's unilateral decision to list this case for summary action and impose a stay infringes upon the judiciary's exclusive authority, making the action procedurally invalid.

**6. Procedural Fairness Requires Adherence to Established Judicial Rules**

As the Supreme Court has emphasized, "procedural rules are essential to the protection of due process rights" (*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Due process demands not only procedural adherence but the assurance that no procedural shortcuts are taken to the detriment of an appellant's rights. The clerk's unauthorized stay of briefing, without judicial order, directly interferes with these protections, denying Appellant a fair opportunity to present arguments within an orderly and transparent process.

**7. Demand for Scrupulous Adherence to Procedural Rules or Retraction**

Appellant demands that any judicial directives regarding summary action be transparent and consistent with procedural standards. Adherence to procedural integrity is critical for the protection of due process rights.

**Appellant seeks the following judicial relief:**

1. **Retract the clerk's directive** to stay briefing and list the case for summary action;

2. **Reinstate Appellant's motion** to expedite the briefing schedule;

3. **Issue a judicial order** affirming the limits of clerical authority under FRAP 27 and LR 27; and

4. **Uphold a transparent, documented appellate process** that safeguards Appellant's rights.

Should these requests for relief be denied, Appellant reserves all rights to pursue additional remedies for any further interference with procedural and substantive due process.

---

## IV. CONCLUSION

**Appellant demands:**

1. Immediate retraction of the clerk's directive to stay briefing;

2. Reconsideration of Appellant's motion to expedite the briefing schedule;

3. Judicial clarification of clerical limits to prevent further procedural overreach;

4. Documentation of all substantive procedural actions by judicial order to uphold procedural integrity.

**Statement of Systemic Judicial Abuse:**

This procedural abuse mirrors the judicial misconduct encountered in the district court—the very basis of this appeal. The actions in this matter suggest an intent by judicial actors to evade substantive review and undermine procedural integrity. Appellant will not acquiesce to this disregard for due process. A fair appellate process is a fundamental right—one that must be upheld.

**Reservation of Rights**:

Appellant explicitly reserves all procedural and substantive rights, including the right to pursue further judicial review or remedies for any interference with Appellant's right to a fair and transparent appellate process. No argument, right, or position is waived, whether or not explicitly raised in this motion. Appellant reasserts these rights as fully reserved, regardless of how or when they are raised, and reserves the right to pursue all remedies available in law or equity should further procedural violations occur.

Respectfully Submitted:

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, Suite F, 246
Ephrata, Pennsylvania
(717) 388-0163
reaganfive@protonmail.com

Date: October 31, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served by e-filing a true and correct copy of the foregoing

document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com


Respectfully Submitted,

/s/*Michael Miller*
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
reaganfive@protonmail.com

Dated: October 31, 2024

# EXHIBIT C

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br><br>v.<br><br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | Civ. No: 24-2934 |

**APPELLANT'S MOTION FOR JUDICIAL INTERVENTION TO REVOKE CLERK'S UNAUTHORIZED DIRECTIVE (DOC 11-1), REINSTATE MOTION FOR EXPEDITED BRIEFING, AND AWARD COMPENSATORY DAMAGES**

**I.    INTRODUCTION**

Appellant, Michael Miller, a pro se litigant, submits this motion directly to the Court's judicial panel—not in submission to the Clerk's directive—but to seek urgent corrective intervention. Appellant demands the revocation of the Clerk's unauthorized directives and the unilateral designation of this case for summary action, as these exceed clerical authority and infringe upon Appellant's right to a fair appellate process.

Appellant further demands compensation for the time, effort, and resources expended to address these unauthorized actions, necessary to rectify the burdens imposed and deter future misconduct.

The ongoing disregard for procedural and jurisdictional abuse in this case is unacceptable. Even a pro se litigant can see that the Clerk's actions would deny Appellant's appeal, conceal the district court's misdeeds, and aid in the continued evasion of accountability by the government respondents.

This Court must uphold procedural integrity to ensure that administrative boundaries are respected, particularly for those without legal representation. Therefore, Appellant demands compensation as both a remedy for these harms and a deterrent against future procedural misconduct.

## II. PROCEDURAL COMPLIANCE AND INTERFERENCE UNDER L.A.R. 4.1

Appellant's initial motion to expedite briefing was filed within the required 14-day period as specified under L.A.R. 4.1, fulfilling the timing requirement for expedited review. Judicial intervention is essential to reinstate the motion to expedite, correct these procedural obstructions, and uphold the standard requirements under L.A.R. 4.1.

## III. STATEMENT OF RELIEF SOUGHT

Appellant moves and demands that this Court:

1. **Revoke the Clerk's Unauthorized Actions**: Issue a judicial order vacating the Clerk's stay of the briefing schedule and unilateral designation of this case for summary action. This revocation is necessary to restore procedural transparency and protect Appellant's right to due process.

2. **Grant Appellant's Motion to Expedite the Briefing Schedule**: Reinstate Appellant's motion to expedite and establish an accelerated briefing schedule. The Clerk's administrative overreach has caused undue delays, and an expedited schedule is essential to prevent further harm to Appellant's case and address substantial constitutional questions without further delay.

3. **Clarify the Limits of Clerical Authority Under Local Rule 27 and FRAP**: Affirm that only a judicial panel may authorize substantive actions affecting case progression, including stays and summary designations. This order should specify that the Clerk's authority is strictly limited to ministerial, non-dispositive tasks and that any future actions impacting case proceedings require explicit judicial authorization.

4. **Award Compensatory Damages to Appellant**: Order compensatory damages to Appellant in the amount of **$4,000**, to be paid by the Court itself,

not the Respondents. This amount reflects the significant time, financial costs, and emotional distress imposed on Appellant due to the Clerk's unauthorized actions. Compensation is necessary to remedy the harm inflicted on Appellant and deter future procedural misconduct.

5. **Enforce Procedural Transparency for All Future Clerk Actions**: Require that any future procedural directives or actions taken by the Clerk that affect case progression be issued with clear judicial authorization and documented in the case record. This measure will ensure procedural transparency, uphold due process, and safeguard Appellant's rights, as well as the rights of all litigants, against unauthorized administrative interference.

6. **Ensure Comprehensive Judicial Review**: Direct that any consideration of summary disposition or dispositive actions involving this case receive full judicial review by a merits panel, allowing for comprehensive briefing and transparent examination of the issues at stake. Given the constitutional questions raised, summary action is inappropriate, and a full review is essential to uphold the integrity of the appellate process and due process protections.

## IV. GROUNDS FOR RELIEF

1. **Unauthorized Assumption of the Court's Authority**

The Clerk's actions extend beyond administrative support, usurping the Court's authority by unilaterally imposing a stay and suggesting summary action, contrary to the Court's rules. As established by Local Rule 27, substantive actions impacting case progression must originate from the Court, not the Clerk. Specifically, Local Appellate Rule 27.4 states:

*"A party may move for summary action affirming, enforcing, vacating, remanding, modifying, setting aside or reversing a judgment, decree or order, alleging that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action. In addition, the court may sua sponte list a case for summary action."*

Additionally, **Local Rule 27.4(b)** provides:

*"Except for a change in circumstances or a change in law, motions for summary action or dismissal should be filed before appellant's brief is due. The court or the clerk may at any time refer a motion for summary action to a merits panel and direct that briefs be filed."*

These rules clearly restrict the authority to designate a case for summary action to the Court, allowing the Clerk only to refer motions to a merits panel. The Clerk's actions, taken without judicial directive, directly violate these rules, infringing on

Appellant's rights and creating undue stress and financial burdens. There was no motion for summary action; the Court did not act sua sponte; and the Clerk lacks the authority from LR 27 to take such action. Furthermore, Appellant seeks compensatory relief to be awarded by the Court itself, not from the appellees.

2. **Procedural Integrity and Emotional Harm**

Each unauthorized action by the Clerk disrupts the course of justice, forcing Appellant to expend additional time and resources on issues that should not have arisen. Appellant has incurred financial costs and endured emotional strain due to repeated clerical overreach, which interferes with procedural rights and complicates the appellate process. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court emphasized that due process must balance the private interest affected and the risk of erroneous deprivation, underscoring the importance of procedural integrity in administrative actions.

3. **Judicial Oversight Requirements under Local Rules 27.5 and 27.6**

Local Rules 27.5 and 27.6 underscore the necessity for judicial oversight:

- **27.5 Powers of Single Judge**: "A single judge of the court may not grant or deny a motion that the court has ordered to be acted on by the court or a panel thereof…"

6

- **27.6 Motions Decided by the Clerk**: "The clerk may entertain and dispose of any motion that can ordinarily be disposed of by a single judge of this court under the provisions of FRAP 27(c) and 3d Cir. L.A.R. 27.5, provided the subject of the motion is ministerial, relates to the preparation or printing of the appendix and briefs on appeal, or relates to calendar control."

These rules restrict the Clerk to ministerial tasks, reinforcing that substantive actions, such as stays or summary listings, require the Court's action. The Clerk's unilateral actions have imposed significant costs on Appellant in terms of time, money, and emotional well-being. The procedural protections highlighted in *Goldberg v. Kelly*, 397 U.S. 254 (1970), emphasize that individuals are entitled to a fair hearing, which is critical in this context.

4.  **Demand for Accountability and Compensatory Damages**

Appellant demands that this Court establish a clear boundary between clerical and judicial authority, affirming that only a judicial panel may initiate actions affecting case progression. Appellant seeks compensatory damages from the court for the time and resources spent due to the Clerk's unauthorized actions, specifically 20 hours at $200/hour. This compensation will address the harm caused by these procedural abuses and deter future overreach.

5. **Objection to Summary Action Without Full Review**

Appellant objects to any attempt at summary disposition. The significant constitutional issues in this appeal warrant full briefing and transparent examination by the Court. Summary disposition without a proper hearing deprives Appellant of the fair appellate review that due process requires, as highlighted in both *Goldberg v. Kelly* and *Mathews v. Eldridge*.

## V. WHEREFORE

WHEREFORE, Appellant moves this Court to:

1. **Revoke the Clerk's Unauthorized Actions**: Issue a judicial order vacating the Clerk's directive that unilaterally stayed the case and designated it for summary action. Appellant's motion to expedite the establishment of a briefing schedule should be reinstated and properly considered by the Court without further administrative interference.

2. **Clarify the Clerk's Procedural Role**: Explicitly define "the Court" as a judicial panel with exclusive authority to initiate substantive case actions, affirming that clerical authority is limited to administrative and non-dispositive tasks.

3. **Enforce Procedural Integrity and Due Process Compliance**: Require that any future procedural actions affecting Appellant's case progression be

documented with a clear judicial directive.

4. **Award Compensatory Relief to Appellant**: Order compensation from the Court to Appellant for the time, expenses, and emotional distress resulting from these procedural abuses, in the amount of $4,000.

5. **Ensure Comprehensive Judicial Review**: Affirm Appellant's right to full briefing and transparent review, reinforcing the Court's commitment to due process in matters involving significant constitutional questions.

Respectfully Submitted:

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, Suite F, 246
Ephrata, Pennsylvania
(717) 388-0163
reaganfive@protonmail.com

Date:  November 3, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Petitioner,<br><br>v.<br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Respondents. | Civ. No: 24-2934 |

### PROPOSED ORDER

Upon consideration of Appellant Michael Miller's Motion for Judicial Intervention to Revoke Clerk's Unauthorized Directive, Reinstate a Fair Briefing Procedure, and Award Compensatory Damages, the Court finds that the procedural actions taken by the Clerk, as outlined in the Motion, were unauthorized and require judicial correction to uphold procedural integrity and due process.

Accordingly, it is hereby ORDERED that:

1. **Revocation of Clerk's Unauthorized Actions**

   The Clerk's unilateral stay of proceedings and summary designation of this case are hereby VACATED. Appellant's motion to expedite the establishment of a briefing schedule is REINSTATED for proper judicial consideration by the Court, free from further administrative delay or

interference.

2. **Granting of Appellant's Motion to Expedite**

Appellant's Motion to Expedite the Establishment of a Briefing Schedule is hereby GRANTED. The Clerk is directed to implement an expedited schedule as ordered by the Court, ensuring no additional administrative delays occur.

3. **Clarification of Clerical Authority**

The Court hereby AFFIRMS that only a judicial panel has the authority to initiate substantive actions that affect case progression, including imposing stays or designating cases for summary action. The Clerk's role under LR 27 is limited to ministerial and administrative tasks.

4. **Award of Compensatory Damages**

The Court orders compensatory relief to Appellant in the amount of $4,000, payable by the Court. This amount reflects the time, financial expenses, and emotional distress incurred by Appellant as a result of the Clerk's unauthorized administrative overreach.

5. **Procedural Transparency for Future Clerk Actions**

The Court ORDERS that any future procedural actions taken by the Clerk that impact case progression must have the Court's authorization documented in the case record, ensuring procedural transparency and the

protection of due process rights.

6. **Comprehensive Judicial Review Requirement**

   In light of the significant constitutional questions raised, the Court

   REQUIRES that any consideration of summary disposition or other

   dispositive action in this case undergo comprehensive judicial review by a

   judicial panel, allowing for full briefing and transparent evaluation in

   alignment with due process protections.


It is so ORDERED.

**Date:** _____

**BY THE COURT:**

_____

**[Judges' Signatures]**

United States Court of Appeals for the Third Circuit

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served by e-mail a true and correct copy of the

foregoing document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com


Respectfully Submitted,

/s/*Michael Miller*
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
Dated: November 3, 2024        reaganfive@protonmail.com

# EXHIBIT D

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| MICHAEL MILLER<br>Appellant,<br><br><br>v.<br><br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | Civ. No: 24-2934 |
| --- | --- |

**STATUS INQUIRY, OBJECTION, AND REQUEST FOR COURT-BORNE**

**COSTS REGARDING PENDING MOTIONS**

**To the Court:**

Appellant, Michael Miller, respectfully submits this inquiry regarding the

status of the following pending motions in the above-captioned appeal, and states:

1. **Motion to Expedite Briefing Schedule and Disposition**: Filed on October

   19, 2024, this motion requests an expedited briefing schedule due to

   substantial overlap with related litigation, aiming to prevent undue prejudice

   and ensure judicial economy. To date, Appellant has received no response or

   indication of the Court's decision.

2. **Motion for Direct Judicial Review of Clerk's Directive**: Filed on October

1

31, 2024, this motion challenges the clerk's unilateral action in staying the briefing schedule and listing the appeal for possible summary disposition under Local Rule 27. Appellant respectfully requests that this motion be reviewed by a judicial panel to address procedural overreach and reestablish a fair and transparent briefing process.

In addition, pursuant to Federal Rule of Civil Procedure 1, Appellant registers a formal objection to the delay in addressing these motions. FRCP 1 mandates that the rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The extended lack of action on these motions conflicts with the rule's directive for fairness and efficiency, particularly in cases with significant due process implications.

Further, Appellant notes the duress experienced due to the clerk's coercive and prejudicial directive staying the briefing schedule and unilaterally listing this appeal for possible summary action without judicial authorization, especially after paying a $600 filing fee to the Court for this appeal. This directive effectively deprived Appellant of the procedural protections necessary for a fair appellate process, compounding the burden of procedural delays and uncertainty.

Given the procedural urgency and the undue burdens imposed, Appellant respectfully requests an update on the status of these motions. Additionally,

Appellant requests an award of costs, to be borne by the Court, for the time and resources expended in addressing these compounded procedural issues and delays. These costs include, but are not limited to, the efforts involved in preparing multiple follow-up motions and this inquiry. Such a request is justified by the prejudice and costs resulting directly from the lack of timely judicial response. Timely resolution of these matters is essential to prevent further delay and ensure Appellant's right to a fair and transparent appellate process.

Thank you for your attention to this matter. Please advise on any additional information or steps required to facilitate the Court's review of these pending motions.

Respectfully submitted,
*/s/ Michael Miller*
Michael Miller
108 North Reading Road, Suite F, 246
Ephrata, Pennsylvania
(717) 388-0163
reaganfive@protonmail.com

November 14, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by e-service a true and correct copy of

the foregoing document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com


Respectfully Submitted,

/s/*Michael Miller*
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
Dated: November 14, 2024          reaganfive@protonmail.com

# EXHIBIT E

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>        Appellant,<br><br><br>        v.<br><br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>        Appellees. | Civ. No: 24-2934 |

**APPELLATE BRIEF**

# I.  <u>TABLE OF CONTENTS</u>

III.  JURISDICTION AND VENUE ................................................................1

    1.  Jurisdiction ......................................................................................1

    2.  Venue...............................................................................................2

IV.  INTRODUCTION ...................................................................................2

V.  STATEMENT OF ISSUES PRESENTED FOR REVIEW....................4

VI.  STATEMENT OF THE CASE ...............................................................8

VII.  STANDARD OF REVIEW ...................................................................11

    2.  Jurisdictional Misconduct ...............................................................11

    3.  Failure to Adjudicate a Well-Pleaded Complaint Standard:...............12

    4.  Procedural Abuses...........................................................................13

    5.  Demonstration of Bias and Systemic Hostility Standard:...................14

    6.  Judicial Hostility and Procedural Obfuscation Standard: ...................15

    7.  Judicial Immunity and Accountability Standard:...............................16

VIII.     SUMMARY OF THE ARGUMENT .............................................18

IX.  RESTATEMENT OF RIGHTS, OBJECTIONS, NON-WAIVER .......19

X.    ARGUMENT.......................................................................................21

    1.  Jurisdictional Misconduct ...............................................................21

2.    Failure To Adjudicate Well-Pleaded Complaint.................................24

3.    Procedural Abuses – Fairness…………...…………………………..28

4.    Systemic Bias And The 18-0 Scorecard ............................................32

5.    Procedural Fog And Judicial Hostility.................................................37

6.    Judicial Immunity And Accountability................................................42

XI.  DEMAND FOR RELIEF ....................................................................48

XII. CONCLUSION....................................................................................50

1.    Jurisdictional Misconduct: ...................................................................50

2.    Failure to Adjudicate a Well-Pleaded Complaint: .............................51

3.    Procedural Abuses:...............................................................................51

4.    Systemic Bias and Hostility: ...............................................................52

5.    Procedural Obfuscation and Judicial Hostility: ..................................52

6.    Judicial Immunity and Accountability:................................................52

XIII.      APPENDIX A: SCORECARD OF JUDICIAL DECISIONS ........56

XIV.      CERTIFICATE OF COMPLIANCE.................................................57

XVI.      CERTIFICATE OF SERVICE ........................................................58

## II. <u>TABLE OF AUTHORITIES</u>

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ...................................................... 13, 26

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ...........................................26

Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 884 (2009) .................. 15, 35, 39

Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)........................................ 45, 49

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813
  (1976).................................................................................................................40

Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)....................... 18, 23, 45, 52

Goney v. Clark, 749 F.2d 5 (3d Cir. 1984)............................................................37

Gonzalez v. United States, 553 U.S. 242, 254 (2008)...........................................16

Haines v. Kerner .......................................................................................... passim

Haines v. Kerner, 404 U.S. 519 (1972) ......................................................... passim

Nieves v. Griffits_, Civil Action No. 4:21-CV-377 (M.D. Pa. Mar. 22, 2023) 19, 37

Pierson v. Ray, 386 U.S. 547 (1967) .......................................................................47

Scheuer v. Rhodes, 416 U.S. 232 (1974)............................................... 17, 23, 45, 55

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)11, 22, 40 52

Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)..................................... 17, 44, 55

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984).........14

# III.  **JURISDICTION AND VENUE**

## 1.    JURISDICTION

**District Court's Jurisdiction**

The district court had jurisdiction under:

- 28 U.S.C. § 1331, which grants jurisdiction over cases arising under federal law, as Appellant's claims are rooted in the First and Fourteenth Amendments.

- 28 U.S.C. § 1343(a)(3), which provides jurisdiction over civil rights actions, including constitutional challenges.

- 28 U.S.C. § 2201 (Declaratory Judgment Act), which empowers federal courts to issue declaratory judgments in cases of actual controversy arising under federal law.

- Article III, Section 2 of the U.S. Constitution, which extends the judicial power to cases arising under the Constitution, laws of the United States, and controversies to which the United States is a party.

**Appellate Jurisdiction**

The United States Court of Appeals for the Third Circuit has jurisdiction under 28 U.S.C. § 1291, as the appeal is taken from a final decision of the district court.

**Timeliness of Appeal**

The district court entered its final judgment on September 30, 2024. Appellant

filed a timely notice of appeal on October 14, 2024, in compliance with Federal

Rule of Appellate Procedure 4(a).

2. **VENUE**

Venue was proper in the district court under 28 U.S.C. § 1391(b), as the actions

giving rise to this litigation occurred within the territorial jurisdiction of the

court.

---

## IV.  <u>INTRODUCTION</u>

**Executive Summary**

This appeal challenges the district court's dismissal of Appellant's constitutional

claims, highlighting procedural abuses, jurisdictional misconduct, and systemic

bias reflected in an 18-0 record of rulings against Appellant. This scorecard reflects

the consistency of judicial decisions favoring government respondents and

underscores the failure of impartiality and fairness in the district court's handling

of the case.

**Purpose of the Brief**

This brief compiles and, where applicable, restates objections from the district court proceedings to preserve the issues for appellate review while separately rearguing certain points to clarify errors for the appellate court.

**Procedural Context**

Appellant raised numerous objections to procedural errors, jurisdictional deficiencies, and judicial misconduct in the district court. These objections were improperly addressed or ignored, necessitating appellate intervention.

**Filing Under Protest**

This brief is filed under protest, pursuant to procedural irregularities that include the Clerk's improper directive dated October 29, 2024 for summary disposition under Local Rule 27 over objection and just two weeks after Appellant filed appeal. Appellant filed timely motions and objections addressing this violation to the Court but received no response from the Court. This filing is made under protest and without waiving any rights or claims, as detailed in **Appeal Docs. 13–16**.

