## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL MILLER,                   :      Civ. No. 1:24-CV-14
                                  :
    Plaintiff,                 :      (Judge Wilson)
                                  :
    vs.                        :      (Magistrate Judge Carlson)
                                  :
LANCASTER COUNTY, et al.,         :
                                  :
    Defendants.                :

## MEMORANDUM OPINION

### I.    Introduction

This case, which comes before us for consideration of the defendants' motions for sanctions, (Docs. 48 and 67), presents the following question: When does *pro se* persistence become vexatious sanctionable misconduct? In this case, the *pro se* plaintiff, Michael Miller, has followed an increasingly erratic, feckless course as he tries to relitigate his rejection by the voters in Lancaster County. These efforts embrace litigation in multiple forums, state and federal, but to date share a common theme—every effort by Miller to relitigate the outcome of this election has been rejected by the courts.

On these facts, we find that Miller's litigation in this case perilously approaches sanctionable misconduct under Rule 11 of the Federal Rules of Civil Procedure. However, acting out of an abundance of caution, and acknowledging

1

Miller's *pro se* status, in the exercise of our discretion we will decline this invitation to impose monetary sanctions upon the plaintiff at this time. However, we place Miller on notice that he may be subject to sanctions if he continues to persist in the problematic pursuit of what he has been informed are meritless claims.

## II.     Factual Background and Procedural History

According to the complaint which he filed in federal court, Michael Miller is a disappointed aspirant for public office. Miller's aspirations, however, were dashed when the voters spoke and selected another candidate. In what has become a distressingly common response to the will of the electorate, Miller apparently concluded that the outcome of the election did not reflect the public's verdict on his candidacy, but rather was the product of some nefarious cabal. Miller then launched upon a quixotic quest to discover some reason for his electoral defeat beyond the fact that voters simply did not favor his candidacy.

As Miller explained in his complaint: "On May 17, 2022, Miller contested for Pennsylvania State Senate District 36 in an election held in Lancaster County, Pennsylvania." (Id., ¶ 13). Miller alleges that there were irregularities in the printing and processing of mail-in ballots in this election. (Id., ¶¶ 14-20). According to the plaintiff, he filed state Right to Know law requests with local officials in support of his efforts to publicize these alleged election anomalies. (Id., ¶¶ 19-22). These

2

requests were denied, in part, and Miller began a multi-facetted legal foray seeking review of this decision from the Commonwealth of Pennsylvania Office of Open Records, the Pennsylvania Commonwealth Court, and the Court of Common Pleas of Lancaster County. (Id., ¶¶ 22-73). Dissatisfied with the pace and outcome of this state litigation of his state Right to Know law claims, on January 4, 2024, Miller filed this lawsuit. (Id.) In his prayer for relief, Miller invited us to intervene in this state litigation, address some twenty-three specific and detailed questions relating to the processing of his state Right to Know law requests,[1] and enjoin the enforcement of the state law. (Id., ¶¶ 74-107).

The defendants immediately responded by filings motions to dismiss Miller's complaint. (Docs. 8 and 16). In addition, the defendants wrote to Miller on April 16, 2024, placing him on notice that they regarded his complaint as frivolous and subject to sanctions under Rule 11 of the Federal Rules of Civil Procedure. (Doc. 48-1). This correspondence demanded that Miller dismiss and withdraw his complaint within twenty-one days or face a motion for sanctions. (Id.) In response, Miller refused to withdraw his complaint, setting the stage for the filing of this sanctions motion which was filed on May 8, 2024. (Doc. 48).

---

[1] On this score Miller's prayer for relief was curious and read like a series of detailed interrogatories addressed not to the parties but rather to the Court. We, of course, do not answer interrogatories.

3

We initially deferred action on this sanctions motion pending resolution of the merits of Miller's complaint since that sanctions motion was inextricably intertwined with our merits consideration of this case. (Doc. 59, at 18). On June 20, 2024, we filed a Report and Recommendation, which recommended that Miller's complaint be dismissed. (Doc. 59). The district court adopted this Report and Recommendation on September 30, 2024, (Doc. 64), and Miller has appealed this decision. (Doc. 65). That appeal remains pending.

In the meanwhile, the defendants have renewed their sanctions motion, filing a pleading styled as a motion to take judicial notice, (Doc. 67), which describes what the defendants characterize as ongoing litigation misconduct by Miller in his pending federal appeal along with the filing of a new, but nearly identical, lawsuit in the United States District Court for the Eastern District of Pennsylvania on October 5, 2024, within days of the dismissal of this case. (Doc. 68). Miller never responded to this filing.

These motions are now ripe for resolution. While we place Miller on notice that, absent the reversal of our prior decision, in our view, further efforts to relitigate these claims may likely subject the plaintiff to sanctions, we will deny the request for Rule 11 monetary sanctions at this time.