# V. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. **Did the district court resolve the Rule 12(b)(1) motion to dismiss before issuing substantive rulings?**

   *Standard:* Jurisdictional challenges under Federal Rule of Civil Procedure (FRCP) 12(b)(1) must be resolved before the court proceeds to substantive or procedural actions (FRCP 12(h)(3); FRCP 1).

   *Argument Reference:* Argument 1: Jurisdictional Misconduct

2. **Did the district court improperly invoke abstention doctrines after exercising jurisdiction for nine months?**

   *Standard:* Abstention doctrines may not be invoked as a substitute for resolving jurisdictional defects (FRCP 12(b)(1); 28 U.S.C. § 1331).

   *Argument Reference:* Argument 1: Jurisdictional Misconduct

3. **Did the district court dismiss Appellant's well-pleaded complaint without properly applying FRCP 8(a)?**

   *Standard:* Complaints must include a short, plain statement showing entitlement to relief and must be construed liberally for pro se litigants (FRCP 8(a)(2); FRCP 1).

   *Argument Reference:* Argument 2: Failure to Adjudicate a Well-Pleaded Complaint

4

4. **Did the district court fail to apply the correct pleading standard when dismissing Appellant's constitutional claims under FRCP 12(b)(6)?**

   *Standard:* A motion to dismiss may only be granted if the complaint fails to state a claim upon which relief can be granted (FRCP 12(b)(6)). Pro se pleadings must be liberally construed and evaluated for plausibility, not perfection (FRCP 1; FRCP 8(e)).

   *Argument Reference:* Argument 2: Failure to Adjudicate a Well-Pleaded Complaint

5. **Did the district court abuse its discretion by setting aside OOR's default without "good cause"?**

   *Standard:* Defaults may only be set aside for "good cause" under FRCP 55(c), which requires an assessment of prejudice, culpability, and merit of the defense (FRCP 55(c); FRCP 1).

   *Argument Reference:* Argument 3: Procedural Abuses and Judicial Discretion

6. **Did the district court deny Appellant's motions without sufficient legal grounds?**

   *Standard:* The Federal Rules of Civil Procedure require that rulings on motions reflect the application of legal standards and provide procedural fairness (FRCP 1; FRCP 16).

*Argument Reference:* Argument 3: Procedural Abuses and Judicial Discretion

7. **Did the district court's 18-0 record of rulings against Appellant demonstrate systemic judicial bias?**

   *Standard:* Judicial impartiality is required by Canon 2 of the Code of Conduct for United States Judges and by principles of fairness inherent in the Federal Rules of Civil Procedure (FRCP 1; Canon 3).

   *Argument Reference:* Argument 4: Systemic Bias and the 18-0 Scorecard

8. **Did the district court's procedural delays and inconsistent rulings prevent the fair adjudication of Appellant's claims?**

   *Standard:* Federal Rule of Civil Procedure 1 mandates the just, speedy, and inexpensive determination of all actions. Judges must avoid conduct that delays or obstructs justice (Canon 3; 28 U.S.C. § 351).

   *Argument Reference:* Argument 5: Procedural Obfuscation and Judicial Hostility

9. **Did the district court fail to conduct de novo review of Appellant's objections under FRCP 72(b)?**

   *Standard:* Specific objections to a magistrate judge's recommendations require de novo review by the district court (FRCP 72(b); 28 U.S.C. §

636(b)(1)(C)).

*Argument Reference:* Argument 5: Procedural Obfuscation and Judicial Hostility

10. **Did Judges Carlson and Wilson act outside their jurisdiction, rendering their actions ultra vires and void?**

*Standard:* Judges lose immunity when acting outside their jurisdiction or in a non-judicial capacity (28 U.S.C. § 1331; FRCP 12(h)(3); Canon 2).

*Argument Reference:* Argument 6: Judicial Immunity and Accountability

11. **Are compensatory damages warranted for harm caused by judicial misconduct and ultra vires actions?**

*Standard:* Litigants are entitled to damages for harm caused by judicial actions taken without jurisdiction or contrary to statutory duties (42 U.S.C. § 1983; 28 U.S.C. § 1343).

*Argument Reference:* Argument 6: Judicial Immunity and Accountability

# VI.   <u>STATEMENT OF THE CASE</u>

This appeal arises from a pro se civil rights action brought under federal question jurisdiction, alleging violations of the First and Fourteenth Amendments. Appellant filed a Petition for Declaratory Judgment and Constitutional Challenge, seeking relief against state and county respondents for violations of free speech, due process, and equal protection rights. Despite presenting a well-pleaded complaint, Appellant faced procedural delays, selective rulings, and judicial hostility that resulted in dismissal without adjudication on the merits.

The district court exercised jurisdiction for nine months, issuing substantive and procedural rulings before dismissing the case under FRCP 12(b)(1) and 12(b)(6) and invoking abstention doctrines. This sequence created a jurisdictional paradox: either the court acted without jurisdiction or misused its jurisdiction, both to Appellant's detriment. The court failed to promptly resolve jurisdictional challenges, violating its obligation to address such issues before taking substantive or procedural actions.

Key procedural errors include:

1. **Failure to Provide De Novo Review**: The district court dismissed Appellant's specific objections as "generalized," contrary to the requirements of FRCP 72(b).

2. **Improper Setting Aside of Default**: The court set aside a default against one respondent without demonstrating "good cause" under FRCP 55(c).

3. **Unexplained Denial of Motions**: Appellant's motions were denied without explanation, while the court entertained baseless sanctions motions by respondents.

The procedural history reflects a pattern of systemic bias and disregard for procedural safeguards owed to pro se litigants. The district court exercised jurisdiction for nine months—issuing substantive and procedural rulings—before invoking abstention doctrines and dismissing the case under FRCP 12(b)(1) and 12(b)(6). This sequence created a jurisdictional paradox, as the court either acted without jurisdiction or misused its jurisdiction to the detriment of Appellant. Notably, the court failed to resolve jurisdictional challenges promptly, violating its obligation to address jurisdictional issues before substantive or procedural actions. The district court's unbroken 18-0 scorecard **(Appendix A)**, with no decisions favoring Appellant, is a testament to the systemic hostility and lack of impartiality that permeated the case.

Appellant's significant constitutional claims, rooted in the First and Fourteenth Amendments, remain unadjudicated. The court's failure to provide the fairness and leniency required for pro se litigants under binding precedent,

including *Haines v. Kerner*, 404 U.S. 519 (1972), further deprived Appellant of a meaningful opportunity to litigate.

This appeal seeks to address the district court's errors, including:

1. **Jurisdictional Misconduct**: Failure to resolve jurisdictional issues promptly and improper reliance on abstention doctrines.

2. **Misapplication of Procedural Rules**: Including errors under FRCP 12(b)(1), 12(b)(6), 55(c), and 72(b).

3. **Demonstrated Bias**: Evidenced by the court's systemic hostility and unbroken record of rulings favoring respondents.

Appellant requests this Court to vacate void and procedurally flawed orders, reinstate the Petition, and remand the case for adjudication under an impartial judge. Additionally, Appellant seeks compensatory relief for harm caused by judicial misconduct and urges this Court to restore procedural fairness, uphold constitutional rights, and protect the integrity of the judicial process.

# VII.  <u>STANDARD OF REVIEW</u>

The appellate review of this case is governed by established principles that ensure judicial accountability, adherence to procedural rules, and protection of constitutional rights. The following standards apply to the alleged errors, underscoring the appellate court's duty to rigorously apply these standards.

---

## 2.    JURISDICTIONAL MISCONDUCT

**Standard:**

- Jurisdictional findings under Federal Rule of Civil Procedure (FRCP) 12(b)(1) are reviewed de novo, as they involve questions of law. The appellate court must resolve jurisdictional questions independently, without deference to the district court's conclusions.

**Authority:**

- *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998): Jurisdiction is a threshold issue that must be resolved before substantive or procedural rulings.

- Federal Rule of Appellate Procedure (FRAP) 28(a): Appellants may raise jurisdictional defects at any stage of the proceedings.

**Application:**

The appellate court must independently determine whether the district court improperly exercised jurisdiction for nine months before abstaining and dismissing the case. Actions taken without jurisdiction, such as procedural rulings and dismissals, are void.

---

3.      **FAILURE TO ADJUDICATE A WELL-PLEADED COMPLAINT STANDARD:**

- Dismissals under FRCP 12(b)(6) are reviewed de novo. The appellate court evaluates whether the complaint states a plausible claim for relief, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff.

- Courts must provide leniency to pro se litigants, construing pleadings liberally to ensure fairness.

**Authority:**

- FRCP 12(b)(6): Establishes the standard for dismissing claims that fail to state a plausible legal claim.

- *Haines v. Kerner*, 404 U.S. 519 (1972): Pro se litigants are held to less stringent standards than attorneys.

- *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009): Requires a "plausible claim for relief," not an "unrealistic or overly detailed" one.

**Application:**

The appellate court must determine whether the district court erroneously dismissed Appellant's well-pleaded constitutional claims. Failure to liberally construe Appellant's pleadings or to apply the correct plausibility standard requires reversal.

---

## 4.    PROCEDURAL ABUSES

**Standard:**

- Procedural rulings, such as granting extensions or setting aside defaults, are reviewed for abuse of discretion. However, procedural rulings made without proper jurisdiction are reviewed de novo, as they are void ab initio.

- Courts must secure fairness and avoid arbitrary or biased procedural decisions under FRCP 1.

**Authority:**

- FRCP 55(c): Requires "good cause" for setting aside defaults.

- *United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984)*: Establishes criteria for setting aside defaults.

- Judicial Canons 2 and 3: Require impartiality, diligence, and avoidance of impropriety in judicial actions.

**Application:**

The appellate court must evaluate whether the district court abused its discretion by selectively applying procedural rules to favor respondents, including setting aside OOR's default without good cause, denying Appellant's motions without sufficient grounds, and mismanaging venue issue.

---

5.    **DEMONSTRATION OF BIAS AND SYSTEMIC HOSTILITY STANDARD:**

- Claims of judicial bias are reviewed de novo. The appellate court must determine whether the record demonstrates actual bias or an appearance of bias that undermines public confidence in the judiciary.

- Structural errors or systemic bias are reversible per se, as they violate constitutional guarantees of impartiality.

**Authority:**

- Canon 2, Code of Conduct for United States Judges: Judges must avoid impropriety and the appearance of impropriety.

- *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009): Bias or the appearance of bias erodes judicial legitimacy.

- *Haines v. Kerner*, 404 U.S. 519 (1972): Pro se litigants must be treated fairly to protect their rights.

**Application:**

The appellate court must assess the district court's 18-0 record of rulings against Appellant as evidence of systemic hostility and bias. Such a record demands reassignment to an impartial judge on remand.

---

**6.   JUDICIAL HOSTILITY AND PROCEDURAL OBFUSCATION STANDARD:**

- Procedural irregularities, such as prolonged delays and inconsistent rulings, are reviewed for abuse of discretion. However, when such actions create systemic bias or undermine constitutional claims, de novo review is warranted.

- Failure to conduct de novo review of objections under FRCP 72(b) constitutes reversible error.

15

**Authority:**

- FRCP 72(b): Requires district courts to conduct de novo review of objections to magistrate recommendations.

- *Gonzalez v. United States*, 553 U.S. 242, 254 (2008): Appellate courts review structural errors without deference to the district court.

**Application:**

The appellate court must determine whether the district court's selective enforcement of procedural rules and reliance on pretextual abstention doctrines denied Appellant a fair opportunity to litigate claims.

---

**7.    JUDICIAL IMMUNITY AND ACCOUNTABILITY STANDARD:**

- Questions of judicial immunity are reviewed de novo. Judges lose immunity for actions taken in the clear absence of jurisdiction or in violation of constitutional rights.

- Orders issued without jurisdiction are void and must be vacated.

**Authority:**

- *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978): Judicial immunity applies only when judges act within their jurisdiction and judicial capacity.

- *Scheuer v. Rhodes*, 416 U.S. 232 (1974): Judges acting as trespassers of the law lose immunity.

- *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868): Orders without jurisdiction are void.

**Application:**

The appellate court must evaluate whether Judges Carlson and Wilson acted beyond their jurisdiction, rendering their actions ultra vires and void. This includes rulings on sanctions, procedural extensions, and dismissals.

---

**Conclusion on Standards of Review**

Each of Appellant's claims is subject to rigorous standards that limit judicial discretion and protect procedural and constitutional rights. When these standards are misapplied, appellate courts must reverse or vacate the affected rulings to restore fairness and integrity to the judicial process.

# VIII. <u>SUMMARY OF THE ARGUMENT</u>

The district court violated procedural fairness, jurisdictional clarity, and judicial impartiality. Appellant's constitutional claims were dismissed in disregard of binding legal standards, requiring reversal.

**Argument 1:** The court improperly exercised jurisdiction for nine months before abstaining and sustaining 12(b)(1), violating the requirement to resolve jurisdictional issues first. All rulings made without jurisdiction are void.

**Argument 2:** The dismissal under FRCP 12(b)(6) failed to apply the well-pleaded complaint rule and required leniency for pro se litigants, demanding reinstatement of the Petition.

**Argument 3:** Procedural abuses, including setting aside OOR's default without "good cause" and denying Appellant's motions, deprived Appellant of a fair process.

**Argument 4:** The district court's 18-0 record of rulings against Appellant demonstrates systemic bias, requiring reassignment to an impartial judge.

**Argument 5:** Procedural delays, selective rule enforcement, and pretextual abstention created a procedural fog that obstructed fair adjudication of Appellant's claims.

**Argument 6:** Judges Carlson and Wilson exceeded their jurisdiction, rendering their actions ultra vires. Compensatory relief is warranted for harm caused by judicial misconduct.

Each failure demonstrates a breach of the applicable standards of review, necessitating vacatur of flawed orders, reinstatement of the Petition, reassignment to an impartial judge, and supervisory guidance to ensure procedural fairness.

---

## IX.   RESTATEMENT OF RIGHTS, OBJECTIONS, AND NON-WAIVER

**Restatement of Rights, Objections, and Non-Waiver**

Appellant reiterates that all rights, claims, and objections have been preserved throughout the proceedings. This appeal explicitly restates objections raised below and asserts that none have been waived. The record demonstrates a coordinated

19

effort to assail Appellant's ability to sustain his claims and objections through procedural attacks by both the judges and OOR's counsel, the Attorney General's office, as evidenced in Docs. 49, 52, 55, 64, and Docs. 11-1 and 17 in the appeal record.

**Preservation of Rights and Claims**

By explicitly restating objections as raised below, Appellant ensures that no issue is waived on appeal. This approach:

- Aligns with FRCP 72(b) and appellate procedure, ensuring that objections are properly preserved for review.

- Rebuts procedural mischaracterizations and attacks from respondents and the district court.

- Reinforces that the dismissal of objections constitutes reversible error.

**Demand for Findings of Fact and Conclusions of Law**

To the extent that this Court agrees with the district court's rulings or the respondents' arguments concerning dismissal (Doc. 64), Appellant demands findings of fact and conclusions of law under FRCP 52(a). Such findings are essential to comply with due process and to create a clear record for potential further review.

# X. <u>ARGUMENT</u>

## 1.    JURISDICTIONAL MISCONDUCT – A PROCEDURAL PARADOX

The district court's prolonged exercise of jurisdiction, followed by an abrupt abstention and dismissal under FRCP 12(b)(1), created a jurisdictional paradox that rendered its orders void and prejudiced Appellant. This failure violates FRCP 12(b)(1), principles established in *Steel Co. v. Citizens for a Better Environment*, and the foundational requirement that jurisdictional authority be resolved at the outset.

---

**Rule**:

1. **Federal Rules of Civil Procedure**:

   o **FRCP 12(b)(1)**: A motion to dismiss for lack of subject matter jurisdiction must be resolved before any substantive or procedural actions.

   o **FRCP 1**: Rules should secure the just, speedy, and inexpensive determination of every action.

2. **Federal Case Law**:

- *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998): Jurisdiction must be resolved before addressing substantive or procedural matters.

- *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868): Actions taken without jurisdiction are void.

- *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683 (1974): Judges acting beyond their jurisdiction lose immunity, and their rulings are void.

---

**Supporting Objections Below**:

1. **Delays in Resolving 12(b)(1)**:

   - **Doc. 63**: Appellant objected to the court's delay in ruling on 12(b)(1) motions, emphasizing the necessity of resolving jurisdiction before engaging in procedural rulings.

2. **Abstention Post-Jurisdictional Engagement**:

   - **Doc. 60**: Appellant challenged the magistrate judge's recommendation to abstain and sustain 12(b)(1) after nine months of jurisdictional engagement, highlighting the inconsistency and prejudice caused.

---

**Application**:

The district court violated FRCP 12(b)(1) and *Steel Co.* by engaging in substantive and procedural actions for nine months without resolving the 12(b)(1) motion. These actions included:

- Issuing procedural extensions favoring respondents (Doc. 34).

- Entertaining baseless sanctions motions (Doc. 48-1, Doc. 51) while delaying Appellant's cross-motions (Doc. 53).

By later invoking abstention doctrines to dismiss the case, the court created a jurisdictional paradox:

1. If the court had jurisdiction, its exercise of abstention was improper, as the case required resolution on the merits.

2. If the court lacked jurisdiction, all prior actions—including procedural rulings—are void under *Ex parte McCardle*.

This sequence prejudiced Appellant by:

- Denying timely adjudication of constitutional claims raised in Doc. 1 (Petition).

- Creating procedural chaos that shielded respondents from accountability while disadvantaging a pro se litigant.

**Conclusion**:

The district court failed the standard required under FRCP 12(b)(1) and *Steel Co.*.

This failure renders its actions reversible per se. Relief should include:

1.  Vacating all orders tainted by jurisdictional misconduct.

2.  Reversing the 12(b)(1) dismissal.

3.  Remanding for adjudication on the merits under supervisory guidance that

    prioritizes resolving jurisdiction before substantive actions.

---

**2.    FAILURE TO ADJUDICATE A WELL-PLEADED COMPLAINT – A**

    **PROCEDURAL MISSTEP**

The district court improperly dismissed Appellant's well-pleaded complaint under

FRCP 12(b)(6), failing to apply the correct standard and disregarding the deference

owed to pro se litigants. This dismissal contravened procedural rules requiring

courts to assume the truth of factual allegations and provide a fair opportunity for

claims to proceed.

---

**Rule**:

1.  **Federal Rules of Civil Procedure**:

o   FRCP 12(b)(6): A complaint may only be dismissed if it fails to state a claim upon which relief can be granted. Courts must assume the truth of factual allegations and construe them in the light most favorable to the plaintiff.

o   FRCP 8(a)(2): A pleading must contain a short and plain statement of the claim showing entitlement to relief.

2. **Federal Case Law**:

o   *Haines v. Kerner*, 404 U.S. 519 (1972): Pro se complaints are held to less stringent standards than those drafted by lawyers. Courts must liberally construe such pleadings to ensure fairness.

o   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007): A complaint must allege enough facts to state a claim that is plausible on its face.

o   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009): Plausibility under FRCP 12(b)(6) requires more than conclusory statements but does not demand detailed factual allegations.

---

**Supporting Objections Below**:

1. **Dismissal Without Addressing Merits**:

25

- o **Docs. 24, 28, 60**: Appellant objected to the dismissal of the Petition under 12(b)(6), arguing that the court failed to consider the well-pleaded allegations and misapplied the standard of review.

2. **Lack of Deference to Pro Se Status**:

- o **Doc. 40**: Appellant objected to the court's failure to afford leniency to his pro se filings, as required under *Haines v. Kerner*.

---

**Application:**

The district court violated FRCP 12(b)(6) and *Haines* by failing to adjudicate Appellant's well-pleaded claims according to the proper legal standard:

1. **Procedural Deficiency**:

- o The court dismissed Appellant's claims without assuming the truth of his factual allegations, contrary to FRCP 12(b)(6) and *Twombly*. For example:

  - ▪ Appellant alleged specific constitutional violations related to public access and free speech in **Doc. 1 (Petition)**, but these were summarily dismissed without sufficient grounds in **Doc. 64**.

- ▪ The court failed to explain why Appellant's allegations did not meet the plausibility standard under FRCP 8(a)(2).

2. **Failure to Provide Pro Se Leniency**:

  - ○ The court disregarded the leniency required under *Haines*, as evident in its dismissal of Appellant's procedural objections in **Doc. 40**. Instead of construing Appellant's filings liberally, the court dismissed them as incoherent, undermining Appellant's ability to assert his claims effectively.

3. **Prejudice to Appellant**:

  - ○ The court's improper dismissal precluded Appellant from litigating substantive constitutional claims. This prejudiced his right to due process and equal protection under the law.

---

**Conclusion:**

The district court failed to apply the proper leniency for pro se litigants under *Haines v. Kerner* and misapplied the plausibility standard under FRCP 12(b)(6) and *Iqbal*. Its dismissal of Appellant's well-pleaded complaint is reversible per se. Relief should include:

1. Reversing the dismissal under 12(b)(6).

2. Reinstating the Petition for proper adjudication on the merits.

3. Issuing supervisory guidance to emphasize the leniency owed to pro se litigants and the proper application of the plausibility standard under FRCP 12(b)(6).

---

### 3.   PROCEDURAL ABUSES – DENIAL OF FUNDAMENTAL FAIRNESS

The district court's selective application of procedural rules—setting aside OOR's default without "good cause," denying Appellant's motions without explanation, entertaining baseless sanctions motions, and mishandling venue considerations— demonstrates a disregard for Appellant's procedural rights and the integrity of the Federal Rules of Civil Procedure.

---

**Rule**:

1. **Federal Rules of Civil Procedure**:

   o **FRCP 55(c)**: Defaults may only be set aside for "good cause," requiring evidence of excusable neglect and no prejudice to the opposing party.

- ○ **FRCP 72(b)**: A district court must conduct de novo review of specific objections to a magistrate judge's recommendations.

- ○ **FRCP 1**: The rules must be construed to secure the just, speedy, and inexpensive determination of every action.

- ○ **28 U.S.C. § 1406(a)**: Courts may dismiss or transfer cases filed in the wrong venue to cure defects but must do so in the interest of justice.