## III.  **Discussion**

Several basic guiding principles inform our resolution of the instant sanctions motion. By its terms, Rule 11 imposes an obligation upon litigants to refrain from frivolous and vexatious litigation, and specifically provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Having imposed this duty of forthrightness, candor, and good faith upon litigants, Rule 11(c) then provides for sanctions against parties who indulge in baseless and frivolous litigation, stating that:

> **(c) Sanctions.**

**(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

---------------------------------------------------------------------

**(4) *Nature of a Sanction.*** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

In determining whether to impose Rule 11 sanctions in a given case, we are cautioned that:

The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," Eastway Construction Corp. v. City of New York, 637 F.Supp. 558, 564 (E.D.N.Y. 1986), modified and remanded, 821 F.2d 121 (2d Cir.), cert. denied 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn

satellite litigation counter-productive to efficient disposition of cases," <u>Gaiardo</u>, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." <u>Eastway Construction Corp.</u>, 637 F.Supp. at 564. This Court and others have interpreted its language to prescribe sanctions, including fees, only in the "exceptional circumstance", <u>Gaiardo</u>, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. <u>See, e.g.</u>, <u>Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'") (quoting <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 831 (9th Cir. 1986)); <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'") (quoting <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir. 1985)), <u>cert. denied sub nom.</u> <u>County of Suffolk v. Graseck</u>, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

<u>Doering v. Union Cty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988).

Consistent with this stringent view of Rule 11 sanctions, it is also clear that:

Rule 11 sanctions are based on " 'an objective standard of reasonableness under the circumstances.' " <u>Id</u>. at 453 n. 3 (quoting <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 94 (3d Cir.1988)). Bad faith is not required. <u>Id.</u>; <u>Jones</u>, 899 F.2d at 1358." <u>Martin v. Brown</u>, 63 F.3d 1252, 1264 (3d Cir.1995). Furthermore, it is well-settled under Rule 11 that: "Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or motion is patently unmeritorious or frivolous.' <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir.1988) (citation omitted). Rule 11's 'primary purpose is not "wholesale fee shifting but [rather] correction of litigation abuse .' " <u>Id</u>. (alteration in original) (citation omitted). It 'must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute,' and it 'should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.' <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d

90, 94 (3d Cir.1988) (citation omitted)." <u>Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account</u>, 618 F.3d 277, 297 (3d Cir.2010).

<u>United States v. Bogart</u>, No. 4:12-CV-347, 2014 WL 7466598, at *2 (M.D. Pa. Dec. 8, 2014). "Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." <u>DiPaolo v. Moran</u>, 407 F.3d 140, 146 (3d Cir. 2005). Therefore, when considering a sanctions motion, it is clear that "the main purpose of Rule 11 is to deter, not to compensate." <u>Id.</u> at 145 (citing <u>Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania</u>, 103 F.3d 294, 301 (3d Cir. 1996)). Further, "[t]he language of Rule 11 evidences the critical role of judicial discretion" in making sanctions determinations. <u>Id.</u> (quoting <u>Doering</u>, 857 F.2d at 194). This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. <u>Id.</u>

When presented with a request to sanction a *pro se* litigant like Miller some additional prudential considerations come into play. In this setting:

> Although a *pro se* complaint is held to less stringent standards than a complaint drafted by a lawyer, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1971), *pro se* parties are not excused from the requirements of Rule 11. Nevertheless, the court may take a party's *pro se* status into account when considering Rule 11 sanctions. <u>Vukadinovich v. McCarthy</u>, 901 F.2d 1439, 1445 (7th Cir.1990).

Asanov v. Davidson, No. CIV.A.1:06-CR-0611, 2007 WL 1140632, at *6 (M.D. Pa. Apr. 17, 2007).

Thus, "caselaw construing Rule 11 sanctions is marked by a single overarching principle; namely, when in doubt, one should decline to sanction parties." McCarthy v. Minnesota Laws. Mut. Ins. Co., No. 3:23-CV-450, 2023 WL 4636889, at *4 (M.D. Pa. July 19, 2023).

Guided by these benchmarks, while we deem Miller's conduct, and particularly his purported behavior in other legal forums following the dismissal of this case, as both highly problematic and potentially sanctionable, we will decline to impose monetary sanctions on Miller in this case at this time. We adopt this course mindful of the fact that Rule 11 sanctions are the exception rather than the rule and Miller is a *pro se* litigant whose misguided zeal appears to far exceed his legal acumen. While this does not excuse potentially sanctionable misconduct by a *pro se* litigant, it does explain his persistence in pursuing idiosyncratic, and often meritless claims. Miller is admonished to proceed cautiously in the future and the failure to exercise due care may have consequences for the plaintiff in future litigation. Further, we note that, in our view, the most significant litigation misconduct alleged by the defendants has now occurred in other courts following our dismissal of this complaint. Given these circumstances, we believe that we should defer to those

courts regarding whether this conduct merits action under Rule 11, while making it unmistakably clear to Miller that he may not reprise these allegations in this Court without facing the prospect of Rule 11 sanctions.

An appropriate order follows.

_Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: March 3, 2025

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL MILLER,** | : | **Civ. No. 1:24-CV-14** |
| | : | |
| **Plaintiff,** | : | **(Judge Wilson)** |
| | : | |
| **vs.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LANCASTER COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW this 3d day of March 2025, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the defendants' motions for sanctions, (Docs. 48 and 67) are DENIED but Miller is placed on notice that, absent the reversal of our prior decision, in our view further efforts to relitigate these claims in this Court may likely subject the plaintiff to sanctions.

_Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

11

12