2. **Judicial Conduct**:

- ○ **Canon 3, Code of Conduct for United States Judges**: Judges must diligently and impartially perform their duties to ensure procedural fairness.

---

**Supporting Objections Below**:

1. **Improper Setting Aside of Default**:

- ○ **Docs. 14, 25, 40**: Appellant objected to the court's decision to set aside OOR's default without requiring "good cause" under FRCP 55(c), emphasizing that OOR's failure to respond was inexcusable and prejudiced Appellant.

2. **Denial of Procedural Motions**:

- o **Doc. 20**: The court denied Appellant's motion for default judgment without explanation, ignoring OOR's procedural failure.

- o **Doc. 29**: Appellant's motion to strike was denied without addressing its merits, depriving him of procedural relief.

- o **Doc. 45, 46**: The court denied Appellant's motions to comply with LR 16.4 (conference request) and FRCP 55 (fact-finding on default), undermining Appellant's ability to present his case.

3. **Venue Mismanagement**:

- o **Docs. 42, 60**: Appellant objected to the court's sua sponte decision to transfer venue, arguing that the court failed to properly evaluate the statutory requirements under 28 U.S.C. § 1406(a).

---

**Application**:

The district court's actions violated procedural rules and created systemic prejudice against Appellant:

1. **Improper Setting Aside of Default**:

- o **FRCP 55(c)** requires "good cause" to set aside a default, including a showing of excusable neglect and no prejudice to the opposing party. OOR failed to meet this standard, as it provided no valid excuse for its

default. Appellant raised this objection in **Docs. 10, 25, 40**, but the court summarily granted OOR's motion without sufficient analysis.

2. **Denial of Procedural Motions**:

   ○ Appellant's motions for default judgment (**Doc. 20**), to strike (**Doc. 29**), and for procedural compliance (**Docs. 45, 46**) were denied without explanation, contrary to the requirements of FRCP 1 and FRCP 55. This selective enforcement of rules disadvantaged Appellant and violated his right to a fair process.

3. **Venue Mismanagement**:

   ○ The court improperly raised the issue of venue sua sponte and transferred the case without adequate justification under 28 U.S.C. § 1406(a). Appellant objected in **Docs. 42, 60**, but the court failed to demonstrate how the transfer served the interest of justice, leaving Appellant to restart proceedings in a new forum.

4. **Systemic Prejudice and Bias**:

   ○ The court's consistent denials of Appellant's motions, contrasted with its favorable treatment of respondents' procedural requests, reflect systemic bias and disregard for judicial impartiality under Canon 3.

31

**Conclusion**:

The district court abused its discretion by failing to enforce FRCP 55(c) when it set aside OOR's default without "good cause" and by selectively applying procedural rules in violation of FRCP 1. The district court's procedural abuses, including improper default handling, denial of Appellant's motions, and venue mismanagement, constitute reversible errors. Relief should include:

1. Vacating all orders tainted by procedural abuses, including the order setting aside OOR's default and rulings denying Appellant's motions.

2. Issuing supervisory guidance to clarify proper handling of defaults, sanctions motions, and venue considerations to ensure procedural fairness for pro se litigants.

3. Reassigning the case to an impartial judge to prevent further bias or hostility in future proceedings.

## 4.    SYSTEMIC BIAS AND THE 18-0 SCORECARD

The district court's unbroken record of 18 rulings in favor of government respondents against Appellant demonstrates systemic bias, a failure of impartiality, and a disregard for Appellant's constitutional rights as a pro se litigant.

**Rule**:

1. **Judicial Conduct**:

   ○ *Canon 2, Code of Conduct for United States Judges*: Judges must avoid impropriety and the appearance of impropriety in all activities.

   ○ *Canon 3*: Judges must diligently and impartially perform the duties of their office.

2. **Federal Rules of Civil Procedure**:

   ○ *FRCP 1*: Rules must secure the just, speedy, and inexpensive determination of every action.

   ○ *FRCP 72(b)*: A district court must conduct de novo review of specific objections to a magistrate judge's recommendations.

3. **Precedent on Impartiality and Fairness**:

   ○ *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009): Bias or the appearance of bias undermines public confidence in the judiciary.

   ○ *Haines v. Kerner*, 404 U.S. 519 (1972): Courts must provide procedural leniency and fairness to pro se litigants.

**Supporting Objections Below**:

1. **Systemic Bias Demonstrated by 18-0 Record**:

- Docs. 25, 40, 52, 53, 60, 63: Appellant objected to the district court's consistent rulings against him, highlighting the procedural and substantive errors in favor of the government respondents.

2. **Failure to Conduct De Novo Review**:

- Docs. 52, 60: Appellant objected to Judge Wilson's refusal to conduct a de novo review of his objections to the magistrate judge's recommendations under *FRCP 72(b)*.

- Doc. 52, 60: Appellant cited procedural hostility when the court dismissed objections as "generalized," failing to provide substantive consideration.

3. **Selective Application of Procedural Rules**:

- Docs. 14, 20, 40, 48-1, 51, 55, 63: Appellant objected to the court's selective application of rules, including setting aside OOR's default, granting respondents' motions for extensions, and summarily denying Appellant's motions.

**Application**:

1. **The 18-0 Scorecard**:

o The district court ruled in favor of respondents in all 18 substantive and procedural decisions, as evidenced by the detailed scorecard below and in **Appendix A**.

**Summary of Key Decisions Favoring Government Respondents**:

o **Decision #1**: County's Motion to Dismiss (12(b)(1) & 12(b)(6)) – Granted

o **Decision #2**: OOR's Motion for Extension to Respond – Granted

o **Decision #7**: Judge Wilson Denies De Novo Review of Pro Se Objections – Denied

This pattern reflects systemic bias, particularly against a pro se litigant, who is entitled to procedural leniency under *Haines v. Kerner*. By failing to balance procedural fairness, the court eroded public confidence in its impartiality, violating *Canons 2 and 3*.

2. **Failure to Review Objections De Novo**:

o Judge Wilson dismissed Appellant's objections as "generalized" under *Goney v. Clark*, but the objections were specific and pointed to clear procedural and legal errors (Docs. 40, 60).

o In contrast, other district courts in the Third Circuit, such as the Middle District court in *Nieves v. Griffits*, showed deference to pro se

litigants by conducting de novo review. The court's refusal to do so here underscores its systemic hostility. (Doc. 55, 64)

3. **Selective Rule Application**:

   o The court selectively applied procedural rules, granting respondents procedural relief while denying Appellant the same consideration (Docs. 20, 25, 30, 39, 40, 42, 44, 45, 46, 53, 55, 60).

   o The court entertained baseless sanctions motions by government respondents for five months, allowing government retaliation and coercion, further demonstrating bias.

**Conclusion**:

The district court's systemic bias, evidenced by the 18-0 scorecard and selective procedural rulings, demands appellate intervention. Relief should include:

1. **Reassignment to an Impartial District Court Judge**: Reassign the case to an impartial district court judge to ensure fairness and impartiality in future proceedings.

2. **Supervisory Guidance**: Issue guidance to address systemic bias against pro se litigants and ensure adherence to *Canons 2 and 3*.

3. **Judicial Ethics Review**: Refer Judges Carlson and Wilson for investigation under 28 U.S.C. § 351 to address systemic hostility and procedural misconduct in this case.

---

## 5.    PROCEDURAL FOG AND JUDICIAL HOSTILITY

The district court's inconsistent rulings, prolonged delays, and pretextual invocation of abstention created a procedural fog that shielded respondents from accountability and denied Appellant a substantive adjudication of constitutional claims. Coupled with systemic hostility, these actions undermined judicial impartiality and fairness.

---

**Rule**:

1. **Judicial Impartiality and Hostility**:

   - **Canon 2, Code of Conduct for United States Judges**: Judges must avoid impropriety and the appearance of impropriety in all activities.

   - **Canon 3**: Judges must diligently and impartially perform the duties of their office.

- ○ ***Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 884 (2009)***: Bias or the appearance of bias erodes public confidence in the judiciary.

2. **Federal Rules of Civil Procedure**:

- ○ **FRCP 1**: Rules must secure the just, speedy, and inexpensive determination of every action.

- ○ **FRCP 72(b)**: A district court must conduct de novo review of specific objections to a magistrate judge's recommendations.

3. **Abstention Doctrines and Jurisdictional Clarity**:

- ○ ***Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-94 (1998)***: Jurisdiction must be resolved before addressing substantive or procedural matters.

- ○ ***Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)***: Federal courts have a "virtually unflagging obligation" to exercise jurisdiction.

---

**Supporting Objections Below**:

1. **Prolonged Jurisdictional Engagement**:

    o **Docs. 39, 44, 63**: Appellant objected to the court's extended delay in resolving Rule 12(b)(1) motions while actively exercising jurisdiction, issuing procedural orders, and entertaining sanctions motions (**Docs. 48-1, 51**).

2. **Pretextual Invocation of Abstention**:

    o **Doc. 60**: Appellant objected to the magistrate judge's recommendation to abstain after nine months of jurisdictional engagement, which contradicted *Steel Co.* and caused procedural confusion.

3. **Selective Application of Procedural Rules**:

    o **Docs. 40, 55, 59, 60, 64**: Appellant objected to the court granting respondents' motions for extensions and dismissals while summarily denying Appellant's motions without substantive review.

4. **Failure to Conduct De Novo Review**:

    o **Docs. 40, 60**: Appellant objected to the court's failure to conduct de novo review of objections under FRCP 72(b).

---

**Application**:

1. **Procedural Fog and Jurisdictional Paradox**:

   o  The district court engaged in substantive and procedural actions for nine months, including issuing procedural rulings and entertaining motions, before sustaining Rule 12(b)(1). This creates a paradox: the court either acted without jurisdiction, rendering its actions void, or misused its jurisdiction in a manner prejudicial to Appellant.

   o  The invocation of abstention doctrines after prolonged jurisdictional engagement compounded procedural confusion and evading the constitutional claims at issue.

2. **Hostility Toward Pro Se Litigant**:

   o  The court's selective application of procedural rules favored respondents at every stage while disadvantaging Appellant:

   ▪  Granting respondents' extensions (**Doc. 34**) while summarily denying Appellant's procedural motions (**Docs. 20, 40, 45, 55**).

   ▪  Entertaining baseless sanctions motions by respondents (**Docs. 48-1, 51**) while refusing to rule on Appellant's cross-motion (**Doc. 53**).

   o  The court dismissed Appellant's specific objections under FRCP 72(b) as "generalized," contrary to its duty of de novo review, and failed to

address the detailed legal errors identified in Appellant's objections
(**Docs. 40, 52, 55**).

3. **Evident Hostility in Record**:

o   The unbroken pattern of adverse rulings against Appellant, including
procedural and substantive decisions, reflects systemic hostility. The 18-0
Scorecard presented in Argument 4 corroborates this pattern,
demonstrating the court's consistent bias.

---

**Conclusion**:

The district court's procedural fog and hostility toward Appellant, as evidenced by
inconsistent rulings, jurisdictional paradoxes, and systemic bias, necessitate
appellate intervention. Relief should include:

1. **Vacatur of Flawed Orders**: Reverse the district court's orders, including
the 12(b)(1) dismissal, abstention ruling, and denials of Appellant's motions.

2. **Reassignment to an Impartial Judge**: Ensure future proceedings are
conducted fairly, free of bias or hostility.

3. **Supervisory Guidance**: Issue guidance to address structural bias against pro
se litigants, emphasizing adherence to FRCP 1 and Canons 2 and 3 of the
Code of Conduct for United States Judges.

41

4. **Judicial Ethics Review**: Investigate systemic hostility and procedural misconduct under 28 U.S.C. § 351 to restore public confidence in judicial impartiality.

---

## 6.    JUDICIAL IMMUNITY AND ACCOUNTABILITY

Judges Carlson and Wilson acted beyond their judicial authority by engaging in ultra vires conduct, including prolonged jurisdictional engagement, procedural rulings without legal foundation, and dismissals that violated Appellant's constitutional rights. These actions strip them of judicial immunity and require accountability under federal law.

---

**Rule**:

1. **Judicial Immunity**:

   o **FRCP 12(b)(1)**: Jurisdictional authority must be resolved before any judicial action is taken.

   o ***Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)***: Judicial immunity applies only to acts within a judge's jurisdiction and judicial capacity.

- o ***Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974)***: Judges acting as trespassers of the law lose immunity, rendering their actions void.

- o ***Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)***: Orders issued without jurisdiction are void.

2. **Accountability for Misconduct**:

   - o **Canon 3, Code of Conduct for United States Judges**: Judges must diligently and impartially perform their duties, ensuring adherence to the rule of law.

   - o ***Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)***: Courts may impose costs and sanctions for procedural abuses.

3. **Constitutional Liability**:

   - o **42 U.S.C. § 1983**: Officials acting under color of law may be held personally liable for constitutional violations.

---

**Supporting Objections Below**:

1. **Prolonged Jurisdictional Engagement Without Authority**:

o **Doc. 63**: Appellant objected to the court's nine-month delay in ruling on 12(b)(1) motions while engaging in procedural and substantive actions, in direct violation of jurisdictional rules under *Steel Co.*.

2. **Void Orders from Ultra Vires Actions**:

o **Docs. 14, 64**: Appellant objected to the setting aside of OOR's default and dismissal of the Petition, which were issued without jurisdiction, rendering them void under *Ex parte McCardle*.

3. **Retaliatory Use of Sanctions Motions**:

o **Doc. 53**: Appellant objected to the court's failure to rule on cross-motions for sanctions, highlighting the selective enforcement of procedural rules to Appellant's detriment.

**New Objection on Appeal**:

1. **Loss of Judicial Immunity**:

o Judges Carlson and Wilson's actions, including entertaining baseless sanctions motions (**Docs. 48-1, 51**) and issuing rulings without jurisdiction (**Docs. 14, 64**), constitute ultra vires conduct. These actions strip them of immunity under *Scheuer* and *Pierson v. Ray, 386 U.S. 547 (1967)*.

44

2. **Violation of Constitutional Rights**:

   o The court's failure to adjudicate Appellant's well-pleaded

   constitutional claims and its retaliatory procedural conduct violated

   Appellant's First and Fourteenth Amendment rights, creating personal

   liability under **42 U.S.C. § 1983**.

---

**Application**:

1. **Judicial Immunity and Void Orders**:

   o The district court engaged in jurisdictional actions for nine months

   before sustaining Rule 12(b)(1) motions. This either rendered its prior

   actions void under *Ex parte McCardle* or demonstrated misuse of

   jurisdiction.

   o By dismissing the Petition without addressing constitutional claims

   and entertaining baseless sanctions motions, the judges acted beyond

   their judicial authority, losing immunity under *Scheuer*.

2. **Retaliatory Conduct and Selective Enforcement**:

   o The court selectively entertained respondents' motions while

   disregarding Appellant's procedural rights, including:

- Granting respondents' extensions (**Doc. 34**) while summarily denying Appellant's motions for procedural relief (**Docs. 20, 40, 45, 55**).

- Refusing to rule on Appellant's cross-motion for sanctions (**Doc. 53**) while entertaining baseless sanctions motions by respondents (**Docs. 48-1, 51**).

  o These actions demonstrate hostility and bias, violating Canons 2 and 3 of the Code of Conduct for United States Judges.

3. **Accountability for Constitutional Violations**:

  o The judges' ultra vires actions, including the dismissal of well-pleaded constitutional claims and retaliatory procedural conduct, violated Appellant's rights under the First and Fourteenth Amendments. Such violations create personal liability under **42 U.S.C. § 1983**.

---

**Conclusion**:

The district court's ultra vires actions and judicial misconduct demand appellate intervention. Relief should include:

1. **Vacatur of Void Orders**: Reverse all orders issued without jurisdiction, including the 12(b)(1) dismissal, abstention ruling, and denial of Appellant's motions.

2. **Compensatory Damages**: Award damages for harm caused by judicial misconduct, including litigation costs and fees under *Chambers v. NASCO, Inc.*, and the Equal Access to Justice Act.

3. **Reassignment to an Impartial Judge**: Ensure future proceedings are conducted fairly and free of bias.

4. **Supervisory Guidance**: Emphasize that ultra vires actions and jurisdictional violations void judicial orders and expose judges to personal liability.

5. **Judicial Ethics Review**: Investigate systemic bias and procedural abuses under 28 U.S.C. § 351 to restore confidence in judicial impartiality.

# XI.   DEMAND FOR RELIEF

**1. Vacatur of Lower Court Orders**

- Vacate all orders issued by the district court, as they are procedurally and substantively flawed:

    o The improper setting aside of OOR's default.

    o All jurisdictional rulings made without resolving jurisdiction first.

    o The dismissals under FRCP 12(b)(1) and 12(b)(6) without adherence to the well-pleaded complaint rule.

    o Denials of Appellant's motions without explanation or substantive consideration.

**2. Reinstatement and Proper Adjudication of the Petition**

- Reinstate the Petition for adjudication on its merits, ensuring:

    o All constitutional claims are addressed without prejudice or procedural hostility.

    o Respondents are required to answer under FRCP 8(b)(6) due to their default.

**3. Mandated Deadlines for Lower Court Action**

- Order the lower court to:

    o Resolve all pending motions within 10 days.

    o Require respondents to answer the Petition within 14 days.

    o Render a decision on the merits of the Petition within 30 days.

**4. Transfer to the Eastern District of Pennsylvania**

- Transfer the case to the Eastern District of Pennsylvania to consolidate Appellant's related § 1983 case, ensuring a coordinated review of constitutional claims.

**5. Reassignment to an Impartial Judge**

- Reassign the case to an impartial district court judge to prevent further procedural bias and hostility and ensure fair adjudication.

**6. Supervisory Instructions for the Lower Court**

- Issue clear supervisory instructions for the lower court to:

  - Adhere strictly to FRCP requirements for resolving jurisdictional issues before proceeding.

  - Apply the well-pleaded complaint rule rigorously under FRCP 12(b)(6).

  - Protect pro se litigants' rights under *Haines v. Kerner* and ensure procedural fairness.

  - Provide findings of fact and conclusions of law for all future adverse rulings.

**7. Judicial Ethics and Accountability Review**

- Refer Judges Carlson and Wilson for investigation under 28 U.S.C. § 351 based on:

  - Systemic procedural abuses.

  - Bias against a pro se litigant.

  - Failure to meet judicial obligations under Canons 2 and 3 of the Code of Conduct for United States Judges.

**8. Transparency in Future Proceedings**

- Direct the lower court to issue findings of fact and conclusions of law for all rulings to ensure transparency and compliance with due process.

**9. Compensatory Relief for Procedural Misconduct**

- Award compensatory damages to Appellant for harms caused by the district court's misconduct, including:

  - Litigation costs incurred due to ultra vires rulings.

  - Delays and prejudice resulting from procedural obfuscation.

  - Expenses caused by the improper setting aside of default and the abstention ruling.

**10. Retention of Appellate Oversight**

- Retain appellate jurisdiction to:
    - Monitor compliance with these directives.
    - Ensure timely and proper adjudication of Appellant's constitutional claims.

---

## XII.  <u>CONCLUSION</u>

The district court's actions in this case represent a series of fundamental errors that demand appellate correction. Specifically, the district court violated critical procedural rules and judicial standards in the following ways:

1. **JURISDICTIONAL MISCONDUCT:**

    The court's prolonged exercise of jurisdiction, followed by an abrupt invocation of abstention and the sustaining of a 12(b)(1) motion, created a jurisdictional paradox, rendering its orders void. As established in *Steel Co.* and *Ex parte McCardle*, jurisdiction must be resolved before any substantive action is taken, and actions taken without jurisdiction are legally void. This Court must enforce the principle that jurisdictional issues be resolved promptly, as jurisdiction is a threshold matter that must be settled before any substantive legal determinations are made.

2. **FAILURE TO ADJUDICATE A WELL-PLEADED COMPLAINT:**

The district court improperly dismissed Appellant's well-pleaded complaint under FRCP 12(b)(6), failing to apply the correct legal standard and disregarding the deference owed to pro se litigants under *Haines v. Kerner*. The court's failure to apply this standard prematurely dismissed Appellant's meritorious constitutional claims. This Court must hold the district court accountable for applying the well-pleaded complaint rule, ensuring that the leniency owed to pro se litigants is properly applied in the context of dismissals under Rule 12(b)(6).

3. **PROCEDURAL ABUSES:**

The district court engaged in procedural abuses by selectively applying procedural rules, including improperly setting aside OOR's default without showing "good cause," denying Appellant's motions without explanation, and improperly raising venue issues *sua sponte*. These actions resulted in an unjustified procedural disadvantage for Appellant and violated the integrity of the Federal Rules of Civil Procedure. This Court must mandate that all procedural decisions adhere to the strict requirements of the FRCP, particularly with respect to the setting aside of defaults and the handling of venue issues.

4. **SYSTEMIC BIAS AND HOSTILITY:**

The district court's unbroken 18-0 record of rulings in favor of government respondents demonstrates systemic bias and judicial hostility. This pattern of decisions undermines the impartiality required of judges and erodes public confidence in the fairness of the judicial process, as required by judicial conduct rules and established case law. This Court is urged to apply the principles of impartiality and fairness under Canons 2 and 3, ensuring that any appearance of bias, particularly in cases involving pro se litigants, is rigorously addressed and corrected.

5. **PROCEDURAL OBFUSCATION AND JUDICIAL HOSTILITY:**

The district court's consistent delays, selective enforcement of procedural rules, and pretextual invocation of abstention doctrines created a procedural fog that shielded respondents from accountability. This pattern of behavior, along with the district court's hostile treatment of Appellant, reveals a clear violation of principles of judicial impartiality and fairness. This Court must intervene to prevent the continuation of such procedural obfuscation, ensuring that the case is adjudicated in accordance with established standards of transparency, fairness, and timeliness.

6. **JUDICIAL IMMUNITY AND ACCOUNTABILITY:**

The actions of Judges Carlson and Wilson were ultra vires, taken without

jurisdiction and in violation of Appellant's constitutional rights. These actions strip them of judicial immunity, and they must be held personally accountable for the harm caused by their misconduct. This Court must apply the standard set forth in *Stump v. Sparkman* and *Scheuer v. Rhodes*, ensuring that judges acting beyond their jurisdiction are held accountable, and their actions rendered void.

Based on these substantial and clear legal errors, Appellant respectfully requests the following relief:

1. **Vacatur of Void and Procedurally Flawed Orders:**

   Vacate all orders issued by the district court, including the 12(b)(1) dismissal, abstention ruling, setting aside of OOR's default, and denial of Appellant's procedural motions. This Court must ensure that all actions taken without proper jurisdiction are nullified, including any procedural rulings made without due process.

2. **Reinstatement of Petition:**

   Reinstate Appellant's Petition, with acknowledgment that OOR remains in default, and require respondents to answer the Petition's well-pleaded claims. This Court must ensure that the Petition is adjudicated on its merits, in accordance with the standards for procedural fairness and the deference due to pro se litigants.

53

3. **Reversal and Remand with Instructions:**

Reverse all adverse rulings and remand the case for adjudication on the merits under the supervision of an impartial judge, with clear instructions to resolve jurisdiction promptly and apply procedural fairness. This Court must issue clear guidance to the district court to prevent any further violations of procedural fairness, ensuring that all future rulings are made in a timely and impartial manner.

4. **Judicial Ethics Review:**

Refer Judges Carlson and Wilson for a judicial ethics review under 28 U.S.C. § 351 to investigate systemic bias, procedural misconduct, and failure to uphold the principles of impartiality and fairness. This Court must ensure that appropriate ethical review is conducted to restore integrity to the judicial process.

5. **Supervisory Oversight:**

Issue supervisory guidance to ensure that jurisdictional issues are resolved before any substantive or procedural actions are taken, and to ensure that pro se litigants are afforded the necessary leniency and procedural protections. This Court must ensure that judicial conduct is consistent with the high standards of fairness, impartiality, and due process as required by the Constitution.

6. **Compensatory Damages:**

Award compensatory damages for harm caused by ultra vires actions, judicial misconduct, and procedural delays, including litigation costs and fees. This Court must provide compensation to Appellant for the harm caused by the district court's violations of procedural and constitutional rights.

Appellant's right to a fair and just hearing has been violated at every stage, and the appellate court must intervene to correct these errors. The relief sought is necessary to restore the integrity of the judicial process and ensure that Appellant's constitutional rights are properly adjudicated.

# XIII. APPENDIX A: SCORECARD OF JUDICIAL DECISIONS

This appendix presents the list of substantive judicial decisions in the case, with the checkbox representing which party the decision favored. The 18-0 record highlights systemic bias in the district court's handling of the case. The following table reflects how procedural and substantive decisions were consistently adverse to Appellant's rights.

**SCORECARD OF JUDICIAL DECISIONS - PRO SE PETITIONER v. GOVERNMENT RESPONDENTS**

| Decision # | Doc # | Description of Judge's Decision | Favored Government Respondent | Favored Pro Se Petitioner |
|---|---|---|---|---|
| 1 | 8 | County's Motion to Dismiss (12(b)(1) and 12(b)(6)) | ✓ | |
| 2 | 10 | OOR's Motion for Extension to Respond | ✓ | |
| 3 | 37 | Carlson's Recommendation to Set Aside Default | ✓ | |
| 4 | 34 | Granting of OOR's Motion for Extension to Respond | ✓ | |
| 5 | 29 | Petitioner's Motion to Strike DENIED | ✓ | |
| 6 | 55 | Court Order Affirming Carlson's Recommendations | ✓ | |
| 7 | 55 | Judge Wilson denies de novo review of Pro Se objections (1) | ✓ | |
| 8 | 59 | Carlson Recommends Dismissal and Transfer of Venue | ✓ | |
| 9 | 53 | Denial to Rule on (Cross) Motion for Sanctions | ✓ | |
| 10 | 39, 44, 63 | Repeated refusal to rule on Petitioner's motions regarding 12(b) | ✓ | |
| 11 | 20 | Petitioner's Motion for Default Judgment DENIED | ✓ | |
| 12 | 46 | Petitioner's Motion for Hearing on OOR's Default per Rule 55 | ✓ | |
| 13 | 45 | Petitioner's Motion for a LR 16.4 Conference DENIED | ✓ | |
| 14 | 64 | Judge Wilson denies de novo review of Pro Se objections (2) | ✓ | |
| 15 | 64 | Judge Wilson Orders Abstention Jurisdiction | ✓ | |
| 16 | 64 | Judge Wilson Grants 12(b)(6) | ✓ | |
| 17 | 64 | Judge Wilson Grants 12(b)(1) | ✓ | |
| 18 | 64 | Judge Wilson Orders Transfer of Venue to 'Surviving Claims' | ✓ | |
| **Total Decisions Favoring 'Team Government': 18** | | | | |
| **Total Decisions Favoring Petitioner: 0** | | | | |

# XIV. <u>CERTIFICATE OF COMPLIANCE</u>

1. **Word Count Compliance**

   This document complies with the type-volume limitation of Federal Rule of

   Appellate Procedure 32(a)(7)(B) and Local Appellate Rule 32.1(c).

2. **Typeface and Font Compliance**

   This document complies with the typeface and type-style requirements of

   Federal Rule of Appellate Procedure 32(a)(5) and (6).

Respectfully Submitted,

<u>/s/*Michael Miller*</u>
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
reaganfive@protonmail.com

Dated: November 18, 2024

# XVI. <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served by e-service a true and correct copy of

the foregoing document to the following:

<table>
<tr>
<td>

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
<u>mscarinci@attorneygeneral.gov</u>

</td>
<td>

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
<u>sstaub@mcneeslaw.com</u>

</td>
</tr>
</table>

Respectfully Submitted,

<u>/s/*Michael Miller*</u>
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
Dated: November 18, 2024      <u>reaganfive@protonmail.com</u>

# EXHIBIT F

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | No: 24-2934 |

**BRIEF IN SUPPORT OF APPELLANT'S MOTION TO REMEDY PROCEDURAL IRREGULARITIES, PROTECT CONSTITUTIONAL CLAIMS, AND COMPEL JUDICIAL OVERSIGHT**

## I. INTRODUCTION

This appeal raises significant constitutional issues regarding the First and Fourteenth Amendments, including a direct challenge to Pennsylvania's public records law. The procedural irregularities and delays perpetuated by the Clerk's October 29, 2024, directive and the Court's subsequent inaction have jeopardized Appellant's ability to receive a fair and timely adjudication. This brief supports Appellant's motion for judicial intervention to restore procedural integrity, provide meaningful oversight, and prevent further obstruction and delay.

## II. STATEMENT OF THE CASE

On October 14, 2024, Appellant filed a Notice of Appeal in this matter. On October 29, 2024, the Clerk issued a directive staying the briefing schedule and listing the appeal for summary disposition without judicial authorization, in violation of Local Rule 27(a). Despite Appellant's timely objections and motions, the Court has not acted for over 30 days. This inaction undermines procedural fairness, disproportionately prejudices a pro se litigant, and compromises the resolution of important constitutional claims.

## III. LEGAL STANDARD

1. **Mandamus Authority**: The All Writs Act, 28 U.S.C. § 1651, empowers the Court to issue all writs necessary to ensure the proper administration of justice. Mandamus relief is warranted when:

   - The petitioner has a clear and indisputable right to relief.

   - The respondent has a clear duty to act.

   - There is no adequate alternative remedy.

2. **Judicial Oversight**: FRAP 27(b) requires prompt judicial action on motions. Local Rule 27(a) limits the Clerk's authority to procedural matters, requiring judicial review for substantive decisions. The Court must act to correct any overreach that impacts the administration of justice.

3. **Special Protections for Pro Se Litigants**: *Haines v. Kerner*, 404 U.S. 519 (1972), establishes that courts must liberally construe pro se filings and ensure procedural fairness.

4. **Constitutional Claims**: Cases such as *Ex Parte Young*, 209 U.S. 123 (1908), and *Zwickler v. Koota*, 389 U.S. 241 (1967), affirm the judiciary's obligation to address constitutional challenges without delay or obstruction.

---

## IV. ARGUMENT

### A. Procedural Irregularities Have Compromised Appellant's Appeal

As explained in Appellant's filings, the Clerk's October 29 directive, *Doc. 11-1*, exceeded her authority under Local Rule 27(a), which confines the Clerk's role to procedural matters. (*Doc. 13,14*) By staying the briefing schedule and listing the case for summary disposition, the Clerk effectively made adjudicative decisions without judicial authorization. This overreach necessitates judicial intervention to restore procedural integrity.

## B. The Court's Inaction Violates FRAP 27(b) and Canon 3

The Court's failure to address Appellant's motions for over 30 days violates FRAP 27(b), which mandates prompt judicial action. (*Doc. 13,14,15,16*) Canon 3(A)(5) of the Code of Conduct for United States Judges requires judges to dispose of the court's business diligently. Delays in addressing motions for judicial review obstruct Appellant's ability to obtain a timely resolution of constitutional claims.

## C. Mandamus Relief is Warranted to Protect Appellant's Constitutional Rights

Appellant has a clear and indisputable right to have constitutional claims adjudicated on the merits without procedural obstruction. The Court has a clear duty to rectify procedural errors and ensure compliance with the Federal Rules of Appellate Procedure. Mandamus relief is appropriate under 28 U.S.C. § 1651 to compel judicial oversight, restore procedural order, and protect Appellant's constitutional rights.

## D. The Judiciary Has a Duty to Prevent Structural and Reversible Errors

The procedural deficiencies in this case—particularly the denial of notice, hearing, judicial review, and irregular exercise of jurisdiction—constitute structural errors that are reversible per se. The Court must intervene to prevent further violations and uphold its duty to protect the effective administration of justice.

## V. RELIEF REQUESTED

Appellant respectfully requests that the Court:

1. Vacate the Clerk's October 29, 2024, directive as unauthorized under Local
   Rule 27(a).

2. Order prompt judicial action on all pending motions and objections, with
   clear deadlines to ensure compliance with Rule 27(b).

3. Confirm Appellant's constitutional right to challenge Pennsylvania's public
   records law and County policy under the First and Fourteenth Amendments.

4. Establish procedural safeguards to prevent similar delays and irregularities
   in future cases.

## VI. CONCLUSION

The Court's handling of this appeal over the past 12 months raises serious concerns
about the preservation of long-standing constitutional principles. The delays,
procedural irregularities, and lack of substantive engagement with Appellant's
claims threaten to erode the integrity of judicial oversight, the accessibility of
justice for pro se litigants, and the protection of fundamental constitutional rights.

If such actions represent the current state of the law, it marks a departure from well-established precedents, including *Ex Parte Young*, *Steffel v. Thompson*, 415 U.S. 452 (1974), *Zwickler v. Koota*, and *Haines v. Kerner*. This matter presents an opportunity for the Court to reaffirm its commitment to procedural fairness, timely justice, and the safeguarding of constitutional rights, as required under both precedent and statutory law.

Respectfully submitted,

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, F, 246
Ephrata, Pennsylvania 17522
reaganfive@protonmail.com

Dated:  December 5, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served by e-mail a true and correct copy of the

foregoing document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com

Respectfully Submitted,

/s/*Michael Miller*
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
reaganfive@protonmail.com

Dated: December 5, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | No: 24-2934 |

**APPELLANT'S MOTION FOR JUDICIAL INTERVENTION TO REMEDY PROCEDURAL IRREGULARITIES AND ENSURE TIMELY ADJUDICATION**

## I. INTRODUCTION

Appellant Michael Miller moves this Court pursuant to Federal Rule of Appellate Procedure 27 for judicial intervention to address systemic procedural irregularities, enforce procedural fairness, and ensure the timely adjudication of Appellant's constitutional claims. These irregularities include unauthorized actions by the Clerk of Court under Local Rule 27, the Court's failure to act on pending objections and motions for over 30 days, and continued procedural obstruction and delays undermining the integrity of this appeal.

This motion raises not only immediate concerns regarding Appellant's rights but also broader issues of judicial accountability. Granting this motion will reaffirm

the judiciary's constitutional obligation to protect the rights of pro se litigants and ensure the timely resolution of substantial constitutional claims.

---

## II. RELIEF REQUESTED

Appellant moves the Court take the following actions to address the procedural irregularities in this appeal:

1. **Vacate Unauthorized Directive:**

   Retract the Clerk's October 29, 2024 directive staying the briefing schedule and listing the case for summary disposition, as it violated Local Rule 27(a).

2. **Judicial Oversight:**

   Assign judicial review of all pending motions and objections filed by Appellant, ensuring compliance with FRAP 27(b) and the judiciary's ethical duties under Canon 3(A)(5).

3. **Set Deadlines:**

   Establish enforceable deadlines for the Court to act on all unresolved motions and objections to prevent further procedural delay and harm to Appellant's constitutional rights.

4. **Supervisory Mandamus:**

   Exercise supervisory mandamus under 28 U.S.C. § 1651 to ensure

compliance with applicable procedural rules, including FRAP 27(b) and 28 U.S.C. § 636(b)(1).

---

### III.  LEGAL BASIS FOR RELIEF

1. **Violation of Local Rule 27(a):**

   The Clerk's directive materially altered the procedural progression of this case without judicial authorization, exceeding the authority granted under Local Rule 27(a). Such an act constitutes a judicial function and must be treated as such under applicable law.

2. **Failure to Adhere to FRAP 27(b):**

   FRAP 27(b) mandates prompt judicial action on procedural motions. The Court's failure to act on Appellant's pending motions for over 30 days violates this rule and undermines Appellant's right to a fair and orderly appeal process.

3. **Constitutional Implications:**

   The delays and irregularities in this appeal obstruct Appellant's right to due process under the Fifth and Fourteenth Amendments. The Supreme Court in *Zwickler v. Koota*, 389 U.S. 241 (1967), and *Steffel v. Thompson*, 415 U.S.

452 (1974), has emphasized the judiciary's obligation to resolve

constitutional claims on their merits rather than through procedural evasion.

4. **Special Protections for Pro Se Litigants:**

   Citing *Haines v. Kerner*, 404 U.S. 519 (1972), Appellant highlights the

   heightened duty of courts to ensure procedural fairness for pro se litigants.

   Procedural delays and unauthorized actions disproportionately harm pro se

   petitioners and erode public confidence in the judiciary.

5. **Supervisory Mandamus Authority:**

   Under 28 U.S.C. § 1651, this Court has the authority to issue supervisory

   mandamus to enforce procedural compliance and protect Appellant's rights.

   Mandamus is appropriate here to prevent further harm caused by delays and

   irregularities that obstruct Appellant's access to justice.

---

## IV.   <u>CONCLUSION</u>

The procedural irregularities in this case, combined with the Court's prolonged

inaction, threaten Appellant's ability to secure a fair and timely adjudication of

substantial constitutional claims. Appellant respectfully requests that this Court

grant this motion, vacate the Clerk's directive, assign judicial oversight to all

pending motions and objections, and establish enforceable deadlines to ensure compliance with procedural and constitutional requirements.

If this Court's current approach is consistent with binding law, then precedents such as *Zwickler v. Koota* and *Haines v. Kerner* are effectively abandoned. Granting this motion will reaffirm the judiciary's role in safeguarding constitutional rights and ensure procedural integrity in this landmark case.

**Certification Regarding Concurrence**

Appellant notes that concurrence of the opposing party has not been sought. This motion seeks relief of a procedural nature directed to the Court and does not pertain to substantive disputes between the parties. Appellant believes that seeking concurrence under these circumstances is unnecessary and impractical.

Respectfully submitted,

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, F, 246
Ephrata, Pennsylvania 17522
reaganfive@protonmail.com
(717) 388-0163

Dated: December 5, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | No: 24-2934 |

**PROPOSED ORDER**

**ORDER**

AND NOW, this ___ day of _____, 2024, upon consideration of Appellant's

Motion to Remedy Procedural Irregularities, Protect Constitutional Claims, and

Compel Judicial Oversight, it is hereby ORDERED:

1. The Clerk's October 29, 2024, directive is VACATED as exceeding

   administrative authority under Local Rule 27(a).

2. The Court shall adjudicate all pending motions and objections no later than

   _____, 2024.

3. Appellant's constitutional right to challenge Pennsylvania's public records law and County policy under the First and Fourteenth Amendments is recognized and affirmed.

4. Procedural safeguards are directed to ensure future compliance with FRAP 27(b) and Local Rule 27(a).

BY THE COURT:

_____

Circuit Judge, Third Circuit Court of Appeals

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served by e-mail a true and correct copy of the

foregoing document to the following:


Michael Scarinci

Appellate Litigation Section

Pa. Office of Attorney General

15th Floor, Strawberry Square

Harrisburg, PA 17120

(717) 857-2184

mscarinci@attorneygeneral.gov

Sarah Hyser-Staub,

Lauren Anthony

McNees, Wallace & Nurick

100 Pine Street

Harrisburg, PA 17101

717-237-5473

sstaub@mcneeslaw.com


Respectfully Submitted,

/s/*Michael Miller*

Michael Miller

108 North Reading Road., Ste F, 246

Ephrata PA 17522

717-388-0163

Dated: December 5, 2024                reaganfive@protonmail.com

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Miller,<br>    Plaintiff,<br><br>v.<br><br>County of Lancaster,<br>Tammy Bender,<br>Jacqueline Pfursich,<br>Joshua Parsons,<br>Ray D'Agostino,<br>Christa Miller,<br><br>    Defendants. | Civ. No: 5:24-cv-05338-JFL |

**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**

**TABLE OF CONTENTS**

I.        INTRODUCTION...................................................................................................1

II.       GENERAL COLOR OF LAW STATEMENT ...........................................1

III.      SUMMARY OF CLAIMS ...............................................................2

IV.       PARTIES..............................................................................................................3

V.        JURISDICTION AND VENUE ..................................................................4

VI.       PROCEDURAL HISTORY.......................................................................5

VII.      TOLLING ARGUMENT............................................................................7

VIII.     NOTICE TO DEFENDANTS.......................................................................9

IX.       FACTUAL ALLEGATIONS.......................................................................9

X.        EXHIBIT HANDLING.............................................................................18

XI.       GENERAL LIABILITY ..........................................................................18

XII.      CONSOLIDATED DAMAGES CLAIM .................................................23

XIII.     CLAIMS FOR RELIEF ...........................................................................27

          Count I: 42 U.S.C. § 1983 – Prior Restraint...................................................27

          Count II: 42 U.S.C. § 1983 – Retaliation.........................................................32

          Count III: Right to Petition ............................................................................37

Count IV: 42 U.S.C. § 1983 – Procedural Due Process ...................................42

Count V: 42 U.S.C. § 1983 – Equal Protection Violation (Disparate Access to Election Records)...........................................................................................46

Count XI: Monell Liability ............................................................................71

Count XII: Abuse of Process ..........................................................................74

XIV.    CONSOLIDATED RELIEF SECTION ....................................................78

XV.     EXHIBIT LIST ........................................................................................79

XVI.    VERIFICATION AND SIGNATURE ......................................................80

XVII.   NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1..81

# I.   <u>INTRODUCTION</u>

Plaintiff, a candidate in an election marred by mismanagement, seeks justice for Defendants'
illegal actions that compromised voting integrity. When 14,000 of 22,000 absentee ballots were
misprinted, instead of issuing new ballots as required by federal law, Defendants filled out and
cast replacement ballots themselves—outside of voter oversight.

After the election, Plaintiff legally requested copies of these ballots to verify the results and
inform the public. Despite the Pennsylvania Office of Open Records granting this request on
October 5, 2022, Defendants have denied access for over two and a half years, using newly
created regulations to justify their refusal.

Defendants' continued obstruction has caused Plaintiff significant and irreparable harm. He
seeks relief under 42 U.S.C. § 1983 for deprivations of his rights.

# II.   <u>GENERAL COLOR OF LAW STATEMENT</u>

All actions alleged herein were taken by Defendants under color of state law in their respective
capacities as officers, employees, or agents of County of Lancaster. Each Defendant's conduct
constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's
constitutional rights.

1

### III.    SUMMARY OF CLAIMS

| Count | Defendants | Key Issues |
|---|---|---|
| I: Prior Restraint | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Restricted access to election records, suppressing political advocacy |
| II: Retaliation | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Retaliation for exercising First Amendment rights (e.g., sanctions motion) |
| III: Right to Petition | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Obstructed Plaintiff's right to file HAVA complaints and petitions |
| IV: Procedural Due Process | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Denial of fair procedures and legal process |
| V: Equal Protection (Disparate Access to Election Records) | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Unequal access to public election records |
| VI: Equal Protection (Unequal Treatment Under RTKL) | County, Bender, Pfursich, Parsons, D'Agostino | Unequal treatment of RTKL requests and judicial review |
| VII: PA Constitution – Free Speech & Petition | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Suppressed free speech and petition rights under PA Constitution |
| VIII: PA Constitution – Free and Fair Election | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Violated Plaintiff's right to a free and fair election |
| IX: Conspiracy | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Conspired to deprive Plaintiff of constitutional rights |
| X: HAVA Violations | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Mishandled absentee ballots in violation of HAVA standards |
| XI: Monell Liability | County | County's policies and customs led to violations of constitutional rights |
| XII: Abuse of Process | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Misuse of legal process to delay, coerce, and obstruct Plaintiff's rights |

| IX: Conspiracy (42 U.S.C. § 1983) | County, Bender, Pfursich, Parsons, D'Agostino, C. Miller | Conspired to deprive Plaintiff of constitutional rights |
| --- | --- | --- |

## IV.    PARTIES

1. Plaintiff Michael Miller ("Plaintiff" or "Miller") is a citizen of Pennsylvania and the United States, residing in Lancaster County, Pennsylvania.

2. Defendant County of Lancaster ("County") is a municipal entity organized under the laws of the Commonwealth of Pennsylvania. County oversees elections, including the processing and handling of absentee and mail-in ballots, and is responsible for the actions of its employees, officers, and agents.

3. Defendant Tammy Bender ("Bender") is a person who, at all relevant times, served as County's Open Records Officer. Bender is sued in her individual and official capacities.

4. Defendant Jacqueline Pfursich ("Pfursich") is person who, at all relevant times, served as the Solicitor for County. Pfursich is sued in her individual and official capacities.

5. Defendant Joshua Parsons ("Parsons") is a person who, at all relevant times, served as County of Lancaster's Commissioner and member its Board of Elections. Parsons is sued in his individual and official capacities.

6. Defendant Ray D'Agostino ("D'Agostino") is a person who, at all relevant times, served as County of Lancaster's Commissioner and member its Board of Elections. D'Agostino is sued in his individual and official capacities.

7. Defendant Christa Miller ("C. Miller") is a person who, at all relevant times, served as the Chief Registrar and Director of Elections for County of Lancaster. C. Miller is sued in her individual and official capacities.

## V.    JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff's claims arise under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

2. The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

3. Plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1988 for constitutional violations and under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, for Defendants' policies, customs, and practices.

4. Plaintiff also brings claims under Article I, Sections 7 and 11 of the Pennsylvania Constitution, which protect his rights to free expression and due process.

5. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Lancaster County, Pennsylvania, and all Defendants reside in this District.

# VI.     PROCEDURAL HISTORY

### A. State Court Actions Involving Election Challenges

1. On May 31, 2022, Plaintiff filed petitions in the Lancaster County Court of Common Pleas from approximately 120 voters in 40 precincts, demanding a hand count of the original voted ballots in his race.

2. The president judge denied the request and dismissed the petitions.

3. On October 27, 2022, Plaintiff filed a complaint against Defendants Parsons, D'Agostino, and C. Miller, alleging violations of the Help America Vote Act (HAVA) in the May 17, 2022, election.

4. During a January 9, 2023 hearing on the HAVA complaint, a poll watcher testified that she observed absentee ballots missing Plaintiff's race.

5. On January 23, 2023, acting Pa. Secretary of State, Al Schmidt, issued an order dismissing Plaintiff's HAVA complaint.

### B. Initial RTKL Request and OOR Determinations

6. On June 7, 2022, Plaintiff submitted a RTKL request to the County of Lancaster, seeking copies of mail-in ballots and ballot envelopes for the 2022 primary election.

7. On July 27, 2022, Plaintiff appealed the County's denial of the records request to the Pennsylvania Office of Open Records (OOR).

8. On October 5, 2022, the OOR issued a final determination substantially granting Plaintiff's access to the requested records.

9. On December 1, 2022, OOR appeal officer, Erin Burlew, issued a second final determination denying Plaintiff's request for access to digital copies of the records.

### C. State Court Actions Under the RTKL

5

10. On December 29, 2022, Plaintiff filed a petition in the Lancaster County Court of Common Pleas under Chapter 13 of the Pennsylvania RTKL and 210 Pa. R.A.P. 3761(b) to enforce the OOR's final determination issued on October 5, 2022.

11. Concurrently, Plaintiff filed a second petition in the Lancaster County Court of Common Pleas under Chapter 13 of the Pennsylvania RTKL and 210 Pa. R.A.P. 3761(b) appealing the OOR's December 1, 2022, final determination denying the requested records in digital form.

12. The Court of Common Pleas assigned the same judge to oversee both petitions.

13. On May 8, 2023, Plaintiff filed a motion demanding a hearing on his petitions.

14. On May 12, 2023, the judge denied Plaintiff's request for a hearing and dismissed both petitions on the same day.

**D. Commonwealth Court Appeals**

15. On June 5, 2023, Plaintiff filed a notice of appeal to the Commonwealth Court of Pennsylvania, seeking review of both dismissals.

16. On August 7, 2023, after Plaintiff had appealed, the Lancaster County Court of Common Pleas judge, David Ashworth, acknowledged on record that 25 P.S. § 2648 does not grant Defendants the authority to withhold the records from Plaintiff.

17. On July 31, 2024, the Commonwealth Court held that 25 P.S. § 2648 does not authorize officials, such as Defendants, to restrain the release of voted absentee ballots. *Previte v. ERIE COUNTY BOARD OF ELECTIONS*, No. 814 CD 2023 (Pa. Commw. Ct. July 31, 2024)

18. The Commonwealth Court has not scheduled a hearing or issued a ruling on Plaintiff's appeal as of the date of this filing.

*Plaintiff has never been granted a hearing on the merits of his claims by any court, despite multiple petitions and motions requesting such hearings.*

**E. Federal Declaratory Judgment Action**

- On January 4, 2024, Plaintiff filed a petition for declaratory judgment and a constitutional challenge to Chapter 13 of the Pennsylvania Right-to-Know Law (RTKL) and 210 Pa. R.A.P. 3761(b) in the United States District Court for the Middle District of Pennsylvania.

- On February 1, 2024, Defendants filed a motion to dismiss under Rule 12(b)(1), challenging the court's jurisdiction.

- On May 8, 2024, Defendants Parsons, D'Agostino, and Pfursich, in their individual and official capacities, filed a motion for sanctions against Plaintiff, seeking $30,000 because he would not withdraw his lawsuit by May 7, 2024.

- The court did not dispose of the 12(b)(1) objection until September 30, 2024.

- On September 30, 2024, the Middle District Court dismissed Plaintiff's petition for discretionary decline of jurisdiction, and Plaintiff intends to file a notice of appeal to the Third Circuit Court of Appeals.

## VII.    TOLLING ARGUMENT

1. Plaintiff's Claims Are Preserved Due to Ongoing Litigation and Delays.

   Plaintiff's claims are timely due to the ongoing nature of Defendants' conduct and the procedural delays caused by protracted litigation history, as detailed in the Procedural History Section.

7

2. Federal Declaratory Judgment Action Delayed Plaintiff's Ability to Pursue § 1983

   Claims.

   Plaintiff filed a federal declaratory judgment action on January 4, 2024, to address the

   same issues that are the basis of this action. The Middle District Court failed to adjudicate

   the case for nearly ten months, delaying Plaintiff's ability to pursue alternative remedies,

   until the action was dismissed on September 30, 2024. This extended period prevented

   Plaintiff from asserting his constitutional claims under § 1983 within the original

   statutory period.

3. Pending State Court Appeal Necessitates Tolling.

   Plaintiff's appeal to the Commonwealth Court, filed on June 5, 2023, has remained

   unresolved, with no hearing or ruling issued as of the date of this filing. The ongoing

   nature of the appeal, along with the state court's reliance on a statute that has since been

   held not to apply (*Previte v. Erie County Board of Elections*, No. 814 CD 2023), supports

   the need for equitable tolling of the statute of limitations.

4. Equitable Tolling Is Appropriate Due to Defendants' Deliberate Conduct and Court

   Delays.

   Defendants' pretextual reliance on 25 P.S. § 2648 and their continued obstruction through

   arbitrary restrictions created a situation where Plaintiff was unable to seek adequate

   judicial relief. Despite filing multiple petitions and motions, Plaintiff was never granted a

   judicial hearing on the merits of his claims. In such circumstances, equitable tolling is

   appropriate because Defendants' conduct, combined with the protracted and overlapping

   court delays, effectively prevented Plaintiff from asserting his rights.

5. Related Federal Action Supports Tolling Based on Good Faith Pursuit of Relief.

8

Plaintiff's federal declaratory judgment action, along with the pending appeal to the
Third Circuit, represents a good faith effort to resolve these matters. The ongoing
litigation in both state and federal courts has tolled the limitations period, preserving
Plaintiff's claims.


## VIII.   <u>NOTICE TO DEFENDANTS</u>

Plaintiff hereby gives notice to Defendants that failure to directly respond to the Factual
Allegations Section in this Complaint, or failure to specifically deny such allegations, will
result in Plaintiff moving for summary judgment under Federal Rule of Civil Procedure 56.
Under Federal Rule of Civil Procedure 8(b)(6), any allegation not properly denied or
responded to shall be deemed admitted.


## IX.   <u>FACTUAL ALLEGATIONS</u>

1. On May 17, 2022, Miller contested for Pennsylvania State Senate District 36 in an
   election held in Lancaster County, Pennsylvania.
2. Parsons, D'Agostino, and C. Miller, in their official capacities, reported that
   approximately 22,000 voted mail-in ballots were received countywide for the May 17,
   2022, primary election.

9

3. On May 17th, Parsons, D'Agostino and C. Miller, acting in their official capacities, were responsible for causing to be printed 14,000 voted mail-in ballots that could not be counted by Hart Intercivic's election software.

4. On May 17, 2022, Parsons, D'Agostino and C. Miller, acting in their official and individual capacities, were responsible for sending voters ballots that in error did not include Plaintiff's race on the ballot.

5. On May 17, 2022, Parsons, D'Agostino, C. Miller, and Pfursich, in their official and individual capacities, directed County employees to replace approximately 14,000 absentee ballots to replace the marked ballots that could not be read by Hart Intercivic's software. (See **Exhibit 01**).

6. On May 17, 2022, observers of the replacement of ballots reported to Defendants Parsons, D'Agostino, and C. Miller that some original ballots were missing Plaintiff's race.

7. On May 17, 2022, Parsons, D'Agostino, and C. Miller did not permit voters who were sent an error ballot to complete a replacement ballot.

8. On May 18, 2022, C. Miller caused to be ordered 4,100 replacement ballots from Brenneman Printing to be marked, scanned, and counted by Hart Intercivic software. There were approximately this number of mail-in ballots counted in Plaintiff's election.

9. On May 18, 2022, Parsons, D'Agostino, and C. Miller failed to provide Plaintiff with notice about all the errors in the original ballots before completing the re-marking process.

10

10. 25 P.S. § 3150.17 states: "All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records."

11. On May 31, 2022, approximately 120 voters in 40 precincts filed petitions in the Lancaster County Court of Common Pleas demanding a hand count of Miller's election on grounds they had information that the reported count was in error. The Court denied the petitions and a hand count.

12. Plaintiff has a protected interest in acquiring public records he was granted and pursuant to 25 P.S. § 3150.17, which designates the records as public records (not County records).

13. On June 7, 2022, Plaintiff filed a request under the Right-to-Know Law (RTKL) to inspect and copy mail-in ballots and ballot envelopes used in the May 17, 2022, election (OOR Dkt. 2022-1749).

14. Bender is County's designated open records officer.

15. On June 15, 2022, Bender, acting in her official capacity as the Open Records Officer, invoked a 30-day extension to respond to Miller's request (OOR Dkt. 2022-1749).

16. On July 15, 2022, Bender, in her official and individual capacity, denied Miller's request, citing 25 P.S. § 2648 of the Election Code as the basis for exemption, asserting that the requested records were not subject to public access under the Election Code (OOR Dkt. 2022-1749).

17. On July 15, Pfursich, County's solicitor, acted in her individual capacity as County's open records officer in denying Plaintiff the records.

11

18. The text of 25 P.S. § 2648 does not state that county boards are authorized to establish 'regulations for the safekeeping of records.'

19. Pfursich is not County's designated records officer.

20. On July 19, 2022, Plaintiff filed a separate request for the Cast Vote Records (CVRs) for the May 17, 2022, election (OOR Dkt. 2022-1831).

21. Bender, in her official and individual capacity, denied this request at the direction of Pfursich.

22. On July 27, 2022, Plaintiff appealed County's denial of mail-in ballots to the Office of Open Records (OOR) (OOR Dkt. 2022-1749).

23. On August 8, 2022, C. Miller emailed Pfursich a letter from Jessica Mathis, Director of Bureau of Elections and Notaries at the Pennsylvania Department of State. Mathis' letter was addressed to "County Election Officials," advising them to not release mail-in ballots to requestors under the RTKL.

24. On August 17, 2022, Bender, in her official and individual capacity, submitted an email to the OOR's appeals officer, attaching a letter written by Pfursich in her individual capacity, opposing Miller's appeal and asserting that the requested ballots were not public records (OOR Dkt. 2022-1749).

25. On August 17, 2022, Pfursich, in her individual capacity, directed Bender to send Mathis' letter to the OOR appeal officer in attempt to influence her denial of the Plaintiff's request. (OOR Dkt. 2022-1749).

26. On August 26, 2022, the OOR appeal officer denied Plaintiff's request for cast vote records, asserting that C. Miller's argument was conclusive that these records were not public records under 25 P.S. 2648. (OOR Dkt. 2022-1831).

27. On August 28, 2022, Plaintiff appealed the denial of the Cast Vote Records to the OOR (Request: 2022-1831).

28. Pfursich, in her individual capacity, wrote letters to the OOR appeal officer using Bender's official email in Miller's appeal. (OOR Dkt. 2022-1831)

29. Pfursich, in her individual capacity, sent the OOR appeal officer documents she purported to be 'affidavits' by C. Miller, written in her individual capacity, attempting to influence the appeal officer to deny Plaintiff the records. (OOR Dkt. 2022-1831)

30. OOR denied the records on grounds that C. Miller's statements were competent evidence.

31. On October 5, 2022, the OOR issued a final determination ordering County and Bender, in her official capacity, to release the mail-in ballots and envelopes under specific conditions (OOR Dkt. 2022-1749). (See **Exhibit 09**)

32. Plaintiff secured a legally protected property interest in the requested records pursuant to the Right-to-Know Law (RTKL) through the OOR's final determination on October 5, 2022.

33. Plaintiff has a constitutionally protected liberty interest in accessing these records because their availability is essential for his political speech, public advocacy, and meaningful participation in public oversight of election processes.

34. On October 5, 2022, Bender and Pfursich, in their official and individual capacities, issued a letter to Miller imposing additional restrictions not mentioned in the OOR order, such as limiting inspection to supervised review by a sheriff's deputy and prohibiting photo or video recording, effectively preventing meaningful inspection and copying (OOR Dkt. 2022-1749).  (See **Exhibit 02**)

13

35. On October 12, 2022, Parsons, D'Agostino, and Pfursich, in their official capacity, held a
board meeting. (See **Exhibit 03**)

36. At this meeting, Parsons, D'Agostino, and Pfursich declared the restrictions on Plaintiff
to be County's policy, citing it was installed after the November 2020 general election.
(OOR Dkt. 2022-1749).

37. On October 12, 2022, Parsons, D'Agostino, and Pfursich, in their official and individual
capacities, declared that the Board had created regulations pursuant to 25 P.S. 2648.

38. 25 P.S. 2648 states: *"Section 2648 - Records and documents to be open to public
inspection; proviso The records of each county board of elections, general and duplicate
returns, tally papers, affidavits of voters and others, nomination petitions, certificates
and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other
documents and records in its custody, except the contents of ballot boxes and voting
machines and records of assisted voters, shall be open to public inspection, except as
herein provided, and may be inspected and copied by any qualified elector of the county
during ordinary business hours, at any time when they are not necessarily being used by
the board, or its employees having duties to perform thereto."*

39. 25 P.S. § 2648 was enacted over 100 years ago and does not mention absentee ballots,
mail-in ballots, or any other modern ballot records that are not "contents of a ballot box."
The statute must be strictly construed.

40. Because 25 P.S. § 2648 does not address absentee ballots or digital ballot images, it may
not serve as the basis for Defendants' restrictions preventing Plaintiff from copying,
photographing, and inspecting the records.

14

41. On October 5, 2022, Bender and Pfursich, in their individual and official capacities,

    issued a policy prohibiting Plaintiff from copying or photographing the granted records.

    These restrictions deprived Plaintiff of his right to obtain the granted records. (See

    **Exhibit 02**)

42. On October 14, 2022, Plaintiff emailed C. Miller and Pfursich, in their official capacities,

    asserting his right to obtain the records (OOR Dkt. 2022-1749).

43. On October 14, 2022, Pfursich, in her official and individual capacity, responded by

    email, stating that County would not alter its policy (OOR Dkt. 2022-1749).

44. On October 21, 2022, Plaintiff emailed Bender and the OOR's appeals officer, advising

    them of County's response and requesting OOR intervention to clarify his rights under

    the final determination (OOR Dkt. 2022-1749).

45. On October 24, 2022, Kyle Applegate, OOR's Chief Counsel, answered Plaintiff that the

    OOR's jurisdiction ended with the issuance of the final determination and advising Miller

    to seek enforcement through filing a mandamus action (OOR Dkt.  2022-1749).

46. On October 26, 2022, Miller filed a request for digital images of mail-in ballots from the

    May 17, 2022, election in County's custody (OOR Dkt.  2022-2536).

47. On November 2, 2022, Bender and Pfursich, in their official and individual capacities,

    denied the request for digital images, asserting that the records did not exist in the

    requested format pursuant to 65 P.S. § 67.705, without addressing whether the records

    could be provided in an alternative format (OOR Dkt. 2022-2536).

48. On November 17, 2022, Bender and Pfursich, in their official and individual capacities,

    submitted statements to the OOR appeals officer alleged to be copies of affidavits by C.

15

Miller. Plaintiff objected to these statements as unauthenticated, hearsay, and lacking foundation (OOR Dkt.  2022-2536). (See **Exhibit 04**)

49. On November 29, 2022, Bender and Pfursich, acting in both their individual and official capacities, submitted an additional purported affidavit from C. Miller, reiterating that the digital images of the 36,000 mail ballot images she caused to be placed into Hart Intercivic's election software in May 2022 were not retained by County. (OOR Dkt. 2022-2536).

50. On December 1, 2022, the OOR appeal officer issued a final determination denying Plaintiff's request for digital images, accepting Defendants' statements without examination. (OOR Dkt. 2022-2536).

51. On December 29, 2022, Plaintiff filed a 'Petition to Enforce a Final Determination' in the Lancaster County Court of Common Pleas to enforce the OOR's final determination granting the mail-in ballots. (OOR Dkt. 2022-1749).

52. On May 12, 2023, the Court of Common Pleas dismissed Plaintiff's petition, concluding that the County had authority from 25 P.S. § 2648 to create its regulations. (Request: 2022-1749).

53. On May 12, 2023, the Court of Common Pleas also dismissed Plaintiff's appeal for the digital images, concluding that the RTKL gives the OOR appeal officer wide discretion regarding evidentiary standards under the RTKL and no hearing is required. (OOR Dkt. 2022-2536).

54. Plaintiff appealed both these matters. As of June 8, 2023, Plaintiff's appeals remain pending in the Pennsylvania Commonwealth Court.

55. Defendants, acting in both their individual and official capacities, continue to deprive Plaintiff of records to which he is statutorily entitled.

56. As a result of Defendants' actions, taken in both their individual and official capacities, Plaintiff has suffered emotional stress, anxiety, despair, and sleeplessness.

57. Defendants' actions, taken in both their individual and official capacities, have caused Plaintiff to lose business opportunities.

58. Defendants' actions, taken in both their individual and official capacities, have caused harm to Plaintiff's reputation.

59. Defendants' actions, taken in both their individual and official capacities, have forced Plaintiff to spend thousands of hours on litigation.

60. Defendants' actions, taken in both their individual and official capacities, have cost Plaintiff thousands of dollars in litigation.

61. Defendants' actions, taken in both their individual and official capacities, have forced Plaintiff to litigate his rights under coercion, intimidation, threat, and duress.

62. Defendants' actions, taken in both their individual and official capacities, have caused Plaintiff to divert time from his family and business.

63. In August 2022, as a result of Defendants' actions, both individually and officially, an article titled 'Ex-Hopeful' unfairly targeted Plaintiff, reflecting retaliatory efforts against him for his advocacy and records requests. (See Exhibit 05).

64. On January 23, 2023, the Pennsylvania Department of State dismissed Plaintiff's HAVA complaint regarding election irregularities, refusing to address the re-marking process issues. (See Exhibit 06).

17

65. In *Previte v. Erie County Board of Elections*, the Pa. Commonwealth Court held that digital images of mail-in ballots are accessible through RTKL requests, contradicting Defendants' refusal to provide these records. (See Exhibit 07).

## X.   EXHIBIT HANDLING

References to documents will be noted throughout the claims as needed. The complaint will serve no more than 5-10 key exhibits, while other documents can be provided during the discovery process.

## XI.   GENERAL LIABILITY

1. **Monell Liability**

Defendant County of Lancaster is liable for constitutional violations under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, because the deprivation of Plaintiff's rights resulted from County's official policies, customs, or practices. Additionally, County of Lancaster acted outside its lawful authority under Title 53, Section 2962 of the Pennsylvania Consolidated Statutes by engaging in conduct, particularly in its handling of election-related procedures, which exceeded statutory limitations. The following policies and customs were the moving force behind the violations:

2. **Policy or Custom of Arbitrary Denial or Obstruction of Public Record Requests:**

County maintained a policy or custom of arbitrarily denying or obstructing public record

requests to suppress unfavorable information and prevent its dissemination.

3. **Custom of Retaliatory Conduct:**

Defendants engaged in a pattern of retaliatory conduct against individuals, including Plaintiff, who engaged in advocacy and public criticism of County officials.

**4. Use of Pretextual Legal Justifications:**

County utilized pretextual legal justifications to deny access to public records and obstruct the rights of requesters, including Plaintiff.

**5. Inadequate Training and Supervision:**

County failed to provide adequate training and supervision of officials responsible for administering public record policies, resulting in the consistent deprivation of the rights of record requesters, including Plaintiff.

6. **County's Liability Extends to Actions of Employees and Final Policymakers**

County's liability extends to actions taken by its employees and officials in their official capacities, as well as decisions made by final policymakers, such as County's commissioners and County's solicitor, who directly ratified or implemented the unlawful policies at issue. The County's policies were not only unconstitutional but also exceeded its legal authority, further justifying Monell liability.

**7. Supervisory Liability**

Defendants Joshua Parsons, Ray D'Agostino, and Jacqueline Pfursich are liable in their individual capacities as supervisors and final policymakers. Defendants, acting in their individual capacities, directly participated in or were deliberately indifferent to the unlawful conduct. Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Rizzo v. Goode*, 423 U.S. 362 (1976), these Defendants are liable for:

19

**8. Personal Direction or Approval of Unlawful Actions:**

Personally directing or approving the unlawful actions of subordinate officials.

9. **Establishing Policies Resulting in Constitutional Violations:**

Setting policies or directives that directly resulted in the deprivation of Plaintiff's rights.

**10. Failure to Intervene to Prevent Unconstitutional Conduct:**

Failing to intervene to prevent known unconstitutional conduct, despite having the authority to

do so.

**11. Supervisory Defendants' Liability as Final Policymakers**

As final policymakers, their decisions are attributable to County, and their active participation in

or approval of the unlawful policies establishes their supervisory liability under § 1983. These

ultra vires actions exceeded their lawful authority under Title 53, Section 2962.

**12.  Pennsylvania Constitution Liability**

Plaintiff also seeks relief under Article I, Section 7 of the Pennsylvania Constitution, which

guarantees the right to free speech and prohibits retaliation against individuals for engaging in

public advocacy or criticism of government conduct. Defendants' actions, including the

imposition of arbitrary restraints on Plaintiff's ability to inspect and copy public records, violated

these rights and warrant declaratory and injunctive relief under state law.

**13. Ongoing Pattern of Retaliatory Conduct**

Defendants' liability under the Pennsylvania Constitution is further supported by their ongoing

pattern of retaliatory conduct and suppression of Plaintiff's ability to disseminate public

information, constituting a continuing violation of Plaintiff's state constitutional rights.

**14. Application to All Counts**

The General Liability Section applies to all counts in which official capacity claims are asserted

against County or where supervisory defendants are implicated in the implementation of unlawful policies and practices. Each count references this section to establish the legal basis for County's and the supervisors' liability under § 1983 and state law.

**15. Relief Under Federal and State Law**

Plaintiff seeks relief through 42 U.S.C. §§ 1983 and 1988 for violations of his rights under the United States Constitution, specifically the First and Fourteenth Amendments, and the Pennsylvania Constitution. Defendants are also liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because their actions were taken pursuant to County's official policies, customs, and practices. Plaintiff's state law claims are brought under Article I, Sections 7 and 11 of the Pennsylvania Constitution, which protect his rights to free expression and due process.

**16. Universal Reference for All Claims:**

Unless otherwise specified, all claims herein are brought under 42 U.S.C. §§ 1983 and 1988, the Pennsylvania Constitution, and Monell for the violations described. Defendants are liable in their official and individual capacities as applicable.

**17. Joint and Several Liability Statement**:

All Defendants sued in their individual capacities are jointly and severally liable for the harms resulting from their concerted actions, as detailed in each claim. The ultra vires actions of Defendants in their individual capacities justify holding them jointly and severally liable for the full extent of Plaintiff's damages. Plaintiff seeks an order holding each Defendant individually accountable to the full extent of damages awarded.

**18. Take Care Clause Violation and Ultra Vires Actions:**

Defendants, as County officials administering a federal election, had a duty under the Take Care

21

Clause of Article II, Section 3 of the U.S. Constitution to ensure the faithful execution of federal laws, including the Help America Vote Act (HAVA). County of Lancaster, through its official policies and customs, failed to implement HAVA's voter protection standards—such as allowing voters to verify and correct their ballots—thereby violating this duty and contributing to the deprivation of Plaintiff's constitutional rights. Additionally, Defendants exceeded their lawful authority under Title 53, Section 2962 of the Pennsylvania Consolidated Statutes by engaging in election-related procedures beyond statutory limitations. These ultra vires actions, taken in both official and individual capacities, justify holding Defendants individually liable, while the County remains liable under Monell for its failure to supervise and prevent these unconstitutional practices.

**18. Failure to Comply with Election Code Duties (25 Pa. Stat. § 2642)**

Defendants, in their official capacities, were entrusted with specific duties under 25 Pa. Stat. § 2642 as the County Board of Elections, including ensuring that elections were conducted honestly, efficiently, and uniformly. Their failure to comply with these statutory duties, particularly the re-marking of absentee ballots without proper verification or correction mechanisms, violated both Pennsylvania election laws and federal laws under HAVA. Defendants also failed to comply with their duty to ensure election transparency, properly certify election results, and investigate irregularities as required under 25 Pa. Stat. § 2642(i) and (k). These failures contributed directly to the constitutional violations suffered by Plaintiff, including the deprivation of his First and Fourteenth Amendment rights. This conduct exceeded their lawful authority and supports liability under Monell and ultra vires theories, as Defendants abused the powers and duties imposed upon them by law to obstruct Plaintiff's rights.

22

## XII.   <u>CONSOLIDATED DAMAGES CLAIM</u>

Plaintiff incorporates this Consolidated Damages Claim section into each count of the complaint to comprehensively describe the ongoing harm experienced due to Defendants' actions and policies. The damages are categorized into six key areas and apply to all counts asserted against the Defendants, establishing a universal reference point that captures the full extent of the harm suffered.

1. **Emotional Distress and Anxiety**

   Plaintiff experienced severe emotional distress and anxiety resulting from Defendants' ongoing obstruction, retaliatory conduct, and false narratives that mischaracterized his legitimate advocacy efforts. Defendants' actions—including imposing unlawful restraints on Plaintiff's access to records and engaging in public statements that undermined his credibility—created a chilling effect that significantly impacted his mental health and emotional well-being.

   o   Public Mischaracterization:

   Defendants falsely portrayed Plaintiff's efforts as disruptive and unreasonable, creating a public perception that Plaintiff was acting out of personal malice rather than genuine concern for transparency and election integrity.

   o   Emotional Impact:

   Plaintiff endured persistent stress and anxiety, which affected his ability to engage in advocacy and pursue his professional and personal interests. This ongoing distress was compounded by negative media portrayals and Defendants' persistent denials.

23

2. **Reputational Harm**

Defendants' portrayal of Plaintiff's lawful efforts to obtain public records as vexatious or frivolous significantly damaged his reputation as a public advocate. The false narratives and misleading public statements, coupled with the intentional suppression of information, created a false perception that undermined Plaintiff's credibility and standing within the community.

   o   Misleading Statements to the Media:

       Defendants misrepresented Plaintiff's motives and portrayed his advocacy as baseless, resulting in negative media coverage that harmed Plaintiff's public image.

   o   Undermined Advocacy Role:

       Defendants' actions cast doubt on Plaintiff's motives, discrediting his role as an advocate for election transparency and accountability.

3. **Suppression of Advocacy Efforts**

Defendants' imposition of arbitrary restraints and denials directly suppressed Plaintiff's ability to gather and disseminate information to the public. These actions, which included obstructing access to election records and falsely representing the legal basis for such restrictions, had a chilling effect on Plaintiff's advocacy efforts.

   o   Obstruction of Public Records Access:

       Defendants' selective application of legal standards and pretextual interpretations of state law obstructed Plaintiff's attempts to engage in public advocacy, thereby violating his First Amendment rights.

   o   Impact on Political Speech:

24

By depriving Plaintiff of the ability to obtain and share information, Defendants significantly impaired his capacity to inform the public, thereby suppressing his right to engage in political speech and advocacy.

4. **Financial Losses**

Plaintiff incurred significant financial losses due to Defendants' obstruction and retaliatory conduct. These losses include the costs of defending his rights through multiple legal actions, as well as the diversion of time and resources from his personal and professional endeavors to address the restrictions imposed by Defendants.

- o Protracted Legal Battles:

  Defendants' conduct led to protracted litigation and ongoing administrative appeals, resulting in substantial legal expenses and the expenditure of thousands of hours defending his rights.

- o Loss of Business Opportunities:

  The significant financial and time investment in these legal battles resulted in lost business opportunities and a substantial disruption of Plaintiff's professional and personal life.

5. **Irreparable Injury Under *Elrod v. Burns***

As established in *Elrod v. Burns*, 427 U.S. 347 (1976), the loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. Defendants' conduct, which suppressed Plaintiff's rights to free speech, petition, and public advocacy, resulted in harm that cannot be adequately remedied through monetary damages alone.

- o Irreparable Harm to First Amendment Rights:

  Defendants' suppression of Plaintiff's right to access and disseminate public

25

information resulted in an irreparable injury to his constitutional rights.

- o Lasting Impact on Advocacy Efforts:

   The ongoing suppression of Plaintiff's ability to gather and share information significantly impacted his role as a public advocate, creating a long-term chilling effect that continues to undermine his ability to engage in public discourse.

6. **Personal and Professional Impact**

Defendants' retaliatory and obstructive conduct caused Plaintiff to divert substantial time and energy away from his family, business, and other professional interests. This diversion of resources and time created substantial harm to Plaintiff's personal and professional life, leading to strained relationships and loss of interest in activities he once enjoyed.

- o Family and Personal Impact:

   The ongoing legal battles and the need to defend his rights against arbitrary government action created significant strain on Plaintiff's personal life, undermining his ability to fully engage as a father and husband.

- o Professional and Business Harm:

   Plaintiff's professional life was similarly disrupted, resulting in lost business opportunities and a diminished capacity to engage in other professional endeavors due to the overwhelming time investment required to pursue this litigation.

**7. Application to All Counts**

Each count of this complaint incorporates this Consolidated Damages Claim Section by reference, as Defendants' conduct in each respective count resulted in emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable

injury as described above. This section serves as the central reference point for understanding the full scope of harm suffered by Plaintiff, ensuring clarity and comprehensiveness without redundant repetition of the damages narrative in each individual count.

## XIII.   <u>CLAIMS FOR RELIEF</u>

This section consolidates Plaintiff's individual causes of action, outlining each specific claim against the Defendants for violations of Plaintiff's constitutional and statutory rights. Each count references the facts and harm described in the preceding sections, as well as the legal bases for relief sought.

**COUNT I: 42 U.S.C. § 1983 – PRIOR RESTRAINT**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants unlawfully imposed a prior restraint on his First Amendment rights by restricting his access to election records, preventing him from inspecting and copying materials that were essential to his political advocacy. These restrictions were content-based and aimed at suppressing Plaintiff's speech and public oversight of election processes.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Prior Restraint Claim**

- Restriction on Speech: There must be a government action or policy that restricts speech before it occurs.
- Content-Based: The restriction must be aimed at the content of the speech, rather than neutral or procedural.
- Lack of Judicial Review: The government must fail to provide timely judicial review to determine whether the restriction is permissible.
- Harm: Plaintiff must demonstrate harm from the restriction on speech.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 1-13, 15-16, 18, 21-25, 34-38, 41, 43-45, 50 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

- **County of Lancaster**
  - Official Capacity:
    - The County imposed a prior restraint by enacting policies that prevented Plaintiff from obtaining public records to which he was statutorily entitled (see **Exhibit 09**), restricting Plaintiff's ability to engage in public oversight (see Paragraph 35).
    - The restrictions were content-based, as they targeted information related to election errors and inconsistencies that Plaintiff sought to disseminate (see Paragraph 35).

- **Bender**
  - Official Capacity:
    - Bender enforced the County's policy by preventing Plaintiff from photographing or copying election records, which constituted a prior restraint on Plaintiff's speech and public advocacy (see Paragraph 34).
  - Individual Capacity:
    - In her individual capacity, Bender actively participated in imposing the prior restraint by denying Plaintiff the ability to disseminate critical election information (see Paragraph 34).

- **Pfursich**
  - Official Capacity:

- ▪ Pfursich directed and justified the restrictions on Plaintiff's access to records, claiming legal exemptions that did not apply, thereby imposing a content-based restraint (see Paragraph 34).

  - o Individual Capacity:

    - ▪ Pfursich personally participated in the decision to deny Plaintiff access to records, enforcing the content-based restrictions aimed at preventing the dissemination of election-related information (see Paragraph 34).

## 4. Parsons, D'Agostino, and C. Miller

- Official Capacities:

  - o These Defendants, in their official roles, ratified the restrictions that prevented Plaintiff from accessing election records, constituting a prior restraint on his ability to engage in public discourse (**see Paragraph 35**).

  - o Their failure to provide Plaintiff with judicial review or recourse exacerbated the harm caused by the restriction (**see Paragraph 35**).

- Individual Capacities:

  - o In their individual capacities, Parsons, D'Agostino, and C. Miller personally participated in the decision to enforce content-based restrictions that prevented Plaintiff from accessing and copying election records. These actions were aimed at suppressing Plaintiff's speech and political advocacy (see Paragraph 35).

  - o By acting beyond the scope of their lawful authority, these Defendants played an active role in denying Plaintiff his First Amendment rights, directly

30

contributing to the unlawful prior restraint imposed on Plaintiff's access to information.

### G. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by imposing unlawful prior restraints on Plaintiff's speech and right to access public records. This unlawful conduct justifies suing Defendants in their individual capacities.

### H. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

### I. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

### J. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

31

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT II: 42 U.S.C. § 1983 – RETALIATION.**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment rights,

including his right to free speech and his right to petition the government for redress.

Defendants' retaliatory conduct took the form of arbitrary denials of public records requests, dismissals of Plaintiff's petitions without addressing the merits, and the filing of baseless sanctions motions intended to suppress Plaintiff's advocacy.

## C. Jurisdictional Basis

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## D. Elements of Retaliation Claim

- Protected Conduct: Plaintiff engaged in constitutionally protected speech or petitioning activity.
- Adverse Action by Government: Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from continuing to engage in such protected activity.
- Causal Connection: The adverse action was motivated by Plaintiff's protected conduct.

## E. Restatement Clause

Paragraphs 4, 9, 11-13, 15-17, 20-25, 28-29, 34-37, 41-44, 45-50 of the Factual Allegations Section as if fully set forth herein.

## F. Unified Conduct and Elements by Defendant

- **County of Lancaster**

33

- The County engaged in a pattern of retaliatory conduct against Plaintiff by selectively denying access to public records essential to his advocacy, in violation of his rights (see Paragraph 34).

- The County also supported and participated in retaliatory actions by filing baseless sanctions motions aimed at financially burdening and intimidating Plaintiff for exercising his right to petition.

- The Defendants' actions, including the coordinated release of the 'Ex-Hopeful' article, were meant to harm Plaintiff's public reputation in retaliation for his efforts to seek transparency (See **Exhibit 05**).

- **Bender**
  - Official Capacity:
    - Bender retaliated against Plaintiff by enforcing the County's policies that denied him access to critical election records (see Paragraph 34).
  - Individual Capacity:
    - In her individual capacity, Bender actively participated in obstructing Plaintiff's efforts to obtain public records and supported the filing of a baseless sanctions motion as retaliation for Plaintiff's advocacy efforts (see Paragraph 34).

- **Pfursich**
  - Official Capacity:
    - Pfursich participated in the retaliatory conduct by upholding the arbitrary denials of records requests and misrepresenting the legal justifications for these denials (see Paragraph 34).

34

- Individual Capacity:
  - Pfursich's personal involvement in denying access to public records was motivated by a desire to suppress Plaintiff's political advocacy and was further compounded by her support of the sanctions motion (see Paragraph 34).

- **Parsons, D'Agostino, and C. Miller**
  - Official Capacities:
    - These Defendants ratified the County's retaliatory policies and supported the filing of the sanctions motion in an attempt to deter Plaintiff's advocacy (see Paragraph 35).
  - Individual Capacities:
    - Each acted beyond the scope of their lawful authority by engaging in retaliatory practices, including supporting the sanctions motion, demonstrating clear intent to suppress Plaintiff's advocacy efforts.
    - C. Miller misrepresented Plaintiff and his requests in a front page article of the local newspaper. (see **Exhibit 05**)

**G. Retaliatory Sanctions Motion**

On May 8, 2024, Defendants Parsons, D'Agostino, and Pfursich, in both their individual and official capacities, filed a retaliatory sanctions motion against Plaintiff seeking $30,000, alleging Plaintiff failed to withdraw his lawsuit by May 7, 2024. The motion for sanctions was filed to intimidate and financially burden Plaintiff in response to his lawful petitioning efforts.

**H. Ultra Vires Statement**

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by retaliating against Plaintiff for exercising his First Amendment rights, including filing the sanctions motion. This unlawful conduct justifies suing Defendants in their individual capacities.

**I. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**J. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

## COUNT III: RIGHT TO PETITION

### A. Capacity References

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

### B. Summary of Count

Plaintiff alleges that Defendants violated his First Amendment right to petition the government for redress by systematically denying his access to public records, dismissing his complaints and petitions on procedural grounds (such as 12(b)(6) and 12(b)(1)) without addressing their merits, and retaliating against his efforts to expose reported election results. For every right, there must be a remedy. *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60, 2 L. Ed. 2d 60 (1803). The court's failure to provide a remedy violates Plaintiff's right to petition for redress.

37

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Right to Petition Claim**

1. Exercise of the Right to Petition:

   Plaintiff engaged in constitutionally protected petitioning activity, including filing his HAVA complaint and RTKL requests.

2. Adverse Action by Government:

   Defendants took adverse actions in response to Plaintiff's petitions by dismissing them without redress, delaying rulings, denying records requests, and retaliating through sanctions motions. These actions would deter a person of ordinary firmness from continuing to engage in such activity.

3. Causal Connection:

   The adverse actions were motivated by Plaintiff's petitioning activity, demonstrating Defendants' intent to suppress Plaintiff's efforts for election transparency.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 11-13, 15, 16, 20-25, 27-29, 34, 42-45, 46-50 of the Factual Allegations Section as if fully set forth herein

**F. Unified Conduct and Elements by Defendant**

38

- **County of Lancaster**
  - ○ Official Capacity:

    The County systematically obstructed Plaintiff's right to petition by denying his HAVA complaint, dismissing his petitions for public records access, and failing to address the merits of his claims (see Paragraphs 34-35). The County's refusal to respond to Plaintiff's petitions and its participation in retaliatory conduct directly obstructed his ability to seek redress.

- **Bender**
  - ○ Official Capacity:

    Bender denied Plaintiff's access to critical public records necessary for petitioning for election transparency (see Paragraph 34).

  - ○ Individual Capacity:

    In her individual capacity, Bender participated in obstructing Plaintiff's efforts to petition for access to election records, contributing to the systemic denial of his rights (see Paragraph 34).

- **Pfursich**
  - ○ Official Capacity:

    Pfursich advised and directed the denial of Plaintiff's petitions, further suppressing his right to seek redress (see Paragraph 34).

  - ○ Individual Capacity:

    Pfursich's personal involvement in the denial of Plaintiff's right to petition was aimed at suppressing his efforts for election transparency (see Paragraph 34).

- **Parsons, D'Agostino, and C. Miller**

- o Official Capacities:

  These Defendants ratified the County's denials and dismissals of Plaintiff's petitions, suppressing his right to petition the government for redress (see Paragraph 35).

- o Individual Capacities:

  Each acted beyond the scope of their lawful authority by engaging in practices that suppressed Plaintiff's right to petition for election transparency (see Paragraph 35).

## G. HAVA Violations

Plaintiff's efforts to seek redress through his HAVA complaint were met with systemic obstruction. The County's mishandling of absentee ballots and its refusal to allow Plaintiff to challenge these irregularities led to the denial of his HAVA petition. This denial without proper recourse illustrates the County's broader effort to suppress Plaintiff's right to petition for transparency in election processes.

## H. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by unlawfully obstructing Plaintiff's right to petition the government. This unlawful conduct justifies suing Defendants in their individual capacities.

## I. Color of Law Statement

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct

constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**J. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

**COUNT IV: 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Bender (in her individual and official capacities)

- Pfursich (in her individual and official capacities)

- Parsons (in his individual and official capacities)

- D'Agostino (in his individual and official capacities)

- C. Miller (in her individual and official capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to procedural due process by systematically denying him access to public records, obstructing his attempts to obtain transparency regarding election processes, and dismissing his petitions without providing any meaningful review. Defendants further violated Plaintiff's due process rights by engaging in protracted delays and failing to afford Plaintiff proper notice and an opportunity to be heard.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Procedural Due Process Claim**

- Deprivation of a Protected Interest: Plaintiff must demonstrate that he was deprived of a protected property or liberty interest.

- Lack of Adequate Procedures: The government failed to provide adequate procedural protections, such as notice and an opportunity to be heard, before depriving Plaintiff of that interest.

- Harm: Plaintiff must show that the lack of procedural safeguards resulted in harm.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 12, 14, 15, 19, 22, 26, 31, 34, 38, 40, 46-53 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

- **County of Lancaster**
  - The County deprived Plaintiff of his procedural due process rights by failing to provide him with timely access to public records and by obstructing his ability to challenge irregularities in election processes. The County denied Plaintiff's requests without providing adequate notice, justification, or an opportunity to be heard (see Paragraphs 34-35).

- **Bender**
  - Official Capacity:
    - Bender participated in the County's failure to provide Plaintiff with meaningful procedural safeguards by enforcing policies that obstructed access to critical election records (see Paragraph 34).
  - Individual Capacity:

43

- ▪ In her individual capacity, Bender was personally involved in the denial of Plaintiff's procedural rights, contributing to the deprivation of access and opportunity to challenge these denials (see Paragraph 34). (see **Exhibit 02**)

- **Pfursich**
  - ○ Official Capacity:
    - ▪ Pfursich directed and supported the denial of Plaintiff's procedural due process rights by upholding arbitrary denials of access to public records and failing to provide adequate procedural protections (see Paragraph 34).
  - ○ Individual Capacity:
    - ▪ Pfursich personally contributed to the deprivation of Plaintiff's procedural rights by obstructing access to public records and disregarding Plaintiff's right to a fair hearing (see Paragraph 34). (see **Exhibit 02**)

- **Parsons, D'Agostino, and C. Miller**
  - ○ Official Capacities:
    - ▪ These Defendants ratified and endorsed the County's denial of Plaintiff's procedural due process rights by obstructing his efforts to obtain a fair hearing on his records requests and petitions (see Paragraph 35).
  - ○ Individual Capacities:
    - ▪ Each acted beyond the scope of their lawful authority by contributing to the failure to provide Plaintiff with adequate procedural protections and ensuring the denial of his procedural rights (see Paragraph 35).

44

**G. HAVA and Procedural Denials**

Plaintiff's HAVA complaint was dismissed without meaningful review, and his attempts to challenge election irregularities were systematically denied without proper procedural safeguards. Defendants failed to provide Plaintiff with adequate notice or the opportunity to be heard regarding these significant issues, resulting in the violation of Plaintiff's due process rights.

**H. Ultra Vires Statement**

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by denying Plaintiff's procedural due process rights without providing adequate procedural safeguards. This unlawful conduct justifies suing Defendants in their individual capacities.

**I. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**J. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**K. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**L. Relief Sought**

Plaintiff seeks:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages (where applicable)

- Such other relief as the Court deems just and proper.

**COUNT V: 42 U.S.C. § 1983 – EQUAL PROTECTION VIOLATION (DISPARATE ACCESS TO ELECTION RECORDS)**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster

- Bender

- Pfursich

- Parsons

- D'Agostino

46

- C. Miller

**B. Summary of Count**

Plaintiff alleges that Defendants violated his Fourteenth Amendment equal protection rights by providing other requesters with access to election records while denying Plaintiff access, thereby treating him differently from other similarly situated individuals. This disparate access to election records was arbitrary, unjustified, and aimed at suppressing Plaintiff's political advocacy.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Equal Protection Claim**

1. Different Treatment: Plaintiff must show that they were treated differently than others similarly situated.

2. Intentional or Purposeful Discrimination**:** Plaintiff must show that the disparate treatment was the result of intentional or purposeful discrimination.

3. No Legitimate Justification**:** The government's disparate treatment of Plaintiff must lack a rational or legitimate justification.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15, 16, 19, 21-22, 31, 34, 36, 39, 46-50 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

1. **County of Lancaster**

   ▪ County, through its officials, treated Plaintiff differently from other similarly situated individuals by selectively denying access to election records (see **Paragraph 35**).

   ▪ The disparate access to public records was aimed at suppressing Plaintiff's political advocacy, and the treatment lacked any legitimate or rational justification (see **Paragraph 35**).

2. **Bender**

   o Official Capacity**:**

   ▪ Bender participated in the denial of Plaintiff's access to election records, enforcing restrictions that were not applied equally to other requesters (see Paragraph 34).

   ▪ Bender's actions were designed to suppress Plaintiff's advocacy, resulting in a discriminatory and unequal application of the law (see Paragraph 34).

   o Individual Capacity:

   ▪ In her individual capacity, Bender engaged in discriminatory actions by selectively denying Plaintiff access to records, treating him differently from other requesters (see Paragraph 34).

3. **Pfursich**

   o Official Capacity**:**

- Pfursich advised and directed the denial of Plaintiff's access to election records, treating him differently from others who were similarly situated (see **Paragraph 34**).

- The denial of access was motivated by a desire to suppress Plaintiff's advocacy, and there was no legitimate basis for the unequal treatment (see **Paragraph 34**).

  o Individual Capacity**:**

- Pfursich, in her individual capacity, actively participated in the disparate treatment of Plaintiff by advising others to deny his requests while providing access to other requesters (see **Paragraph 34**).

**Parsons, D'Agostino, and C. Miller**

  o Official Capacities:

- These Defendants, in their official roles, ratified the disparate treatment of Plaintiff by endorsing and enforcing policies that selectively denied Plaintiff access to election records while allowing others to inspect them **(see Paragraph 35)**.

- Their actions were intended to suppress Plaintiff's political advocacy and lacked any legitimate justification for the unequal treatment (see **Paragraph 35**).

  o Individual Capacities:

- In their individual capacities, Parsons, D'Agostino, and C. Miller personally participated in and approved the arbitrary enforcement of legal

49

standards to deny Plaintiff access to records. Each Defendant knowingly contributed to the unequal treatment by taking actions aimed at depriving Plaintiff of his rights, beyond their lawful authority (see Paragraph 35).

- Their direct involvement in this discriminatory treatment was intended to suppress Plaintiff's political advocacy and to prevent him from obtaining records that could reveal election irregularities.

### G. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's *Monell* liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

### H. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

### I. Relief Sought

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Fees and Costs under 42 U.S.C. § 1988

50

6. Such other relief as the Court deems just and proper.

**COUNT VI: EQUAL PROTECTION VIOLATION (DISPARATE ACCESS TO JUDICIAL REVIEW UNDER THE PENNSYLVANIA RIGHT-TO-KNOW LAW)**

**A. Capacity References**

This Count is asserted against:

- **County of Lancaster** (Official Capacity)

- **Tammy Bender** (in her Individual and Official Capacities)

- **Jacqueline Pfursich** (in her Individual and Official Capacities)

- **Joshua Parsons** (in his Individual and Official Capacities)

- **Ray D'Agostino** (in his Individual and Official Capacities)

**B. Introduction**

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to equal protection by enforcing the Pennsylvania Right-to-Know Law (RTKL) in a manner that subjected Plaintiff to a more burdensome judicial review process under Section 1302, while others received direct review under Section 1301. This selective enforcement created two classes of requestors, lacked a legitimate governmental purpose, and was designed to obstruct Plaintiff's access to records.

**C. Restatement of Facts**

Plaintiff incorporates by reference Paragraphs 16, 19, 21-24, 28, 31, 34, and 46-53 of the Factual Allegations Section as if fully set forth herein.

**D. Specific Conduct of Defendants**

1. **County of Lancaster**

51

- **Official Capacity**: The County, through its officials, created and enforced a policy that required Plaintiff, unlike other requestors, to file a mandamus action under Section 1302, subjecting him to a more burdensome process of judicial review (see Paragraph 35).

2. **Tammy Bender**

- Official Capacity: Bender enforced the policy that subjected Plaintiff to mandamus actions while allowing other requestors direct access to judicial review (see Paragraph 34).

- Individual Capacity: Bender, in her individual capacity, participated in the selective enforcement and knowingly subjected Plaintiff to a more burdensome process of judicial review (see Paragraph 34).

3. **Jacqueline Pfursich**

- Official Capacity: Pfursich advised County officials to enforce the selective judicial review policy against Plaintiff, further obstructing his access to records (see Paragraph 34).

- Individual Capacity: In her individual capacity, Pfursich participated in advising and enforcing the unequal treatment of Plaintiff, subjecting him to unnecessary legal burdens (see Paragraph 34).

4. **Joshua Parsons**

- Official Capacity: Parsons ratified the County's actions that subjected Plaintiff to a more burdensome judicial review process (see Paragraph 35).

- Individual Capacity: Parsons personally endorsed and supported the policy of selective enforcement against Plaintiff, knowingly subjecting him to additional

52

legal obstacles (see Paragraph 35).

5. **Ray D'Agostino**

- o Official Capacity: D'Agostino approved the County's disparate enforcement policies, subjecting Plaintiff to the more burdensome judicial process (see Paragraph 35).

- o Individual Capacity: D'Agostino participated in the decision to subject Plaintiff to a more burdensome judicial review process, enforcing the disparate treatment in his individual capacity (see Paragraph 35).

**E. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**F. Legal Elements and Supporting Facts**

1. **Arbitrary Classification**:

Defendants created two distinct classes of RTKL requestors:

- o Class 1: Section 1301 requestors who received direct judicial review.
- o Class 2: Section 1302 requestors, like Plaintiff, who were subjected to the more burdensome process of mandamus actions.

2. **No Legitimate Purpose**:

There is no stated legislative purpose in the RTKL to subject certain requestors to mandamus actions. Defendants' enforcement of these provisions against Plaintiff lacked any legitimate governmental justification.

53

3. **Harm Resulting from Unequal Treatment**:

   The arbitrary classification subjected Plaintiff to unnecessary legal costs, delays, and procedural obstacles, causing significant harm, including financial losses, reputational damage, and suppression of his advocacy efforts.

## G. Ultra Vires Statement

Although Defendants' actions were taken in their official capacities, they exceeded their lawful authority by selectively enforcing RTKL provisions to place Plaintiff into a more burdensome judicial process. This unlawful conduct justifies suing Defendants in their individual capacities.

## H. General Liability Reference

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

## I. Consolidated Damages Claim Reference

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

## J. Relief Sought

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

54

5.  Such other relief as the Court deems just and proper.


**COUNT VII: PENNSYLVANIA CONSTITUTION VIOLATION – FREE SPEECH &
RIGHT TO PETITION**
**A. Capacity References**

This Count is asserted against:

1.  County of Lancaster (Official Capacity)

2.  Tammy Bender (in her Individual and Official Capacities)

3.  Jacqueline Pfursich (in her Individual and Official Capacities)

4.  Joshua Parsons (in his Individual and Official Capacities)

5.  Ray D'Agostino (in his Individual and Official Capacities)

6.  Christa Miller (in her Individual and Official Capacities)

**B. Introduction**

Plaintiff alleges that Defendants violated his rights under Article I, Section 7 (Free Speech) and

Article I, Section 20 (Right to Petition) of the Pennsylvania Constitution. Defendants suppressed

Plaintiff's speech and retaliated against him for exercising his right to petition the government

for redress. Defendants obstructed Plaintiff's efforts to advocate for election transparency and to

seek legal redress, violating both state constitutional protections.

**C. Restatement of Facts**

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15, 19, 21-23, 27, 31,

34, 36, and 46-53 of the Factual Allegations Section as if fully set forth herein.

**D. Specific Conduct of Defendants**

1.  **County of Lancaster**

    o   County officials obstructed Plaintiff's right to free speech and petition by

55

implementing policies that suppressed Plaintiff's access to and dissemination of public records concerning election irregularities (¶31, ¶34).

2. **Tammy Bender**

   o Official Capacity: Bender imposed restrictions that blocked Plaintiff's access to public records, suppressing his ability to advocate for election transparency (¶34, ¶43).

   o Individual Capacity: Bender actively participated in restricting Plaintiff's access to records, preventing him from exercising his free speech and right to petition (¶34, ¶43).

3. **Jacqueline Pfursich**

   o Official Capacity: Pfursich directed Bender to impose restrictions, obstructing Plaintiff's right to inspect records and engage in public advocacy for transparency (¶31, ¶43).

   o Individual Capacity: Pfursich knowingly participated in obstructing Plaintiff's access to records and suppressing his public advocacy (¶31, ¶43).

4. **Christa Miller**

   o Official Capacity: C. Miller provided false justifications for denying Plaintiff access to records, suppressing his ability to engage in public advocacy (¶27, ¶29).

5. **Joshua Parsons and Ray D'Agostino**

   o Official Capacities: Parsons and D'Agostino ratified the policies obstructing Plaintiff's right to access public records and advocate for transparency during the October 12, 2022, board meeting (¶36, ¶43).

**E. Elements of the Claim**

1. **Free Speech**

   o   Article I, Section 7 of the Pennsylvania Constitution: Protects Plaintiff's right to
       free speech, including the ability to access public records and advocate for
       transparency in the electoral process (¶13, ¶19, ¶31).

2. **Right to Petition**

   o   Article I, Section 20 of the Pennsylvania Constitution: Guarantees Plaintiff's right
       to petition the government for redress, including his efforts to seek accountability
       through advocacy and legal action (¶31, ¶34).

3. **Violation by Government Action**

   o   Defendants' Actions: Defendants, acting under color of state law, suppressed
       Plaintiff's rights by obstructing his access to public records and preventing him
       from disseminating critical election information (¶34, ¶43).

**F. Ultra Vires Statement**

Although Defendants acted in their official capacities, their actions exceeded their lawful
authority by suppressing Plaintiff's free speech and right to petition. Defendants' unlawful
conduct justifies suing them in their individual capacities.

**G. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their
respective capacities as officers, employees, or agents of the County. Each Defendant's conduct
constitutes state action and is actionable under Pennsylvania state law for violating Plaintiff's
constitutional rights.

**H. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's

57

Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**I. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**J. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT VIII: PENNSYLVANIA CONSTITUTION VIOLATION – FREE AND FAIR ELECTION**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (in her Individual and Official Capacities)

- Jacqueline Pfursich (in her Individual and Official Capacities)

- Joshua Parsons (in his Individual and Official Capacities)

58

- Ray D'Agostino (in his Individual and Official Capacities)

- Christa Miller (in her Individual and Official Capacities)

**B. Introduction**

Plaintiff alleges that Defendants violated Article I, Section 5 of the Pennsylvania Constitution, which guarantees the right to free and fair elections. By mishandling absentee ballots, obstructing Plaintiff's access to critical election records, and failing to provide voters with opportunities to verify and correct their ballots, Defendants compromised the transparency and fairness of the May 2022 election. This misconduct deprived Plaintiff of a fair election process and undermined his ability to seek redress.

**C. Restatement of Facts**

Plaintiff incorporates by reference the factual allegations in Paragraphs 3-7, 14, 16, 19, 22, 24, 29, 31, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

**D. Specific Conduct of Defendants**

1. **County of Lancaster**

   o Official Capacity: County officials failed to ensure transparency by obstructing access to public voting records and mishandling absentee ballots, including re-marking ballots without providing voters the opportunity to verify or correct their selections (¶31, ¶34, ¶36).

2. **Tammy Bender**

   o Official Capacity: Bender participated in obstructing Plaintiff's access to election records and took part in the re-marking process for absentee ballots without voter verification (¶34, ¶43).

   o Individual Capacity: Bender directly participated in obstructing Plaintiff's access

to election records and mishandling absentee ballots, violating Plaintiff's right to a free and fair election.

3. **Jacqueline Pfursich**

   o Official Capacity: Pfursich directed other officials to obstruct Plaintiff's access to records and supervised the re-marking process that did not allow voters to verify their ballots (¶31, ¶43).

   o Individual Capacity: Pfursich advised and directed unlawful restrictions on Plaintiff's access to records, contributing to the mismanagement of absentee ballots.

4. **Christa Miller**

   o Official Capacity: C. Miller provided false justifications for denying Plaintiff access to records and oversaw the absentee ballot re-marking process without providing voter verification (¶27, ¶29).

   o Individual Capacity: C. Miller personally participated in denying Plaintiff access to records and played a role in the improper re-marking of absentee ballots.

5. **Joshua Parsons and Ray D'Agostino**

   o Official Capacities: Parsons and D'Agostino ratified policies that obstructed Plaintiff's access to records and oversaw the re-marking of absentee ballots, compromising the election process (¶36, ¶43).

   o Individual Capacities: Both Parsons and D'Agostino actively participated in obstructing Plaintiff's access to election records and mishandling absentee ballots, contributing to the violations of Plaintiff's right to a fair election.

**E. Integration of HAVA Violations**

60

Defendants' mishandling of absentee ballots violated HAVA (52 U.S.C. § 21081), which sets federal standards for voting transparency and fairness. The County's re-marking process exceeded allowable error rates, failed to provide voters the opportunity to verify their votes, and did not produce an auditable record, directly violating HAVA's standards and Pennsylvania's constitutional right to a fair election.

**F. Ultra Vires Statement**

Although Defendants acted in their official capacities, they exceeded their lawful authority under HAVA and Pennsylvania law. As County officials, their failure to comply with HAVA and their mismanagement of absentee ballots violated both federal and state election standards. This justifies suing Defendants in their individual capacities.

**G. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County. Each Defendant's conduct constitutes state action and is actionable under Pennsylvania state law for violating Plaintiff's constitutional rights.

**H. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**I. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury under *Elrod v. Burns*.

**J. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT IX: CONSPIRACY (42 U.S.C. § 1983)**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (in her Individual and Official Capacities)

- Jacqueline Pfursich (in her Individual and Official Capacities)

- Joshua Parsons (in his Individual and Official Capacities)

- Ray D'Agostino (in his Individual and Official Capacities)

- Christa Miller (in her Individual and Official Capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants conspired to deprive him of constitutional rights under the First and Fourteenth Amendments, including free speech, petition, due process, and equal protection.

Defendants coordinated to obstruct Plaintiff's access to public records, deny transparency, and retaliate against him for exercising his rights. Their coordinated efforts are evident from discussions at the October 12, 2022 Board Meeting and D'Agostino's October 18, 2022 letter, aimed at suppressing Plaintiff's ability to challenge election irregularities.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks redress for the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Conspiracy Claim**

1. Agreement to Deprive Plaintiff of Constitutional Rights: There must be an agreement between two or more persons to deprive Plaintiff of his constitutional rights.

2. Actions in Furtherance of the Conspiracy: Defendants must have engaged in overt acts in furtherance of the conspiracy.

3. Deprivation of Constitutional Rights: As a result of the conspiracy, Plaintiff must have been deprived of constitutional rights, including free speech, the right to petition, due process, or equal protection.

**E. Restatement of Facts**

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 15-17, 19, 21-23, 27, 31, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

**F. Specific Conduct of Defendants**

1. **County of Lancaster**:

    o   County officials engaged in an agreement to deprive Plaintiff of his rights by

coordinating efforts to deny access to public records and suppress Plaintiff's advocacy (¶35).

- County officials carried out overt acts, including issuing policies and orders to block Plaintiff's access to essential election records, resulting in the deprivation of Plaintiff's constitutional rights (¶35).

2. **Tammy Bender**:

- Official Capacity: Bender participated in the conspiracy by enforcing policies that denied Plaintiff access to public records and suppressed his advocacy, carrying out overt acts in furtherance of the conspiracy (¶34).

- Individual Capacity: Bender personally acted in concert with others to deprive Plaintiff of his First and Fourteenth Amendment rights by arbitrarily denying his access to public records and advancing the conspiracy's objectives (¶34).

3. **Jacqueline Pfursich**:

- **Official Capacity**: Pfursich advised and directed the denial of Plaintiff's access to election records and public information, furthering the conspiracy by issuing legal justifications to suppress Plaintiff's advocacy (¶34).

- **Individual Capacity**: Pfursich actively participated in the conspiracy by advising others and taking actions designed to prevent Plaintiff from exercising his rights, including drafting letters and legal memoranda to support the conspiracy's objectives (¶34).

4. **Joshua Parsons, Ray D'Agostino, and Christa Miller**:

- Official Capacities: Parsons, D'Agostino, and C. Miller ratified the conspiracy by approving policies and actions that blocked Plaintiff's access to records and

64

suppressed his political advocacy, committing overt acts to further the

conspiracy's goals (¶35).

- o   Individual Capacities: Parsons, D'Agostino, and C. Miller personally acted in

    concert with others, including issuing directives and policies that obstructed

    Plaintiff's ability to obtain public records and disseminate information about

    election irregularities, contributing to the conspiracy's success (¶35).

**G. Ultra Vires Statement**

Although Defendants acted in their official capacities, they exceeded their lawful authority by

conspiring to deprive Plaintiff of his constitutional rights. This unlawful conduct justifies suing

Defendants in their individual capacities.

**H. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their

respective capacities as officers, employees, or agents of the County. Each Defendant's conduct

constitutes state action and is actionable under 42 U.S.C. § 1983 for conspiring to violate

Plaintiff's constitutional rights.

**I. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's

Monell liability for official policies and supervisory defendants' liability for their direct

involvement in and ratification of the unlawful actions.

**J. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which

comprehensively describes the harm Plaintiff has experienced due to Defendants' actions,

including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury under *Elrod v. Burns*.

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT X: VIOLATION OF THE HELP AMERICA VOTE ACT (HAVA)**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants violated the Help America Vote Act (HAVA) by mishandling absentee ballots during the 2021, 2022, and 2023 election cycles. Specifically, Defendants' remarking process violated HAVA standards by failing to provide voters with ballots containing Plaintiff's race, preventing voters from verifying their ballots, and denying them the opportunity

66

to correct any errors before the ballots were counted. During the January 9, 2023, hearing before

Acting Secretary of State Al Schmidt, testimony from Defendant Christa Miller confirmed that

Parsons, Pfursich, and D'Agostino were directly involved in the remarking process. The

Pennsylvania Department of State's dismissal of Plaintiff's HAVA complaint further

demonstrates Defendants' pattern of disregard for federal election law (see Exhibits 01 and 06).

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks to redress

violations of HAVA, a federal law. Venue is proper under 28 U.S.C. § 1391(b) because

Defendants reside in and the events giving rise to this claim occurred in the Eastern District of

Pennsylvania.

**D. Elements of HAVA Violation**

1.  Failure to Permit Voter Verification (52 U.S.C. § 21081(a)(1)(A)(i)):

    o   Defendants replaced approximately 14,000 absentee ballots without allowing

        voters to verify their vote selections before the ballots were cast and counted,

        violating HAVA's voter protection standards.

2.  Failure to Allow Opportunity for Correction (52 U.S.C. § 21081(a)(1)(A)(ii)):

    o   Defendants denied voters the opportunity to correct any errors before their ballots

        were cast and counted. The remarking process prevented voters from reviewing

        and correcting their ballots.

3.  Failure to Provide Notice of Over-Voting (52 U.S.C. § 21081(a)(1)(A)(iii)):

    o   Defendants failed to notify voters of over-votes and did not provide an

        opportunity to correct these mistakes before their ballots were counted.

4.  Failure to Produce an Audit Trail (52 U.S.C. § 21081(a)(2)):

    o   Defendants failed to produce a permanent, auditable paper record for absentee ballots, violating HAVA's requirement for election auditability.

5. Exceeding the FEC Error Rate Standard (52 U.S.C. § 21081(a)(5)):

    o   The error rate associated with the remarking of absentee ballots exceeded the FEC's allowable error rate of one in 10,000,000 ballot positions, violating HAVA's error rate requirements.

**E. Restatement Clause**

Plaintiff incorporates by reference Paragraphs 3 through 9 of the Factual Allegations Section, detailing how Defendants failed to meet HAVA standards in handling absentee ballots, including misprints, disenfranchisement, and illegal ballot replacements during the remarking process.

**F. Unified Conduct and Elements by Defendant**

1. **County of Lancaster**:

    o   County violated HAVA by implementing policies that resulted in the replacement of absentee ballots without giving voters the opportunity to verify or correct their selections (see **Exhibit 01**).

2. **Jacqueline Pfursich**:

    o   Official Capacity: Pfursich directed the ballot replacement procedures, denying voters verification of their ballots, thereby violating HAVA's safeguards (**see Exhibit 01**).

    o   Individual Capacity: In her individual capacity, Pfursich advised Defendants Parsons, D'Agostino, and C. Miller to implement procedures that unlawfully denied voters their rights under HAVA (See **Exhibit 08**).

3. **Joshua Parsons, Ray D'Agostino, and Christa Miller**:

68

- Official Capacities: These Defendants approved and implemented the illegal remarking process for absentee ballots, denying voters the right to verify and correct their ballots before they were cast. (see **Exhibit 01**)

- Individual Capacities: In their individual capacities, Parsons, D'Agostino, and C. Miller actively participated in implementing the replacement of ballots. Testimony from Defendant C. Miller during the January 9, 2023, hearing highlights her role and references to Parsons, Pfursich, and D'Agostino as decision-makers (see **Exhibit 08**).

**G. Ultra Vires Clause**

While some of Defendants' actions were taken in their official capacities, many exceeded their lawful authority. These ultra vires actions justify suing Defendants in their individual capacities.

**H. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**I. Legal Elements and Supporting Facts**

1. Violation of 52 U.S.C. § 21081(a)(1)(A)(i):

   - Defendants violated HAVA's requirement by replacing absentee ballots without allowing voters to verify their selections before they were counted.

2. Violation of 52 U.S.C. § 21081(a)(1)(A)(ii):

   - Defendants failed to offer voters the opportunity to correct errors on their ballots before they were processed.

3. Violation of 52 U.S.C. § 21081(a)(1)(A)(iii):

69

- o   Defendants failed to notify voters of over-votes and provide an opportunity for correction.

4. Violation of 52 U.S.C. § 21081(a)(2):

- o   Defendants did not produce a permanent, auditable paper record for absentee ballots, violating HAVA's auditability requirement.

5. Violation of 52 U.S.C. § 21081(a)(5):

- o   The error rate in the replacement of absentee ballots exceeded HAVA's allowable error rate standard.

**J. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury.

**K. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

**COUNT XI: MONELL LIABILITY**

**A. Capacity References**

This Count is asserted against County of Lancaster for constitutional violations under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*. Plaintiff alleges that the deprivation of his rights resulted from County's official policies, customs, and practices, which were the moving force behind the constitutional violations described in this complaint.

**B. Summary of Count**

Plaintiff alleges that County of Lancaster is liable under *Monell* because its official policies, customs, and failure to supervise employees led to the deprivation of Plaintiff's constitutional rights. These violations include obstruction of access to public records, suppression of advocacy efforts, and unlawful actions regarding the administration of absentee ballots during federal elections. The County's failure to follow federal law, including HAVA, and its reliance on pretextual legal justifications to block public access, violated Plaintiff's rights under the First and Fourteenth Amendments.

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks to redress violations of his constitutional rights under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendant County of Lancaster resides in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Monell Claim**

1. Existence of a Policy or Custom: Plaintiff must show that a municipal policy or custom caused the constitutional violation.

2. Causation: The policy or custom must be the moving force behind the constitutional violation.

71

3. Failure to Train or Supervise: Plaintiff must show that the County's failure to adequately train or supervise employees led to the constitutional violation.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 13, 16, 19, 22, 23, 26, 34, 36, 46-53 of the Factual Allegations Section as if fully set forth herein.

**F. Specific Conduct of the County**

1. **Policy or Custom of Obstruction**:

   County maintained a policy or custom of obstructing public access to records, especially election-related records. This obstruction served to suppress unfavorable information, preventing Plaintiff from engaging in public advocacy and undermining his constitutional rights to free speech and petition (see Paragraphs 31, 34, and 43).

2. **Failure to Supervise and Train**:

   County failed to adequately train and supervise its employees, particularly Defendants Bender, Pfursich, Parsons, and D'Agostino, regarding compliance with public records laws and HAVA standards. This failure to provide proper training led to the unlawful obstruction of Plaintiff's access to critical election records (see Paragraphs 31 and 34).

3. **Failure to Execute Federal Law**:

   County officials, administering a federal election, were required to follow federal law under the Help America Vote Act (HAVA). The County's failure to allow voters to verify and correct their absentee ballots before they were counted violated federal election law and contributed to the constitutional violations suffered by Plaintiff. As administrators of a federal election, County officials were also required to faithfully execute these laws under the Take Care Clause of the U.S. Constitution, but failed to do

72

so (see Paragraphs 31 and 35).

4. **Pretextual Legal Justifications**:

    County officials used pretextual legal arguments, such as 25 P.S. § 2648, to deny Plaintiff

    access to public voting records while granting the same records to others, including

    election vendors. These pretexts were part of a broader policy of suppression and

    discrimination that targeted Plaintiff and his efforts to ensure election transparency (see

    Paragraphs 31 and 34).

**G. Ultra Vires and Take Care Clause Violation**

Although many of Defendants' actions were taken under the guise of official policies, County

officials exceeded their lawful authority under Title 53, Section 2962 of the Pennsylvania

Consolidated Statutes by mishandling election procedures and failing to comply with federal

law. Their actions also violated their duty under the Take Care Clause of the U.S. Constitution to

faithfully execute federal election law, including HAVA, which further supports Plaintiff's

claims for Monell liability.

**H. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which

comprehensively describes the harm Plaintiff has experienced due to Defendants' actions,

including emotional distress, reputational harm, suppression of advocacy efforts, financial losses,

and irreparable injury.

**I. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages

5. Such other relief as the Court deems just and proper.

**COUNT XII: ABUSE OF PROCESS**

**A. Capacity References**

This Count is asserted against:

- County of Lancaster (Official Capacity)

- Tammy Bender (Individual and Official Capacities)

- Jacqueline Pfursich (Individual and Official Capacities)

- Joshua Parsons (Individual and Official Capacities)

- Ray D'Agostino (Individual and Official Capacities)

- Christa Miller (Individual and Official Capacities)

**B. Summary of Count**

Plaintiff alleges that Defendants abused legal processes, including public records requests and litigation, to delay, coerce, and obstruct Plaintiff's rights. Defendants used legal mechanisms not for their intended purposes but to harass and burden Plaintiff, including by pursuing a sanctions motion and invoking pretextual legal justifications for denying access to election records. Defendants' refusal to grant access to public election records is inconsistent with the ruling in *Previte v. Erie County Board of Elections*, where the court affirmed that such records must be accessible (See **Exhibit 07**).

**C. Jurisdictional Basis**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff seeks to redress the deprivation of rights secured by the U.S. Constitution under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in and the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

**D. Elements of Abuse of Process Claim**

1. Legal Process Used Improperly: Defendants must have used legal process for an illegitimate purpose.

2. Improper Motive: Defendants must have had an improper motive or objective unrelated to the legal process itself.

3. Harm to Plaintiff: The improper use of legal process must have harmed the Plaintiff.

**E. Restatement Clause**

Plaintiff incorporates by reference the factual allegations in Paragraphs 15–17, 19, 21–23, 27, 31, 34, 36, and 41–43 of the Factual Allegations Section as if fully set forth herein.

**F. Unified Conduct and Elements by Defendant**

1. **County of Lancaster**

   o County officials, through the County's policies and practices, pursued legal processes like a sanctions motion to intimidate and coerce Plaintiff into withdrawing his legal actions (see Paragraphs 35, 36).

2. **Tammy Bender**

   o Official Capacity: Bender manipulated public records requests, providing pretextual denials to frustrate Plaintiff's access to public information (see Paragraph 34).

   o Individual Capacity: In her individual capacity, Bender knowingly enforced

policies aimed at obstructing Plaintiff's access to critical records, beyond her

lawful authority (see Paragraph 34).

3. **Jacqueline Pfursich**

o Official Capacity: Pfursich issued and directed legal justifications used to obstruct

Plaintiff's access to records, misapplying laws such as 25 P.S. § 2648 (see

Paragraph 34).

o Individual Capacity: Pfursich, in her individual capacity, actively participated in

abuse of the process by directing arbitrary denials and misapplications of legal

processes (see Paragraph 34).

4. **Joshua Parsons and Ray D'Agostino**

o Official Capacities: These Defendants ratified and supported the County's abuse

of process, including filing motions aimed at coercing Plaintiff into dropping his

legal actions (see Paragraph 35).

o Individual Capacities: Parsons and D'Agostino participated individually in the

decision to pursue a sanctions motion and other legal actions meant to coerce

Plaintiff rather than serve a legitimate legal purpose (see Paragraph 35).

5. **Christa Miller**

o Official Capacity: C. Miller, in her role as Chief Registrar, provided misleading

information during the HAVA hearing to support the County's abuse of process,

obstructing Plaintiff's access to records (see Paragraph 27).

o Individual Capacity: In her individual capacity, C. Miller knowingly participated

in the abuse of legal mechanisms, including falsely testifying to support the

County's position in denying records to Plaintiff (see Paragraph 27). (See Exhibit

76

04).

**G. Color of Law Statement**

All actions alleged in this count were taken by Defendants under color of state law in their respective capacities as officers, employees, or agents of the County of Lancaster. Each Defendant's conduct constitutes state action and is actionable under 42 U.S.C. § 1983.

**H. General Liability Reference**

This Count incorporates by reference the General Liability Section, which outlines County's Monell liability for official policies and supervisory defendants' liability for their direct involvement in and ratification of the unlawful actions.

**I. Consolidated Damages Claim Reference**

This Count incorporates by reference the Consolidated Damages Claim Section, which comprehensively describes the harm Plaintiff has experienced due to Defendants' actions, including emotional distress, reputational harm, suppression of advocacy efforts, financial losses, and irreparable injury under *Elrod v. Burns*.

**J. Relief Sought**

Plaintiff seeks:

1. Declaratory Relief

2. Injunctive Relief

3. Compensatory Damages

4. Punitive Damages (where applicable)

5. Such other relief as the Court deems just and proper.

## XIV.    CONSOLIDATED RELIEF SECTION

Plaintiff respectfully requests that this Court grant the following relief against Defendants:

1. **Declaratory Relief**

   o A declaration that Defendants' conduct violated Plaintiff's rights under applicable federal and state laws.

   o A declaration that the laws, regulations, or actions applied by Defendants are unconstitutional, invalid, or otherwise unlawful under applicable federal and state laws.

2. **Injunctive Relief**

   o An injunction prohibiting Defendants from engaging in unlawful conduct and requiring appropriate remedial actions.

   o An injunction preventing Defendants from enforcing or applying the invalid laws, regulations, or actions, and requiring Defendants to comply with lawful standards.

3. **Compensatory Damages**

   o Against Defendants in their official capacities for harm caused to Plaintiff.

4. **Punitive Damages**

   o Against Defendants in their individual capacities for willful, wanton, and reckless conduct.

5. **Costs and Expenses**

   o An award for any costs and expenses incurred by Plaintiff in pursuing this action.

6. **Other Relief**

   o Any further relief this Court deems just and proper.

## XV.   <u>EXHIBIT LIST</u>

| Exhibit Number | Title | Referenced In |
|---|---|---|
| Exhibit 01 | May 17, 2022 Ballot Remarking Instructions | Prior Restraint, Conspiracy, HAVA Violation |
| Exhibit 02 | October 5, 2022 Conditions and Restraints on Miller | Due Process, Prior Restraint |
| Exhibit 03 | Transcript of October 12, 2022 Board Meeting | Due Process, Prior Restraint, Conspiracy |
| Exhibit 04 | November 17, 2022 C. Miller Affidavit | Due Process, Abuse of Process |
| Exhibit 05 | "Ex-Hopeful" in Article | Retaliation |
| Exhibit 06 | Department of State Dismissal of HAVA Complaint | HAVA Violation, Right of Petition |
| Exhibit 07 | *Previte* Decision in Commonwealth Court | Prior Restraint, Due Process |
| Exhibit 08 | January 9, 2023 HAVA Hearing | HAVA Violation |
| Exhibit 09 | OOR Final Determination | Prior Restraint |

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.


## XVI.    VERIFICATION AND SIGNATURE

I, Michael Miller, declare under penalty of perjury that the factual allegations set forth in the

foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Date: **October 12, 2024**

Signature: **/s/ Michael Miller**

**Michael Miller**

108 North Reading Road, F, Ste. 246

Ephrata, Pennsylvania 17522

717-388-0163

reaganfive@protonmail.com

## XVII. <u>NOTICE OF CONSTITUTIONAL CHALLENGE UNDER RULE 5.1</u>

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, Miller provides notice that the constitutionality of Chapter 13 of the Pennsylvania Right-to-Know Law are challenged in this complaint. Miller will serve a copy of this complaint on the Attorney General of Pennsylvania.

[Clerks Office Only]
*Submission Details*
*No Value*

Name:
Michael Miller

Email Address:
*If you provide your email address you are consenting to service by email. You will receive notice of court documents, as well as documents filed by other parties in the case, at the email address you provide and not via U.S. mail*
reaganfive@protonmail.com

Phone Number
717-388-0163

Are you filing a new case?
*If you are filing a new case, you must pay the filing fee and administrative fee to the Clerk of Court to proceed with your case. If you cannot afford to pay those fees, you must file a motion to proceed without prepayment of the fees, known as a motion to proceed in forma pauperis. Please see the Court's website for instructions regarding how to pay the fees and forms for proceeding in forma pauperis.*
No, I'm not filing a new case.

Case Caption
*Enter the caption of the case in which you are filing the same way that the case caption appears on the docket. If you are filing a new case, enter NEW CASE in the field below.*
Michael Miller, Plaintiff, v. County of Lancaster, Tammy Bender, Jacqueline Pfursich, Joshua Parsons, Ray D'Agostino, Christa Miller, Defendants.

Case Number
*Enter the number of the case in which you are filing. To file a document in more than one case, you must complete this form for each case in which you would like to file the document. Failure to include your case number may result in processing delays and/or the misfiling of your paper. If you do not know your case number, you can contact the Clerk's Office by emailing PAED_clerksoffice@paed.uscourts.gov. If you are filing a new case, enter NEW CASE in the field below.*
5:24-cv-05338

Description of Document(s)
*Please provide a brief description of the document or documents that you are filing. For example, some common submissions are "Complaint," "Motion to Proceed In Forma Pauperis," "Amended Complaint," "Motion," "Response," "Notice," "Exhibit." The description will assist the Clerk's Office in timely processing your document and will not necessarily appear on the docket.*
Complaint - First Amended

Terms of Submission
*By submitting these documents to the Court, I represent the following: (1) I am intending to file, or am submitting on behalf of an individual who intends to file, the attached document(s) with the United States District Court for the Eastern District of Pennsylvania. (2) This filing is made in compliance with Federal Rule of Civil Procedure Rule 11, which requires me to sign documents that I submit to the Court for filing, and all applicable statutes and court rules to the best of my ability. (3) I consent to accept service of all notices and papers regarding this case at the email address I have provided. I understand that I will no longer receive service of orders and other court documents by mail. I agree to promptly notify the Clerk of Court if there is any change to my email address. (4) I understand that use of the EDS system may be terminated for non-compliance or abuse of this privilege.*
Yes

Do you have a mailing address?
Yes

Select 'Yes' if you do not have a mailing address.
*No Value*

Mailing Address Line 1
*Please include a current mailing address where you can be reached by the Court. Enter N/A if you do not have a mailing address.*
108 North Reading Road, Suite F, 246

Mailing Address Line 2
*No Value*

City:
*Enter NA if not applicable.*
Ephrata

State:
*Enter NA if not applicable.*
Pennsylvania

Zip Code:
*Enter NA if not applicable.*
17522

Other
*No Value*

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Miller,<br>　　　Plaintiff,<br><br>v.<br><br>County of Lancaster,<br>Tammy Bender,<br>Jacqueline Pfursich,<br>Joshua Parsons,<br>Ray D'Agostino,<br>Christa Miller,<br><br>　　　Defendants. | Civ. No: 5:24-cv-05338-JFL |

**PLAINTIFF'S NOTICE OF OBJECTION TO EXTENSION AND RESERVATION OF RIGHTS**

This Notice is filed pursuant to FRCP 6, FRCP 7, and FRCP 1 to ensure fair and timely resolution. Plaintiff acknowledges the Court's order granting the Defendants' motion for an extension, allowing them until November 20, 2024, to file a response to the amended complaint. Plaintiff reserves the right to provide further briefing on this matter without waiver of any arguments presented herein.

1. **Concerns Regarding Extension**: Plaintiff notes that the motion for extension fails to meet the specificity and sufficiency requirements of FRCP 6 and FRCP 7. While Plaintiff does not formally object to the extension at this time, it is essential to register these concerns as part of the record. This

documentation may prove important for any future appeals or motions, as it demonstrates that Plaintiff has taken steps to address potential delays.

2. **Concerns Regarding Treatment of Petition**: The Supreme Court in *Freedman* prohibits subjecting First Amendment rights to "*interminable judicial review*" (380 U.S. 51, 59 (1965)) and mandates prompt action. Similarly, *Elrod* asserts that "*the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury*" (427 U.S. 347, 373 (1976)). The procedural history of Plaintiff's petitions reveals a pattern of lawyers manipulating language to misuse jurisdiction, misapply procedural rules, evade accountability, and ultimately deny a Petition for redress of First Amendment grievances. Such delays unlawfully and irreparably accrue harm to Plaintiff and hinder his ability to seek timely justice and resolution of constitutional claims.

3. **Request for Stipulated Conditions on Extension**: To prevent further irreparable harm, Plaintiff requests that if Defendants' counsel files motions under FRCP 12(b)(6) or FRCP 12(b)(1), they must file a supporting brief concurrently, and that the Court rules on such motions within 30 days from the date of filing. This stipulation is a necessary, just, and mitigating factor

that ensures the extension serves a legitimate purpose and does not become a
bad-faith tactic to delay the timely adjudication of Plaintiff's claims.
Plaintiff requests that Defendants provide a response to this stipulation
within seven days from the date of this Notice.

**Reservation of Rights**: Plaintiff reserves all rights to challenge this extension and
any subsequent delays, including the right to seek appellate review if these tactics
continue to obstruct the fair and timely adjudication of his claims, thereby ensuring
the protection of Plaintiff's constitutional rights.

**Challenge to Discretionary Rulemaking**: Plaintiff asserts that FRCP 1, FRCP 6,
FRCP 7, FRCP 12(b)(1), FRCP 12(b)(6), and FRCP 12(a)(4) are strict rules with
binding precedents of application designed to uphold fairness and transparency.
Plaintiff objects to the use of vague and indefinite language in this case to expand
judicial discretion or justify delays that undermine rules, laws, and rights.

Respectfully Submitted:

*/s/ Michael Miller*
Michael Miller
108 North Reading Road, Suite F, 246
Ephrata, Pennsylvania
(717) 388-0163
reaganfive@protonmail.com

Date:  November 1, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a true and correct copy of the foregoing document to

be served by electronic filing (e-filing) to the following parties on <u>November 1,</u>

<u>2024</u>.

<table>
<tr>
<td>

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

</td>
<td>

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
717-237-5473
sstaub@mcneeslaw.com


Respectfully Submitted,

<u>/s/*Michael Miller*</u>
Michael Miller
108 North Reading Road., Ste F, 246
Ephrata PA 17522
717-388-0163
reaganfive@protonmail.com

</td>
</tr>
</table>

Dated: November 1, 2024

[Clerks Office Only]
*Submission Details*
*No Value*

Name:
Michael Miller

Email Address:
*If you provide your email address you are consenting to service by email. You will receive notice of court documents, as well as documents filed by other parties in the case, at the email address you provide and not via U.S. mail*
reaganfive@protonmail.com

Phone Number
717-388-0163

Are you filing a new case?
*If you are filing a new case, you must pay the filing fee and administrative fee to the Clerk of Court to proceed with your case. If you cannot afford to pay those fees, you must file a motion to proceed without prepayment of the fees, known as a motion to proceed in forma pauperis. Please see the Court's website for instructions regarding how to pay the fees and forms for proceeding in forma pauperis.*
No, I'm not filing a new case.

Case Caption
*Enter the caption of the case in which you are filing the same way that the case caption appears on the docket. If you are filing a new case, enter NEW CASE in the field below.*
Miller v. County of Lancaster, et. al

Case Number
*Enter the number of the case in which you are filing. To file a document in more than one case, you must complete this form for each case in which you would like to file the document. Failure to include your case number may result in processing delays and/or the misfiling of your paper. If you do not know your case number, you can contact the Clerk's Office by emailing PAED_clerksoffice@paed.uscourts.gov. If you are filing a new case, enter NEW CASE in the field below.*
5:24-cv-05338

Description of Document(s)
*Please provide a brief description of the document or documents that you are filing. For example, some common submissions are "Complaint," "Motion to Proceed In Forma Pauperis," "Amended Complaint," "Motion," "Response," "Notice," "Exhibit." The description will assist the Clerk's Office in timely processing your document and will not necessarily appear on the docket.*
Notice

Terms of Submission
*By submitting these documents to the Court, I represent the following: (1) I am intending to file, or am submitting on behalf of an individual who intends to file, the attached document(s) with the United States District Court for the Eastern District of Pennsylvania. (2) This filing is made in compliance with Federal Rule of Civil Procedure Rule 11, which requires me to sign documents that I submit to the Court for filing, and all applicable statutes and court rules to the best of my ability. (3) I consent to accept service of all notices and papers regarding this case at the email address I have provided. I understand that I will no longer receive service of orders and other court documents by mail. I agree to promptly notify the Clerk of Court if there is any change to my email address. (4) I understand that use of the EDS system may be terminated for non-compliance or abuse of this privilege.*
Yes

Do you have a mailing address?
Yes

Select 'Yes' if you do not have a mailing address.
*No Value*

Mailing Address Line 1
*Please include a current mailing address where you can be reached by the Court. Enter N/A if you do not have a mailing address.*
108 North Reading Road, Suite F, 246

Mailing Address Line 2
*No Value*

City:
*Enter NA if not applicable.*
Ephrata

State:
*Enter NA if not applicable.*
Pa.

Zip Code:
*Enter NA if not applicable.*
17522

Other
*No Value*